## DECLARATION OF ABBY MCCLELLAND

I, Abby McClelland, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of the State of Colorado, and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am the director of the Food and Energy Assistance Division (FEAD) within the Colorado Department of Human Services (CDHS or Agency). FEAD lives in CDHS's Office of Economic Security and administers the Supplemental Nutrition Assistance Program (SNAP).

3.      I have held this position since June 2024. Prior to this role, I was responsible for data analysis on various federal and state benefit programs, including SNAP, for CDHS and for the Boulder County Department of Human Services. I also worked extensively with the SNAP program in my seven years of experience as an administrative benefits attorney for Neighborhood Legal Services in Los Angeles, California.

4.      I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

### Background on SNAP in Colorado

5.      CDHS supports people and families by connecting them with assistance, resources, and support at every stage of their lives. The Agency serves Coloradans through bold and innovative health and human services. And together, CDHS empowers Coloradans to thrive. The Office of Economic Security, which includes the Food and Energy Assistance Division, provides benefits assistance, including SNAP, to ensure Coloradans have what they need to live a stable life. These benefits programs help Colorado families consistently put food on the table, heat their homes, find livable-wage work, and afford basic necessities.

6.      SNAP is a key part of Colorado's efforts to address hunger by supplementing the
food budget of low-income families so they can purchase healthy food. To qualify for SNAP,
applicants must demonstrate that their household satisfies specified financial requirements,
along with other eligibility criteria.

7.      At the federal level, SNAP is overseen by USDA's Food and Nutrition Service
(FNS). The States, including Colorado, are responsible for the administration of SNAP pursuant
to federal law. The States' responsibilities include managing local transitional assistance
offices' day-to-day administration of SNAP; creating and processing applications for benefits;
making eligibility determinations; issuing benefits; accounting for SNAP benefits and
Electronic Benefit Transaction (EBT) cards; and ensuring program integrity. 7 U.S.C.
§ 2020(a)(l); 7 C.F.R. 271.4; 7 C.F.R. 274.2.

8.      Colorado's SNAP Program is county implemented and state supervised and
administered. Colorado's 64 counties make initial determinations of SNAP eligibility and
authorize benefits, while CDHS administers and supervises the SNAP program. This division of
county and state responsibility allows Coloradans to work with their local department of social
or human services to conveniently apply for SNAP and recertify ongoing eligibility.

9.      In 2024, an average of 594,526 people received SNAP benefits in Colorado each
month, including over 300,000 children and about 114,000 elderly individuals. More than $1.4
billion in SNAP benefits were issued during 2024 in Colorado. Households in Colorado receive
an average of $363 per month in SNAP benefits to meet their basic subsistence and nutritional
needs. During the federal fiscal year between October 1, 2024, and September 30, 2025, CDHS
issued approximately $120,583,598 per month in SNAP benefits in Colorado.

10.    CDHS administers the SNAP program in Colorado pursuant to C.R.S.

§ 26-2-301(1). USDA funds the entirety of SNAP benefits in Colorado. Colorado and the

federal government split administrative costs. 7 U.S.C. § 2025(a).

11.    In federal fiscal year 2024-2025, Colorado received approximately $100 million

in administrative funding from USDA, while its SNAP recipients received approximately $1.4

billion in benefits.

12.    Colorado's SNAP program is regularly audited for accuracy and its error rate.

13.    In terms of SNAP payment accuracy (*i.e.* payments made to eligible households

at amounts for which they are eligible), Colorado's error rate has been better than the national

average every single year, often in the top 20 performing States, since data has been published

following the COVID-19 pandemic. Error rates generally reflect inadvertent errors in

calculating eligibility and benefit levels, not intentional fraud by recipients or administrators.

Colorado's error rate is consistently well below the national average.

**USDA directs Colorado to participate in a pilot program**

14.    On December 17, 2025, USDA Undersecretary Patrick Penn sent a letter to

Colorado Governor Jared Polis asserting that it is "requiring Colorado to participate in a

Supplemental Nutrition Assistance Program (SNAP) pilot project, conducted pursuant to 7

U.S.C. § 2026(b)(1)(A), to increase the efficiency of SNAP and improve the delivery of SNAP

benefits to eligible households." *See* December 17, 2025, USDA Communication to Governor

Jared Polis (attached as Attachment 1). The letter came without advance warning or time to

prepare.

15.    The USDA stated it was requiring Colorado to participate in the pilot program

"amid ongoing fraud affecting federally funded benefits across the nation, including United

States Department of Agriculture's (USDA) Food and Nutrition Services' (FNS) multiple requests to the State of Colorado to fulfill its administrative responsibilities." *Id.* Colorado has not received any requests from Defendants related to fulfilling its duties to certify household eligibility or detect fraud. As discussed below, Colorado received a request for production of sensitive data, but a district court ruled that the request was unlawful.

16.      While Colorado has participated in state-initiated pilot programs, it has never been required by the USDA to participate. For example, Colorado initiated participation in the FNS Healthy Choice waiver, which restricts use of SNAP dollars to purchase sweetened beverages. To participate in this waiver, Colorado completed a lengthy waiver application requesting participation in the pilot program and submitted it to FNS for consideration and approval. *See* Attachment 2.

17.      As of the signing of this declaration, CDHS is not aware of any state receiving USDA's December 17 letter other than Minnesota, which received a letter imposing identical rules for selected counties.

18.      USDA's December 17 communication warns CDHS that "failure to participate in this pilot project as specified by USDA will trigger noncompliance procedures codified in 7 U.S.C. 2020(g). It may also affect Colorado's continued participation in SNAP."

**Prior request for data by FNS**

19.      The December 17, 2025 communication did not identify the "multiple requests to fulfill administrative [] responsibilities" that Colorado supposedly failed to meet. The only request that CDHS has received from USDA during the present Administration was an administrative request from FNS in July 2025 for SNAP data.  Colorado objected to the SNAP data request because it was contrary to law. The request sought large amounts of sensitive data

from SNAP applicants and recipients that is protected under federal and Colorado state privacy

laws. In response to Colorado's objection, USDA initiated noncompliance procedures and

threatened to disallow all administrative costs for Colorado, which total more than $100 million

per year.

20.     That request from the USDA is the subject of litigation in which United States

District Judge Maxine Chesney issued a preliminary injunction on October 15, 2025, enjoining

the USDA from disallowing SNAP funding based on plaintiff states' failure to disclose the

requested data or otherwise acting thereon.  *See* October 15, 2025, Order Granting Plaintiff

States' Motion for Preliminary Injunction, *California, et. al., v. USDA, et. al.*,

25-CV-06310-MMC (N.D. Cal.) (attached as Attachment 3).

**The proposed pilot project imposes impossible demands on CDHS**

21.     In the December 17, 2025, communication, the USDA ordered CDHS to

recertify, within 30 days from its receipt of the letter, all SNAP households in Adams,

Arapahoe, Jefferson, Boulder and Douglas counties. As detailed below, it would be impossible

to meet this demand within the allotted time.

22.     The letter does not exclude holidays or weekends from the 30-day timeframe.

23.     According to the December 17th communication, as part of the proposed pilot's

recertification process, CDHS is required to account for income and resources of any excluded

household members, conduct in person interviews, and use federal eligibility tools like the

"improved, cost-free Systematic Alien Verification for Entitlements (SAVE) Program

database." Attach. 1.

24.     The five counties which CDHS is required to recertify are five of the most

populated counties in Colorado.

25.     In total, the five counties include approximately 106,500 SNAP households. This includes about 33,125 in Adams County; 34,840 in Arapahoe County; 11,377 in Boulder County; 5,308 in Douglas County, and 21,708 in Jefferson County. This constitutes about 36% of the total SNAP households in Colorado.

26.     On a typical cadence, the five counties would expect to conduct recertifications in the following amounts over a 30-day period: Adams County, 3,239 (1,290 of which required interviews); Arapahoe County, 3,247 (1,295 of which required interviews); Boulder County, 1,013 (393 of which required interviews); Douglas County, 454 (184 of which required interviews); Jefferson County, 1,978 (927 of which required interviews). Put differently, each county would need to recertify more than ten times as many households and conduct more than 20 times as many interviews as during a normal month, all of which would need to be in person. The counties would have to accomplish this colossal task with no advanced planning time and without giving households the requisite notice they are entitled to receive.

27.     CDHS does not require county departments of human services to interview SNAP applicants in person. CDHS' state plan for administration of SNAP, which was approved by USDA, selects telephonic interviews as the default interview method. Recipients can choose an in-person interview based on their preference.  Federal regulations allow for both in-person interviews and phone interviews. 7 C.F.R. 273.2(e)(2). Counties are required to accommodate in-person interviews when requested or necessary, with the primary modality being phone interviews. 10 C.C.R. 2506-1:4.204(A).

28.     Neither CDHS, nor the county departments, have programmatic authority to require SNAP recipients to report for an in-person interview on demand. 7 C.F.R. 273.2(e)(1). Consistent with federal regulations, Colorado rules do not allow CDHS or the local counties

offices to require SNAP recipients to report for an in-person interview. 10 C.C.R. 2506-1:4.204(A). Another Colorado rule prohibits denying benefits for failing or refusing to appear for a recertification interview scheduled prior to the last month of the household's certification period. 10 C.C.R. 2506-1:4.209(C). To comply with USDA's letter, these rules would have to be changed following the requirements of the Colorado Administrative Procedure Act, but USDA's 30-day deadline provides no adequate time for Colorado to change its rules. Usual rulemaking process in Colorado takes six to nine months. There is an emergency rulemaking process to respond to federal statutory and regulatory changes, but that emergency process still requires over 30 days.

29.    Even if CDHS did have authority to require SNAP recipients to appear for an in-person interview, it would be impossible for the five counties to complete interviews within the required time frame of 30 days. Indeed, because Colorado's SNAP program is county administered, the burden of complying with the proposed pilot would primarily fall on the pilot's identified counties.

30.    It is estimated that an experienced eligibility worker could complete approximately six recertifications each day if also completing in-person interviews, assuming the interviews occur at a county DHS facility. Should eligibility workers need to travel to other locations to complete in-person interviews, as they surely will for a percentage of the interviews, the number of interviews per day that a worker could complete would go down.

31.    This means it would take approximately 7,900 worker hours per day in order to complete 100,000 interviews in 30 days or 18 business days. These estimates assume all interviews would occur at a county DHS facility; however, some interviews will need to occur in other locations. As such, this estimate for the time it will take to complete the interviews is

very likely low. Regardless, such an undertaking would be massively burdensome and costly. USDA has not offered to pay for the substantial increase in administrative costs.

32.    While the numbers of staff performing SNAP eligibility determinations varies by county, none of the listed counties have anywhere close to the requisite number of workers needed to perform the required tasks, even under the best of circumstances. As the Food and Nutrition Act requires that workers performing eligibility determinations and interviews must be merit personnel and employed in accordance with section 208 of the Intergovernmental Personnel Act of 1970, CDHS and counties could not employ volunteers or other state or county employees to conduct certification interviews or certify SNAP recipients. 7 C.F.R. 272.4. The requirements in the letter are logistically impossible to meet.

**Colorado exceeds federal eligibility requirements for certifications and recertifications**

33.    In Colorado, the county departments of human services employ eligibility workers that assess SNAP recipients for eligibility. These workers perform the certification and recertification activities, which include conducting interviews. Workers who perform eligibility determinations and interviews are merit personnel, pursuant to the requirements of the Food and Nutrition Act. 7 C.F.R. 272.4.

34.    Colorado follows all federal certification requirements in determining a household's eligibility for SNAP. At initial certification, all households are required to conduct a SNAP interview to be eligible to receive SNAP. If an interview is not completed in 30 days from the application date, the household is denied. In processing initial applications, county eligibility staff review all relevant household circumstances with the household at the interview and verify the required information, including financial information, such as income, expenses, and assets. Caseworkers may request additional information to verify eligibility if necessary.

Any household that fails to provide sufficient information or verification is denied SNAP

benefits. Examples of the forms sent to applicants at the initial application stage, during the

recertification process, and for periodic reports, when required, are attached as Attachments 4,

5, and 6.

36.     County staff utilize all federally required interfaces available to validate

information and eligibility, such as Income and Eligibility Verification System (IEVS),

Disqualified Recipient System (eDRS), Systematic Alien Verification for Entitlements (SAVE),

State Data Exchange (SDX)/Beneficiary Data Exchange (BENDEX), National Directory of

New Hires (NDNH), and Public Assistance Reporting and Information System (PARIS).

36.     Colorado requires a SNAP interview to be conducted with every initial

application. Federal regulations allow for both in-person interviews and phone interviews.

7 C.F.R. 273.2(e)(2). Counties are required to accommodate in-person interviews when

requested or necessary, with the primary modality being phone interviews. 10 C.C.R.

2506-1:4.204(A).

37.     Per 7 C.F.R. 273.10(f), USDA requires States to recertify eligibility for most

households at least every 12 months. Colorado goes above and beyond federal recertification

requirements. The vast majority of Colorado households approved to participate in SNAP are

certified for a six-month period.

38.     Households approved for six-month certifications undergo recertification

interviews with counties every 12 months, consistent with federal regulation. 7 C.F.R.

273.14(b)(3).

39.     The only certification period in Colorado other than six months is 24 months, for

households in which all adult members are elderly or disabled with no earned income. This

again is more stringent than federal requirements. These 24-month certification households are

required to complete a mid-point certification document called a Periodic Report Form and are

exempt from attending recertification interviews unless the household requests to be

interviewed or is about to have their participation in SNAP denied per our federally approved

waiver.

### CDHS takes numerous steps to prevent waste and fraud

40.    CDHS engages in significant efforts to identify and stop dual participation and

fraud in the SNAP program, including two layers of review by both county eligibility staff and

county integrity staff.

41.    When an individual applies for SNAP benefits, the application requires the

household to report whether anyone in the home has received SNAP in any other state within

the last 30 days. Eligibility workers address this question during the application and

recertification process. When an individual reports receiving SNAP in another state, the

eligibility worker must contact the other state to determine whether the individual's case is

closed.

42.    Colorado has been engaged with the FNS National Accuracy Clearinghouse

(NAC) team. The NAC is an interstate data matching system intended to prevent recipients

from receiving SNAP benefits in multiple states. CDHS will implement NAC in June 2026, per

a timeline provided and monitored by FNS.

43.    All county eligibility staff follow program rules to prevent and detect fraud

during certification activities. Workers achieve this by using available databases/interfaces and

by submitting verification requests.

44.     All five counties included in this federal request have robust integrity teams that train eligibility staff how to prevent and detect fraud. If an eligibility staff member suspects a household is fraudulently representing their circumstances but is unable to substantiate the suspicion through available databases or verification requests, they are required to make a fraud referral to county integrity staff for further investigation.

45.     County integrity staff investigates every fraud referral received. These teams conduct extensive investigations, using desk and field research to substantiate the household's circumstances. These efforts include online databases that validate identity and residency; interviews with outside entities such as employers, landlords, and neighbors; subpoenas for income, tax, and bank records; and interviews with the household. Even if there is no clear and convincing evidence of an intentional program violation (IPV), cases are processed with the information discovered in the investigation, with case closures and/or claims created for any benefits incorrectly paid to the household.

46.     When an investigation uncovers clear and convincing evidence of an intentional program violation (IPV), county staff proceed to secure an IPV through administrative disqualification hearings (ADH), ADH waivers, Disqualification Consent Agreements (DCA), or criminal prosecution. Colorado complies with all regulatory requirements related to pursuing IPVs, applying disqualifications to households, collecting on claims, and reporting fraud to USDA.

47.     Colorado also ensures deceased individuals do not receive SNAP benefits. The Colorado Benefits Management System interfaces with the Social Security Administration's Death Master File on a daily basis. When a match is made, Colorado verifies if a SNAP

recipient is deceased and, if so, to discontinue benefits. County Burial Assistance programs also

provide death information that the counties act on to discontinue benefits.

48.    Additionally, the Electronic Benefits Transfer (EBT) unit within FEAD supports

strategies to prevent, detect, and respond to fraud related to EBT-supported programs, in

compliance with federal and state laws, such as the Food and Nutrition Act. The EBT unit

supports 64 counties that administer benefit assistance programs and provides direct assistance

to EBT cardholders. The EBT unit also works closely with FIS (Colorado's EBT processor) to

strengthen efforts to prevent, detect, and eliminate fraud.

49.    The EBT unit conducts a bi-monthly EBT County Meeting to share fraud

prevention recommendations with county staff and participates in a quarterly fraud meeting

with county staff. EBT staff are also members of the Colorado Welfare Fraud Council, the

United Council of Welfare Fraud, a monthly EBT Fraud Workgroup, and a quarterly Multi-

State Data Analytics Workgroup. Additionally, the EBT unit provides training, flyers, and

education on fraud prevention and protection. This includes, but is not limited to, mass text

messaging, social media posts, training materials, and keeping the CDHS EBT website up to

date with fraud prevention information.

50.    The EBT unit monitors EBT card usage patterns to identify unusual transactions,

multiple card replacements, or transactions of unusual amounts through a monthly Fraud

Prevention Workbook and the EBT Fraud Dashboards. The reports and data are made available

to county staff, who are responsible for conducting fraud investigations. On a daily basis, the

EBT unit researches suspicious telephone numbers identified as having made balance inquiries

across multiple EBT cards and conducts cardholder outreach to provide education on protecting

benefits.

**The proposed pilot program will cause irreparable harm to Coloradans**

51.     Colorado and CDHS will be irreparably harmed if the federal government

withholds the SNAP administrative funds which total $100 million dollars a year. CDHS would

likely have to cut staff and programs that are critical to supporting the SNAP program or divert

resources from other important services, which would impact service delivery at the county

level.

52.     The Recertification Letter also threatens to disqualify Colorado from continued

participation in SNAP.

53.     Colorado would not be able to replace federally funded SNAP benefits with state

funds.

54.     Either of these threatened actions could result in a total loss of SNAP for

Colorado and the approximately 596,000 individuals who depend on it for access to food.

55.     Diverting resources for a mass recertification process will harm other public

assistance programs in Colorado as eligibility workers often determine eligibility for multiple

programs, not just SNAP. Diverting all resources to this effort will result in significant delays in

processing and access to other benefits.

56.     Processing a year's worth of recertifications in 30 days will inevitably lead to

errors in eligibility determinations and payment calculations, increasing Colorado's SNAP

payment error rate. New federal law imposes significant penalties on states whose payment

error rates exceed certain thresholds. *See* 7 U.S.C. 2013(a)(1)-(2). Errors made during the

current fiscal year bear on the assessed penalties. *See id.* § 2013(a)(2)(B)(ii)(I).

57.     Implementing this pilot would cause a significant decrease in Colorado's application processing time as resources would be diverted away from new applications for expedited and regular SNAP.

58.     SNAP recipients in Colorado will be harmed if their benefits are terminated due to their or county staff's failure to complete the recertification process. Requiring recertification outside of the regular process could lead to confusion and distrust of the State of Colorado and the SNAP program. Recipients may not be able to complete the recertification process without adequate notice.  Requiring county eligibility workers to complete a year's worth of work in 30 days will likely result in households who remain eligible for SNAP being removed from the program due to their inability to complete the process in 30 days.

59.     Loss of SNAP benefits causes economic harm to Colorado. SNAP injects over $486 million into the economy in wages for over ten thousand Colorado jobs, including farmers, grocers, manufacturers, delivery drivers, and other positions throughout the food supply chain.  Colorado estimates that every federal dollar of SNAP that the state received produces $1.58 of economic activity in the state.  Over 3,500 Colorado grocery stores use SNAP, and almost $70 million is generated in state tax revenue from enhanced local economic activity.  If significant numbers of Colorado residents are required to simultaneously reduce food spending, this will immediately affect the economic well-being of vendors, farmers, stores and large numbers of residents across Colorado.

60.     To my understanding and in my experience in this role, loss of SNAP benefits will also strain Colorado's food banks, which are already overwhelmed. Requiring county eligibility workers to complete a year's worth of work in 30 days will likely result in households

14

who remain eligible for SNAP being removed from the program due to their inability to complete the process in 30 days.

61.    If SNAP enrollment declines, there will be additional health care expenditures in Colorado. SNAP enrollment is correlated with other health outcomes. A Massachusetts study found that Medicaid cost growth fell in Massachusetts after SNAP benefits increased, especially for people with chronic illnesses with high sensitivity to food insecurity. *See* Attachments 7 & 8.

62.    Through a federal option called "direct certification" for its school lunch program, Colorado currently certifies children for federally funded free or reduced price meals due to their households' participation in SNAP. Any reduction in SNAP enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals.

63.    A complete loss of SNAP would potentially overwhelm existing state resources and cause severe fiscal, public health, and educational harms to Colorado.

**The proposed pilot program will hurt public trust in Colorado's SNAP program**

64.    CDHS has fostered trust with Colorado residents and stakeholders by representing to them that SNAP eligibility and compliance with programmatic requirements will lead to timely and full benefits issuance. Public trust, moreover, requires that CDHS act with consistency and transparency.

65.    The public's trust in Colorado's SNAP program, however, recently diminished due to the suspension of SNAP benefits by USDA during the government shutdown in November 2025. During that month, CDHS saw a quantifiable dip in applications statewide.

15

There are usually around 13,000 SNAP applications per month statewide and only 8,600 were received during November 2025.

66.     To counteract the diminishment in public trust, in December 2025, CDHS began implementing a monthly communications effort aimed at SNAP recipients to reassure them that their SNAP benefits were available and ready to use. CDHS distributes these communications through CDHS channels (website, social media, etc) and through county administrative offices. This recent effort by CDHS to promote use and trust of the SNAP program was implemented in direct response to the public's demonstrated perceived instability of SNAP.

67.     Even before December 2025, CDHS invested resources for outreach to promote public trust in Colorado's SNAP program. These efforts included a comprehensive media campaign via CDHS channels to reassure recipients that benefits were available and could be spent.

68.     The changes in the recertification process and timing represented in the proposed pilot are a significant departure from the processes outlined to SNAP recipients at application and previous recertifications and an added burden for recipients. CDHS expects that such a significant alteration in the responsibilities of recertifying SNAP eligibility would discourage households from continued participation in fear that they would have to perform in-person certification at the whims of FNS, disrupting their already busy lives and work schedules. The lack of stability in program requirements will cause further decline in recipient trust in the SNAP program. Failure by CDHS to deliver on one of the most crucial basic human needs, food, would be a deep violation of recipients' trust.

69.    The sudden and arbitrary recertification process for which the proposed pilot
calls would undercut CDHS' investment of time and resources to build public trust in its SNAP
program.

**The proposed pilot program will lead to needy families going without benefits**

70.    CDHS anticipates that the combination of the proposed pilot being sudden and
requiring in-person interviews will lead to eligible households foregoing recertification and
SNAP benefits in the short term. Similarly, the harm in trust that the proposed pilot would do to
Colorado's SNAP program will lead to eligible families deciding to not apply for benefits into
the future.  As a result, eligible households, including children, disabled adults, and older
Coloradans, will experience food insecurity in the months and years to come.

I declare under penalty of perjury of the laws of the United States of America that the
foregoing is true and correct. Executed in Denver, Colorado on January 12, 2026.

_/s/ Abby McClelland_
Abby McClelland
Director, Food and Energy Assistance
Division
Colorado Department of Human Services

ATTACHMENT #1



**U.S. DEPARTMENT OF AGRICULTURE**

December 17, 2025

GOVERNOR JARED POLIS
*State Capitol Building*
*200 East Colfax Avenue*
*Room 136*
*Denver, CO  80203*

Dear Governor Polis,

Amid ongoing fraud affecting federally funded benefits across the nation, including United States Department of Agriculture's (USDA) Food and Nutrition Service's (FNS) multiple requests to the State of Colorado to fulfill its administrative responsibilities, USDA is hereby requiring Colorado to participate in a Supplemental Nutrition Assistance Program (SNAP) pilot project, conducted pursuant to 7 U.S.C. 2026 (b)(1)(A), to increase the efficiency of SNAP and improve the delivery of SNAP benefits to eligible households. More accurate certifications of eligibility for SNAP benefits will ensure that those in need receive assistance, raising levels of nutrition among low-income individuals.

Pursuant to this pilot project, which will be run on a trial basis, the Colorado Department of Human Services (CDHS) is hereby required to perform the following actions:

1. Conduct recertifications, within 30 days of receipt of this letter, of all SNAP households in Arapahoe, Adams, Jefferson, Boulder, and Douglas counties.

2. As part of the recertification process, ensure SNAP households in Arapahoe, Adams, Jefferson, Boulder, and Douglas counties meet all eligibility requirements for SNAP, including by accounting for the income and resources of any excluded household members, conducting in-person interviews, and using federal eligibility tools like the improved, cost-free Systematic Alien Verification for Entitlements (SAVE) Program database.

3. Upon review of the information obtained during the recertification process, make determinations as to eligibility of SNAP benefits for each SNAP household in Arapahoe, Adams, Jefferson, Boulder, and Douglas counties and unenroll any ineligible households.

4. Document and preserve all information relied upon to demonstrate compliance with this pilot project and completion of accurate recertifications of eligibility. This includes but is not limited to all documentation pertaining to any excluded household members and recertification determinations. CDHS must also preserve all documentation it relied upon for the immediately prior certification related to the SNAP households in question.

Failure to participate in this pilot project as specified by USDA will trigger noncompliance procedures codified in 7 U.S.C. 2020(g). It may also affect Colorado's continued participation in SNAP.

Thank you for your continued work to help address the needs of vulnerable Americans, safeguard the generosity of the American taxpayer, and make certain fraud, waste, and abuse are eradicated. If you or your staff have any questions, please have your staff contact the FNS Governmental Affairs Team at fnsgovaffairs@usda.gov.

Sincerely,

Patrick A. Penn
Deputy Under Secretary
Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

ATTACHMENT #2



*Secretary Brooke L. Rollins*

August 4, 2025

The Honorable Jared Polis                 Teri Chasten
Governor of Colorado                       Deputy Director of the Food and Energy
State Capitol Bldg                          Assistance Division
200 E. Colfax Ave.,                         Colorado Department of Human Services
Rm. 136,                                    1575 Sherman St.
Denver, CO 80203                            Denver, CO 80203


Dear Governor Polis:

The Food and Nutrition Service (FNS) is pleased to approve the request dated May 13, 2025, from the Colorado Department of Human Services to allow the State to operate a novel demonstration project to amend the statutory definition of food for purchase by Supplemental Nutrition Assistance Program (SNAP) recipients from "any food or food product for home consumption" to exclude "soft drinks," as defined by §39-26-707, Colorado Revised Statutes (C.R.S). This approval, subject to the enclosed terms and conditions, is for 2 years, effective March 1, 2026.

Due to the novel design of the Project, FNS is committed to carefully and comprehensively evaluating how waiving the State's definition of food in this way impacts SNAP participants and retailers. FNS will carefully review the results of the Project, based on the evaluation data provided by the State and other available information.

FNS will continue to collaborate with the State to finalize data collection points, define key metrics, and outline any necessary data analysis for the quarterly evaluation reports, as well as finalize key implementation parameters.

Please submit written acceptance of this approval and the terms and conditions signed by the appropriate State official. Attach this acceptance letter to a chatter post in WIMS case # 00012862. Please tag the relevant Regional and National staff listed in the WIMS case team using the @ sign when uploading this document.

FNS appreciates the State's willingness to test innovative approaches to support healthy choices, and healthy outcomes to best serve SNAP participants. FNS is committed to working with the State to obtain robust data to inform ways to improve nutrition assistance programs.

Sincerely,

Brooke L. Rollins
Secretary
U.S. Department of Agriculture

# WAIVER SUMMARY
# COLORADO SNAP FOOD RESTRICTION WAIVER DEMONSTRATION PROJECT

*The Colorado SNAP Food Restriction Waiver Demonstration Project (the Project) is approved in accordance with the requirements to operate demonstration projects under Section 17 [7 U.S.C. 2026] (b)(1)(B)(i), and Section 17 [7 U.S.C. 2026] (b)(1)(B)(ii) of the Food and Nutrition Act of 2008, as amended (the Act).*

**WAIVERS OF THE ACT**: Section 3(k)(1) of the Act defines "Food" for SNAP as "any food or food product for home consumption…" The definition goes on to define items excepted from this definition. These "except[ed]" items cannot be purchased with SNAP benefits.

FNS is waiving this section to allow the State to modify the list food items that can be excepted from the definition of "food" items. Items that are not defined as "food" cannot be purchased with SNAP benefits at SNAP-authorized retailers in Colorado. Specifically, the State amends the definition's language of "any food or food product for home consumption except…" to include as an exception, and therefore be ineligible for purchase with SNAP, "soft drinks".

**WAIVERS OF SNAP REGULATIONS**: 7 CFR 271.2 defines "Eligible foods" for SNAP as "any food or food product intended for human consumption…" The definition goes on to define items excepted from this definition. These "except[ed]" items cannot be purchased with SNAP benefits.

FNS is waiving this provision of the regulations to allow the State to modify the list of items that can be excepted from the definition of "Eligible foods". Items that are not defined as "Eligible foods" cannot be purchased with SNAP benefits at SNAP-authorized retailers in Colorado. Specifically, the State amends the definition's language of "any food or food product for home consumption except…" to include as an exception, and therefore be ineligible for purchase with SNAP, "soft drinks". The State will communicate this change to all existing and newly authorized SNAP households and retailers during the Project.

**IMPLEMENTATION**

Eligibility: This Project will apply to the entire Colorado SNAP population (100 percent of the SNAP caseload).

Opt-Out: No SNAP household in Colorado may opt out of the SNAP eligible food restrictions project. The purpose of the Project is to evaluate the impact of excluding "soft drinks" from eligible purchases under SNAP on participant's consumption of these products. As part of the evaluation of the Project the State is developing key metrics and data collection methods including, but not limited to, surveys and interviews. SNAP households' participation in these evaluation and data collection methods is voluntary, and any household may opt into or out of the corresponding evaluation tools.

Alternative Procedures: Colorado's proposed alternative procedure is to modify the list of items that can be excepted from the definition of "Eligible foods". Items that are not defined as

"Eligible foods" cannot be purchased with SNAP benefits at SNAP-authorized retailers in Colorado. Colorado specifically will include as an exception, and ineligible for purchase with SNAP, "soft drinks".

COLORADO SPECIFIC INFORMATION ON RESTRICTED ITEMS/CATEGORIES

_Excluded Beverages_:
- "Soft drinks" are defined as nonalcoholic beverages that contain natural or artificial sweeteners. "Soft drinks" do not include beverages that contain milk or milk products, soy, rice, or similar milk substitutes, or greater than fifty percent of vegetable or fruit juice by volume.

Colorado's proposed alternative procedures make no changes to the provisions that allow certain populations of SNAP recipients to purchase prepared meals from appropriate facilities like senior centers, domestic violence centers, substance misuse centers, and homeless shelters or to universally banned products. FNS also recognizes that the State is not seeking to propose alternative procedures to ban SNAP products such as alcoholic beverages, tobacco, or hot foods, or hot food products ready for immediate consumption.

## TERMS AND CONDITIONS

Prior to the Project's implementation date, March 1, 2026, the State must meet all terms and conditions listed below. If the State cannot meet these terms and conditions in full, the Project's implementation date must be delayed. After Project implementation, the State may request at any time to revise the Project's scope by submitting revisions for FNS consideration and approval. Any changes must be agreed upon by the State and FNS prior to implementation.

- FNS authorizes Colorado to operate the Demonstration Project to waive the definition of "food and food products" (the Project) for a period of 2 years from the Project's start date. The Project will begin on March 1, 2026, and end on January 29, 2028, with the option to request three annual extensions thereafter for a total Project period not to exceed 5 years. The State will operate this Project statewide.

- If the State is unable to implement on March 1, 2026, the State will communicate a new implementation date, and FNS will update the terms and conditions and evaluation schedule accordingly. Moreover, any changes the State wishes to make to their Project (including, but not limited to, Project design, target populations, evaluation procedures, compliance plans, and communication plans) following implementation should be shared with FNS for review and sign-off prior to implementing them.

- The Project may not in any way impede inter-operability of SNAP program benefits, as detailed in 7 CFR 274.8(b)(10).

- Clients' out of State transactions will not be used as a primary indicator of fraud or negatively impact SNAP eligibility for the household.

- The State will provide a finalized communications plan detailing tasks and timelines for engaging with and notifying SNAP-authorized retailers of the Project.

  - The State will update their SNAP webpage to provide information about the Project for SNAP-authorized retailers.

  - The State must provide a designated centralized communication resource, to serve as a point of contact for retailers and to route inquiries FNS receives from the Retailer Service Center. For example, this resource could be a public email inbox or dedicated call center line.

- The State will provide a finalized communications plan detailing tasks and timelines for notifying and educating SNAP households of the Project.

  - The State will update their SNAP webpage to provide information about the Project for SNAP households.

- The State will provide a finalized evaluation plan defining Project health outcomes and behaviors tracked throughout the Project.

- o The evaluation plan must detail how the State will mitigate SNAP client reporting bias for any Project data collection methods.

- o The evaluation plan will define Project success (i.e., reduction of diseases/illnesses, changes in behaviors, increase nutrition knowledge).

- o The evaluation plan must describe in detail all data points and metrics that the State will be collecting, aside from those listed in these terms and conditions, and how they will be analyzed.

- If the evaluation plan requires creating, updating or amending existing contracts between the State and another entity, the State will provide FNS copies of the completed contracts.

- The State will provide a finalized proposed budget for the Project.

- o Subsequent to the finalized budget the State will submit quarterly costs to FNS throughout the duration of the Project.

- The State will provide a finalized compliance and monitoring plan for SNAP-authorized retailers.

- o As part of the compliance plan prior to Project implementation, the State will have SNAP-authorized retailers confirm Project compliance. For example, retailers may complete and return a self-attestation compliance form for the Project.

- o SNAP-authorized retailers are solely responsible for managing Project compliance with third party e-commerce platforms. Third party e-commerce providers will not be held liable or responsible for managing project compliance.

- o As part of the compliance plan, the State will have a method for notifying SNAP-authorized retailers that are not in compliance with the Project. For example, the State may send a compliance warning letter to retailers. Compliance warnings and other procedures will adhere to 7 CFR Part 278.

- FNS reserves the right to withdraw its waiver approval and terminate the Project at any time if FNS determines that the Project is inconsistent with SNAP goals to increase the efficiency of the Program and to improve the delivery of SNAP benefits to raise levels of nutrition among low-income individuals.

- Continued approval of the Project is contingent upon the results of the ongoing Project evaluation. This Project may be extended in yearly increments for an additional 3 years, for a total of 5 years, provided that the State and FNS agree upon additional evaluative measures prior to renewal so that FNS can continue to assess this demonstration Project's impact. Any request for extension must be submitted by September 2, 2027, at

least six (6) months prior to the end of the initial 2-year Project period.

- If any Federal laws regarding this Project change during the approved period, the State will submit a modification request to FNS to ensure the Project's terms and conditions reflect current Federal law. FNS will review and approve the modification in accordance with section 17(b)(1)(D) of the Food and Nutrition Act of 2008, as amended.

- SNAP participants' surveys, at a minimum, will collect the following information:
  o Meals and foods eaten outside the home or with foods not purchased at SNAP-authorized retailers.
  o Purchase and/or consumption of less healthy or "unhealthy" food items not restricted by the Project.
  o Non-SNAP dollars spent to purchase food items restricted by the Project.
  o SNAP client's ability and confidence in correctly identifying food items that can or cannot be purchased with SNAP benefits during the Project.
  o The point in time in which the SNAP client became aware of the Project and how (State SNAP webpage, retail store signage, State press release, etc.).
  o Any impacts the Project potentially had on participants shopping routines (such as distance traveled to store, increase spending of non-SNAP dollars, more frequent shopping trips, etc.).

- The State will provide FNS with quarterly reports using the evaluation reporting template FNS will provide to the State in WIMS based upon finalized data collection points, defined key metrics, and data analysis. The quarterly evaluation report template at a minimum will include:
  o Baseline and monthly data collection for out of State transactions for all States that border Colorado.
  o Baseline and total monthly amount of SNAP dollars spent out of State.
  o Total monthly amount of SNAP client hearings filed related to the Project.
  o Monthly total number of SNAP-authorized retailer Project compliments and complaints received and a qualitative summary.
  o Monthly total number of SNAP households Project compliments and complaints received and a qualitative summary.
  o Monthly total number of Project compliments and complaints from advocacy, community, or retailer association groups and a qualitative summary.
  o Whenever possible, partner with retailers to collect baseline and monthly retailer data on SNAP shopping cart transaction data.

- The State will participate in routine calls with FNS ahead of the Project implementation.
  o Frequency and scheduling of the calls will be set following consultation between the State and FNS.
  o FNS will provide the State with a proposed agenda for each call.

FNS is available and willing to provide technical assistance on all components of the Project, including but not limited to communication plans, evaluation strategies, budgets, and a compliance framework. However, all final decisions regarding the development and implementation of the Project materials and plans reside solely with the State. FNS will serve in an advisory capacity and will not provide final approval on Project materials.

## REQUEST FOR AN EXTENSION

If the State would like to continue the Project beyond February 29, 2028, the State should send a request to FNS by September 2, 2027, six months before the Project's two-year period expiration. The extension request letter must include a summary of progress to date, including data from the time between the last quarterly report and the extension request.

## EVALUATION

The State must provide FNS with a report for each quarter of the Project during the first year of implementation. The quarterly report will be segmented into monthly sections. Reports are due 45 days after the end of each reporting period. Thereafter, based on the results of the first year quarterly reports the State and FNS will discuss the potential to shift to an annual reporting schedule.

### Colorado Project Reporting Schedule

| REPORT | DATA RANGE COVERED | DUE DATE |
|---|---|---|
| Year 1, Quarter 1 | March 1, 2026 - May 30, 2026 | July 14, 2026 |
| Year 1, Quarter 2 | May 31, 2026- August 29, 2026 | October 13, 2026 |
| Year 1, Quarter 3 | August 30, 2026- November 28, 2026 | January 12, 2027 |
| Year 1, Quarter 4 | November 29, 2026- February 27, 2027 | April 13, 2027 |
| Year 2, Quarter 1 | February 28, 2027- May 29, 2027 | July 13, 2027 |
| Year 2, Quarter 2 | May 30, 2027- August 28, 2027 | October 12, 2027 |
| Year 2, Quarter 3 | August 29, 2027- November 27, 2027 | January 11, 2028 |
| Year 2, Quarter 4 | November 28, 2027- February 29, 2028 | April 11, 2028 |
| Extension Request | Submitted by September 2, 2027 | |

To evaluate the Project, the State will implement a longitudinal study of SNAP households to assist them in tracking and analyzing changes to participant behavior and outcomes. The State plans to use surveys to learn the shopping, spending, and eating patterns of Coloradan SNAP households regarding the restricted food of "soft drinks". Moreover, the State will work with retailers to review SNAP purchases and determine the reduction in purchases and consumption of soft drinks by SNAP households in Colorado. The State will also evaluate retailer participation, such as feedback relating to concerns, barriers, and outcomes of the Project.

Based on previous and ongoing technical assistance calls with FNS, the State may revise its evaluation plan subsequent to this approval. Any updates or revisions to the State's evaluation plan needs to be communicated to FNS.

*Evaluation Components*

The State's quarterly and annual reports must include the following:
1. Executive Summary/Methodology: Summary describing methods of data collection and analysis and the quarter and month(s) covered by the report.
2. Any administrative costs associated with the Project.
3. Various qualitative and quantitative data points, defined metrics, and analytical approaches aligned with the Project's objectives related to health and health behavior change outcomes.

**Please note:** When submitting reports to FNS, do not include any SNAP clients' Personally Identifiable Information (PII). FNS reserves the right to add additional data fields in consultation with the State for reporting purposes.

SNAP Healthy Choice Demonstration Waiver Request

 United States Department of Agriculture Food and Nutrition Service

**SNAP HEALTHY CHOICE/FOOD RESTRICTION STATE DEMONSTRATION REQUEST**

Section 17(b) of the Food and Nutrition Act of 2008, as amended (the Act), allows FNS to waive statutory requirements of the Act to conduct pilot projects designed to test program changes to increase the efficiency of the Supplemental Nutrition Assistance Program (SNAP) and improve the delivery of SNAP benefits to eligible households. The Act limits the provisions that may be waived. Projects may be approved for a period of 5 years and the Act requires that each project must include an evaluation component that demonstrates the effects of the project.

This template intends to guide and assist States in submitting a SNAP Food Restriction Demonstration Project Request. States should follow the guided prompts and questions and offer any additional detail, if applicable, under each section to ensure a complete understanding of the State's proposed project.

States should review the impermissible projects prohibited by Section 17 (b)(1)(B)(iv) of the Act and additional restrictions on demonstration projects in the appendix below before requesting a SNAP Food Restriction demonstration project. Additionally, to facilitate the demonstration review process, FNS strongly suggests States inform their Regional Office to discuss the project and provide any necessary technical assistance prior to submission of a request. The FNS National Office SNAP Food Restriction demonstration pilot team is also open to join Regional or State Agency calls to provide technical assistance.

SNAP Food Restriction demonstration projects are intended to test innovative ideas that develop and implement modernized programmatic systems, infuse SNAP with new programmatic energy and vision, and strengthen State strategies to encourage healthy choices, healthy outcomes, and healthy families. FNS looks forward to working with States on potential changes to program operations that align with the Secretary's vision for nutrition assistance programs.

FNS reserves the right to withdraw its waiver approval and terminate demonstration projects at any time if FNS determines that the project is inconsistent with SNAP goals to increase the efficiency of the program and to improve the delivery of SNAP benefits to raise levels of nutrition among low-income individuals. If the State is unable to provide the data required as part of the terms and conditions of waiver approval or if FNS determines that the project is associated with significant increases in payment errors or access concerns, **FNS may suspend or terminate the project at any time.**

**SNAP Healthy Choice Demonstration Waiver Request**

**Type of Request:  SNAP HEALTHY CHOICE/FOOD RESTRICTION**
**Date of Request:** 8/1/2025
**State:** Colorado
**Region:** MPRO

**Statutory Citations:**
*Provide the statutory citations from the* Act *the State seeks to waive. FNS will work with the State to identify any additional statutory waivers needed for the proposed demonstration project.*
**7 USC Ch. 51 §2012 (k)**

**Regulatory Citations:**
*Provide the regulatory citations from 7 CFR the State seeks to waive. FNS will work with the State to identify any additional regulatory waivers needed for the proposed demonstration project.*
**7 CFR 271.2**

**Summary of Food Restriction Demonstration Project Request:**
According to 7 U.S.C. § 2012(k), recipients of the Supplemental Nutrition Assistance Program (SNAP) are authorized to purchase any food or food product for home consumption, as well as seeds and plants intended for food production. Certain eligible populations may also utilize SNAP benefits to procure prepared meals from designated facilities, including senior centers, domestic violence shelters, substance misuse treatment centers, and homeless shelters. Federal regulations prohibit the use of SNAP benefits to acquire alcoholic beverages, tobacco products, and hot foods or hot food products prepared for immediate consumption, except as permitted under specific provisions. The State of Colorado proposes an alternative procedure to impose additional purchase restrictions on "soft drinks" within the SNAP program.

**Proposed Alternative Procedures to Operate Project:**
*Provide a detailed explanation of the proposed Food Restriction demonstration project, and how the State intends to operate the food restriction choice project that differs from how SNAP currently operates.*

***SNAP-Eligible Food and Food Products Amended by the Food Restriction Demonstration Waiver***
- *Describe the food(s) of interest that will be restricted under this demonstration waiver. What are the desired outcomes of limiting these food(s)?*
- *If applicable, describe incentivization projects to entice SNAP-eligible households to increase purchasing of fruits and/or vegetables.*

The State of Colorado Department of Human Services (CDHS) is requesting to exercise Section 17 of the Food and Nutrition Act of 2008 to modify the definition of eligible foods under the Supplemental Nutrition Assistance Program (SNAP). Colorado will exclude from the definition of eligible foods "soft drinks" as defined at §39-26-707, C.R.S.

**SNAP Healthy Choice Demonstration Waiver Request**

Soft drinks: nonalcoholic beverages that contain natural or artificial sweeteners. "Soft drinks" do not include beverages that contain milk or milk products, soy, rice, or similar milk substitutes, or greater than fifty percent of vegetable or fruit juice by volume.

This request abides by the provisions outlined in Section 17, 7 U.S. Code § 2026, permitting States to conduct projects on a trial basis to align the goals of Colorado to the goal of SNAP—providing food assistance to raise levels of nutrition among low-income individuals.

**SNAP-Eligible Household Considerations:**
*Please complete the next section with possible impacts and considerations to SNAP-eligible households.*

***Participating households and individuals***
- *Describe the target population included in this waiver.*
  - *Will the State limit the project to households that meet certain requirements? For example, targeting households of a certain size, households with individuals participating in SNAP-Ed, households with individuals participating in WIC, households receiving medical assistance, or households with pregnant women and/or young children?*
- *Describe the pilot approach for households.*
  - *Will all households be participating at once?*
  - *Will there be a phased in approach based on certain household factors?*
    - *If yes, describe the household types and phase in approach below.*

The proposed initiative will be implemented on a statewide basis and apply to all SNAP participants purchasing food within the State of Colorado upon implementation of the Waiver.

Colorado will work with FNS to finalize and implement a SNAP Participant Communication Plan, which outlines how the State will leverage existing contracts, programs, and partnerships to communicate the change to SNAP households. Participant communication will include print and digital communication materials.

**SNAP-Authorized Retailers Considerations:**
*Please complete the next section with possible impacts and considerations to SNAP-authorized retailers.*

***SNAP-Authorized Retailers Participating in the Food Restriction Demonstration Waiver***
- *List the retailers participating in this pilot. Include brick-and-mortar stores, participating retailers' online platforms (e.g., Amazon.com, Walmart.com), and specialty retailer types (e.g., farmers' markets, direct marketing farmers, etc.), Write "all" if all retailers in the state will be subject to the pilot.*
- *Explain how the participating retailers were selected.*
- *Will retailer participation in the pilot be phased in? If yes, what does that plan look like?*

**SNAP Healthy Choice Demonstration Waiver Request**

Colorado intends for all authorized SNAP retailers across the state to participate in the Waiver. This will include retail chains, large- and medium-sized retailers, convenience stores, wholesale suppliers, online retailers, and smaller locally owned businesses. At this time, no phased implementation is planned.

### *Consideration of retailer size*
- *Provide the State's plan to adjust implementation time based on retailer size and system capabilities, if applicable.*

Colorado will work with retailers of all sizes to develop strategies based on retailer size and technology.  Knowing that a one-size model doesn't fit the different types of retailers, the State will collaborate with other states to identify effective and successful retailer size-based approaches.

### *Retailer-Level System Changes*
*Describe any retailer-level system changes and/or updates the retailer(s) will incur in the operation of this demonstration project, for example:*
- *Describe how the retailer systems will be able to support all alternative procedures required of the project, or will it require an upgrade or enhancements?*
- *Describe any exemptions for retailers that are unable to make the necessary system changes.*

Colorado will work with all SNAP retailers throughout the state through approved Retailer Communications and Retailer Monitoring/Compliance Plans, which will include implementation, technical assistance, and support with integration into point of sale systems or any other effective alternative procedures.

### **Impacts to the State Agency:**
*Please complete the next section with possible impacts to the State agency.*

### *State-Level System Changes*
*Describe any State-level system changes and/or updates the State will incur in the operation of this demonstration project, for example:*
- *If applicable, describe how the State system will be able to support all alternative procedures required of the project, or will it require any upgrade or enhancements?*
- *If your state operates Summer EBT, will it also be subject to these restrictions or will EBT system changes be required to ensure no impact to that program?*

The implementation of the "soft drink" waiver will require amendment of Colorado SNAP regulation 10 CCR 2506-1-4.130.2, which defines eligible foods. That regulatory modification process will begin upon implementation of the waiver. No other state-level systems will need modifications.

Colorado operates a Summer EBT program. Summer EBT participants will also be subject to the statewide "soft drink" restriction.

SNAP Healthy Choice Demonstration Waiver Request

### *Healthy  Choice Waiver Compliance Plans*
- *Describe the State's plans for enforcing compliance with the pilot among SNAP-authorized retailers in the targeted geographical location (e.g., county-wide, regional, statewide).*
  - *How will the State work with retailers to ensure compliance?*
  - *Once implemented, how will the State confirm restrictions have been implemented at the retailer level?*
  - *How will retailers be held responsible if their equipment is not updated and clients are able to make ineligible purchases?*
  - *How will retailers authorized after project launch be notified of the pilot parameters?*

Colorado will work with all SNAP retailers throughout the state through an approved Retailer Monitoring/Compliance Plan. This plan includes an implementation and annual Attestation by all Colorado retailers of their compliance with the "soft drink" restrictions. Retailers who fail to submit the required Attestation by the specified deadlines will be subject to follow-up outreach from the State to address any barriers to compliance and offer additional support. If a retailer continues to be non-compliant despite these efforts, the State will coordinate with the FNS to determine the appropriate course of action.

### *Staff Capacity and Training*
- *Describe the State's staffing capacity to administer the project and the policy training plan on the alternative procedures required by the project.*
  - *Will the State designate a specific team for the project? If so, please describe it.*

Colorado plans to use existing staff resources from the SNAP program, CDHS communications team, and agency leadership to support planning, outreach, and implementation activities for the Waiver. The SNAP program will lead efforts working with retailers and key stakeholders. The Department's communication teams will develop messaging and materials to be used by all stakeholders for consistent messaging. The SNAP team will educate and work with County eligibility staff who will help answer SNAP participant questions and complaints.


### **Communication Plan:**
*States must develop a strategic roll out plan for communicating this project to impacted populations for FNS approval. FNS expects ongoing and frequent outreach to SNAP-eligible individuals and retailers throughout the planning process and implementation phase of this project. We also encourage outreach to relevant stakeholder groups and local media to raise awareness of the impending program changes.*
- *Describe the anticipated timeframe and details of the State's plan, including any training and communication, to reach the target SNAP population for the project.*
  - *Also describe how communication and training will be provided to SNAP households that become eligible after the project launch.*

**SNAP Healthy Choice Demonstration Waiver Request**

- *If applicable, describe any nutrition education (ex- SNAP-ed) provided, or planned to be provided, to SNAP-eligible households.*
- *Describe the anticipated timeframe and details of the State's outreach plan, including any training and communication, to reach the participating retailers for the project.*
  - *Also describe how communication and training will be conducted with newly authorized retailers over the course of the demonstration project.*

Colorado will implement SNAP Participant and Retailer Communication Plans after approval by FNS.

Key components of these communication plans include:

- SNAP Participant communication materials, including print and digital materials, and the use of existing State communications.
- Leveraging existing contracts and partnerships such as SNAP Outreach Partners, SNAP Employment and Training Partners, and other Colorado organizations.
- Training for CDHS and county staff, particularly those conducting SNAP interviews or handling customer interactions, to ensure they are prepared to explain the changes and answer questions accurately and confidently.
- Retailer-facing resources available through a dedicated website and regular updates such as email updates.

**<u>Timeline:</u>**
- *Provide an overall timeline of expected timeframes and end dates for specific tasks required to achieve project outcomes. This may be presented as a chart or other format (e.g., Gant Chart, Visio). At a minimum, the timeline should include:*
  - *SNAP target population and household communication plans;*
  - *Retailer communication plans;*
  - *Retailer readiness target date(s);*
  - *Go-live implementation, including phases if applicable.*

Target Approval Date: August 8, 2025

Pre-Implementation Phase One: August 2025 to October 2025

- Partnership meetings with retailers and key stakeholders
- Collaboration with FNS to finalize required Plans
  - Retailer Communications Plan
  - Client/SNAP Participant Communications Plan
  - Evaluation Plan
  - Monitoring/Compliance Plan
- Research and review identified strategies implemented in other approved states

SNAP Healthy Choice Demonstration Waiver Request

- Develop retailer and SNAP participant initial website content

Pre-Implementation Phase Two: November 2025 to January 2026

- Develop the final project implementation plan and additional dates
- Create communication materials for retailers, SNAP participants, and County/State staff
- Create staff training and materials for communicating with customers
- Launch retailer and SNAP participant initial websites
- Begin pre-launch Waiver evaluation activities
- Provide retailers with pre-implementation support

Implementation Phase:  February 2026 to March 2026

- Continue retailer support and technical assistance in preparation for implementation
- Distribute retailer informational and training materials
- Send SNAP Participants pre-implementation informational materials
- State and county staff training

Post Implementation and Monitoring Phase: April 2026 and onwards

- Collect Attestation Forms from all retailers (initial and annual) and modify any compliance processes
- Collect data and information for the Evaluation
- Update retailer and SNAP participant websites on a recurring basis

**Justification for Request:**
*Explain how the demonstration project will benefit the administration of SNAP in the State and improve the delivery of SNAP benefits to eligible households. Use the space below to describe how implementing this demonstration project will achieve the intended objectives, for example:*

- *Describe how the project will impact administrative burden.*
- *Describe how the project will strengthen strategies to encourage healthy choices, healthy outcomes, and healthy SNAP families.*

The Declaration of Policy, which prefaces the Food and Nutrition Act of 2008 (P.L. 88-525, as amended via P.L. 118-5), emphasizes the health and well-being of the Nation, as well as a nutritious diet. Supporting the health of Coloradans is of paramount importance. The proposed package of changes in this waiver request ensures that SNAP dollars are not being spent on sweetened beverages with no or negative nutritional value and that SNAP participants can instead spend those SNAP dollars on foods that provide meaningful nutritional support. This expands not only the positive nutritional and health impact of SNAP benefit spending but also enhances the impact of the purchasing power of a household's SNAP benefits.

SNAP Healthy Choice Demonstration Waiver Request

**Proposed Evaluation Procedures:**

*Demonstration projects must include an evaluation component to determine the project's effects. FNS will require quarterly evaluation reports during the first year of implementation. Thereafter, States will be required to report on an annual basis.*

*Use the space below to describe how the State plans to evaluate the demonstration project and measure the intended outcomes and benefits, for example:*

- *Describe what data will be collected as part of this project.*
  - *FNS strongly encourages the State to collect data on food and beverage purchase consumption and health outcomes by interviewing recipients and collecting qualitative data on food purchasing habits and non-SNAP spending either through a collection of food purchase receipts or a 24-hour dietary recall.*

***SNAP-Eligible Individuals***
- *Describe how the State will evaluate the impact of this project on program administration and program access.*
- *Describe how the State will measure client satisfaction.*

Colorado's current Waiver Evaluation Plan/study will be conducted through a collaboration with the Colorado Department of Human Services and The Colorado School of Public Health's Rocky Mountain Prevention Research Center. The evaluation will be an outcome study (examination of the extent to which an intervention program achieves its stated goals; does not establish cause and effect conclusions) using a convenience sampling approach to analyze participant food purchasing and consumption behaviors at two time points: pre-implementation and post-implementation of the SNAP demonstration project. Regular planning meetings will be held with The Colorado Department of Human Services and The University of Colorado, Denver's Rocky Mountain Prevention Research Center.

The target population will be SNAP-enrolled Coloradans. Participants will receive survey questions about their shopping and consumption behaviors. Implementing agencies in Colorado that work with SNAP-eligible populations will enroll participants through established recruitment channels and/or use existing data to establish baseline measures. The state will also survey SNAP-enrolled individuals about their purchasing and consumption behaviors before and after the waiver implementation.

A survey instrument will be developed to address the research questions. The instrument will be created using the SNAP-Ed Evaluation Framework and Interpretive Guide: specifically, indicators ST1 and MT1, which measure goals and behaviors around dietary intake; as well as ST2 and MT2, which measure goals and behaviors around grocery shopping. The measures

SNAP Healthy Choice Demonstration Waiver Request

reflect the Transtheoretical model (Stages of Change). Study design and instruments will be
approved by the Colorado Multiple Institutional Review Board (COMIRB).

### *SNAP-Authorized Retailers*
- *Describe how the State will evaluate the impact of this project on program administration and program access as it relates to retailers.*
- *Describe how the State will measure retailer satisfaction.*

Colorado will obtain aggregate EBT redemption data to identify SNAP purchasing behaviors
prior to the implementation of the healthy choice waiver and at intervals throughout the
demonstration project. Data elements may include the following information:

- Establishing baseline data collection prior to the demonstration implementation.
- Regular analysis of transaction data following implementation to monitor:
  - In-state vs. out-of-state SNAP usage,
  - Shifts in redemption trends related to excluded items,
  - Changes in where and how SNAP benefits are spent,
  - Potential retailer or customer adaptations in response to the restricted items policy.

This data collection will help Colorado measure the direct impacts of the demonstration over
time and assess whether the intended outcomes, such as healthier purchasing decisions, are
effective. Findings will also inform adjustments and future modifications of the Waiver and
associated processes.

### *Redemption and Transaction Data*
- *Describe how the State will track and evaluate out-of-state transactions in bordering states.*

Colorado will use aggregate EBT transaction data to track the volume and locations of out-of-
state transactions to evaluate changes and trends.

- *FNS will require the following additional data be provided:*
  - *Client complaints about the pilot project;*
  - *Retailer complaints about the pilot project;*
  - *Any additional feedback on the pilot project provided by key stakeholders (e.g., grocer associations or community-based organizations); and*
  - *Out of state transaction data to determine cross-border shopping transactions.*

Colorado has a number of established processes for receiving customer complaints at both the
state and county level. CDHS will require County SNAP offices to collect data on complaints
tied to the Waiver. CDHS will use communication channels created through the Retailer
Communications and Monitoring/Compliance Plans to track complaints from retailers.

SNAP Healthy Choice Demonstration Waiver Request

**Anticipated Implementation Date:**
*Provide the anticipated implementation date. FNS will provide technical assistance, as it relates to this waiver, to help the State reach the goal implementation date.*

February - March 2026
*Note: States should submit a demonstration request at least six months before their anticipated implementation date.*

**Anticipated Program Costs:**

*Use the space below to describe what additional expenses will be incurred to implement this pilot project. This could reflect costs associated with noticing clients and retailers, EBT system changes, evaluation contract support, or other items not listed here.*

Colorado plans to utilize existing resources and staffing to absorb the costs for this demonstration.

**Anticipated Expiration Date:** January 2031

**Signature of Requesting Official:** *Teri Chasten*

**State Contact:**
Name: Teri Chasten
Email: teri.chasten@state.co.us
Telephone: 303.889.9661

**Regional Office Contact:**
Name:
Email:
Telephone:

**SNAP Healthy Choice Demonstration Waiver Request**

**Appendix**

**Impermissible Projects**
Section 17(b)(1)(B)(iv) of the Act explicitly prohibits waivers of certain provisions of the Act.
FNS is unable to approve projects that involve a waiver of these provisions.

**Impermissible eligibility criteria waivers**
Food Restriction demonstration projects may not:
- Change the definition of household for those living in Federally subsidized housing for older adults, group living arrangements, domestic violence shelters, homeless shelters, and drug and alcohol treatment centers), institutions, or boarding houses (Sec. 3(m)(4) and (5));
- Change the gross income standards of eligibility for households that do not have an elderly or disabled member to a level other than 130 percent of the Federal Poverty Level (Sec. 5(c)(2));
- Change the work requirements exemption for parents or household members caring for with dependent children under the age of 6 or caring for an incapacitated person (Sec. 6(d)(2)(B));
- Increase the shelter deduction for households with low or no out-of-pocket housing costs; or
- Deny benefits to an otherwise eligible individual or household (last sentence of Sec. 5(a)).

**Impermissible State operations waivers**
Food Restriction demonstration projects may not:
- Waive the requirements (Sec. 11(e)(2)(B)) for States to:
  - Provide timely, accurate and fair service to SNAP applicants and participants;
  - Develop a SNAP application; and if the State has a website, make the application available on their website in every language a printed application is available;
  - Allow a household to apply on the same day they first contact a SNAP office during office hours;
  - Consider an application with only name, address, and signature to be filed on the date of application;
  - Require an adult representative to certify that the information on the application is true and that all members are citizens or eligible aliens;
  - Provide a method of certifying and issuing benefits to homeless households; or
  - Determine applicant eligibility within 30 days of the date of the filing of an application (time standard in Sec. 11(e)(3)).
- Change the provisions outlining which parts of the Act are not allowed to be waived;
- Absolve a State from acting with reasonable promptness on substantial reported changes in income or household size;
- Prohibit States from operating a Workfare Program or change the 50/50 matching provisions for workfare activities, including reimbursements for participants in workfare activities;

**SNAP Healthy Choice Demonstration Waiver Request**

- Waive provisions of the Simplified SNAP (an optional program for TANF households);
- Waive the State Option to issue benefits to individuals who are not compliant with the work requirements established by welfare reform. If the State issues benefits to these individuals, they must pay the Federal Government back and will not receive Federal match for those recipients.
- Change the 50/50 Federal reimbursement provisions;
- Change QC system requirements, payment error rate, and associated liability process for payment error rates; or
- Change 50/50 Federal reimbursement provisions for eligibility systems.

FNS is available to answer questions and provide technical assistance to States requesting demonstration projects. If you are unsure whether your State's request would require an impermissible waiver, please contact FNS.

**<u>Additional Restrictions on Demonstration Projects</u>**
- Demonstration projects may be approved for up to five years with extensions possible thereafter.
- If a demonstration project reduces benefits by more than 20 percent for more than 5 percent of households in the project area (excluding households whose benefits are reduced for failure to comply with work requirements), the demonstration project:
  - cannot affect more than 15% of households in the State AND
  - may not continue for more than 5 years unless the Secretary approves an extension request.
- Demonstration projects **may not**:
  - Provide benefits in the form of cash or a manner otherwise non-restricted to food (except for a project approved before August 22, 1996);
  - Allow SNAP funds to be used to fund other public assistance programs, or use the funds for any purpose other than the purchase of food, program administration, or employment and training activities; or
  - Count SNAP benefits as income or resources for tax purposes, welfare, public assistance programs or any other Federal, State, or local assistance program (Sec. 8(b)).

ATTACHMENT #3

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
43 of 158
Case 3:25-cv-06310-MMC    Document 156    Filed 10/15/25    Page 1 of 25

1

2

3

4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    STATE OF CALIFORNIA, et al.,                Case No.  25-cv-06310-MMC

8         Plaintiffs,

         v.                                **ORDER GRANTING PLAINTIFF**
9                                           **STATES' MOTION FOR**
                                            **PRELIMINARY INJUNCTION**
10   UNITED STATES DEPARTMENT OF
     AGRICULTURE, et al.,
11
          Defendants.
12

13         The Supplemental Nutrition Assistance Program ("SNAP") provides to eligible

14   households monthly benefits that can be used to purchase food.  Under the provisions of

15   the SNAP Act, see 7 U.S.C. §§ 2011-2036, the program is overseen by the Food and

16   Nutrition Service ("FNS"), a division within the Department of Agriculture ("USDA").  Each

17   participating State determines eligibility, however, and retains all SNAP applications as

18   well as other information regarding persons who qualify.

19         As explained in greater detail below, USDA has demanded that all States provide

20   to USDA information from their SNAP records, including personal information about

21   applicants and recipients, and has given notice that it will withhold a significant amount of

22   SNAP funding from any State failing to comply with such demand.

23         Plaintiffs, consisting of twenty-two States and the District of Columbia

24   ("hereinafter, Plaintiff States"),[1] seek an order preliminarily enjoining USDA from making

25   _____

26         [1] Plaintiff States, in the order set forth in the caption of the Amended Complaint,
     are the State of California, the State of New York, the State of Arizona, the State of
27   Colorado, the State of Connecticut, the State of Delaware, the District of Columbia, the
     State of Hawai'i, the State of Illinois, the Office of the Governor ex rel. Andy Beshear, in
28   his official capacity as Governor of the Commonwealth of Kentucky, the State of Maine,
     the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
44 of 158
Case 3:25-cv-06310-MMC    Document 166    Filed 10/15/25    Page 2 of 25

1   such demand and from instituting or continuing noncompliance proceedings against

2   them.

3        On August 18, 2025, Plaintiff States filed their "Motion for Stay or Preliminary

4   Injunction."  On September 16, 2025, the Court conducted a hearing on the motion, at

5   which time certain issues were raised for the first time.  In light of the new issues, the

6   Court, on September 18, 2025, granted a Temporary Restraining Order, afforded the

7   parties leave to address the new issues, and continued the matter for hearing on the

8   question of whether a preliminary injunction should be issued.[2]

9        On October 9, 2025, after the parties had filed supplemental briefing to address

10  the new issues, the Court conducted the hearing.  Maria F. Buxton, Paul Stein, and

11  Sebastian Brady of the Office of the Attorney General of California appeared on behalf of

12  Plaintiff States.  Benjamin S. Kurland and Elizabeth J. Shapiro of the United States

13  Department of Justice, accompanied by Sarah Merrill of USDA's Office of the General

14  Counsel, appeared on behalf of USDA.  Having read and considered the parties'

15  respective written submissions, and having considered the arguments of counsel made at

16  both the hearing conducted September 16, 2025, and the hearing conducted October 9,

17  2025, the Court rules as follows.

18                              **BACKGROUND**

19        "Congress created SNAP—formerly known as the food stamp program—to

20  alleviate hunger and malnutrition by increasing the food purchasing power of low-income

21  households."  Hall v. U.S. Dep't of Agriculture, 984 F.3d 825, 831 (9th Cir. 2020) (internal

22  _____

23  State of Minnesota, the State of Nevada, the State of New Jersey, the State of New
    Mexico, the State of Oregon, plaintiff the Office of the Governor ex rel. Josh Shapiro, in
24  his official capacity as Governor of the Commonwealth of Pennsylvania, the State of
    Rhode Island, the State of Washington, and the State of Wisconsin.

25        [2] In the same order, the Court denied the motion to the extent brought on behalf of
26  the State of Nevada, undisputed evidence having been submitted that the State of
    Nevada "had fully complied with USDA's request for SNAP data" (see Corley Decl. ¶ 29),
27  with the result that no showing was made that USDA would withhold any SNAP funding
    from said State.  All further references to "Plaintiff States" in the instant Order refer to all
28  Plaintiffs States other than the State of Nevada.

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ   Document 46-1   filed 01/12/26   USDC Colorado   pg
45 of 158
Case 3:25-cv-06310-MMC   Document 136   Filed 10/15/25   Page 3 of 25

1    quotation, citation, and alterations omitted).  As noted, each participating State

2    determines eligibility and retains all SNAP applications, see 7 U.S.C. § 2020(a)(1)

3    (providing "[t]he state agency of each participating State shall have responsibility for

4    certifying applicant households and issuing EBT [Electronic Benefit Transfer] cards"), and

5    the USDA, through FNS, oversees the States' compliance with SNAP requirements, see

6    7 C.F.R. § 276.4(a) (providing "FNS shall make determinations of the efficiency and

7    effectiveness of State agencies' administration of SNAP").[3]

8         On March 20, 2025, President Donald J. Trump issued Executive Order 14243,

9    titled "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos," wherein

10   "Agency Heads," e.g., the Secretary of Agriculture Brooke L. Rollins ("Secretary Rollins"),

11   are directed to "ensure the Federal Government has unfettered access to comprehensive

12   data from all State programs that receive Federal funding, including, as appropriate, data

13   generated by those programs but maintained in third-party databases."  See 90 FR

14   13681 § 3(c) (March 20, 2025).  The Executive Order states that "all necessary steps"

15   are to be taken "for the purposes of pursuing Administration priorities related to the

16   identification and elimination of waste, fraud, and abuse," and that such priorities

17   "include[ ] authorizing and facilitating both the intra- and inter- agency sharing and

18   consolidation of unclassified agency records."  See id. § 3(a).

19        In light thereof, USDA is requiring each State agency to provide certain of its

20   SNAP records to USDA.  In particular, on May 6, 2025, FNS wrote to the State agencies

21   to inform them USDA was "taking steps to require all States to work through their

22   processors to submit to the USDA the following data," for "the period beginning January

23   1, 2020, through present":

24        1.  Records sufficient to identify individuals as applicants for, or recipients
25        of, SNAP benefits, including but not limited to personally identifiable [sic]
          information in the form of names, dates of birth, personal addresses used,

26

27        [3] The Court acknowledges that a number of the sections in the instant Order
          include essentially the same language as set forth in its Temporary Restraining Order,
28        but, for ease of reference, finds it preferable to repeat that material herein.

3

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
46 of 158
Case 3:25-cv-06310-MMC    Document 86    Filed 10/15/25    Page 4 of 25

United States District Court
Northern District of California

1    and Social Security numbers.

2    2.  Records sufficient to calculate the total dollar value of SNAP benefits
     received by participants over time, with the ability to filter benefits received
3    by date ranges.

4    (See Gillette Decl. Ex. B ("May 6 letter").)  As support for such request, FNS cited to two

5    provisions in the SNAP Act, namely, 7 U.S.C. § 2020(a)(3) and § 2020(e)(8)(A).  (See

6    id.)[4]  Although the letter did not include a deadline, it stated "[f]ailure to grant processor

7    authorizations or to take the steps necessary to provide SNAP data to FNS may trigger

8    noncompliance procedures codified at 7 U.S.C. § 2020(g)."  (See id.)

9         Next, on June 23, 2025, USDA published in the Federal Register a "System of

10   Records Notice" ("SORN"), in which USDA gave notice it would "create a new system of

11   records," which system would be used "to validate the accuracy of eligibility

12   determinations and strengthen SNAP and government program integrity," see 90 FR

13   26521-01, at 26521 (June 23, 2025), and that the "[i]nformation in this system" would be

14   "provided by the 53 State agencies that administer SNAP and their designated vendors

15   and/or contractors," see id. at 26522.[5]  As in the May 6 letter, the SORN asserts that the

16   legal authority for requiring the State agencies to provide such information is 7 U.S.C.

17   § 2020(a)(3) and § 2020(e)(8)(A).  See id. at 26521.

18        On July 9, 2025, Secretary Rollins wrote to all State agencies, citing Executive

19   Order 14243 and the SORN, to inform them USDA was "requiring" them to submit to

20   USDA, no later than the close of business on July 30, 2025, the "SNAP data" identified in

21

22        [4] Sections 2020(a)(3) and 2020(e)(8)(A) are discussed below.  The letter also cited
23   7 C.F.R. § 272.1(c)(1), which regulation, in essence, restates provisions set forth in
     § 2020(e)(8)(A) in more specific detail.

24        [5] The SORN describes the information to be provided as "records containing
25   personally identifying information, including but not limited to SNAP participant name,
     Social Security Number (SSN), date of birth (DOB), residential address, [EBT] card
26   number, and case record identifier number or other identifiers or data elements
     maintained by States, vendors, or contractors to identify SNAP recipients," as well as
27   "information derived from and associated with EBT transactions, including but not limited
     to records sufficient to calculate the total dollar value of SNAP benefits received by
28   participants over time, such as applied amounts and benefit available dates."  See id.

4

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
47 of 158
Case 3:25-cv-06310-MMC    Document 56    Filed 10/15/25    Page 5 of 25

1    the SORN.  (See Gillette Decl. Ex. C.)  Thereafter, on July 23, 2025, FNS sent a letter to

2    all State agencies, citing the May 6 letter and again requiring the agencies to transmit the

3    SNAP data no later than July 30, 2025 (see id. Ex. D), after which, on July 25, 2025, FNS

4    sent an additional letter reminding State agencies of the July 30 deadline and reiterating

5    that a failure to comply "may trigger noncompliance procedures codified in 7 U.S.C.

6    § 2020(g)" (see id. Ex. E).

7        On July 28, 2025, Plaintiff States filed the instant action, alleging "the federal

8    government's unprecedented demands are unlawful" (see Compl. ¶ 21), and asserting

9    claims under the Administrative Procedure Act ("APA"), as well as under a claim titled

10   "Ultra Vires" and a claim brought under the Spending Clause of the United States

11   Constitution.

12       On August 18, 2025, as noted, Plaintiff States filed the instant motion, seeking an

13   order "preliminarily enjoining both: (1) USDA's demand for SNAP applicant and recipient

14   data from Plaintiffs; and (2) the institution of noncompliance procedures against Plaintiffs,

15   which USDA has threatened could lead to significant funding cuts for States that refuse to

16   comply with the data demand."  (See Pls.' Mot. at 1:17-20.)

17       Shortly thereafter, on August 20, 2025, FNS sent a "formal warning" to the

18   Governor of each Plaintiff State, in which FNS asserted it "will initiate a disallowance of

19   Federal funding" if such Plaintiff State did not "transmit SNAP enrollment data" to USDA

20   within 30 days, i.e., by September 19, 2025.  (See Brady Decl. Exs. A-P.)[6] [7]  The formal

21   warning cites to 7 U.S.C. § 2020(e)(8)(A) as support for the demand.  The formal warning

22   also sets forth the amount FNS will disallow, which amount varies from Plaintiff State to

23   Plaintiff State, e.g., "up to $338,326,748.10" in funding to California for each quarter of

24   noncompliance and "up to $133,800,507.01" in funding to Illinois for each said quarter.

25   _____

26       [6] The letter states that,"[i]n response to State requests," the July 30 deadline had
     been extended to August 19, 2025 (See id.)

27       [7] On August 26, 2025, the same formal warning was sent to the Mayor of the
28   District of Columbia.  (See Corley Decl. ¶ 51; Campbell Decl. ¶¶ 23-24.)

*United States District Court*
*Northern District of California*

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
48 of 158
Case 3:25-cv-06310-MMC    Document 156    Filed 10/15/25    Page 6 of 25

1    (See Brady Decl. Exs. A-P.)

2                                    **DISCUSSION**

3          By the instant motion, Plaintiff States seek a preliminary injunction prohibiting

4    USDA from continuing to demand the SNAP data and from instituting noncompliance

5    proceedings, i.e., disallowing SNAP funding as a consequence of noncompliance.

6    **A.  Legal Standard**

7          Under the APA, "[a] person suffering legal wrong because of agency action, or

8    adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof,"

9    see 5 U.S.C. § 702,[8] and, "[o]n such conditions as may be required and to the extent

10   necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary

11   and appropriate process to postpone the effective date of an agency action or to preserve

12   status or rights pending conclusion of the review proceedings," see 5 U.S.C. § 705.

13         "[T]he factors used to determine whether to issue a § 705 stay under the APA are

14   the same equitable factors used to consider whether to issue a preliminary injunction."

15   Immigrant Defenders Law Center v. Noem, 145 F.4th 972, 995 (2025).

16         "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

17   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

18   preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

19   injunction is in the public interest," Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20

20   (2008), or, alternatively, that there are "[1] serious questions going to the merits, and

21   [2] a balance of hardships that tips sharply toward the plaintiff," provided there also is a

22   "[3] likelihood of irreparable injury and [4] that the injunction is in the public interest," see

23   Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

24   //

25   _____

26         [8] The APA defines "person" to include a "public or private organization," see 5
     U.S.C. § 511(2), and courts have found States are public organizations, see, e.g.,
27   Maryland Dep't of Human Resources v. Department of Health & Human Services, 763
     F.2d 1441, 1445 n.1 (D.C. Cir. 1985) (holding "a state is a person within the meaning of
28   the APA").

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
49 of 158
Case 3:25-cv-06310-MMC    Document 56    Filed 10/15/25    Page 7 of 25

**B.  Need for Preliminary Relief**

The Court next considers the requisite factors

**1.  Likelihood of Success on the Merits**

Plaintiff States argue they are likely to succeed on the merits of their APA claims and their ultra vires claim.[9]

**a.  Ultra Vires Claim**

Plaintiff States allege USDA has "acted ultra vires in demanding Plaintiff States' SNAP recipient data," because "[n]o statute authorizes such a demand" in the absence of "a data and security protocol agreed to by the Plaintiff States."  (See Amended Complaint ("AC") ¶ 355.)[10]

As the Supreme Court explained earlier this year, an "ultra vires" claim, i.e., a "nonstatutory" claim, was recognized "[b]efore enactment of the APA," and could be brought "where an agency's action was ultra vires – that is, unauthorized by any law and in violation of the rights of the individual."  See Nuclear Regulatory Comm'n v. Texas, 605 U.S. 665, 680 (2025) (internal quotation and citation omitted).  Today, however, such a claim cannot be brought where, "as is usually the case," a "statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review."  See id. at 681.

Here, Plaintiff States have brought claims under the APA, and, consequently, they fail to show their ultra vires claim is likely to succeed, or, alternatively, that they have raised serious questions going to the merits of such claim.

**b.  APA Claims**

Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency

---

[9] Plaintiff States do not base the instant motion on their claim under the Spending Clause.

[10] Plaintiff States filed the AC on September 22, 2025.  The sole difference between the AC and the initial Complaint is the addition of another plaintiff, namely, Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania.

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
50 of 158
Case 3:25-cv-06310-MMC    Document 136    Filed 10/15/25    Page 8 of 25

1   action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of

2   discretion, or otherwise not in accordance with law; (B) contrary to constitutional right,

3   power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or

4   limitations, or short of statutory right; [or] (D) without observance of procedure required by

5   law." See 5 U.S.C. § 706.

6       Here, Plaintiff States allege USDA's demand is "contrary to law [and] without

7   observance of procedure required by law" (see AC at 65:1-2), as well as "arbitrary and

8   capricious" (see AC at 71:1-2).

9                    **(1) Finality**

10      To be reviewable, the agency action challenged here must be "final agency

11  action." See 5 U.S.C. § 704.

12      "As a general matter, two conditions must be satisfied for agency action to be

13  'final.'" Bennett v. Spear, 520 U.S. 154, 177 (1997).  "First, the action must mark the

14  consummation of the agency's decisionmaking process—it must not be of a merely

15  tentative or interlocutory nature." Id. at 177-78 (internal quotation and citation omitted).

16  "[S]econd, the action must be one by which rights or obligations have been determined,

17  or from which legal consequences will flow." Id. at 178 (internal quotation and citation

18  omitted).

19      Here, Plaintiff States assert, and USDA has not argued to the contrary, that the

20  demand for SNAP data constitutes final agency action.  The Court agrees.  As noted,

21  Secretary Rollins wrote to the State agencies on July 9, 2025, to inform them that, in light

22  of Executive Order 14243 and the SORN, State agencies are "require[d]" to submit the

23  SNAP date to the USDA no later than July 30, 2025, i.e., a determination that is neither

24  tentative nor interlocutory.  (See Gillette Decl. Ex. C; Corley Decl. ¶ 24.)[11]  Additionally,

25  although FNS's letter dated July 25, 2025, states a failure to comply "may trigger

26

27          [11] As set forth above, see n.6, the deadline to comply was extended by the USDA

28  to August 19, 2025.

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
51 of 158
Case 3:25-cv-06310-MMC    Document 106    Filed 10/15/25    Page 9 of 25

1  noncompliance procedures" (see Gillette Decl. Ex. E (emphasis added)), the statute

2  authorizing such procedures states the Secretary of Agriculture, upon finding a failure,

3  "without good cause," to comply, "shall proceed to withhold from the State . . . funds

4  authorized under [the SNAP Act]."  See 7 U.S.C. § 2020(g) (emphasis added).

5      In sum, the challenged action not only is final but also determines Plaintiff States'

6  obligations and the consequences flowing from a failure to comply therewith.

7                    **(2) Ripeness**

8      USDA argues that the APA claims are not ripe.

9      "Evaluating ripeness in the agency context requires considering (1) whether

10  delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention

11  would inappropriately interfere with further administrative action; and (3) whether the

12  courts would benefit from further factual development of the issues presented."

13  Environmental Defense Center v. Bureau of Ocean Energy Management, 36 F.4th 850,

14  870 (9th Cir. 2022); see also id. at 867-71 (finding determination of whether agency

15  action is "final" and whether such action is "ripe" are separate questions).

16      Here, the sole reason advanced by USDA as to why the APA claims are not ripe is

17  that Plaintiff States have not availed themselves of administrative review procedures set

18  forth in the SNAP Act and a regulation implemented thereunder.  See 7 U.S.C.

19  § 2023(a)(3)-(5); 7 C.F.R. §§ 276.7.  The cited administrative review procedures,

20  however, do not use mandatory language, see 7 U.S.C. §§ 2023(a)(1), (a)(3) (providing

21  a "retail food store," a "wholesale food concern," or a "State agency" aggrieved by USDA

22  action "may" seek administrative review); 7 C.F.R. § 276.7(a) (providing State agency

23  "may" appeal claim asserted by FNS), and the Supreme Court has held that the failure to

24  avail oneself of an administrative review procedure does not bar an APA claim where the

25  review is "optional," see Darby v. Cisneros, 509 U.S. 137, 146-47 (1993) (holding, under

26  APA, exhaustion of administrative remedies required only where "statute or rule clearly

27  mandates").

28  //

United States District Court
Northern District of California

9

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
52 of 158
Case 3:25-cv-06310-MMC    Document 156    Filed 10/15/25    Page 10 of 25

1    USDA argues the procedures set forth in § 2023(a) and § 276.7 nevertheless are

2    mandatory in light of language in a different statute, namely, 7 U.S.C. § 6912(e), which is

3    contained in the Federal Crop Insurance Reform and Department of Agriculture

4    Reorganization Act of 1994.  Section 6912(e) provides:  "Notwithstanding any other

5    provision of law, a person shall exhaust all administrative appeal procedures established

6    by the Secretary or required by law before the person may bring an action in a court of

7    competent jurisdiction against – (1) the Secretary; (2) the Department [of Agriculture]; or

8    (3) an agency, office, officer, or employee of the Department."  7 U.S.C. § 6912(e).

9    As Plaintiff States point out, however, § 6912(e) applies to "a person," see id., a

10    term that is presumed not to apply to a sovereign, and which "longstanding interpretative

11    presumption" may be "disregarded only upon some affirmative showing of statutory intent

12    to the contrary."  See Vermont Agency of Natural Resources v. United States ex rel.

13    Stevens, 529 U.S. 765, 780 (2000) (citing cases applying presumption; holding False

14    Claims Act, which imposes liability upon "person" who knowingly submits false claim to

15    United States, does not apply to States or State agencies, as nothing in said Act

16    indicates States are "persons" liable thereunder); United States v. Cooper Corp., 312

17    U.S. 600, 604-614 (1941) (holding § 7 of Sherman Act, providing "person" injured by

18    violation may bring claim seeking treble damages, does not allow United States to bring

19    such claim; explaining statutes employing "person" are "ordinarily construed to exclude

20    [sovereigns]" and finding nothing in Sherman Act to indicate "Congress intended to

21    confer upon the United States the right to maintain an action for treble damages").[12]

22    Although the chapter containing § 6912, titled "Department of Agriculture

23    Reorganization," includes a "Definitions" section, the word "person" is not defined therein.

24    See 7 U.S.C. § 6902.  Additionally, although said chapter includes a section titled

25    "Purpose," stating "[t]he purpose of this chapter is to provide the Secretary of Agriculture

26

27    [12] As noted, only a "person" may bring a claim under the APA.  See 5 U.S.C.
§ 702.  The APA, however, defines "person" to include public organizations, such as
28    States.  See 5 U.S.C. § 511(2).

53 of 158

with the necessary authority to streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department," see 7 U.S.C. § 6901, nothing therein clearly expresses an intent to require States to exhaust what otherwise are optional administrative remedies, see Vermont Agency of Natural Resources, 529 U.S. at 780; see also id. at 787 (explaining courts, in determining whether "person" is meant to apply to sovereigns, are to consider "the ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute").

Given such authority, Plaintiff States are likely to establish that a State is not a "person" for purposes of § 6912(e).

Additionally, Plaintiff States argue, even if § 6912(e) were to be interpreted to apply to sovereigns, an order requiring them to exhaust would be futile.

Where, as here, a statute mandating exhaustion is not jurisdictional, see McBride Cotton & Cattle Corp., 290 F.3d 973, 976 (9th Cir. 2002) (holding "the exhaustion requirement of 7 U.S.C. § 7612(e) is not jurisdictional"), exhaustion is excused where it "would be futile," see id. at 982.

"The purpose of exhaustion is to allow the agency, in the first instance, to develop a detailed factual record and utilize its expertise in applying its own regulations to those facts." Id. Such purpose is advanced by the manner in which the Appeals Board charged with conducting administrative appeals under § 276.7 conducts its hearings, see 7 C.F.R. § 276.7(a)(2), namely, to take "evidence and testimony," see 7 C.F.R. § 276.7(h)(3).[13]

---

[13] The members of the Appeals Board appear to be USDA employees, and the only qualification set forth in § 276.7 is that they be "people who were not involved in the decision to file the claim" against the entity seeking administrative review. See 7 C.F.R. § 276.7(a)(2).

1    In the instant case, however, there is no factual dispute and, consequently, no

2    need to offer evidence and testimony at an administrative hearing.  Rather, it is

3    undisputed that USDA has demanded certain SNAP data be produced and that Plaintiff

4    States have not provided the data, leaving for resolution the question of whether the

5    demand is lawful under the SNAP Act.  As discussed below, it also is undisputed that

6    protocols are lacking, a requirement that must be met for USDA to demand data under

7    § 2020(a)(3)(B),[14] leaving only the question of whether the demand can be made under

8    § 2020(e)(8)(A), the statute on which USDA now exclusively relies, or whether said

9    statute simply permits disclosure at the State agency's option.  Resolving that issue of

10   statutory interpretation does not involve an agency's "applying its own regulations to . . .

11   facts," but, rather, its application of a statutory interpretation, as well as its interpretation

12   of such agency's regulations promulgated thereunder.  Consequently, it appears that

13   "requiring exhaustion would be an idle act."  See McBride Cotton & Cattle Corp., 290

14   F.3d at 976, 982 (finding exhaustion of claim challenging USDA's "interpret[ation]" of its

15   regulation would be "futile").[15]

16   Under such circumstances, Plaintiff States are likely to establish that, even

17   assuming they are "persons" subject to the requirements set forth in § 6912(e),

18   exhaustion would be futile.

19   //

20

---

21   [14] At the hearing conducted October 9, 2025, USDA asserted that disagreements about data and security protocols could be addressed at an administrative hearing.  (See

22   Def.'s Opp. at 15:20-21.)  Here, however, there is no evidence that any Plaintiff State has refused to negotiate protocols, and, consequently, there is no factual dispute as the good

23   faith of a negotiating party.  Indeed, undisputed evidence has been submitted that some of the Plaintiff States have advised USDA of their willingness to negotiate protocols that

24   would apply to the data USDA seeks, but have received no response.  (See McClelland

25   Decl. ¶¶ 19, 27, 30; Hall Decl. ¶ 28; Pham Decl. ¶¶ 31-33, Exs. 1-2.)

26   [15] As noted, the administrative appeals are not heard by a third party, but, rather, by USDA employees.  Given such circumstances, it is unclear how any meaningful

27   hearing would be conducted, as each Plaintiff State would argue "we are not required under § 2020(e)(8)(A) to provide SNAP data to USDA," to which USDA would respond

28   "yes you are," at which point administrative proceedings would end.

1    Accordingly, the Court finds Plaintiff States are likely to establish the APA claims

2    are ripe, and next turns to the merits of those claims.

3    **(3) Whether USDA's Demand is Contrary to SNAP Act**

4    The Court begins with Plaintiff States' claim that USDA's demand for data is

5    contrary to the SNAP Act.  In support of such argument, Plaintiff States cite the two

6    provisions of the Act on which USDA initially relied, namely, 7 U.S.C. § 2020(a)(3) and

7    § 2020(e)(8)(A).

8    The former provides:

9    (3) Records

10    (A) In general

11    Each State agency shall keep such records as may be necessary to

12    determine whether the program is being conducted in compliance
      with [the SNAP Act] (including regulations issued under [the SNAP
13    Act).

14    (B) Inspection and audit

15    All records, and the entire information systems in which records are
      contained, that are covered in subparagraph (A) shall—
16

17    (i) be made available for inspection and audit by the
      Secretary, subject to data and security protocols agreed to by
      the State agency and Secretary . . . .
18

19    See 7 U.S.C. § 2020(a)(3).

20    Plaintiff States, correctly observing that § 2020(a)(3) requires USDA and a State

21    agency to agree to data and security protocols before the State agency is required to

22    provide the SNAP records demanded by USDA, argue that, because the Secretary has

23    not entered into protocol agreements with any of the Plaintiff States' agencies, they

24    cannot be required to submit the data or be sanctioned for failing to do so, and, for those

25    reasons, the demand and subsequent issuance of the formal warnings are contrary to the

26    SNAP Act.  USDA counters that it is entitled to demand SNAP data under

27    § 2020(e)(8)(A), which makes no reference to protocols.  Consequently, as USDA no

28    longer relies on § 2020(a)(3), the question presented is whether a State must comply with

United States District Court
Northern District of California

1    a demand made by USDA under § 2020(e).[16]

2          Section 2020(e) provides that each State agency shall have a "plan of operation"

3    that "shall provide," inter alia,

4          (8) safeguards which prohibit the use or disclosure of information obtained
      from applicant households, except that—

5             (A) the safeguards shall permit—

6

7                (i) the disclosure of such information to persons directly
            connected with the administration or enforcement of the

8                provisions of this chapter,[17] regulations issued pursuant to this
            chapter, Federal assistance programs, or federally-assisted
            State programs; and

9

10               (ii) the subsequent use of the information by persons
            described in clause (i) only for such administration or
            enforcement[.]

11   See 7 U.S.C. § 2020(e)(8).

12         Plaintiff States interpret the words "shall permit" as meaning State agencies are

13   allowed to provide information obtained from applicant households to the persons listed

14   in § 2020(e)(8)(A)(i), in other words, that such disclosures would not be in violation of the

15   general prohibition that State agencies cannot disclose any information to anyone.

16   USDA, by contrast, interprets "shall permit" to mean State agencies are required to

17   provide the information obtained from applicant households.

18         To resolve the partes' dispute, the Court must interpret § 2020(e)(8)(A) in light of

19   the SNAP Act as a whole.  See Richards v. United States, 369 U.S. 1, 11 (1962 (holding

20   "it [is] fundamental that a section of a statute should not be read in isolation from the

21   context of the whole Act, and that in fulfilling [a court's] responsibility in interpreting

22   legislation, [courts] must not be guided by a single sentence or member of a sentence,

23   but should look to the provisions of the whole law, and to its object and policy") (internal

24

25

26       [16] As set forth above, the May 6 letter and the SORN cite to both § 2020(a)(3) and
§2020(e)(8)(A) as authority for the demand.  In the formal warnings, however, sent two

27   days after the instant motion was filed, USDA cited as authority only § 2020(e)(8)(A).

28       [17] The referenced "chapter" is the SNAP Act.

Case No. 1:25-cv-03428-RBJ     Document 46-1     filed 01/12/26     USDC Colorado     pg
Case 3:25-cv-06310-MMC     Document 156     Filed 10/15/25     Page 15 of 25
57 of 158

1   quotation, footnotes, and citation omitted).

2          Here, as set forth above, Congress, in the "Records" section of § 2020, did use

3   clear, mandatory language, specifically, "shall . . . be made available for inspection and

4   audit," thereby giving USDA the right to obtain, subject to data and security protocols, all

5   records necessary to determine whether the program is being conducted in compliance

6   with the SNAP Act.  See 7 U.S.C. § 2020(a)(3)(B).[18]

7          Moreover, the above-quoted exception in § 2020(e)(8) is the first of six exceptions,

8   and, in describing those exceptions, Congress chose to use several phrases, including

9   "shall be made available," which words it did not use in the exception on which USDA

10  relies.

11         In particular, in two of the statutory exceptions, each of which identifies the

12  recipient as Federal, state, and local "law enforcement," Congress states that the

13  requested information "shall be made available," i.e., State agencies are required to

14  provide information to law enforcement under the circumstances set forth in those

15  subsections.  See 7 U.S.C. § 2020(e)(8)(C) (providing "all information" obtained from

16  applicant households "shall be made available" to law enforcement officials

17  "investigating" violations of SNAP Act);[19] 7 U.S.C. § 2020(e)(8)(E) (providing "address,

18  social security number, and, if available, photograph" of "member" of applicant household

19  "shall be made available" to law enforcement officer seeking to locate specified member,

20  e.g., a member who is a fleeing felon or key witness to any crime).[20]

21

22         [18] Although § 2020(a)(3) covers a broader set of data than § 2020(e)(8), the latter
23  covers a larger group of potential recipients.

24         [19] Section (e)(8)(C) provides: "notwithstanding any other provision of law, all
    information obtained under this chapter from an applicant household shall be made
25  available, upon request, to local, State or Federal law enforcement officials for the
    purpose of investigating an alleged violation of this chapter or any regulation issued
26  under this chapter[.]"  See id.

27         [20] Section (e)(8)(E) provides: "notwithstanding any other provision of law, the
    address, social security number, and, if available, photograph of any member of a
28  household shall be made available, on request, to any Federal, State, or local law
    enforcement officer if the officer furnishes the State agency with the name of the member

United States District Court
Northern District of California

15

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
Case 3:25-cv-06310-MMC    Document 158    Filed 10/15/25    Page 16 of 25
58 of 158

1    In three of the exceptions, each of which references one or more statutes by which

2    another agency is entitled to obtain information, Congress uses the phrase "the

3    safeguards shall not prevent," i.e., State agencies are directed to comply with those other

4    statutes instead of complying with the general prohibition against disclosure.  See 7

5    U.S.C. § 2020(e)(8)(B) (providing "safeguards shall not prevent" State agencies from

6    disclosing to Comptroller General information, if authorized by "any other provision of

7    law");[21] 7 U.S.C. § (e)(8)(D) (providing "safeguards shall not prevent" disclosure to federal

8    agencies seeking to "collect[ ] the amount of an overissuance of [SNAP] benefits" as

9    authorized by two specified statutes);[22] 7 U.S.C. § (e)(8)(F) (providing "safeguards shall

10   not prevent" State agencies from complying with subsections of § 2020 requiring

11   disclosures to Immigration and Naturalization Service ("INS"), entities with knowledge of

12   _____

13   and notifies the agency that--

14       (i) the member--

15           (I) is fleeing to avoid prosecution, or custody or confinement after
             conviction, for a crime (or attempt to commit a crime) that, under the law of
16           the place the member is fleeing, is a felony (or, in the case of New Jersey, a
             high misdemeanor), or is violating a condition of probation or parole
17           imposed under Federal or State law; or

18           (II) has information that is necessary for the officer to conduct an official
             duty related to subclause (I);
19
20       (ii) locating or apprehending the member is an official duty; and

21       (iii) the request is being made in the proper exercise of an official duty[.]

22   See id.

23       [21] Section 2020(e)(8)(B) provides: "the safeguards shall not prevent the use or
     disclosure of such information to the Comptroller General of the United States for audit
24   and examination authorized by any other provision of law[.]"  See 7 U.S.C.
     § 2020(e)(8)(B).

25       [22] Section 2020(e)(8)(D) provides: "the safeguards shall not prevent the use by, or
26   disclosure of such information, to agencies of the Federal Government (including the
     United States Postal Service) for purposes of collecting the amount of an overissuance of
27   benefits, as determined under section 2022(b) of this title, from Federal pay (including
     salaries and pensions) as authorized pursuant to section 5514 of Title 5 or a Federal
28   income tax refund as authorized by section 3720A of Title 31[.]"  See id.

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
59 of 158
Case 3:25-cv-06310-MMC    Document 158    Filed 10/15/25    Page 17 of 25

detained individuals, and State agencies administrating school lunch programs).[23]

The remaining exception, namely, the exception on which USDA relies, § 2020(e)(8)(A), does not contain the phrase "shall be made available" nor the phrase "the safeguards shall not prevent," but, rather, uses the phrase "the safeguards shall permit" the disclosures covered therein.

Where, as here, "Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." See Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation, citation, and alteration omitted). Had Congress intended to make the disclosures described in § 2020(e)(8)(A) mandatory, it presumably would have done so expressly as it did in § 2020(a)(3)(B), in § 2020(e)(8)(C), and in § 2020(e)(8)(E), and, as USDA points out, although mandating cooperation between State agencies and other agencies that administer or enforce the SNAP Act or other benefit programs is not unreasonable, the Court cannot interpret § 2020(e)(8)(A) as setting forth such a mandate in the absence of language to that effect. See id. (declining to conclude "that the differing language in . . . subsections [of the same statute] has the same meaning in each"; explaining, "[t]he short answer is that Congress did not write the statute that way") (internal quotation and citation omitted).

In light of the above, the Court finds Plaintiff States are likely to establish that, although they are permitted to do so, they are not required by § 2020(e)(8)(A) to provide data to the persons listed therein, and, consequently, have shown a likelihood of success

---

[23] Section 2020(e)(8)(F) provides:  "the safeguards shall not prevent compliance with paragraph (15) or (18)(B) or subsection (u)[.]"  See id.  Those subsections, in turn, require "immediate reporting to the [INS]" of any determination State agencies make that an individual in a household "is present in the United States in violation of the Immigration and Nationality Act," see 7 U.S.C. § 2020(e)(15), require State agencies to "take action on a periodic basis" to "verify" that individuals who have been "placed under detention" for "more than 30 days" are ineligible for SNAP benefits, see 7 U.S.C. § 2020(e)(18), and require each State agency to "enter into an agreement with the State agency administering the school lunch program established under . . . 42 U.S.C. § 1751," see 7 U.S.C. § 2020(u).

Case No. 1:25-cv-03428-RBJ   Document 46-1   filed 01/12/26   USDC Colorado   pg
60 of 158
Case 3:25-cv-06310-MMC   Document 156   Filed 10/15/25   Page 18 of 25

1  on their claim that USDA, in demanding such data, acted in a manner contrary to law.

2  Further, even assuming, arguendo, § 2020(e)(8)(A) can be interpreted as

3  mandating such disclosure, the Court finds Plaintiff States, for two reasons, nonetheless

4  are likely to establish the specific demand made by USDA is contrary to the SNAP Act.

5  First, USDA has demanded information that is not "obtained from applicant

6  households," see 7 U.S.C. § 2020(e)(8)(A), such as "transactional records," "SNAP

7  usage and retailer data," and "records sufficient to calculate the total dollar value of

8  SNAP benefits received by participants over time," and, to extent such data was obtained

9  from a source other than an applicant, "data records used to determine eligibility or

10  ineligibility" (see Gillette Decl. Ex. D).  Consequently, the demand as presently made to

11  Plaintiff States seeks information beyond that within the scope of § 2020(e)(8)(A).

12  Second, when a State agency provides information under § 2020(e)(8)(A), the

13  recipient is subject to strict limitations placed on the use of the information so obtained,

14  see 7 U.S.C. § 2020(e)(8)(A)(ii), and, as Plaintiff States point out, USDA has announced

15  its intent to use such information in ways well beyond those permitted under

16  § 2020(e)(8)(A)(ii).  In particular, USDA, in the SORN, asserts the right to disclose the

17  data to a number of entities, including numerous entities that are not assistance

18  programs, and for purposes other than the administration or enforcement of the programs

19  referenced in § 2020(e)(8)(A)(i).  See 9 FR at 26522-23.[24]  Under such circumstances,

20  Plaintiff States, which are required by the SNAP Act to safeguard information they obtain

21  from applicant households and are permitted to disclose such information under

22  § 2020(e)(8)(A) only for the limited purposes set forth therein, see 7 U.S.C.

23  § 2020(e)(8)(A)(ii), are prohibited from disclosing information to persons who announce in

24  advance an intent to use the information for purposes beyond those set forth in

25  _____

26  [24] Specifically, the SORN asserts the records USDA obtains from States "may be
disclosed pursuant to the permitted routine uses outlined [in the SORN]," which include,
27  for example, "[w]hen a record on its face, or in conjunction with other records, indicates a
violation or potential violation of law . . ., the USDA/FNS may disclose the record to the
28  appropriate agency, whether Federal, foreign, State, local, or tribal."  See id.

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
61 of 158
Case 3:25-cv-06310-MMC    Document 158    Filed 10/15/25    Page 19 of 25

§ 2020(e)(8)(A)(ii).[25]

Accordingly, the Court finds Plaintiff States are likely to show the SNAP Act prohibits them from disclosing to USDA the information demanded in the formal warnings and, consequently, for such additional reason, have shown a likelihood of success on their claim that USDA, in making such demand, acted in a manner contrary to law.

### (4) Other Claims Under the APA

The Court next addresses the other APA claims argued in Plaintiff States' motion, and, as set forth on the record at the hearing conducted September 16, 2025, the Court, for the reasons stated at the hearing, found Plaintiff States were unlikely to succeed on the merits of such claims, nor were serious questions going to the merits raised, which reasons the Court next summarizes.

As to Plaintiff States' claim that USDA has failed to provide an "explanation for the change" in its "policy" pertaining to the scope of its demand for SNAP data, see Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221-222 (2016) (setting forth agency's obligation to explain change of policy), Plaintiff States have made an insufficient showing that a policy pertaining to USDA's obtaining SNAP data existed prior to the subject demand, let alone that a change in policy has occurred.

As to Plaintiff States' claim that USDA's decision to demand SNAP data "lacks any rational connection between the facts found and the choice made" (see Pls.' Mot. at 14:9-10 (internal quotation and citation omitted)); see also Encino Motorcars, 579 U.S. at 221 (setting forth "procedural requirement[ ]" that federal agency "must give adequate reasons for its decisions"), Plaintiff States have made an insufficient showing that USDA's decision lacked the requisite rational connection, the stated reason for the action taken being, inter alia, the need to "verify[ ] SNAP recipient eligibility against federally

---

[25] USDA has stated it intends to amend the SORN in a manner that, according to USDA, will limit the uses to those that fall within § 2020(e)(8)(A)(ii).  (See Supp. Corley Decl. ¶¶ 10-11.)  USDA has not, however, submitted its proposed amendment, and, consequently, the Court is unable to consider it at this time.

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
Case 3:25-cv-06310-MMC    Document 156    Filed 10/15/25    Page 20 of 25
62 of 158

1    maintained data bases" and "identify[ ] and eliminat[e] duplicate enrollments," see 9 FR at

2    26521.

3           As to Plaintiff States' claim that USDA "ignored several important aspects of the

4    problem" (see Pls.' Mot. at 12:19-21) (internal quotation and citation omitted), in

5    particular, the possibility of computer hackers accessing USDA's database, the potential

6    chilling effect as to individuals seeking benefits, and the burden on State agencies to

7    submit the volume of SNAP data, see Motor Vehicle Manufacturers Ass'n v. State Farm

8    Mutual Automobile Ins. Co., 463 U.S. 29, 43 (1983) (holding agency's action is deemed

9    "arbitrary and capricious" when it "entirely fail[s] to consider an important aspect of the

10   problem"), there is an insufficient showing that those concerns were not considered.

11          As to Plaintiff States' claim that USDA did not consider the public comments

12   submitted in response to the SORN, see 5 U.S.C. § 552a(e)(11) (providing agency

13   publishing SORN must "provide an opportunity for interested persons to submit written

14   data, views, or arguments to the agency"), although the Secretary's letter of July 9, 2025,

15   requiring State agencies to comply with the demand preceded the July 23, 2025,

16   deadline for public comment, the deadline to comply was extended by more than three

17   weeks to August 19, 2025, thereby leaving adequate time for consideration of all

18   comments submitted.  Additionally, USDA has offered evidence that the comments were

19   considered (see Corley Decl. ¶ 21 (summarizing comments received and USDA's

20   consideration thereof)), and that, in light of those comments, USDA "is working to

21   implement [a] change" to the SORN, namely, to eliminate a statement that USDA had the

22   right to disclose SNAP data to "foreign" governments (see id. ¶ 22).

23          As to Plaintiff States' claim that USDA failed to comply with the Paperwork

24   Reduction Act when it submitted to the Director of the Office of Management and Budget

25   ("OMB") a request for what USDA described as a nonsubstantive change, see 44 U.S.C.

26   § 3507 (setting forth process federal agency must follow before "conduct[ing] or

27   sponsor[ing] the collection of information), the decision of the OMB to approve such

28   request is not subject to judicial review, see 44 U.S.C. § 3507(d)(6).

United States District Court
Northern District of California

Case No. 1:25-cv-03428-RBJ     Document 46-1     filed 01/12/26     USDC Colorado     pg
Case 3:25-cv-06310-MMC     Document 158     Filed 10/15/25     Page 21 of 25
63 of 158

1      Lastly, as to Plaintiff States' claim that the USDA failed to comply with the

2   Computer Matching Act, USDA, in its opposition to the instant motion, made the

3   argument that Plaintiff States lack standing to assert such claim, in that the Computer

4   Matching Act protects the privacy of individuals who have provided information, see 5

5   U.S.C. § 552a(o), and Plaintiff States, in their reply, have not addressed the issue.[26]

6                    **(5) Summary: Likelihood of Success on the Merits**

7      The Court finds Plaintiff States have shown a likelihood of success on the merits of

8   their claim that USDA's demand and threatened disallowance of funding are contrary to

9   the SNAP Act and, in all other respects, have failed to make the requisite showing.

10      **2.  Likelihood of Irreparable Harm**

11      The amount of SNAP funds the USDA has formally warned it will disallow if

12   Plaintiff States do not comply equals, for at least 18 of the 22 Plaintiff States, the entirety,

13   or close to it, of the amounts to which those States otherwise would be entitled (see

14   Second Brady Decl. Ex. C; Pham Decl. ¶¶ 30, 34), and the amounts proposed to be

15   disallowed as to the other Plaintiff States are substantial as well.[27]

16      Further, Plaintiff States have offered declarations from their respective agency

17   officials, who explain that having SNAP funds withheld is likely to require them to cut

18   staffing and otherwise greatly reduce their ability to comply with their obligations under

19   the SNAP Act to administer benefits, including, for example, the speed with which

20   applications can be reviewed and required reports can be prepared.

21      USDA argues the claimed injuries identified in the above-referenced declarations

22   can be remedied by a monetary award, namely, recovery of the withheld funds, and,

23   consequently, do not constitute the irreparable harm required for preliminary injunctive

24   _____

25      [26] Moreover, although not discussed at the hearing, there is no evidence to support a finding that USDA intends to act in violation of the strictures set forth in the Computer
26   Matching Act, and, consequently, any contention USDA intends to do so is, at best, speculative.

27      [27] UDSA pays fifty percent of the "administrative costs involved in each State agency's operation of [SNAP]."  See 7 U.S.C. § 2025(a).
28

21

1    relief. The Ninth Circuit has held, however, that the "denial of reimbursements" by the

2    federal government can constitute "irreparable" injury, as such denial can cause

3    "economic injuries for which monetary damages are not available." See Washington v.

4    Trump, 145 F.4th 1013, 1036-37 (9th Cir. 2025); see also East Bay Sanctuary Covenant

5    v. Biden, 993 F.3d 640, 677 (9th Cir. 2021) (holding "significant change[s] in

6    [organization's] programs" constitutes irreparable "intangible injury").

7         USDA next argues Plaintiff States have no need for preliminary relief because they

8    have the option of seeking administrative relief whereby they would be entitled to a stay

9    of the imposition of disallowances until such time as their administrative remedies are

10    exhausted. See 7 C.F.R. § 276.7(e). As discussed above, however, Plaintiff States need

11    not exhaust such optional administrative process before bringing their APA claims, see

12    Darby, 509 U.S. at 154, and the Court finds a ruling requiring a party to pursue

13    administrative remedies in lieu of preliminary relief would seriously undermine such

14    party's right to proceed in court.[28]

15         Accordingly, the Court finds Plaintiff States have shown they are likely to incur

16    irreparable harm if not provided injunctive relief.

17         **3. Balance of Hardships/Public Interest**

18         The two remaining factors are that the balance of hardships tips in the plaintiff's

19    favor and that the injunction is in the public interest. See Winter, 555 U.S. at 20. Where,

20    as here, the federal government is the defendant, "balancing the hardships and the public

21    interest merge." See Immigrant Defenders Law Center, 145 F.4th at 994. Thus, a district

22    court balances the public's interest asserted by the federal government in the particular

23

24         [28] The Court also finds unpersuasive USDA's argument that the filing of the instant
     motion three weeks after the filing of the Complaint signifies a lack of irreparable injury.
25    The asserted three-week "delay" here is in no manner comparable to the lengthy periods
     of delay described in the authority cited by the USDA. See Y.Y.G.M. SA v. Redbubble,
26    Inc., 75 F.4th 995, 1066 (9th Cir. 2022) (providing example of trademark holder that
     learned of infringement, yet waited three years to file suit and seek preliminary injunction;
27    noting "any injury [the trademark holder] would suffer before trial on the merits would be a
     relatively short extension of the injury that [the trademark holder] knowingly suffered for
28    three years before it filed suit").

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
65 of 158
Case 3:25-cv-06310-MMC    Document 156    Filed 10/15/25    Page 23 of 25

case and the hardships to the plaintiff.  See id.

The hardships to Plaintiff States are set forth above.  The public interest asserted by the USDA is that "[the] proposed injunction would limit the President's ability to effectuate the policies the American people elected him to pursue, including the President's ability to identify fraud, waste, and abuse in this critical program."  (See Def.'s Opp. at 24:16-18.)  "[T]he mere existence of the Executive Branch's desire to enact a policy," however, "is not sufficient to satisfy the irreparable harm prong."  See Immigrant Defenders Law Center, 145 F.4th at 985.  "If that were the case," the Ninth Circuit has explained, "no act of the [E]xecutive [B]ranch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction [and] [t]hat cannot be so."  See id.

Further, while eliminating fraud, waste, and abuse in a government assistance program is in the public interest, the showing made by USDA, namely "a preliminary snapshot review" of SNAP data submitted by States that have complied with USDA's demand for data (see Supp. Corley Decl. ¶ 4), is insufficient to warrant altering the status quo at this time, the status quo being USDA's retention of the right to inspect and audit Plaintiff States' SNAP records, albeit under agreed protocols.  It is unclear whether the observations USDA has preliminarily made, such as "over 300,000 potential instances of deceased individuals" being enrolled in SNAP (see id. ¶ 6), pertain to the records submitted by all, or at least a significant number of, compliant States, or whether they represent an aberrant situation involving one or a few compliant States, thus limiting their potential relevance as being indicative of Plaintiff States.

Moreover, Plaintiff States have explained that the referenced 300,000 individuals represent only 1.6% of the total number of SNAP recipients (see Supp. Fernández Garcia Decl. ¶ 16), and that, in any event, SNAP regulations prohibit State agencies from removing a deceased person immediately upon learning or otherwise being notified of a death, see 7 C.F.R. §§ 272.14(b)-(c) (providing, when State agency learns of apparent "match," either from checking applicants/recipients against "SSA's Death Master File" or

Case No. 1:25-cv-03428-RBJ    Document 46-1    filed 01/12/26    USDC Colorado    pg
66 of 158
Case 3:25-cv-06310-MMC    Document 158    Filed 10/15/25    Page 24 of 25

1    otherwise, it must, before disenrolling apparently deceased recipient, conduct

2    "independent verification," and then provide "[n]otice to the household of match results"

3    and give household "opportunity . . . to  respond").

4        Further, Plaintiff States have submitted evidence to explain why other preliminary

5    observations by USDA pertaining to records of complying States may not, in fact, be

6    instances of fraud or waste.  (See Supp. Fernández Garcia Decl. ¶¶ 10-15, 17-18; Supp.

7    Reagan Decl. ¶¶ 7-16, 20.)

8        Accordingly, the third and fourth factors weigh in favor of Plaintiff States.

9        **4.  Conclusion:  Need for Preliminary Relief**

10       As discussed above, the Court finds all relevant factors support a grant of

11    preliminary relief, and, accordingly, finds it appropriate to grant a preliminary injunction at

12    this time.

13    **C.  Remaining Issues**

14       USDA requests, in the event the Court enters a preliminary injunction, it issue an

15    order imposing a bond, as well as an order staying the injunction during the pendency of

16    any appeal or, alternatively, administratively staying the injunction for seven days to

17    afford USDA an opportunity to request a stay from a higher court.

18       At the outset, the Court declines to impose a bond, as there is no showing that a

19    "realistic likelihood of harm" to USDA will occur if, during the pendency of the preliminary

20    injunction, it cannot disallow SNAP funding to Plaintiff States.  See Johnson v. Couturier,

21    572 F.3d 1067, 1086 (9th Cir. 2009) (holding "district court may dispense with the filing of

22    a bond when it concludes there is no realistic likelihood of harm to the defendant from

23    enjoining [its] conduct") (internal citation and quotation omitted).  In particular, if Plaintiff

24    States ultimately are unable to show judgment should be entered in their favor, USDA

25    could, at that time, impose any amount of disallowance it finds appropriate, see 7 U.S.C.

26    § 2020(g), and can withhold those funds from future disbursements once such funding is

27    reinstated.

28       Next, a stay pending appeal is appropriate only where, inter alia, the appellant

1   "has made a strong showing that he is likely to succeed on the merits."  See Nken v.

2   Holder, 556 U.S. 418, 434 (2009).  Here, as set forth above, USDA has not made such

3   showing.  Additionally, although the Court, in some instances, might be amenable to an

4   administrative stay, in this instance, given such a stay, USDA's planned disallowance of

5   SNAP funds could occur immediately, and USDA at both hearings declined to extend, by

6   even one day, let alone during the pendency of an administrative stay, the date by which

7   USDA would begin to disallow such funding.  Under these circumstances, the Court

8   declines to enter an administrative stay.

9                                    **CONCLUSION**

10          For the reasons stated above, Plaintiff States' motion is hereby GRANTED, and

11   USDA is PRELIMINARY ENJOINED from disallowing SNAP funding based on Plaintiff

12   States' failure to comply with the demands set forth in the above-discussed formal

13   warning letters or otherwise acting thereon.

14          **IT IS SO ORDERED.**

15

16   Dated: October 15, 2025

17                                                   MAXINE M. CHESNEY
                                                     United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

ATTACHMENT #4

# Application for Public Assistance

State of Colorado Departments of Health Care Policy and Financing and Human Services

**Please remove pages A-F to keep for your records**

You have the option to answer only those questions relevant to the program for which you are applying**.**

## Supplemental Nutrition Assistance Program (SNAP) - *previously known as Food Assistance*

Questions marked with a ■ are **NOT** required for SNAP.

- You have the right to file your application today. **You can start the process by filling out your <u>name, address, and signature</u> or that of an authorized representative on this form and turning it into a county office.** You can give us your application in person, by fax, through the mail or you can apply through PEAK. **An interview will be required before receiving SNAP** and you may be required to provide proof of some information given on the application. ***Benefits will begin from the date any county office receives your signed application.***
- You may receive SNAP within 7 days if the household has less than $100 in assets and less than $150 income per month, OR if your monthly shelter costs are more than your monthly income plus any cash on hand or in the bank, OR if anyone in the home is a migrant or seasonal farm worker and the household has less than $100 in cash on hand and in the bank.
- If you do not qualify for expedited SNAP processing, benefits can begin within 30 days if all requested proof of the information that was given on your application was provided. If expedited assistance is denied, you may ask for an informal hearing.

## Cash Programs    Questions marked with a ♦ are **NOT** required for Cash Assistance.

- **Colorado Works (CW),** known federally as Temporary Assistance for Needy Families (TANF) – For households with a child or a pregnant mother. Provides a cash benefit to families in need. With a few exceptions, parents must participate in work activities. A referral may be made to Child Support Services based on your household circumstances. If you feel this could cause hardship to you or your child(ren), you may request good cause for waiving this referral.
- **Colorado Supplement to SSI** – Provides an additional cash supplement to eligible persons not receiving the full SSI grant from the Social Security Administration.
- **Aid to the Needy Disabled (State AND)**– Provides a cash benefit for persons ages 18-59 who have been determined totally disabled for at least six months or persons under the age 59 who meet the definition of a person who is blind.
- **Old Age Pension (OAP)** – Provides a cash benefit for low-income persons age 60 or over.
- **Home Care Allowance (HCA)**- For persons who need help on a regular basis with some or all of their daily self-care (such as bathing, dressing, eating, getting around, and using the bathroom). Provides a cash benefit that used must be to pay the provider for services. A functional assessment is required.

## Medical Assistance    Questions marked with a ● are **NOT** required for Medical Assistance.

Medical Assistance includes free or low-cost insurance from **Health First Colorado (Colorado's Medicaid Program)** or the **Child Health Plan *Plus* Program (CHP+).** It also includes affordable private health insurance plans that offer you comprehensive coverage through **Connect for Health Colorado (the Marketplace).** This includes tax credits that can immediately lower your premiums for health coverage. It also includes assistance for paying your Medicare Premiums.

## Instructions:

**List <u>EVERYONE</u> in your home and on your federal tax return**, even if you are not applying for them. Use more paper if necessary. If you are a non-citizen who has a sponsor, you will list the sponsor's information in a question later in this application.

**If you are applying for benefits and you have a Social Security Number (SSN), we need this information.** If you provide your SSN, it may speed up the application process. We use SSNs to check income and other information to see who's eligible for help with health coverage costs. If someone wants help getting an SSN, call 1-800-772-1213 or visit socialsecurity.gov. TTY users should call 1-800-325-0778. Providing a SSN or immigration status is optional for SNAP. You may qualify for health coverage no matter what your immigration status is. If you don't have an SSN or proof of citizenship, then you must give us information about your income, resources and expenses. We use this information to determine eligibility and benefits for eligible household members.

# What I Should Know

By completing and signing the State of Colorado Application for Public Assistance and other documents required to determine whether I'm eligible for public assistance benefits **AND** by accepting benefits that I am eligible to receive, I understand the following information and agree to the following requirements:

- I must tell the truth; it is a crime to lie on this application.
- I may have to give papers that show what I've told you is true.
- I may have to tell you of any changes to the information I gave you on my application. If I think you made a mistake, I can ask for an appeal or fair hearing.
- The department will not discriminate.
- The department will confirm citizenship and immigration status for everyone applying for benefits.
- The department will tell you if your benefits change.
- The department or relevant federal agency will take back any benefits you should not have received.

**1.** The Department of Health Care Policy and Financing (HCPF) is the state agency responsible for Medical Assistance Programs in Colorado. The Department of Human Services is the state agency responsible for the other public assistance programs. The County Departments of Human/Social Services and Medical Assistance Sites are the agencies that receive and process applications for all public assistance programs. In this statement, the term "department" is used to refer to all agencies. **2.** I must give the department all needed proof and documents before qualifying for benefits.

**3. The information I give on the application and in the application interview is confidential. However, the department can use or share the information with another program that any of my family and/or household members are getting or are applying for. The information can only be used for purposes of treatment, payment, determining eligibility, other program and administrative operations, or other purposes permitted by law for my family and/or household members or me. Additionally, this information may be disclosed to other Federal and State agencies for official examination and to law enforcement officials for the purpose of apprehending persons fleeing to avoid the law. It will also be determined if the information is factual. If any information is incorrect, SNAP may be denied and the applicant may be subject to criminal prosecution for knowingly providing incorrect information.**

**4. It is a crime to lie on the application or to take benefits that I know that my family and I are not eligible to receive and I may be subject to criminal prosecution for knowingly providing false information. Giving false information may be punished by a fine of up to $250,000 or a jail term of up to 20 years, or both.**

**5. A person found to have intentionally given false information cannot get SNAP and/or Cash Programs for 12 months for the first offense, 24 months for the second offense, and permanently for the third offense. If a person is found to have intentionally violated program rules in SNAP or Cash Programs, that person is also disqualified from Cash Programs for the same period of time. A court can also stop a person from getting SNAP for another eighteen months. This crime is subject to prosecution under other state and federal laws. Receiving duplicate benefits of SNAP by lying about identity or residence will result in a ten (10) year disqualification for the first offense, a ten (10) year disqualification for the second offense, and a permanent disqualification for the third offense. If I omit or provide any information (other than lying about identity or residence) that leads to duplicate benefits being issued, I can be disqualified for 12 months for the 1st offense, 24 months for the 2nd offense, and permanently for the 3rd offense. A person convicted by a court or whose**

**disqualification was obtained through an Intentional Program Violation (IPV) waiver for misrepresenting their residence in order to obtain assistance in two states at the same time will have their Colorado Works assistance denied for ten (10) years.**

**6. The department will notify me in writing of how and when to tell the department of any changes.** If I am receiving Cash Programs, I know that I must tell the organization providing the assistance if the information I listed on this application changes by the 10th of the month following the change. I am aware I have 10 calendar days to report any changes if I am enrolled in Health First Colorado or Child Health Plan Plus (CHP+). Changes are to be reported to my local county office for Health First Colorado or to CHP+. I am responsible for paying fees, premiums and co-payments for myself and my family if they are required for Medical Assistance benefits. I know I have 30 calendar days to report any change to Connect for Health Colorado if I am receiving Advance Premium Tax Credits, Reduced Co-Pays or Deductibles, or I am enrolled in a Qualified Health Plan. If my family is enrolled in multiple insurance affordability programs, I must report changes to each organization in the appropriate time frame. I understand that a change in information could affect my eligibility and eligibility of member(s) of my household.

**7.** If I do not tell the truth on my application or if information is left off of the application, or if I do not report changes to the department, as required, I may lose my assistance, and I may have to pay back the department for the assistance received when I was not eligible. If I have to pay back money to the department, I understand that state or federal salaries, rebates, or tax refunds that would be received by me or another person on this application may be taken.

**8.** The law says the department must check the immigration status and citizenship of anyone who is applying. They will not check the immigration status of family members who are not applying for benefits. I may be requested to give proof of non-citizen registration documentation received from the United States Citizen and Immigration Service (USCIS) for every non-citizen member in my house who is applying for benefits. The department will confirm information with USCIS and any information received from USCIS may affect my eligibility and benefits. Federal law (Public Law 97-98) requires me to give the department the Social Security number and/or alien registration number of all persons who are applying for public assistance. I must also provide the Social Security number and/or alien registration number for all sponsors. **For Adult Financial and Colorado Works programs, sponsor information will be confirmed with USCIS and the information received from USCIS may affect sponsor repayment for my eligibility and benefits. My sponsor and I may be responsible for reimbursing the state for the benefits that I receive.**

B
Revised 10/2024

**9**. I do not have to be a U.S. citizen to apply for assistance. **Please do not let the fear about immigration status stop you from seeking benefits for your family.**

**10**. If I am a resident of an institution and jointly applying for SSI and SNAP prior to leaving the institution, the filing date of the application is my date of release from the institution. Processing time will begin from the date the application is received in the SNAP office.

**11**. Privacy Act Information: The department is authorized to collect information on the application, including Social Security numbers, and will confirm information that may affect initial or ongoing eligibility and payments for all persons listed on my application. **I am allowing the department to use Social Security numbers (SSN) and other information from my application to request and receive information or records to confirm the information in my application.** SNAP will be denied to individuals that do not provide a Social Security number, and Social Security numbers will be used and disclosed in the same manner for both eligible and ineligible members. **I release the department from all liability for sharing this information with other agencies for this purpose.** For example, the department may get and share information with any of the following agencies: Social Security Administration; Internal Revenue Service; United States Customs and Immigration Services; Colorado Department of Labor and Employment; financial institutions (banks, savings, and loans, credit unions, insurance companies, landlords, leasing agents, etc.); child support services; employers; courts; and other federal or state agencies; and for SNAP, law enforcement officials for the purposes of apprehending persons fleeing to avoid the law.

**12**. If a SNAP, Colorado Works, and/or Adult Financial over-payment occurs against my household, the information on this application, including all Social Security numbers, may be referred to Federal and State agencies, as well as private claims collection agencies for claims collection action.

**13**. The EBT (or Quest) card is used to pay me most of my public assistance benefits. I cannot trade or sell EBT cards. The only people allowed to use my household's EBT card are members of my household, my authorized representative(s), and individuals outside my household that have my permission to use my EBT card to access benefits for the people in my household. I cannot use my EBT card to access my cash benefits at locations identified as prohibited locations including licensed gaming establishments, in-state simulcast facilities, tracks for racing, commercial bingo facilities, stores or establishments in which the principal business is the sale of firearms, retail establishment licensed to sell malt, vinous, or spirituous liquors, establishments licensed to sell medical marijuana or medical marijuana-infused products, or retail marijuana or retail marijuana products, establishments that provide adult-oriented entertainment in which performers disrobe or perform in an unclothed state for entertainment. **Continued misuse of my EBT card at prohibited locations will cause my cash benefits to be suspended on my EBT card and/or my cash benefits to be terminated for a period of 30 days requiring a new application.**

**14**. I can name someone or an organization to be my representative. For SNAP, Cash, and Medical Assistance programs I must do this in writing, online through my PEAK account, or through the mail. For Medical Assistance I can also do this over the Phone. The person and/or organization I designate to be my authorized representative may help me apply for assistance, get my benefits, and use my benefits to buy food for me. I may name one person to help me with each separate task or I may name one person to help me with all of these tasks.

**15**. If I think the department made a mistake, I can ask for a Fair Hearing. The department will tell me in writing how to make an appeal. I can ask for a Fair Hearing either verbally or in writing. My case may be presented by a member of my household or my

representative, such as legal counsel, friend, or relative. I may request an appeal for any action on any program except for the CHP+ program

**16**. If I think the CHP+ program made a mistake, I can ask for an appeal. CHP+ tells me about how to make an appeal in writing.

**17**. Colorado Works is not an entitlement program and benefits are not guaranteed. To remain eligible, I may be required to complete an assessment and develop a plan. Unless exempted, I will be required to participate in work readiness activities

**18**. As an applicant for Colorado Works, if I refuse to cooperate with Child Support Services at the time I apply or while receiving cash assistance through Colorado Works, without good cause, I will not receive assistance or a basic cash assistance grant for my family. If I think that cooperating will harm me or my children, I can tell Child Support Services and I may not have to cooperate. Reasons for not cooperating with Child Support include but are not limited to: potential physical or emotional harm to a child(ren), parent or caretaker relative; pregnancy or birth of a child related to incest or forcible rape; legal adoption before the court or a parent receiving pre-adoption services; or other reasons determined to be in the best interest of the child. In order to cooperate with Child Support Services, I will be required to complete additional documentation concerning the child(ren), the parentage of the child(ren), and provide all court documents that concern the child(ren).

**19**. If I am an adult between the ages of 18 and 49, with no children under the age of 18 in my SNAP household, I will only be eligible to receive SNAP benefits for three months, unless one of the following applies: I work in a job 80 hours each month and report my hours worked to my local Employment First office, or I meet the Workfare program requirements or work program requirements set by the Employment First office. Additionally, I may continue to receive my SNAP benefits if I am determined to be physically or mentally unable to work or if the SNAP office identifies other applicable exemptions. If I meet any of these criteria, I will be able to continue receiving SNAP as long as I remain eligible.

**20**. I understand and agree that to receive SNAP, certain members of the household need to register for work. This means that certain members of the household must:
 a) Report to the Employment First (work program) when the SNAP office schedules an appointment.
 b) Comply with the instructions the Employment First (work program) gives including reporting for all scheduled appointments and following through on the written agreements signed.
 c) Provide information to the SNAP office or the Employment First (work program) about any jobs I or my household member(s) get while on SNAP.
 d) Tell the SNAP office or the Employment First (work program) if me or my household member(s) are not able to work – I will be asked to provide verification; work any workfare hours assigned; go to job interviews arranged for me or my household member(s). Anyone who does not follow the work requirements may be disqualified from receiving SNAP.

**21**. I must cooperate fully with state and federal staff if my case is reviewed. My information on this application may be reviewed and confirmed by the department, or its representatives. My household will not be eligible for SNAP if I refuse to cooperate with any review of my case, including a quality control review.

**22**. I cannot use SNAP benefits to buy non-food items, such as alcohol or cigarettes. I can be disqualified for using SNAP to pay for items purchased on credit. **If a court of law finds a person guilty of using SNAP benefits to illegally purchase or receive controlled substances that individual shall be disqualified for two years for a first offense and permanently for a second offense. Individuals found by a Federal, State, or local court to have used or received benefits in a transaction involving the sale of firearms,**

C
Revised 10/2024

ammunition, or explosives shall be permanently ineligible to receive SNAP upon the first occasion of such violation. If a court of law finds a person guilty of having trafficked benefits for an aggregate amount of $500 or more, that individual will be permanently ineligible to receive SNAP upon the first occasion of such violation.

**23. The trafficking of benefits means:**

**a. The buying, selling, stealing, or otherwise affecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; or,**

**b. The exchange of SNAP benefits or EBT cards for firearms, ammunition, explosives, or controlled substances; or,**

**c. A SNAP participant, including the participant's designated authorized representative, who knowingly transfers SNAP benefit to another who does not, or does not intend to, use the SNAP benefits for the SNAP household for whom the SNAP benefits were intended; or**

**d. The reselling of food that was purchased with SNAP benefits for cash; or**

**e. Obtaining a cash deposit when returning water or other containers that were purchased with SNAP benefits. Purchasing water containers is an eligible food item that can be paid for with SNAP benefits; however, when the container is returned, the deposit should be returned to the client's EBT card and not given to the client in cash.**

**f. Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone.**

24. If I do not report and provide proof of mortgage, housing fees, property insurance, property taxes, court-ordered child support payments, child or adult care, and medical expenses paid by people in my household who are elderly or who have a disability, I am stating that I do not want that specific deduction used to determine my SNAP benefit amount.

25. I can ask for SNAP apart from asking for benefits from other programs. My eligibility for SNAP will be determined apart from any other programs. The SNAP office shall process all SNAP applications in accordance with SNAP timeliness, noticing, and fair hearing requirements, even if I am applying for other programs.

26. Colorado residents who have a qualifying disability, such as persons receiving SSI or SSDI benefits, or residents who are at least 65 years of age (or a surviving spouse age 58 or older) might also qualify for a Property Tax/Rent/Heat Rebate from the Department of Revenue. Visit www.TaxColorado.com and click on the PTC button at the top of the page or call 303-238-7378 for details.

27. IEVS refers to the Income Eligibility Verification System. IEVS reports discrepancies between the information you provide and information in the Department of Labor's system as well as Social Security Administration's various systems. Information available through IEVS will be requested, used, and may be verified through collateral contacts when discrepancies are found. This information may affect your eligibility and benefit level.

28. I will immediately notify the State of any medical claim or lawsuit I have. I will cooperate with the State in collecting the medical bills the State has paid. The state may collect from any insurance company or court settlement for medical bills that the State has paid. If I am on Medical Assistance and receive money for the same medical bills that the State has paid, I will give the money to the State. I assign to the State all rights to payment for medical expenses and treatment. I also assign my right to appeal a denial of benefits by another party responsible for payment for the benefits to the State.

29. Federal and Colorado state law requires the Department of Health Care Policy and Financing to recover all medical assistance benefits, including capitation payments, paid on behalf of Health First Colorado clients from the estates of deceased Health First Colorado clients who were permanently institutionalized. For Health First Colorado clients who were over the age of 55 when benefits were provided, the Department recovers payments for nursing facility services, home, and community-based services, and related hospital and prescription drug services. There are certain exemptions to estate recovery. For further information, please contact your county and request the "Medical Assistance Estate Recovery Program" brochure.

30. I understand that if I get cash assistance under Colorado Works, I must assign the rights to any current and past-due child support due under an existing order to the State, along with any medical support, to reimburse Medicaid for costs paid out for my family. If I receive any current child support, medical support, or spousal support directly while receiving cash assistance, I will give this to the child support unit (CSU). For Health First Colorado, I know I'll be asked to cooperate with the agency that collects medical support from an absent parent. If I think that cooperating to collect medical support will harm me or my children, I can tell child support and I may not have to cooperate. If current child support is collected by the CSU, while I am receiving Colorado Works, I may receive this money through the Pass-Through program. Once I have discontinued Colorado Works, the CSU will continue to collect and send to me any current child support, medical support, and spousal support until I tell the CSU in writing to close my case.

**USDA Nondiscrimination Policy**

### Do Not Send Applications Here

In accordance with federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity.

Program information may be made available in languages other than English.  Persons with disabilities who require alternative means of communication to obtain program information (e.g., Braille, large print, audiotape, American Sign Language), should contact the agency (state or local) where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339.

To file a program discrimination complaint, a Complainant should complete a Form AD-3027, *USDA Program Discrimination Complaint Form* which can be obtained online at: https://www.usda.gov/sites/default/files/documents/USDA-OASCR%20P-Complaint-Form-0508-0002-508-11-28-17Fax2Mail.pdf, from any USDA office, by calling (833) 620-1071, or by writing a letter addressed to USDA. The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation. The completed AD-3027 form or letter must be submitted to:

1. **mail:**
   Food and Nutrition Service, USDA
   1320 Braddock Place, Room 334
   Alexandria, VA 22314; or
2. **fax:**
   (833) 256-1665 or (202) 690-7442; or
3. **email:**
   FNSCIVILRIGHTSCOMPLAINTS@usda.gov

This institution is an equal opportunity provider.

### Do Not Send Applications Here

**Medical Assistance Nondiscrimination Policy**
The Department of Health Care Policy and Financing and Connect for Health Colorado do not discriminate on the basis of race, color, ethnic or national origin and expression, marital status, religion, creed, political beliefs, or disability in any of its programs, services and activities.  For further information about the Department's policy, to request free disability and/or language aids and services, or to file a discriminating complain, contact: 504/ADA Coordinator, 1570 Grant St., Denver, CO 80203, Phone: 303-866-6010, Fax: 303-866-2828, State Relay: 711, Email: hcpf504ada@state.co.us.  For information about Connect for Health Colorado's policy, aids and services or to file a discrimination complaint, contact: General Counsel, 3773 Cherry Creek N. Dr., Suite 1005, Phone: 303-590-9640, Fax: 303-322-4217.  Complaints can also be filed with the U.S Department of Health and Human Services Office for Civil Rights at http://www.hhs.gov/ocr/filing-with-ocr/index.html.

For Other Programs: For information about the Colorado Department of Human Services policies, to request free disability and/or language aids and services, or to file a discrimination complaint, contact: 504/ADA Coordinator, 1575 Sherman St Denver, CO 80203, Phone: 303-866-7129, Fax: 303-866-6080, State Relay: 711, Email: CDHSCR@state.co.us. For additional information please visit www.colorado.gov/cdhs.

E
Revised 10/2024

Civil rights complaints can also be filed with the U.S. Department of Health and Human Services Office for Civil Rights electronically through the Office for Civil Rights Complaint Portal available at https://ocrportal.hhs.gov/ocr/cp/complaint_frontpage.jsf or by mail, phone, or fax at: 1961 Stout Street Room 08-148 Denver, CO 80294, Telephone: 800-368-1019, Fax: 202-619-3818, TDD: 800-537-7697. Complaint forms are available at http://www.hhs.gov/civil-rights/filing-a-complaint/index.html.

**Domestic violence information and services are available to me.** If I ever feel I am in immediate danger I should call 911. If I would like to receive information regarding safety and services in Colorado, I will call the Colorado Coalition Against Domestic Violence at 303-831-9632 or toll-free at 1-888-778-7091. I may also find the location of services near me by going to www.colorado.gov/cdhs/dvp. The National Domestic Violence Hotline at 1−800−799−SAFE (7233) or TTY 1−800−787−3224 or www.thehotline.org can also provide information. If I am a survivor of domestic violence, sexual assault, or stalking, the Address Confidentiality Program (ACP) can provide me with a legal substitute address to use instead of my physical address for use with state and local government agencies. I can find out more about the ACP at acp.colorado.gov. If I need or receive either of these services, I should tell my department worker.

# VERIFICATION OF INFORMATION

Please provide as much of the following information as you can. All bills and proof of information must be current. We will tell you if we need any other information at the time your application is processed or at the time of the interview. *If you have a sponsor, you may need to provide proof of your sponsor's income and resources.*

*If you have trouble getting any of these documents or have questions, we can help you. We can suggest other ways to verify this information. If you cooperate with us, we will do everything we can to help get the needed documents.*

## 1. PROOF OF ALL INCOME RECEIVED BY YOU OR OTHER MEMBERS OF YOUR HOUSEHOLD

If you are only applying for medical assistance, you *may* be required to provide proof of income. Income is any money your household receives. Proof of income may include but is not limited to:

- Wages/Tips Retirement/Pension
- Gifts/Allowances/Contributions
- Self-Employment
- Veterans Benefits
- Interest from savings, CDs, etc.
- Child Support
- Military Allotment
- Educational Loan/Grant
- Unemployment
- Rental Income
- Social Security
- Roomer/Boarder
- Alimony/Maintenance Child Support
- Colorado Works Cash

## 2. SOCIAL SECURITY NUMBERS (SSN)

The SSN, or proof of applying for an SSN, should be provided for each household member who is applying for benefits. You do not need to include an SSN for household members who are not applying for benefits or those who do not have a Social Security Number because they do not qualify for one, or because they object to having one for religious reasons.

## 3. PROOF OF AGE AND IDENTITY

You *may* be required to provide identification for all household members applying for benefits:

- Birth Certificate ID for Health Benefits
- Baptismal Record Work ID
- US Passport Other Documents
- Driver's License
- Identification Cards for US Citizens (I-179 or I-197)
- Certificate of US Citizenship (N-560 or NH-561)
- Certificate of Naturalization (N-550 or N-570)
- Certificate of birth abroad of a citizen in the US (Department of State forms FS-545 or DS-1350)

## 4. PROOF OF CITIZENSHIP AND RESIDENCY

You *may* be required to provide proof of citizenship and residence.

If you are a US citizen, you may be required to provide proof, such as a:
- Birth Certificate
- ID for Health Benefits
- Client Statement
- Work ID
- US Passport

G

Revised 10/2024

- Baptismal Record
- Driver's License
- Forms from the United States Citizenship and Immigration Services (USCIS) such as:
  - Identification Cards for US Citizens (I-179 or I-197)
  - Certificate of US Citizenship (N-560 or NH-561)
  - Certificate of Naturalization (N-550 or N-570)
  - Certificate of birth abroad of a citizen in the US (Department of State forms FS-545 or DS-1350)

If you are a legal non-citizen, you may be required to provide proof of your status, such as:

- USCIS Documents
- I-551 Resident Alien Card
- I-94 Arrival/Departure Record
- I-688B or I-766 Employment Authorization Document
- A letter from USCIS indicating a person's status

## 5. PROOF OF RESOURCES. (Not required for Colorado Works programs)

You *may* be required to provide proof of resources. Proof of expenses may include but are not limited to the following types:

- Vehicles
- Trust Funds
- Checking/Savings
- Real Estate
- Life Insurance Accounts
- Stock and Bonds
- Burial Insurance
- Retirement Funds
- Property where you do not live

## 6. PROOF OF EXPENSES

You *may* be required to provide proof of expenses. Proof of expenses may include but are not limited to the following types:

- Rent or mortgage
- Utilities
- Medical
- Child support payments
- Dependent care payments (adults or children)

## 7. LIVING ARRANGEMENTS (For SNAP Only)

If you are living with other people in the same house, an explanation of your living arrangements will be helpful. The explanation should include who purchases and prepares food together and how expenses are paid.

## 8. CHILD SUPPORT INFORMATION (For SNAP and Colorado Works Only)

If a parent to your child(ren) is out of the home, you must bring copies of any court orders. These court orders include orders involving divorce, child support, or paternity establishment. In addition to social security numbers for you and your children, please provide social security number(s) for the absent parent(s), if available.

H




# Application for Public Assistance

State of Colorado Departments of Health Care Policy and Financing and Human Services

## Check the box for each program you would like to apply for.

☐ **Supplemental Nutrition Assistance Program (SNAP)-** *previously known as Food Assistance*
   **Questions marked with a ☐ are NOT required for SNAP.**

☐ **Cash Programs**
   ☐ **Colorado Works**- Known federally as Temporary Assistance for Needy Families (TANF)
   ☐ **Adult Financial** – Includes Colorado Supplement to SSI, Aid to the Needy Disabled (State AND),
   Old Age Pension (OAP), and Home Care Allowance (HCA)
   **Questions marked with a ◆ are NOT required for Cash Assistance.**

☐ **Medical Assistance**- Includes Health First Colorado (Colorado's Medicaid Program), Child Health Plan
   *Plus* (CHP+), Tax Credits, and Cost-Sharing Reductions
   **Questions marked with a ● are NOT required for Medical Assistance.**

| Your Legal Name (First, Middle Initial, Last) | Maiden Name | Social Security Number[1] | | Date of Birth |
|---|---|---|---|---|
| Home address (Number, Street) | City | State | Zip | Phone number |
| Mailing address (if different) | City | State | Zip | Other phone number |
| Do you speak and read English? ☐Yes   No☐  If no, what language do you speak? | Are you homeless? ☐Yes   No☐ | ■Are you a resident of Colorado?☐Yes   No☐ | | |

[1] If you are applying for any program and have an SSN, we need this information.  Even if you are not applying for benefits, providing your SSN will help us to quickly process your application.  We use SSNs to check income and other information to see what you and your household may qualify for.

| Under penalties of perjury, I state that I have examined this application, and to the best of my knowledge and belief, my answers are true, including household composition, citizenship, and non-citizenship information. I have listed all amounts and sources of income and property I receive/own. I have the right to declare an Authorized Representative. If I am declaring an Authorized Representative, by signing below, I allow this person to sign my application, get official information about this application, and act for me on all future matters with this agency. I read, understand, and agree to "What I Should Know." | | | |
|---|---|---|---|
| **Your signature** | Date | ■● Spouse's/Co-Applicants signature (optional) | Date |
| | | | |
| Authorized Representative, Conservator, Guardian Printed Name | | Authorized Representative, Conservator, Guardian Printed Name: | |
| | | | |
| ■●Authorized Representative Signature | Date | ■●Authorized Representative Signature | Date |
| | | | |
| Name, address, and phone number of the person who helped you complete this application | | | |
| We can send links that allow you to view electronic notices about your case. You may choose more than one option, but if you do not choose, you will receive paper notices by standard mail. I would prefer: ☐Paper notices      ☐An email with a link to view your notices sent to _____@_____ | | | |

## Household Demographics

| Legal Name (First, Middle, Last) | Relation to you | Birth Date | Male/ Female (M/F) ■ | What program is this person applying for? Check all that apply. | Married, Civil Union, Domestic Partnership, Single, Divorced, Separated, Widowed ■ | Hispanic or Latino?[1] ● | Race[1] ● | Social Security Number[2] ■ ● | US Citizen or US National[3] |
|---|---|---|---|---|---|---|---|---|---|
|  | SELF | Provided on Page 1 |  | ❑ SNAP<br>❑ Cash Programs<br>❑ Medical Assistance<br>❑ Not applying for benefits |  | ❑Yes<br>❑No |  | Provided on Page 1 | ❑Yes<br>❑No<br>Certificate number: |
|  |  | __/__/__ |  | ❑ SNAP<br>❑ Cash Programs<br>❑ Medical Assistance<br>❑ Not applying for benefits |  | ❑Yes<br>❑No |  |  | ❑Yes<br>❑No<br>Certificate number: |
|  |  | __/__/__ |  | ❑ SNAP<br>❑ Cash Programs<br>❑ Medical Assistance<br>❑ Not applying for benefits |  | ❑Yes<br>❑No |  |  | ❑Yes<br>❑No<br>Certificate number: |
|  |  | __/__/__ |  | ❑ SNAP<br>❑ Cash Programs<br>❑ Medical Assistance<br>❑ Not applying for benefits |  | ❑Yes<br>❑No |  |  | ❑Yes<br>❑No<br>Certificate number: |
|  |  | __/__/__ |  | ❑ SNAP<br>❑ Cash Programs<br>❑ Medical Assistance<br>❑ Not applying for benefits |  | ❑Yes<br>❑No |  |  | ❑Yes<br>❑No<br>Certificate number: |

[1]Race and ethnicity information is optional and will not affect eligibility; rather it is collected to ensure that benefits are provided to all eligible applicants regardless of race/color/national origin. **Race options include**: American Indian/Alaskan Native- **AI**; Asian - **A**; Black/African American- **B**; Native Hawaiian/ Other Pacific Islander- **NH**; White- **W**

[2]If you are applying for any program and have an SSN, we need this information. Even if you are not applying for benefits, providing your SSN will help us to quickly process your application. We use SSNs to check income and other information to see what you and your household may qualify for.

[3]For households applying for medical assistance only, any household member who is not applying for medical assistance doesn't have to answer questions about citizenship. If you are applying for medical assistance and you are a naturalized or derived citizen, please provide your certificate number.

| Is anyone in the home considered a roomer or boarder (they rent a room from you)? | | Yes❑    No❑  *If yes, list below* |
|---|---|---|
| ●Name | Amount paid for rent | ●Are meals included with the rent? |
|  | $ | ❑Yes    No❑ |
|  | $ | ❑Yes    No❑ |

| Is there any household member temporarily out of the home in any type of facility or institution? | | | Yes❑    No❑ | | *If yes, list below. Examples of types of institutions are listed be at the bottom of the table* |
|---|---|---|---|---|---|
| Name | Date entered | ●Name of facility | ●Type of facility | Is this person pending disposition of charges? | ●Are meals provided? |
|  |  |  |  | ❑Yes    No❑ | ❑Yes    No❑ |
|  |  |  |  | ❑Yes    No❑ | ❑Yes    No❑ |

*Examples: Nursing home• Hospital • Mental health institution •●Incarceration*

2
Revised 10/2024

## Expedited SNAP Details

*Even if you are behind on paying bills, let us know how much you are responsible to pay when answering questions about your expenses.*

| Including yourself, how many people in your home do you purchase and prepare food for? | | Is anyone in the home a migrant or seasonal farm worker? | ☐Yes   No☐ |
|---|---|---|---|
| Total money my household expects to get this month (before deductions) | $ | Total cash on hand and money in your checking/savings account | $ |
| Mortgage per month | $ | Rent per month | $ |

● **Do you have any of these utilities? If so, cost per month?**

Electricity ☐ $_____     Water ☐ $_____     Phone ☐ $_____
Trash ☐ $_____     Sewer ☐ $_____     Other☐ $_____

●Did anyone in the home get any SNAP or cash benefits in any other state in the last 30 days?    ☐Yes    No☐

■ If you are applying for Colorado Works, have you received benefits from any other state since 1996?    ☐Yes    No☐
*If yes, list below*

| Name(s) | Date of receipt | City | County | State |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

## EBT Card

| ● Does the person completing this application need an Electronic Benefits Transfer (EBT) card? | ☐Yes    No☐ |
|---|---|
| ● How does the person completing this application like to receive an EBT card? | By postal mail ☐    In-person at the local office ☐ |

## REGISTER TO VOTE HERE

If you are not registered to vote where you live now, would you like to register to vote here today?  Check YES if you would like to apply to register to vote or update your voter registration information.  If you check the NO box or do not check a box, you will be considered to have decided not to apply to register to vote or update your voter registration information. Checking YES, NO, or leaving this question blank, will not affect your receipt of benefits.    ☐ Yes    No ☐

**NOTICE OF RIGHTS**
**Help:**  If you would like help in filling out your voter registration application, we will help you. The decision of whether to seek or accept help is yours.  You may fill out the voter registration application in private.

**Benefits:**  If you are applying for public assistance from this agency, applying to register, or declining to register to vote will not affect the amount of assistance you will be provided by this agency.

**Privacy:**  Your decision not to register or update your record and the location where you applied to register or update your voter registration record is confidential and may only be used for voter registration purposes.

## Dependent Children

| ■Do you live with at least one child under the age of 19, and are you the main person taking care of this child? | | ☐Yes    No☐ |
|---|---|---|

| ● ■ Do any of the children living in the home have a parent living outside the home? | ☐Yes ☐No | If yes, have you tried to get medical support from the child's parent living outside the home? | ☐Yes ☐No |
|---|---|---|---|

| Name of Parent | Address | Phone | For which child? |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I would like to apply for good cause from pursuing Child Support Services Assistance allowable under the Family Violence Option Waiver (as described in the "What I Should Know" section) ☐Yes    No☐

## Foster Care

| ■ Is anyone in the home who is applying for Medical Assistance or Colorado Works benefits in foster care now or in the past? | | | ☐Yes    No☐ *If yes, list below* |
|---|---|---|---|

| Name | | Current Age | Dates when in foster care | If no longer in foster care, age when you left, if known. |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

◆ ■  Did anyone in the home who is applying for medical assistance receive Former Foster Care Medical Assistance on their 18th birthday while living in a state other than Colorado, *and* turn 18 on or after January 1, 2023?
☐Yes    No☐    If yes, list the state you lived in when you aged out of foster care:

| Name used in out of state foster care (if different): | Date you left Foster Care, if known? | Were you adopted? | If adopted, did you return to foster care after the adoption? | Date you became a Colorado resident | Do you need help paying for medical bills from the last 3 months? |
|---|---|---|---|---|---|
|  | __/__/__ | ☐Yes   No☐ | ☐Yes   No☐ If yes, when:  __/__/__ | __/__/__ | ☐Yes    No☐ If yes, what months: |

**Current or former foster care applicants who are applying for Medical Assistance only do not need to fill out the rest of this application and may STOP HERE.**

3

Revised 10/2024

## Family Planning

| ♦ ■ Does anyone want to apply for Family Planning Benefits? | ☐Yes   No☐ *If yes, list below* |
| --- | --- |
| Family planning provides health care and counseling for preventing, delaying, or planning a pregnancy. | |
| Name(s): | |

## Pregnancy Details

| ■ Is anyone in the home pregnant? | ☐Yes   No☐ *If yes, list below* | |
| --- | --- | --- |
| Name: | Due date: | Number of babies expected: |

● Name of the father, if known:

● Would you like to pursue a good cause from pursuing Child Support Services Assistance?  ☐Yes  No☐

## Disability Details

| ■ Does anyone in your home who is applying for benefits have a disability? | | | ☐Yes   No☐   Name: | | | |
| --- | --- | --- | --- | --- | --- | --- |
| ■ If yes, does this person need help with self-care activities (bathing, dressing, eating, using the bathroom, etc.)? | | | ☐Yes   No☐ | | | |
| ■ Does anyone who is applying for medical assistance have a medical or developmental condition that has lasted, or is expected to last more than 12 months? | | | ☐Yes   No☐   Name: | | | |
| ■ Have you or anyone in the home applied for Supplemental Security Income (SSI) or other Social Security benefits? | | | | ☐Yes   No☐ *If yes, list below* | | |
| Name | | Program Name | ☐SSI ☐_____ | Application Date | ___/_____/___ | Application Status | ☐Pending ☐Approved ☐Denied ☐Appealed |
| Name | | Program Name | ☐SSI ☐_____ | Application Date | ___/_____/___ | Application Status | ☐Pending ☐Approved ☐Denied ☐Appealed |
| If no, has anyone who is disabled ever received SSI or SSDI? | | | ☐Yes   No☐ | If yes, when did SSI or SSDI end? | | ___/_____/___ |

## Non-Citizen Details

| Is anyone who is applying for benefits a non-citizen? | ☐Yes   No☐ | If yes, you may be asked to provide a copy of your U.S. Citizenship and Immigration Services card. |
| --- | --- | --- |

| Non-Citizen 1 | | | |
| --- | --- | --- | --- |
| Name of Non-Citizen 1: | | Non-Citizen Status: | |
| Document Type: | | Document/Card/Passport Number: | |
| Alien or I-94 Number: | | Document Expiration Date: | |
| Country of Issuance: | | ♦ ■ Has this person lived in the US since 1996? | ☐Yes   No☐ |
| ♦ ■ Is the non-citizen's spouse or parent a veteran or active-duty member of the US military? | | | ☐Yes   No☐ |

| Non-Citizen 2 | | | |
| --- | --- | --- | --- |
| Name of Non-Citizen 2: | | Non-Citizen Status: | |
| Document Type: | | Document/Card/Passport Number: | |
| Alien or I-94 Number: | | Document Expiration Date: | |
| Country of Issuance: | | ♦ ■ Has this person lived in the US since 1996? | ☐Yes   No☐ |
| ♦ ■ Is the non-citizen's spouse or parent a veteran or active-duty member of the US military? | | | ☐Yes   No☐ |

| ♦ ■ Does anyone want to apply for Emergency Medicaid and Reproductive Benefits? | ☐Yes   No☐ *If yes, list below* |
| --- | --- |

4

Revised 10/2024

Applicants who are not a U.S. citizen, or a legal resident for at least 5 years may be able to receive full Medicaid benefits. They also may qualify for Emergency Medicaid and/or Reproductive Benefits. Emergency Medicaid and Reproductive Benefits can cover life-threatening emergencies, labor and delivery for pregnant people, and birth control.

Name(s):

| Are any of the non-citizens listed above sponsored to remain in this country? | ❑Yes    No❑<br>If no, skip this section. | |
|---|---|---|
| **Sponsor (please add additional pages if there is more than one sponsor)** | | |
| Has the sponsored individual been abandoned, mistreated or abused by their sponsor? | ❑Yes    No❑<br>If you are only applying for medical assistance and you answered yes, you do not have to answer anymore sponsor questions. | |
| Are you pregnant or 20 years old or younger? | ❑Yes    No❑<br>*If you are only applying for medical assistance and you answered yes, you do not have to answer anymore sponsor questions.* | |
| Who is sponsored? | | |
| Name of sponsor: | Name of sponsor's spouse: | |
| Sponsor's Social Security Number | ● Sponsor's spouse's Social Security Number | |
| Sponsor's address: | Total number of people in sponsor's household? | |
| Does the sponsored individual live with the sponsor? | ❑Yes    No❑ | |
| Does the sponsored individual receive free room and board from the sponsor? | ❑Yes    No❑ | |
| Does the sponsored individual receive any support from their sponsor? | ❑Yes    No❑ | |

## Earned Income

| Does anyone work or is anyone starting a new job? | ❑Yes    No❑   *If yes, list below* |
|---|---|

**Job 1:** Name of the person who is or will be working:

Employer name and phone number:

| Monthly wages/tips (before taxes): | Hourly wage: | Average hours worked each week: |
|---|---|---|

How often is this person paid? ❑Hourly ❑Weekly ❑Every 2 weeks ❑Twice a month ❑Monthly ❑Yearly ❑Daily

Is this job considered temporary and expected to last less than 3 months?   ❑Yes No❑

◆Is this income from? ❑ Seasonal Employment ❑ Commission-based Employment (including tip jobs)

**Job 2:** Name of the person who is or will be working:

Employer name and phone number:

| Monthly wages/tips (before taxes): | Hourly wage: | Average hours worked each week: |
|---|---|---|

How often is this person paid? ❑Hourly ❑Weekly ❑Every 2 weeks ❑Twice a month ❑Monthly ❑Yearly ❑Daily

Is this job considered temporary and expected to last less than 3 months?   ❑Yes    No❑

◆ Is this income from? ❑ Seasonal Employment ❑ Commission-based Employment (including tip jobs)

| Is anyone in the home considered self-employed? This includes, but is not limited to, earning money from babysitting, selling goods such as make-up or kitchenware, selling goods on the internet or selling homemade/homegrown food products? | ❑Yes    No❑<br>*If yes, list below* |
|---|---|

| Name of individual that is self-employed: | | Business name (if applicable): | |
|---|---|---|---|
| One month's gross income $ | | Month of this income: | |
| Type of self-employment:    ❑ Sole Proprietor    ❑ LLC    ❑ S-Corp    ❑ Independent Contractor | | | |
| Utilities paid for business: $ | Business taxes paid: $ | Interest paid for business: $ | Gross business labor costs: $ |
| Cost of merchandise $_____ | Other business cost: Type: $_____ | Other business cost Type: $_____ | Other business cost: Type: $_____ |
| Total Net Income (Subtract your expenses from your gross income): | | | |

| Has anyone in the home quit a job, lost a job, or reduced their work hours in the past 60 days? | ❑Yes    No❑<br>*If yes, list below* |
|---|---|

| Name of person: | | Employer name and phone number: | |
|---|---|---|---|
| Start date of job: | End date of job: | Monthly wages/tips (before taxes): | |
| Date and amount of last paycheck: | | How often was this person paid?   ❑Monthly      ❑Yearly      ❑Hourly<br>❑Weekly      ❑Every two weeks      ❑Twice a month | |

5

## Unearned/Other Income

| Does anyone have other types of income? | ❑Yes    No❑  *If yes, list below. Examples of other types of income are listed at the bottom of the table* | |
|---|---|---|
| Name | Type of Money/Income | Monthly Amount |
| | | |
| | | |
| | | |

If you are applying for medical assistance only, do **not** include income from SSI, Veterans' benefits, Workers' Comp, and Gifts.
*Examples include but are not limited to: Unemployment benefits • SSI • Veterans' benefits • Widow Benefits • Workers' Comp • Railroad Retirement •*
● *Child Support • Survivor's Benefits • Dividends/Interest • Rental income • Money from a boarder • Disability benefits • Retirement/pension • SSDI • Alimony • In-kind income (Working for rent) • Social Security benefits • Public Assistance • Plasma donations • Gifts • Loans • Foster Care payments • Tribal Benefits*

| Has anyone who is applying received (or expects to receive) a lump sum payment? | | ❑Yes    No❑  *If yes, list below.* | |
|---|---|---|---|
| Name | Date Received | Type of Lump Sum | Amount |
| | | | |
| | | | |

*Examples: Lawsuit settlement • Insurance settlement • Social Security, SSI, SSDI Payment • Veterans • Inheritance • Surrender of Annuity • Life Insurance payout • Lottery/gambling winnings*

| ● Is anyone in the home on strike? | ❑Yes    No❑  *If yes, list below* |
|---|---|
| Name: | Date strike began: |
| Date of the last paycheck: | Amount of the last paycheck: |

## Expense Details *Even if you are behind, tell us how much you are responsible to pay when answering questions about your expenses.*

### Rent

| ● Does anyone pay rent, renter's insurance, or additional rental fees (pet, washer/dryer, condo or maintenance fees, etc.)? List each rent expense or rent-related fee separately. | | | | ❑Yes    No❑    *If yes, list below* | |
|---|---|---|---|---|---|
| Expense Type (Rent/Fees) | Who Pays | Is this person in the home? | Who is this expense for? | Expense Month | Amount Paid |
| | | ❑Yes    No❑ | | | $ |
| | | ❑Yes    No❑ | | | $ |
| | | ❑Yes    No❑ | | | $ |
| ● Are utilities included in the rent you pay or are you billed separately? | | | ❑ Utilities are included | Billed separately for utilities❑ | |
| ● Does anyone responsible for rent receive Section 8 or public housing assistance? | | | ❑ Section 8 | Public Housing❑ | |

### Mortgage

| ● Does anyone pay a mortgage, homeowner's insurance, property taxes, or HOA fees? List each mortgage or mortgage-related expense separately. | | | | ❑Yes    No❑    *If yes, list below* | |
|---|---|---|---|---|---|
| Expense Type | Who Pays | Is this person in the home? | Who is this expense for? | Expense Month | Amount Paid |
| | | ❑Yes    No❑ | | | $ |
| | | ❑Yes    No❑ | | | $ |
| | | ❑Yes    No❑ | | | $ |
| ● Does anyone responsible for the mortgage receive Section 8 or public housing assistance? ❑ Section 8    Public Housing❑ | | | | | |

### Utilities

| ● How do you heat and cool your home? | Electric ❑    Gas ❑    Firewood ❑    Propane ❑<br>Swamp Cooler ❑    Other (*please list type*) ❑_____ |
|---|---|
| ● Have you received LEAP (energy assistance) at this address in the past 12 months? | ❑Yes    No❑ |

### Additional Expenses

| ● Does anyone pay child or adult daycare, legally obligated child support, child support arrears, medical expenses[1], ■ student loan interest, and/or alimony? | | | | | ❑Yes    No❑  *If yes, list below* | | |
|---|---|---|---|---|---|---|---|
| Expense | Who Pays | Is this person in the home? | Who is this expense for? | Month of expense | Amount Paid | Legally Obligated Amount |
| | | ❑Yes    No❑ | | | $ | $ |
| | | ❑Yes    No❑ | | | $ | $ |
| | | ❑Yes    No❑ | | | $ | $ |

[1]*For SNAP, medical expenses are only allowable for persons aged 60 or older and persons with disabilities. Examples of allowable medical expenses: prescriptions, medical/dental/eye, co-pays, insurance premiums, and in-patient care. Amounts reimbursed by a 3rd party are not allowable.*

6

Revised 10/2024

## Student[1] Details

| Does anyone in the home attend high school, vocational, trade school, or college? | | | | ☐Yes  No☐ *If yes, list below* | |
|---|---|---|---|---|---|
| Name | ●Name of School | ●Last Grade Completed | ●Start date | ●Expected Graduation Date | Full-time student? |
| | | | | | ☐Yes  No☐ |
| | | | | | ☐Yes  No☐ |

| Is anyone receiving financial aid (grants or scholarships), work-study income, or income through a GI Bill? | ☐Yes  No☐ *If yes, list below* |
|---|---|
| Who? | |

■What is the amount ($) of Grants, Scholarships, and/or Work Study used for living expenses[2] this month?  $_____

■What is the taxable amount ($) of Grants, Scholarships, and/or Work-Study this person received for the year? $_____
- If you need Medical Assistance, you will need this information

[1] *For SNAP, student information is only required for individuals between the ages of 18 and 49 unless a person under the age of 18 is the head of the household.*

[2] *Student Living Expenses Examples: Food, Clothing, Housing, Transportation, Utility Costs, Insurance, Other*

## Resources          INFORMATION ABOUT RESOURCES IS NOT REQUIRED FOR COLORADO WORKS

**Medical Assistance only applicants**: The below resource sections are not required for those who are not over the age of 65, or blind, or disabled.

| Does anyone in the home have any resources[1], including those that are jointly owned with someone else? | | | | ☐Yes  No☐ *If yes, list below.* |
|---|---|---|---|---|
| Name | Type of resource | Name of financial institution | Account number | Current value |
| | | | | $ |
| | | | | $ |

[1]*Examples: Cash on-hand, Checking and Savings accounts, Stocks, Bonds, Mutual funds, 401Ks, IRAs, Trusts, CDs, Annuities, College funds, PASS accounts, IDAs, Promissory notes, Education accounts*

| ■Does anyone own a vehicle, including cars, trucks, motorcycles, trailers, boats, snowmobiles, and other recreational vehicles? | | ☐Yes  No☐ *If yes, list below* |
|---|---|---|
| Name | Year, make, and model | Current value |
| | | $ |
| | | $ |

| Does anyone have life insurance policies or burial insurance policies? | | | | ☐Yes  No☐ *If yes, list below* |
|---|---|---|---|---|
| Who | Company & Policy Number | Type | Revocable or Irrevocable? | Value |
| | | ☐Burial policy ☐Insurance policy | ☐Revocable ☐Irrevocable | $ |
| | | ☐Burial policy ☐Insurance policy | ☐Revocable ☐Irrevocable | $ |

| Does anyone in the home own any property (including your home)? | | | | ☐Yes  No☐ *If yes, list below* |
|---|---|---|---|---|
| Name/owner of property | Property type | Property address | Value | Primary use for this property (choose one) |
| | | | $ | ☐Primary Home ☐Rental income ☐Business/self-employment ☐Other: |
| | | | $ | ☐Primary Home ☐Rental income ☐Business/self-employment ☐Other: |

| Has anyone in the home sold, transferred, or given away cash, property, or other assets within the last five years? [1] | | | | ☐Yes  No☐ *If yes, list below* |
|---|---|---|---|---|
| Name | Date of Transfer | What Asset? | Amount Received | Fair Market Value |
| | | | $ | $ |
| | | | $ | $ |

[1]If you are only applying for SNAP; you only need to declare for the last 3 months. For AND, OAP, HCA and CS-SSI, you only need to declare for the last 36 months (3 years).

Revised 10/2024

## Prior Convictions

**THESE QUESTIONS ARE ONLY REQUIRED FOR SNAP, COLORADO WORKS, AND ADULT FINANCIAL**
If you are applying for Medical Assistance, please skip to the next section.

| | |
|---|---|
| 1. Have you or any member of your home been convicted of, or disqualified for, fraudulently receiving duplicate SNAP benefits in any state after 9/22/1996? | ☐Yes    No☐<br>Who: |
| 2. Are you or any member of your home hiding or running from the law to avoid prosecution, being taken into custody, or will be going to jail for either a felony crime, attempted felony crime, or violating a condition of parole or probation? | ☐Yes    No☐<br>Who: |
| 3. Have you or any member of your home been convicted of a felony under federal or state law for possession, use, or distribution of a controlled drug substance (felony drug conviction) or for a crime while under the influence of a controlled drug substance after 8/ 22/1996? | ☐Yes    No☐<br>Who: |
| 4. Have you or any member of your home been convicted of, or disqualified for, buying or selling, or attempting to buy or sell, SNAP benefits for more than $500 after 9/22/1996? | ☐Yes    No☐<br>Who: |
| 5. Have you or any member of your home been convicted of trading SNAP benefits for guns, ammunition, explosives, or drugs after 9/22/1996? | ☐Yes    No☐<br>Who: |
| 6. Have you or any member of your home applying for assistance ever been disqualified for an Intentional Program Violation or been convicted of welfare fraud in a criminal case? | ☐Yes    No☐<br>Who: |
| 7.  Have you or any member of your home been convicted of aggravated sexual abuse, murder, sexual exploitation and abuse of children, sexual assault as defined in the Violence Against Women Act of 1994, or similar state law, and is also not in compliance with the terms of their sentence? | ☐Yes    No☐<br>Who: |

**IF YOU ARE ONLY APPLYING FOR SNAP, YOU MAY STOP HERE.**

| | | |
|---|---|---|
| **Has anyone in the home been in the military?** | ☐Yes    No☐ | If yes, who? |

| | |
|---|---|
| **If you need help to pay your burial/funeral costs, would you prefer:** | ❑ Cremation    ❑ Burial    ❑ No Preference |

**IF YOU ARE ONLY APPLYING FOR ADULT FINANCIAL, <u>YOU MAY</u> STOP HERE.**
**IF YOU ARE ONLY APPLYING FOR COLORADO WORKS, <u>YOU MAY</u> STOP HERE.**

## Retroactive Medical Coverage

| Does anyone who is applying for medical assistance want help paying for medical bills from the last 3 months? | | ☐Yes No☐ |
|---|---|---|
| Who | Month(s) | Household income in that month(s) |
| | | |
| | | |

## Tax Filer Information

**Instructions**: Please complete for yourself, your spouse/partner, and children who live with you and/or anyone on the same federal income tax return, if you file one. If you don't file a tax return, remember to still add family members who live with you. Use more paper if necessary.

| Do you plan to file a Federal Income Tax Return NEXT YEAR? | | ☐Yes No☐ *If yes, list below* |
|---|---|---|
| Filing jointly with a spouse? | ☐Yes No☐ | Name of spouse: |
| Claiming dependent(s)? | ☐Yes No☐ | Name of dependent(s): |
| Expects to be claimed as a dependent on someone else's tax return that does not live at your address? ☐Yes No☐If yes, *list* below | | |
| *Claimed as a dependent?* | ☐Yes No☐ | *Name of person claiming you:* |
| *Is this person listed on the application?* | ☐Yes No☐ | *Is this person a non-custodial parent?* ☐Yes No☐ |
| If you indicated that you are a tax filer and that you are Married, Filing Separately on your tax forms, do Exceptional Circumstances (that you have been a victim of domestic violence) apply to your case? ☐Yes No☐ | | |

| Does anyone else in the home plan to file a Federal Income Tax Return NEXT YEAR? | ☐Yes No☐ | Name: |
|---|---|---|
| Filing jointly with a spouse? | ☐Yes No☐ | Name of spouse: |
| Claiming dependent(s)? | ☐Yes No☐ | Name of dependent(s): |
| Expects to be claimed as a dependent on someone else's tax return that does not live at your address? ☐Yes No☐If yes,  list below | | |
| *Claimed as a dependent?* | ☐Yes No☐ | *Name of the person claiming them:* |
| *Is this person listed on the application?* | ☐Yes No☐ | *Is this person a non-custodial parent?* ☐Yes No☐ |
| If they indicated that they are a tax filer and that they are Married, Filing Separately on your tax forms, do Exceptional Circumstances (that you have been a victim of domestic violence) apply to their case? ☐Yes No☐ | | |

| Does anyone else in the home plan to file a Federal Income Tax Return NEXT YEAR? | ☐Yes No☐ | Name: |
|---|---|---|
| Filing jointly with a spouse? | ☐Yes No☐ | Name of spouse: |
| Claiming dependent(s)? | ☐Yes No☐ | Name of dependent(s): |
| Expects to be claimed as a dependent on someone's tax return that does not live at your address? ☐Yes No☐If yes, list below: | | |
| *Claimed as a dependent?* | ☐Yes No☐ | *Name of person claiming them:* |
| *Is this person listed on the application?* | ☐Yes No☐ | *Is this person a non-custodial parent?* ☐Yes No☐ |
| If they indicated that they are a tax filer and that they are Married, Filing Separately on your tax forms, do Exceptional Circumstances (that you have been a victim of domestic violence) apply to your case? ☐Yes No☐ | | |

## Health Insurance Coverage

| Does anyone in your home qualify for or have health insurance/coverage?[1] | | | ☐Yes No☐ *If yes, list below* |
|---|---|---|---|
| Name(s) | Type of Coverage | Coverage Dates | Is this person enrolled? |
| | | | ☐Eligible    ☐Enrolled |
| | | | ☐Eligible    ☐Enrolled |
| | | | ☐Eligible    ☐Enrolled |
| | | | ☐Eligible    ☐Enrolled |

[1]*Types of coverage: Medicare •TRICARE • VA Health Care • Peace Corps • COBRA • Retiree Health Plan •Current Employer-Sponsored Health Coverage • Railroad Retirement Insurance*

**If you listed that someone in your home is enrolled in TRICARE, Peace Corps, VA Health Care Program, or other state or Federal Health Benefit Program, complete the table below.**

| | |
|---|---|
| Type/Name of Program: | |
| Who is currently enrolled in this health coverage? | |
| Insurance Company Name: | |
| Policy number: | |

**If you listed that someone in your home has access to health insurance from a job, complete the table below. This includes if the coverage is from someone else's job such as a parent or a spouse OR if you have COBRA or a Retiree Health Plan.**

| | |
|---|---|
| Employer Name: | Employer Identification Number: |
| Employer Address: | |
| Employer Phone: | Who can we contact about your coverage? |
| Date you could start coverage: | Date you lost coverage: |
| Who else in the Household had access to this coverage? | Who else in the Household was enrolled in this coverage? |
| How much would you need to pay in premiums: $ | ☐I don't know |
| How often would you pay them? ☐Weekly ☐Every 2 Weeks ☐Twice a month ☐Monthly ☐Yearly | |
| Do you have access to an employee-only health plan that meets the minimum value standard[1] health plan? ☐Yes ☐No | |
| If Yes, what is the name of the lowest-cost plan that meets the minimum value standard offered only to the employee? ☐ I don't know  ☐No plans meet the minimum value standard | |

[1] An employer-sponsored health plan meets the "minimum value standard" if the employer pays for 60% of the allowed health plan benefits. You would pay 40%.

**If you or anyone in your household is enrolled in Medicare, complete the table below. For Part C coverage, please complete if you will be entitled to or enrolled in the month in which you would like to purchase private health insurance.**

| Medicare Part A | Medicare Part B | Medicare Part C | Medicare Part D |
|---|---|---|---|
| Are you entitled to or receiving Part A? ☐Yes No☐ | Are you entitled to or receiving Part B? ☐Yes No☐ | Are you entitled to or receiving Part C (Medicare Advantage)☐Yes No☐ | Are you entitled to or receiving Part D? ☐Yes No☐ |
| When did your Part A begin? | When did your Part B begin? | When did your part C begin? | When did your Part D begin? |
| Are you currently enrolled? ☐Yes No☐ | How much is your Part B premium? $_____ | | How much is your Part D Premium? $_____ |
| Who pays for your Part A premium? _____ | Who pays for your Part B premium? _____ | | Who pays for your Part D Premium? _____ |
| Is your Part A Premium Free? ☐Yes No☐ | | | |

| **Are you or anyone in your home being treated for an injury that you have brought or may bring a legal claim?** ☐Yes No☐ |
|---|
| **Name:** |

| Individuals that are 18 years or older can get their own mail about their health coverage at a different address. Do any individuals that are over 18 want to receive their own mail? | ☐Yes No☐ *If yes, list below* |
|---|---|
| Name | Address |
| | |
| | |

## Expected Income Change

| Does the income in your household change from month to month? | ☐Yes No☐ *If yes, list below* | |
|---|---|---|
| Name | Annual income from your job and employer name | Will the Annual income be the same or lower in the next calendar year? |
| | $ | ☐Yes No☐ |
| | $ | ☐Yes No☐ |

## Reasons for Income Differences

| After you submit your application, we will verify your income. Please tell us, if any of the following has happened to you in the past few months to help us with the verification process: | |
|---|---|
| Name | What Happened? |
| | ❑Stopped working a job  ❑Hours changed at a job<br>❑Change in employment ❑Married, legal separation, or divorce<br>❑Other |
| | ❑Stopped working a job  ❑Hours changed at a job<br>❑Change in employment ❑Married, legal separation, or divorce<br>❑Other |

**Does anyone in your household have any job or non-job related deductions? Check all that apply.  Provide the amount and how often you pay it. Telling us about these deductions could make the cost of your health insurance lower. You should not include  a cost that you already considered in your previous answer to job income and net self-employment.**

| Do the deductions change month to month? | ❑Yes No❑ | *If yes, fill out both the current amount and the actual annual amount* | |
|---|---|---|---|
| Deduction Type and How Often | | Current Amount | Actual Annual Amount |
| Type_____<br>❑One Time only  ❑Weekly  ❑Every 2 weeks  ❑Twice a month  ❑Monthly ❑Yearly | | $ | $ |
| Type_____<br>❑One Time only  ❑Weekly  ❑Every 2 weeks  ❑Twice a month  ❑Monthly ❑Yearly | | $ | $ |
| Type_____<br>❑One Time only  ❑Weekly  ❑Every 2 weeks  ❑Twice a month  ❑Monthly ❑Yearly | | $ | $ |

*Example: • Alimony Paid • Capital Losses • Penalty on Early Withdrawal of Savings •Student Loan Interest • Domestic Production Activities • Reimbursement of Expenses • HSA deduction • Moving Expenses •Contribution made to your Traditional IRA •Certain Business Expenses of Reservists, Performing Artists, or Fee-based Government Officials*

| **Did anyone in your household have income and deductions from a past job, self-employment, or other sources during the coverage year which is not listed as current income that you will need to include on your tax return?** | ❑Yes No❑ |
|---|---|
| *If yes, tell us the amount of the past income and deductions.  **Do not** include any ongoing or future income or deductions.* | |
| *Amount of past Income:  $ _____* | |
| *Amount of past Deductions: $ _____* | |

## American Indian or Alaska Native Information

American Indians and Alaska Natives can get services from the Indian Health Service, tribal health programs, urban Indian health programs, or through a referral from one of these programs. They also may not have to pay cost-sharing and may get special monthly enrollment periods. Answer the following questions to make sure your family gets the most help possible. Certain money received may not be counted as income for receiving insurance affordability programs. List any income that includes money from these sources:

•*Per capital payments from a Tribe that come from natural resources, usage rights, leases, or royalties*

•*Payments from natural resources, farming, ranching, fishing, leases, or royalties from land designated as Indian trust land by the Department of Interior (including reservations and former reservations)*

•*Money from selling things that have cultural significance*

| **Is anyone in your home an American Indian or Alaska Native?** | | ❑Yes No❑*If yes, list below* | | |
|---|---|---|---|---|
| Name | Tribe Name | Tribe State | Type of Income Received | Frequency and Amount |
| | | | | |
| | | | | |

| **Has anyone in the household ever received a service from the Indian Health Service, a Tribal health program,  Urban Indian Health program or through a referral from one of these programs?** | ❑Yes No❑*If yes, list below* |
|---|---|
| Name: | |
| Name: | |

| **If none, who in the household is eligible to receive  services from Indian Health Service, Tribal health programs, Urban Indian Health Programs, or through a referral from one of these programs?** | ❑Yes No❑*If yes, list below* |
|---|---|
| Name: | |
| Name: | |

Revised 10/2024

**Permission to Validate Income**

As part of the eligibility process, we are required to verify the information that you have provided to us for this application. By checking the box below, you indicate that Connect for Health Colorado DOES NOT have permission to verify income information from tax returns. By not allowing the use of this data, you understand that Connect for Health Colorado will send you a letter requesting that you provide proof of information for your household, including your annual income. **If you do not provide the requested proof of your household's income tax return information within 90 days of the request, you will be determined ineligible for Advance Premium Tax Credits/Cost Sharing Reductions (APTC/CSR).**

❑ **I DO NOT give Connect for Health Colorado permission to validate my income data against federal sources.**

**AUTHORIZED REPRESENTATIVE INFORMATION FOR MEDICAL ASSISTANCE**

**For Medical only you can choose an Authorized Representative.** An Authorized Representative is a trusted person or organization that you choose to help you with your application. We need your permission in order for your Authorized Representative to talk with us about this application, see your information, and act for you on all issues related to your health coverage. If you ever want to change your Authorized Representative, or no longer want an Authorized Representative, contact Health First Colorado & CHP+ or Connect for Health Colorado.

| | |
|---|---|
| Is your Authorized Representative an: ❑ Individual ❑ Organization | |
| Authorized Individual/Organization Name: | |
| Company/Organization ID Number (is applicable): | |
| Authorized Individual/Organization's Address: | |
| In Care Of (If applicable): | |
| City, State, Zip Code, County: | |
| Telephone Number: | Email Address: |
| Do you want your Authorized Representative to receive copies of your notices/communications?   ❑Yes No❑ | |
| By signing, you allow the Authorized Representative to sign your application, get information about the application, and act for you on all future matters with this agency and/or Connect for Health Colorado. | |
| Applicant's Signature | Date: (mm/dd/yyyy) |

By signing, I agree to fulfill all responsibilities within the scope of the authorized representation that the individual who I represent is required to fulfill. I agree to maintain the confidentiality of any information regarding the applicant or client provided by the agency or Connect for Health Colorado in compliance with state, federal, and all other applicable laws.

If an Authorized Representative is an organization, the signature of an organizational contact who is either a provider, staff member, or volunteer of the organization is required.

As a provider, staff member, or volunteer of an organization that is an Authorized Representative, I affirm that I will adhere to the regulations in 42 CFR §431, Subpart F and to 45 CFR §155.260(f), and 42 CFR §447.10, as well as all other relevant state and federal laws concerning conflicts of interests and confidentiality of information.

If you have been given the legal authority to act as an Authorized Representative on the applicant or client's behalf through some means other than assignment through this Worksheet, you will need to affirm that you have that authority and provide the appropriate documents verifying that you have that authority.

I, affirm that I have the legal authority to act on behalf of the applicant or client. (Please provide a copy of the following documents with this application when it is submitted: a power of attorney, court order establishing legal guardianship, or other legal documents explicitly stating that you may legally act on behalf of the applicant or client.)

| | |
|---|---|
| Authorized Representative/Organizational Contact Signature | Date: (mm/dd/yyyy) |

ATTACHMENT #5

# Help in your Language

| | |
|---|---|
| **Supplemental Nutrition Assistance Program (SNAP):** (303) 636-1170 | |

| | |
|---|---|
| **Español** | ATENCIÓN: Si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. |
| **Tiếng Việt** | CHÚ Ý: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. |
| 繁體中文 | 注意：如果您使用繁體中文，您可以免費獲得語言援助服務。 |
| 한국어 | 주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. |
| **Русский** | ВНИМАНИЕ: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. |
| አማርኛ | ማስታወሻ: የሚናገሩት ቋንቋ አማርኛ ከሆነ የትርጉም እርዳታ ድርጅቶች፣ በነጻ ሊያግዝዎት ተዘጋጀተዋል፡ |
| العربيـــــة | ملحوظة: إذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان. |
| **Deutsch** | ACHTUNG: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung. |
| **Français** | ATTENTION: Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. |
| **नेपाली** | ध्यान दिनुहोस्: तपाईंले नेपाली बोल्नुहुन्छ भने तपाईंको निम्ति भाषा सहायता सेवाहरू निःशुल्क रूपमा उपलब्ध छ । |
| **Tagalog** | PAUNAWA: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. |
| 日本語 | 注意事項：日本語を話される場合、無料の言語支援をご利用いただけます。 |
| **Oroomiffa** | XIYYEEFFANNAA: Afaan dubbattu Oroomiffa, tajaajila gargaarsa afaanii, kanfaltiidhaan ala, ni argama. |
| فارســی | توجه: اگر به زبان فارسی گفتگو می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. |
| **Polski** | UWAGA: Jeżeli mówisz po polsku, możesz skorzystać z bezpłatnej pomocy językowej. |

This page is intentionally left blank

# STATE OF COLORADO



## Your Benefits Are Ending Soon
### *You Need to Act Now to Keep Receiving Benefits*

12/02/2023

Dear ███████,

This letter is to tell you that your **SNAP will stop** on **01/31/2024**. You must **reapply** before this date if you want your benefits to continue.

## What do you need to keep your benefits?

- **Act now.** Please do not wait to reapply.
- To reapply, you will need to fill out and submit a renewal form, provide any requested information, and may be required to complete an interview.
- Your benefits may be late if you don't submit the attached renewal form before **01/15/2024**.
- For SNAP: if you return the renewal form late, between 02/01/2024 and 02/29/2024 your benefits will be prorated from the date your renewal is received.

## How do you reapply?

**Step 1. Fill out with your signature and date and return the renewal form to your local office.**

- *Paper renewal form (included in this mailing):*
  - *By mail:*
    AFLTC Ongoing
    14980 E ALAMEDA DR
    STE 007
    AURORA CO 80012-1542

  - *In Person:*
    Arapahoe County
    14980 E ALAMEDA DR
    STE 007
    AURORA CO 80012-1542

  - *By fax:*
    (303) 636-1426

- *Electronic renewal form:*
  You will need to create a login and password the first time you use the website or mobile application.

  - *Website*: Complete your renewal form electronically at CO.gov/PEAK.
  - *Mobile application*: Use the MyCOBenefits mobile application on your mobile device.

**Step 2. Provide any additional information.**
- You may need to provide more information. This information is also called proof. It verifies what you stated in your renewal form.
- **For faster service, return the proof needed with your renewal form**. Please only include copies because the proof cannot be returned.

**Step 3. Complete an interview if required.**
- If an interview is required, your local county office will contact you.
- The interview can be completed by telephone or in person.
- If you miss the appointment, you will need to reschedule and complete the interview or your benefits will end.

## What else do you need to know?

- Find out more about your rights and responsibilities at renewal in the What I Should Know section.
- Because you are already receiving benefits, we strongly recommend you use the renewal form and answer as many questions on it as you can. This can help you get benefits faster.

## What if you need help?

- You may call us at (303) 636-1170 if you need help reapplying or have questions.
- You may also call us to get information about using an authorized representative if you need one. An authorized representative is a person you select who can talk to us about your case and must be designated in writing.

Sincerely,

Arapahoe County
14980 E ALAMEDA DR
STE 007
AURORA CO 80012-1542



# STATE OF COLORADO

## SNAP Renewal Form

**Sent to:**

**Case #:**

**To complete this form, please:**

- Use block letters and write using BLUE or BLACK ink
- Review all pre-filled information (grey fields) for accuracy
- Any rows filled with "XXXXX" do not require your review.
- If you need additional space than what is provided, please send this form back with additional page
- If you need assistance completing this form, contact the county office
- Your benefits may be late if you don't submit the attached renewal form before **01/15/2024**



**! Return this form to:**

AFLTC Ongoing
14980 E ALAMEDA DR
STE 007
AURORA CO 80012-1542
(303) 636-1170

**Return form by: 01/31/2024**

---

**1**

By signing below:
- I understand that any changes reported can result in a reduction or termination of benefits.
- Turning this form in incomplete and/or after the due date can result in a delay of benefits being issued.
- I have read this form to continue my benefits and to the best of my knowledge and belief, my answers are true. This information includes the people who live in my house, and citizenship and non-citizenship information.
- I have listed all amounts and sources of income, money, and property I receive or own.
- I understand and agree to the information provided in the section titled "What I Should Know."
- I have the right to apply again for SNAP benefits by submitting an application for assistance as long as it has my name, address, and signature. I can send this application in by mail, drop it off at the county office, or through an authorized representative. If everyone in my household receives SSI, I can apply again for benefits at the local Social Security office.

**SIGN HERE**



**DATE SIGNED (MM/DD/YYYY):**

/ /

RRR-2
RRR_Cover_Form29_EN

Page 4 of 30

**1A**  **Expedited SNAP benefits may be available to you. Please answer the following questions:**

- Is anyone who lives in your house a migrant or seasonal farm worker?  ☐ YES ☐ NO

- Is the money (before deductions) you think you will get this month less than $150?  ☐ YES ☐ NO

- Is all the cash and money in the checking and savings accounts for the house less than $100?  ☐ YES ☐ NO

- Are your monthly housing and utility costs more than the total monthly money, including cash, money from employment gifts, and money in the checking and savings accounts?  ☐ YES ☐ NO

**1B**  **Your Adult Financial interview can be by phone or in person. Do you want us to call you?**  ☐ YES ☐ NO

**1C**  **EBT Card:**

- Does the household need an Electronic Benefits Transfer (EBT) card?  ☐ YES ☐ NO

- If one is needed, how would you like to receive the EBT card?  ☐ By postal mail  ☐ In-person at the local office

**2**  **Has your contact information changed?**  ☐ YES ☐ NO

*If you marked "NO," please skip to question 3*

If you update your address, it will be updated for every household member.  ☐ I am now homeless
To add or remove someone from the household, go to **question 3.**

| | |
|---|---|
| **Home Address** (Currently On File) |  |
| **Mailing Address** (Currently On File) | |

**2A** **If you have moved to a different <u>home</u> address, please provide updated information below:**

Street Address

Apartment #

City

State    Zip Code    What date did this address change? (MM/DD/YYYY)

/ /

**2B** **If you have a different mailing address, please provide updated information below:**

Use the home address listed in 2A?   ☐ YES ☐ NO    *If you marked "YES," do not enter a mailing address below*

Street Address

Apartment #

City

State    Zip Code    What date did this address change? (MM/DD/YYYY)

/ /

**2C** **If you want to change how we contact you, please provide updated information below:**

| | English | |
|---|---|---|
| Preferred language: | | → New Preferred Language? |
| Home phone: | | → New Home Phone? ( ) - |
| Cell phone: | | → New Cell Phone? ( ) - |
| Email: | | → New Email Address? @ |

**Preferred method of contact:**   ☐ Call Home Phone    ☐ Call Cell Phone    ☐ Text Cell Phone

We can send links that allow you to view electronic notices about your case. You may choose more than one option, but if you do not choose, you will receive paper notices by standard mail.

I want to receive communication by:   ☐ Paper notices    ☐ An email sent to the email address listed in **2C**

**3** **Do you need to add or remove anyone in the household?**  ☐ YES ☐ NO  *If you marked "NO," please skip to question 4*

**3A** **Mark in the table below if any members currently on file need to be removed from the household:**

Current Benefits: SNAP=Supplemental Nutrition Assistance Program, AF= Adult Financial, CW= Colorado Works

| Remove? | Full Name | Date of Birth | Current Benefits | Date they left the household |
|---|---|---|---|---|
| ☐ REMOVE | ███ | ███ | SNAP | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |
| ☐ REMOVE | XXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | / / |

**3B** **If you have a new person in your household, please complete the remaining questions:**

First Name:

Middle Initial:

Last Name:

Suffix (Jr., Sr. I, II, III ):

Date of Birth (MM/DD/YYYY):

Date added to household (MM/DD/YYYY):

How is this person related to you? This person is my:

Gender(Optional):

☐ Male  ☐ Female  ☐ Other

Social Security Number (SSN)*

Race (Optional) : Select Multiple options if applicable

☐ Asian        ☐ American Indian/Alaskan Native

☐ White        ☐ Native Hawaiian/Pacific Islander

☐ Other        ☐ Black/African American

Marital Status:

As of

this person's marital status is

Does this person purchase and prepare food with you?  ☐ YES  ☐ NO

Ethnicity(Optional):

☐ Hispanic/Latino   ☐ Non-Hispanic/Latino

Request Benefits:  ☐ SNAP

* The collection of information on the application, including the SSN of each HH member, is authorized under the Food and Nutrition Act of 2008 (formerly the Food Stamp Act), as amended, 7 U.S.C. 2011-2036. The information will be used to determine whether your HH is eligible or continues to be eligible to participate in the SNAP. We will verify this information through computer matching programs. This information will also be used to monitor compliance with program regulations and for program management.

* This information may be disclosed to other Federal and State agencies for official examination, and to law enforcement officials for the purpose of apprehending persons fleeing to avoid the law.

* If a SNAP claim arises against your HH, the information on this application, including all SSNs, may be referred to Federal and State agencies, as well as private claims collection agencies, for claims collection action.

**4** Do you have new details about people in the household?    ☐ YES  ☐ NO   *If you marked "NO," please skip to question 5*

**4A** If anyone in the household has different living arrangements, please provide 4A the details below:

Name of the Person: _____

Date this happened: ☐☐ / ☐☐ / ☐☐☐☐

☐ In Jail/Prison          ☐ Drug/Alcohol Treatment Center
☐ In a Group Home    ☐ A Boarder    ☐ In a Nursing Home
☐ A Roomer

Name of the Person: _____

Date this happened: ☐☐ / ☐☐ / ☐☐☐☐

☐ In Jail/Prison          ☐ Drug/Alcohol Treatment Center
☐ In a Group Home    ☐ A Boarder    ☐ In a Nursing Home
☐ A Roomer

\* A roomer pays for room/lodging
\* A boarder pays for room/lodging and meals
\* A group home is a place where unrelated people may live together to receive care, support or supervision.

**4B** If anyone in the household is currently pregnant, please provide details below (Not required for SNAP benefits):

| Who is pregnant? | Expected Due Date (MM/DD/YYYY) | Expected Number of Babies |
|---|---|---|
|  | ☐☐ / ☐☐ / ☐☐☐☐ |  |
|  | ☐☐ / ☐☐ / ☐☐☐☐ |  |

If you have Colorado Works and have not provided this before, please send in a doctor's statement with a due date.

RRR-2
RRR_Cover_Form29_EN

**4C** **Please confirm that the Highest Grade Completed for each of your household members is correct. If not, please provide their Actual Highest Grade Completed below:**

| Name of the Student | Highest Grade Completed on File | Actual Highest Grade Completed |
|---|---|---|
| XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | |
| XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | |
| XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | |
| XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | |

**4D** **If anyone in the home is 16 years or older and in school, please provide details below:**

| Name of the Person | School Type | Participation Status | Actual Begin Date (MM/DD/YYYY) | Enrollment Status |
|---|---|---|---|---|
| | | | / / | |
| | | | / / | |

- School Type includes Certified Home School, Community College, Elementary, GED Program, High School, Kindergarten, Middle School, No GED/HS Required, Pre-school, Trade School, University
- Participation Status includes Attending, Dropout, Expelled, Not Registered, Pending, Registered, Suspended
- Enrollment Status includes Full time, Half time and more, Less than half time, Not in School

**4E** **If there are any school aged children at home who do not go to school right now (excluding breaks), please list the names below:**

RRR-2
RRR_Cover_Form29_EN

Page 10 of 30

**4F**

- Have any household members been convicted as an adult of aggravated sexual abuse, murder, sexual exploitation, and/or abuse of child(ren) or sexual assault for conduct that occurred after February 7, 2014? ☐ YES ☐ NO

- Are all the adults convicted of the above crimes in compliance with the terms of their sentence? ☐ YES ☐ NO

- Are any of the adults in the household a convicted felon or a fleeing felon, probation violator or parolee violator? ☐ YES ☐ NO

- Have you or any member of your home applying for assistance ever been disqualified for an Intentional Program Violation or been convicted of public assistance benefits fraud in a criminal case? ☐ YES ☐ NO

**5** **Please review the income information on file and report if you have any changes:**
To receive a quicker decision, proof of your income can be provided. Further information may be requested by the local office.

**5A** Have you left your job or had work hours reduced within the last 60 days? ☐ YES ☐ NO

**5B** Update currently on-file information about income in your household:

| Person with Income | Employer Name / Type of Income | Amount | How Often Paid | Change | Current Amount Received & Frequency (If you no longer receive this, please write 0) | |
|---|---|---|---|---|---|---|
| | | | | | Amount(Before deductions) | How Often is this person paid? |
| ■ | ■ | ■ | Monthly | ☐ YES ☐ NO | $ | |
| XXXXXXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |

RRR-2
RRR_Cover_Form29_EN

**5C** **Update currently on-file information about self employment expenses in your household:**

| Person Responsible for Expense | Type of Expense | Amount | How Often Billed | Change | | How much was the last bill? (If you are no longer responsible for this, please write 0) | How Often is this person billed? |
|---|---|---|---|---|---|---|---|
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |
| XXXXXXXXXXX | XXXXXXXXXXXXXX | XXXXXX | XXXXXXX | ☐ YES ☐ NO | $ | | |

RRR-2
RRR_Cover_Form29_EN

**5D** **Does anyone in the household have new income to report?** ☐ YES ☐ NO

**If someone has new income from work, complete section #1.**

*If you marked "NO," please skip this page*

**(#1)**

Person Working: _____

Employer: _____

How often is this person paid? ☐ One Time ☐ Weekly ☐ Every 2 Weeks ☐ Monthly ☐ Other: _____

*Only complete **this section** for hourly employees*

Pay rate: $ _____ per hour

Number of hours worked per week _____

*Only complete **this section** for salaried employees*

Salaried pay rate: $ _____

Number of hours worked per week _____

Received date of first paycheck: (MM/DD/YYYY) __ __ / __ __ / __ __ __ __

Is this a job that pays commissions or tips? ☐ YES ☐ NO

Is this job seasonal? ☐ YES ☐ NO

---

**If someone has new self-employment, complete section #2.**

**(#2)**

Person Working: _____

Business Name: _____

Date self-employment first began: (MM/DD/YYYY) __ __ / __ __ / __ __ __ __

*Only complete **this section** if this person is self-employed and the business is NOT an S-Corporation or LLC*

Monthly Business Income Before Taxes $ _____

Monthly Business Expenses $ _____

*Only complete **this section** if the business this person owns is an S-Corporation or LLC*

How much do you pay yourself? $ _____

How often do you pay yourself? ☐ One Time ☐ Weekly ☐ Every 2 Weeks ☐ Monthly ☐ Other: _____

---

**If someone has other new Income, complete section #3.**

**(#3)**

Person with Income: _____

Income Type:
☐ Social Security ☐ Child Support ☐ Alimony/spousal support
☐ Unemployment ☐ Other: _____

Amount (Before Taxes): $ _____

How often is it received? ☐ One Time ☐ Weekly ☐ Every 2 Weeks ☐ Monthly ☐ Other: _____

When did this Income begin? (MM/DD/YYYY) __ __ / __ __ / __ __ __ __

**6** Please report if you have any changes in what you pay for rent/mortgage, home insurance, property taxes, HOA fees, utilities, dependent (child/adult) care, medical expenses and court-ordered child support, AND if you have any new things that you pay for. Please detail the court-ordered child-support obligated amount, the actual amount paid, and any arrearages.

**6A** Update currently on-file information about expenses in your household:

| Person Responsible for Expense | Type of Expense | Amount | How Often Billed | Change | How much was the last bill? (If you are no longer responsible for this, please write 0) | How Often is this person billed? |
|---|---|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ | Monthly | ☐ YES ☐ NO | $ | |
| ▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ | Monthly | ☐ YES ☐ NO | $ | |
| ▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ | Monthly | ☐ YES ☐ NO | $ | |
| XXXXXXXXXX | XXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXX | XXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXX | XXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXX | XXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |
| XXXXXXXXXX | XXXXXXXXXXX | XXXXXX | XXXX | ☐ YES ☐ NO | $ | |

**6B** Have you received more than $20 in LEAP (energy assistance) at this address in the current month or in the past 12 months?   ☐ YES ☐ NO

**6C** If your household has any new expenses, please report below. Even if you are behind on paying bills, let us know how much you are responsible to pay when answering questions about your expenses:

**#1**

Person Responsible for Expense:

Please select only one Expense Type:

☐ Rent/Mortgage    ☐ Phone
☐ Heating/Cooling    ☐ Medical
☐ Electricity Only    ☐ Dependent (Child/Adult) Care
☐ Water    ☐ Other:
☐ Trash

When did this person become responsible for this expense? (MM/DD/YYYY)

___ / ___ / _____

Amount:

$ _____

How often?

☐ Weekly    ☐ Every 2 Weeks    ☐ Monthly
☐ Other:

**#2**

Person Responsible for Expense:

Please select only one Expense Type:

☐ Rent/Mortgage    ☐ Phone
☐ Heating/Cooling    ☐ Medical
☐ Electricity Only    ☐ Dependent (Child/Adult) Care
☐ Water    ☐ Other:
☐ Trash

When did this person become responsible for this expense? (MM/DD/YYYY)

___ / ___ / _____

Amount:

$ _____

How often?

☐ Weekly    ☐ Every 2 Weeks    ☐ Monthly
☐ Other:

**#3**

Person Responsible for Expense:

Please select only one Expense Type:

☐ Rent/Mortgage    ☐ Phone
☐ Heating/Cooling    ☐ Medical
☐ Electricity Only    ☐ Dependent (Child/Adult) Care
☐ Water    ☐ Other:
☐ Trash

When did this person become responsible for this expense? (MM/DD/YYYY)

___ / ___ / _____

Amount:

$ _____

How often?

☐ Weekly    ☐ Every 2 Weeks    ☐ Monthly
☐ Other:

RRR-2
RRR_Cover_Form29_EN

**7** Please report if you have any changes within the last 3 months to your vehicle ownership and resources:

**7A** If your household has any changes to vehicles currently on file, please update below. You may be asked to provide proof:

| Owner | Type | Make and Model | Still Owned? | Date no longer owned (MM/DD/YYYY) |
|---|---|---|---|---|
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |
| XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXX | XXXXXXXXXX | ☐ No longer own | [ ] / [ ] / [ ] |

**7B** If your household has a new vehicle, please add below. You may be asked to provide proof:

| Owner | Type | Make and Model | Current Value | When did they get this vehicle? (MM/DD/YYYY) |
|---|---|---|---|---|
| | | | $ | [ ] / [ ] / [ ] |
| | | | $ | [ ] / [ ] / [ ] |

RRR-2
RRR_Cover_Form29_EN

**7C  If your household has changes to resources currently on file, please update below. You may be asked to provide proof:**

| Owner | Type of Resource | Value | If they no longer own this resource, fill out the below: | | If the resource is still owned and has changes, fill out below: | |
|---|---|---|---|---|---|---|
| | | | Date no longer owned (MM/DD/YYYY) | If applicable, amount received for resource | Updated Value | When did the value of this resource change? (MM/DD/YYYY) |
| ■ | ■ | ■ | | $ | $ | |
| XXXXXXXXXXXXXXXX | XXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXX | XXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXX | XXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXX | XXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXX | XXXXXXXXX | XXXXXX | | $ | $ | |
| XXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXX | | $ | $ | |

RRR-2
RRR_Cover_Form29_EN

**7D** **If you have any new resources that are not listed in 6C, please add below:**

Examples include but are not limited to cash, checking and savings accounts, annuities, trusts, mutual funds, promissory notes, property and retirement accounts

**#1**

Owner: _____

Resource Type:
- [ ] Life Insurance
- [ ] Checking Account
- [ ] Savings Account
- [ ] Stocks
- [ ] Burial Policies
- [ ] Properties
- [ ] Annuities
- [ ] Trust Accounts
- [ ] Retirement account
- [ ] Other _____

Resource Description: _____
(e.g., Bank Name – Checking Account)

Value
$ _____

Additional Owner _____

**#2**

Owner: _____

Resource Type:
- [ ] Life Insurance
- [ ] Checking Account
- [ ] Savings Account
- [ ] Stocks
- [ ] Burial Policies
- [ ] Properties
- [ ] Annuities
- [ ] Trust Accounts
- [ ] Retirement account
- [ ] Other _____

Resource Description: _____
(e.g., Bank Name – Checking Account)

Value
$ _____

Additional Owner _____

RRR-2
RRR_Cover_Form29_EN

This page is intentionally left blank



# STATE OF COLORADO

## What I Should Know

The Colorado Department of Human Services (CDHS) is the State agency responsible for the administration of SNAP and Cash assistance programs. Local offices of human services are the agencies that receive and process applications for all public assistance programs. The term "department" is used in this document to refer to both CDHS and local offices.

By completing and signing the State of Colorado Renewal Form for SNAP, Colorado Works, and/or Adult Financial, I understand the following information and agree to the following rights and responsibilities:

## YOUR RIGHTS AND RESPONSIBILITIES

1.  I have told the truth; I understand that I can be held criminally responsible for lying on this application.
2.  I may have to provide papers that show that what I have told the department is true.
    ○ I agree to give the department all requested documents before qualifying for benefits.
3.  I understand that if I am found to have received SNAP and/or Cash assistance when intentionally providing false information (Intentional Program Violation or IPV), I will be disqualified from that program for 12 months for the first offense, 24 months for the second offense, and permanently for the third offense.
4.  I understand that any household member who breaks any of the rules on purpose can also be:
    ○ Barred from SNAP for one year to permanently, fined up to $250,000, imprisoned for up to 20 years, or both.
    ○ Barred from SNAP for an additional 18 months if court-ordered.
    ○ Subject to prosecution under other applicable Federal and State laws.
5.  I have the right to ask for a hearing if I think the department made a mistake.
    ○ I can ask verbally or in writing for a fair hearing to review my case. My case may be presented by a member of my household or my authorized representative, such as legal counsel, friend, or relative.
6.  I have the right to apply for assistance for myself and my family regardless of my immigration status.
7.  I have the right to receive an application form upon request and submit it with the applicant's name, address, and signature only.
8.  I have to repay any benefits I should not have received, even if it is the department's error.
9.  I have to use my benefits legally and will not sell, trade, or give away my benefits online or in person.
10. I may have to tell the department about any changes to the information I provided on my application.
11. I agree to cooperate with state or Federal reviewers when they review my case.
12. I agree to release my information for program needs.

RRR-2
RRR_Cover_Form29_EN

# THE DEPARTMENT'S RESPONSIBILITIES

1. The department will not discriminate against any individual or group because of race, religion, age, national origin, color, height, weight, marital status, genetic information, sex, sexual orientation, gender identity or expression, political beliefs, or disability.

2. The department is required to check with the United States Citizenship and Immigration Services (USCIS) to confirm the immigration status, sponsor information, and citizenship of anyone who is applying for benefits.

3. The department is required to use the Income Eligibility Verification System (IEVS) to look at differences between the information you provide the department and information in the various government systems, such as the Department of Labor and Social Security Administration.

   ○ The information available through IEVS will be requested, reviewed, and may be verified when discrepancies are found. This information may affect your household's eligibility and benefit level.

4. Privacy Act Information:

   ○ The collection of information on the application, including the SSN of each household member, is authorized under the Food and Nutrition Act of 2008 (formerly the Food Stamp Act), as amended, 7 U.S.C. 2011-2036. The information will be used to determine whether your household is eligible or continues to be eligible to participate. The department will verify this information through computer matching programs. This information will also be used to monitor compliance with program regulations and for program management.

   ○ The department may disclose this information to other Federal and State agencies for official examination and/or to law enforcement officials for the purpose of apprehending persons fleeing to avoid the law.

   ○ If a claim arises against your household, the information on this application, including all SSNs, may be referred to Federal and State agencies, as well as private claims collection agencies, for claims collection action.

5. The department will tell you if your benefits change.

6. The department or relevant Federal agency will take back any benefits you should not have received.

## Cash Programs (Colorado Works and/or Adult Financial)

1. If I am receiving Cash Programs, I know that I must tell the organization providing the assistance of any changes to my case by the 10th of the month following the change.

2. For Cash programs, the information received from USCIS may affect sponsor repayment for my eligibility and benefits. My sponsor and I may be responsible for reimbursing the state for the benefits that I receive.

Colorado Works

1.  Colorado Works is not an entitlement program, and benefits are not guaranteed. To be or remain eligible, I may be required to complete an assessment and develop a plan. Unless exempted, I will be required to participate in work readiness activities.

2.  As an applicant for Colorado Works, if I refuse to cooperate with child support at the time I apply or while receiving cash assistance without good cause, I will not receive an assistance grant for my family. Good cause for not working with child support can be but is not limited to; potential physical or emotional harm to a child(ren), parent, or caretaker relative; pregnancy or birth of a child related to incest or forcible rape; legal adoption before the court or a parent receiving pre-adoption services; or other reasons determined to be in the best interest of the child. In order to cooperate with child support services, I will be required to complete additional documentation concerning the child(ren), the parentage of the child(ren), and provide all court documents that concern the child(ren).

3.  I understand that if I get cash assistance under Colorado Works, I must assign the rights to any current and past-due child support due under an existing order to the State. If I receive any current child support, medical support, or spousal support directly while receiving cash assistance, I will give this to child support services. If current child support is collected while I am receiving Colorado Works, I may receive this money through the Pass-Through program. Once I have discontinued Colorado Works, child support services will continue to collect and send to me any current child support, medical support, and spousal support until I tell the CSS in writing to close my case.

RRR-2
RRR_Cover_Form29_EN

This page is intentionally left blank

# STATE OF COLORADO



## Send in Required Documents
### *We Need Documents to Complete Your Application*

Dear ███████████

When you apply for Supplemental Nutrition Assistance Program (SNAP) and/or cash benefits, you need to give us certain documents to show that what you provided in your application is correct.

## What do you need to do?

- Please look at the list below. See what documents you have.
- Give us copies of your documents **by 03/01/2024 to ensure we have all the information that we need to make a decision on your application**.
- We will need information for you and anyone in your household applying for SNAP benefits. Your household is anyone who lives with you and purchases and prepares food with you.
- You need to give only **ONE** document for each type of information. Sometimes one document can serve more than one purpose. (For example, a driver's license can show your identity and your address.)
- Please only give **copies** because **we cannot return any original documents to you**.

| Program: SNAP | |
|---|---|
| **Type of information** | **What are some examples of documents you can give us?** |
| **Identity** | • Driver's license or State identification card<br>• School or work identification card<br>• Medical insurance identification card<br>• Voter's registration card<br>• Birth certificate<br>• Passport |
| **Residency (where you live)** | • Driver's license<br>• Utility bills (such as electric, gas, or water)<br>• Lease or mortgage receipts showing address<br>• Mail sent to you at the stated address<br>• Library card showing address<br>• Voter's registration card |
| **Social Security number** | • Social Security number (not the card) or proof that you have applied for one.<br>  o *Not required for household members who are not applying for SNAP.* |
| **Immigration status** | • Immigration and naturalization documents<br>  o *Not required if you are a U.S. citizen or if you are not applying for SNAP.* |

## You may need to provide other documents depending on your situation.

| We may need additional documents if: | Type of information | What are some examples of documents you can give us? |
|---|---|---|
| Someone in your household is working | What you earn (wages or pay) | • Paycheck stubs (for the past 30 days)<br>• Employer statement (if you are paid in cash or if you do not have your check stubs)<br>• Self-employment invoices or receipts (includes rental income and freelance or contract work) |
| Someone in your household has other income (including Social Security or assistance payments) | What you receive as unearned or other income | • Social Security payment documents<br>• Other retirement or pension benefits<br>• Alimony<br>• Child support agreement<br>• Unemployment benefits |
| Someone in your household has savings or resources | What you have as other financial resources | • Statements for bank accounts, savings accounts, and/or CDs<br>• Stock shares or bonds |
| Someone in your household is receiving disability payments | What you receive for disability payments | • Supplemental Security Income (SSI) or Social Security Disability Insurance (SSDI) benefit documents<br>• Veterans Administration (VA) disability benefits statement |
| Your household has rent or a mortgage for where you live | What bills you have for rent or mortgage | • Copy of your lease<br>• Mortgage documents<br>• Property taxes<br>• Insurance on property |
| Your household has utility expenses | What bills you have for electricity, heat, gas, water, telephone etc. | • Utility bills (gas, water, electricity, telephone etc.) |
| Someone in your household is responsible for childcare or adult care costs | What you pay for childcare or dependent adult care costs | • Bills or receipts for childcare or dependent adult care |
| Someone in your household pays child support | What you pay for child support | • Copy of court order showing your child support obligations<br>• Income summary if child support is deducted from wages or income<br>• Proof of child support payments made |
| Someone in your household is 18–49 years old and a student | Proof of enrollment and what is paid for educational expenses | • Financial aid statement from school<br>• Enrollment forms or transcripts to verify your current status as a student<br>• Receipts for mandatory school fees, books, or supplies |

| We may need additional documents if: | Type of information | What are some examples of documents you can give us? |
|---|---|---|
| Someone in your household is age 60 or older or a person with a disability | Bills of medical expenses for this person (Does not include expenses paid by insurance or someone outside of the household) | <ul><li>Medical bills</li><li>Summary of provided services such as doctor or hospital visits</li><li>An Explanation of Benefits (EOB) or other detailed receipts showing unreimbursed medical expenses</li><li>Identification from the Medical Assistance Program for people 65 and older (Medicare) that shows Plan "B" coverage</li><li>Prescription pill bottles showing cost on label or printout</li><li>Medical payment agreement</li><li>Invoices or receipts for medical equipment such as wheelchairs, hospital beds, or walkers (including any rental costs)</li><li>Receipts for transportation and lodging to obtain medical treatment</li></ul> |

## What time periods should your documents cover?

In general, the documents you provide to us should cover the last 30 days before you applied for SNAP and cash benefits. Medical expenses can be averaged over 1 year.

## How can you give us the documents we need?

- If you have an interview in the office, please bring the documents or copies with you. If not, follow the instructions below.
- Please only give **copies** of your documents to your local office because **we cannot return any original documents to you**.

Choose the option that is easiest for you to give your local office **copies** of your documents:

- _Electronically:_

    You will need to create a login and password the first time you use the website or mobile application.

    - _Website:_ You may upload your documents at CO.gov/PEAK.

    - _Mobile application:_ You may use your mobile device to take photos of your documents and then upload them to the MyCoBenefits mobile application. You can also use a computer to scan and upload copies of your documents to the MyCoBenefits mobile application.

- *By mail:*

     AFLTC Ongoing
     14980 E ALAMEDA DR
     STE 007
     AURORA CO 80012-1542

- *In person:*

     Arapahoe County
     14980 E ALAMEDA DR
     STE 007
     AURORA CO 80012-1542

- *By fax:*

     (303) 636-1426

## What will happen to your application?

- The sooner you can provide these documents, the sooner we can tell you if you can get SNAP or cash benefits.
- If you do not give us the documents within 30 days of applying, **we may have to deny your application**.

## What if you need more help?

- If you have trouble getting any of these documents or have questions, we can help.
    - We may be able to suggest other ways to verify this information.
    - If you cooperate with us, they will do everything they can to help get the needed documents.
- For more information:
    - You can call us at (303) 636-1170
    - You can visit the PEAK website at CO.gov/PEAK
- You can also get information from us about how to use an authorized representative if you need one.
    - An authorized representative is a person you select who can talk to us about your case.

Sincerely,

Arapahoe County
14980 E ALAMEDA DR
STE 007
AURORA CO 80012-1542

# Your Right to a Fair Hearing

## What is fair hearing?

If you disagree with a decision made on your SNAP or cash case, you have the right to request a fair hearing. A fair hearing means that an official will review the facts of your case in a fair and objective manner as required by law.

## In what situations can you ask for a fair hearing?

You may ask for a fair hearing if any of the following apply to you:

- You applied for SNAP benefits and were denied.
- You disagree with a decision on your case.
- You believe your SNAP or cash benefits were not calculated correctly.

## When is the deadline to request a fair hearing?

- If you want a fair hearing because we closed your SNAP or cash case or denied your request for SNAP or cash benefits, you must request it by 90 days from decision date.
- If you want a fair hearing about your current SNAP or cash case benefits, you may request a fair hearing any time before 01/31/2024
- If you request a hearing because we closed your case or decreased your SNAP benefits, you may choose to keep getting your benefits until a hearing decision is made. You may choose to continue receiving SNAP or cash case benefits only if your certification period has not ended. If you choose to do this, you may have to pay those SNAP benefits back if you lose the fair hearing. To continue your SNAP benefits, you must request a fair hearing by March 1, 2024.

## How do you ask for a fair hearing?

1. Visit cdhs.colorado.gov/snap to download a copy of an Appeal Request form, or

2. Mail, fax, or bring a letter to your local office at the address indicated above that includes:
   - Your name
   - Your signature (if mailing or faxing)
   - Your mailing address
   - Your daytime telephone number
   - The reason for your appeal
   - A copy of this notice. Be sure to keep a copy of the letter and this notice for your records.

3. You may call your local office and ask for a formal hearing. The local office will help you put your request in writing.

## Can you get free legal help?

You may be able to get free legal help from Colorado Legal Services at 1-303-837-1313 or visit coloradolegalservices.org for more information.

## USDA Nondiscrimination Policy

### Do Not Send Applications Here

In accordance with federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity.

Program information may be made available in languages other than English.  Persons with disabilities who require alternative means of communication to obtain program information (e.g., Braille, large print, audiotape, American Sign Language), should contact the agency (state or local) where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339.

To file a program discrimination complaint, a Complainant should complete a Form AD-3027, *USDA Program Discrimination Complaint Form* which can be obtained online at:

https://www.usda.gov/sites/default/files/documents/USDA-OASCR%20P-Complaint-Form-0508-0002-508-11-28-17Fax2Mail.pdf, from any USDA office, by calling (833) 620-1071, or by writing a letter addressed to USDA. The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation. The completed AD-3027 form or letter must be submitted to:

1 **mail:**
   Food and Nutrition Service, USDA
   1320 Braddock Place, Room 334
   Alexandria, VA 22314; or
2 **fax:**
   (833) 256-1665 or (202) 690-7442; or
3 **email:**
   FNSCIVILRIGHTSCOMPLAINTS@usda.gov

This institution is an equal opportunity provider.

### Do Not Send Applications Here

### Medical Assistance Nondiscrimination Policy

The Department of Health Care Policy and Financing and Connect for Health Colorado do not discriminate on the basis of race, color, ethnic or national origin and expression, marital status, religion, creed, political beliefs, or disability in any of its programs, services and activities.  For further information about the Department's policy, to request free disability and/ or language aids and services, or to file a discriminating complain, contact: 504/ADA Coordinator, 1570 Grant St., Denver, CO 80203, Phone: 303-866-6010, Fax: 303-866-2828, State Relay: 711, Email: hcpf504ada@state.co.us.  For information about Connect for Health

Colorado's policy, aids and services or to file a discrimination complaint, contact: General Counsel, 3773 Cherry Creek N. Dr., Suite 1005, Phone: 303-590-9640, Fax: 303-322-4217. Complaints can also be filed with the U.S Department of Health and Human Services Office for Civil Rights at https://www.usda.gov/sites/default/files/documents/USDA-OASCR%20P-Complaint-Form-0508-0002-508-11-28-17Fax2Mail.pdf

For Other Programs: For information about the Colorado Department of Human Services policies, to request free disability and/or language aids and services, or to file a discrimination complaint, contact: 504/ADA Coordinator, 1575 Sherman St Denver, CO 80203, Phone: 303-866-7129, Fax: 303-866-6080, State Relay: 711, Email: CDHSCR@state.co.us. For additional information please visit www.colorado.gov/cdhs.

Civil rights complaints can also be filed with the U.S. Department of Health and Human Services Office for Civil Rights electronically through the Office for Civil Rights Complaint Portal available at https://ocrportal.hhs.gov/ocr/cp/complaint_frontpage.jsf or by mail, phone, or fax at: 1961 Stout Street Room 08-148 Denver, CO 80294, Telephone: 800-368-1019, Fax: 202-619-3818, TDD: 800-537-7697. Complaint forms are available at https://www.usda.gov/sites/default/files/documents/USDA-OASCR%20P-Complaint-Form-0508-0002-508-11-28-17Fax2Mail.pdf.

**Domestic violence information and services are available to me.** If I ever feel I am in immediate danger I should call 911. If I would like to receive information regarding safety and services in Colorado, I will call the Colorado Coalition Against Domestic Violence at 303-831-9632 or toll free at 1-888-778-7091. I may also find the location of services near me by going to **www.colorado.gov/cdhs/dvp**. The National Domestic Violence Hotline at 1−800−799−SAFE (7233) or TTY 1−800−787−3224 or **www.thehotline.org** can also provide information. If I am a survivor of domestic violence, sexual assault, or stalking, the Address Confidentiality Program (ACP) can provide me with a legal substitute address to use instead of my physical address for use with state and local government agencies. I can find out more about the ACP at acp.colorado.gov. If I need or receive either of these services, I should tell my department worker.

ATTACHMENT #6

State of Colorado c/o Consolidated Return Mail Center
P.O. Box 260
Granada, Colorado 81041-0260



Tear Here

EA Ongoing
Po Box  2692
COLORADO SPRINGS CO 80901-2692

# Help in your Language

| | |
|---|---|
| **Supplemental Nutrition Assistance Program (SNAP):** 719-636-0000 | |

| | |
|---|---|
| **Español** | ATENCIÓN: Si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. |
| **Tiếng Việt** | CHÚ Ý: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. |
| 繁體中文 | 注意：如果您使用繁體中文，您可以免費獲得語言援助服務。 |
| 한국어 | 주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. |
| **Русский** | ВНИМАНИЕ: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. |
| አማርኛ | ማስታወሻ: የሚናገሩት ቋንቋ አማርኛ ከሆነ የትርጉም እርዳታ ድርጅቶች፣ በነጻ ሊያግዝዎት ተዘጋጅተዋል፡ |
| العربيــــة | ملحوظة:  إذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان. |
| **Deutsch** | ACHTUNG: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung. |
| **Français** | ATTENTION: Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. |
| **नेपाली** | ध्यान दिनुहोस्: तपाईंले नेपाली बोल्नुहुन्छ भने तपाईंको निम्ति भाषा सहायता सेवाहरू निःशुल्क रूपमा उपलब्ध छ । |
| **Tagalog** | PAUNAWA: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. |
| 日本語 | 注意事項：日本語を話される場合、無料の言語支援をご利用いただけます。 |
| **Oroomiffa** | XIYYEEFFANNAA: Afaan dubbattu Oroomiffa, tajaajila gargaarsa afaanii, kanfaltiidhaan ala, ni argama. |
| فارســــی | توجه: اگر به زبان فارسی گفتگو می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. |
| **Polski** | UWAGA: Jeżeli mówisz po polsku, możesz skorzystać z bezpłatnej pomocy językowej. |

**This page is intentionally left blank**



# STATE OF COLORADO

## SNAP Periodic Report Form

**Sent To:**

Case #: 

**Return This Form To:**
EA Ongoing
1675 Garden Of The Gods Rd
Colorado Springs CO 80907-9444

(719) 636-0000

**Return Form By:** 04/15/2025

For Benefit Period:
05/01/2025 - 04/30/2026

**To continue your 24 month certification of SNAP benefits, we are required to review household circumstances at the 12 month midpoint.**

**If you need assistance completing this form, contact the county office above.**

**To complete this review, please:**

- Use block letters and write using **BLUE** or **BLACK** ink.
- Review all pre-filled information (grey fields) for accuracy. Any rows filled with "XXXXX" do not require your review.
- If you need additional space than what is provided, please send back form with additional pages.

## 1. Are any changes being reported in this form? ☐ YES ☐ NO

- Any changes reported can result in a reduction or termination of SNAP benefits.
- Turning this form in incomplete and/or after due date can result in receiving SNAP benefits on a later date than normal.

By signing below:

- I have read this form to continue my SNAP benefits and to the best of my knowledge and belief, my answers are true.
- I could go to prison or be required to pay fines if I knowingly give wrong or incomplete information; and other federal, state, and local officials may verify (check) any information I give.

**SIGN HERE:**

**DATE (MM/DD/YYYY):**

| Preferred Language Currently On File | Preferred Language Requested |
|---|---|
| English | |

059743806

PRFS-6
SNAP_Change_Report_Form22_EN

Page 1 of 14

## How We Contact You

## 2. Has the home address, mailing address, or phone number changed?   ☐ YES ☐ NO   ☐ I am now homeless

*If you marked "NO" above, please skip this section*

- If any address is updated on this page, it will be updated for every household member.
- To add or remove someone from the household, go to question 4.

|  |  |
|---|---|
| Home Address |  |
| Mailing Address |  |

If you have **moved to a new home address**, please provide updated information below:

- If you are updating this information, please also update your shelter expenses on the next page

Address Line 1                          Address Line 2

City                    State    Zip Code

**Is the new home address also the new mailing address?**  ☐ YES ☐ NO

**Did anyone in the household get LEAP for $20 or more within the past 12 months at the new address?**  ☐ YES ☐ NO

If you have a **new mailing address**, please provide updated information below:

Address Line 1                          Address Line 2

City                    State    Zip Code

If you need to **add/replace your phone number(s)**, please provide updated information below:

| Home (Currently On File) | XXXXXXXXXXXXXXXXXXXXXXXXXXXX | ☐ Please use this number to contact the household |
|---|---|---|
| Cell (Currently On File) |  | ☐ Please use this number to contact the household |
| Home (New) | ( ) - | ☐ Please use this number to contact the household |
| Cell (New) | ( ) - | ☐ Please use this number to contact the household |

PEFS-6
SNAP_Change_Report_Form22_EN
0579743806

Page 2 of 14

## Shelter Costs

## 3. Has your household had a change in shelter costs?    ☐ YES ☐ NO

*If you marked "NO" above, please skip this section*

- If your shelter costs have increased, this could result in an increase to your SNAP benefits.
- If your shelter costs have decreased, this will not affect your SNAP benefits until recertification unless you have moved.
- Examples of shelter costs: rent, mortgage, property taxes, and utilities (telephone, fuel for cooking or heating, water, electricity).
- **Review and provide updated amounts below for the shelter costs** that we have currently on file.
- If you need to add new shelter costs, do so in the second table.

### Shelter Costs Currently on File

| Shelter Cost Type | How Often Do You Pay? (Weekly, Every 2 Weeks, Monthly, etc.) | Amount You Told Us You Pay | Amount You Pay Now (Enter 0 if you no longer pay this expense) |
|---|---|---|---|
| Phone | Monthly | $25.00 | $ |
| Rent | Monthly | $750.00 | $ |
| XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | $ |
| XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | $ |
| XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | $ |
| XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | $ |

- **Add any new shelter costs** by completing the entire row in the table below.

### Adding New Shelter Costs

| Shelter Cost Type | How Often Do You Pay? (Weekly, Every 2 Weeks, Monthly, etc.) | Amount You Pay Now | Date Last Paid (MM/DD/YYYY) |
|---|---|---|---|
| | | $ | |
| | | $ | |

PRFS-6
SNAP_Change_Report_Form22_EN

0579743806

## People Who Live With You

### 4. Do you need to add or remove anyone in the household? ☐ YES ☐ NO

*If you marked "NO" above, please skip this section*

- Mark in the table below if **any members currently on file need to be removed from the household.**

#### Household Members Currently on File

| Remove? | Full Name | Relation To You | Birthdate | Male/Female | Social Security Number | US Citizen | Race/Ethnicity* |
|---------|-----------|-----------------|-----------|-------------|------------------------|------------|-----------------|
| ☐ REMOVE | ███████ | Self | ████████ | F | XXX-XX-██ | Y | W |
| ☐ REMOVE | XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXX | XXXXXXXXXXX | XXXXX | XXXXXXXX |
| ☐ REMOVE | XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXX | XXXXXXXXXXX | XXXXX | XXXXXXXX |
| ☐ REMOVE | XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXX | XXXXXXXXXXX | XXXXX | XXXXXXXX |
| ☐ REMOVE | XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXX | XXXXXXXXXXX | XXXXX | XXXXXXXX |

- **Add any new members to the household** by completing the entire row in the table below. Race/Ethnicity is optional.

#### Adding New Household Members

| Full Name | Relation To You | Birthdate (ex. MM/DD/YYYY) | Male/Female (M/F) | Social Security Number | US Citizen (Y/N) | Race/Ethnicity* |
|-----------|-----------------|---------------------------|-------------------|------------------------|------------------|-----------------|
| | | | | | | |
| | | | | | | |

* Race/Ethnicity options include: Asian-A; Hispanic/Latino-H; American Indian/Alaskan Native-AI; White-W; Native Hawaiian/Pacific Islander-NH; Black/African American-B; Other-O. Race/Ethnicity is optional.

## Vehicles

### 5. Does anyone in your household own vehicles not listed below? ☐ YES ☐ NO

*If you marked "NO" above, please skip this section*

- Examples of vehicles: cars, trucks, SUVs, vans, and motorcycles.
- **Review and update the vehicles** currently on file.
- If you need to add any new vehicles, do so in the second table.

#### Vehicles Currently on File

| Still Owned? | Owner(s) of the Vehicle | Type of Vehicle | Make and Model |
|---|---|---|---|
| ☐ No longer own | ▮ | Truck/SUV | Chevrolet TrackerZ |
| ☐ No longer own | XXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX |
| ☐ No longer own | XXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX |
| ☐ No longer own | XXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX |
| ☐ No longer own | XXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX |

- **Add any new vehicle** by completing the entire row in the table below and provide proof of ownership.

#### Adding New Vehicles

| Owner(s) of the Vehicle | Type of Vehicle | Make and Model | Current Value |
|---|---|---|---|
| | | | $ |
| | | | $ |

PRFS-6
SNAP_Change_Report_Form22_EN

▮ 059743806

Page 5 of 14

## Income in Your Home

**6. Has anyone in your household had a change in income or a change in the source of income? ☐ YES ☐ NO**

*If you marked "NO" above, please skip this section*

- **Any change in unearned income greater than $100 or a change in the source of income must be reported for the household.**
  - Examples of sources of unearned income: Unemployment benefits; Child Support; Retirement/Pension; Social Security Benefits; Veterans Benefits; Dividends/Interest; Trust; Loans/Gifts; In-kind money (i.e., work around the house in exchange for rent), Worker's Compensation; Alimony, Disability.

- **Review and provide updated amounts below** for the sources of income currently on file for your household.
- If you need to add any sources of income other than a job, do so in the second table. If you need to add a job, do so on the next page.

### Sources of Income Currently on File

| Person Receiving Income | Source of Income Received | How Often Is It Received? (Weekly, Every 2 Weeks, Monthly, etc.) | Amount Received Currently on File | Current Amount Received (If you no longer receive this, please enter 0) |
|---|---|---|---|---|
| XXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXX | $ |
| XXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXX | $ |
| XXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXX | $ |
| XXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXX | $ |
| XXXXXXXXXXX | XXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXX | $ |

- **Add any new source of income other than a job** below. You will need to complete the entire row.

### Adding Sources of Income

| Person Receiving Income | Source of Income Received | How Often Is It Received? (Weekly, Every 2 Weeks, Monthly, etc.) | When Did You Start Receiving This Income? (MM/DD/YYYY) | Amount Received |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |

PRES-6
SNAP_Change_Report_Form22_EN

0579743806

Page 6 of 14

# Jobs in the Household

## 7. Has anyone in the household started a new job? ☐ YES ☐ NO  *If you marked "NO", please skip this section*

- If anyone in the **household has started a new job** in the past year, please use space below to provide further information.

### New Job

Person Working Name

Employer Name

Employer Phone Number

( ) -

Employer Email

How often paid?
(Weekly, Every 2 Weeks, Monthly, etc.)

How much is paid each paycheck?
(Before Deductions)

$

When did this job start?
(MM/DD/YYYY)

/ /

How many hours worked a week? (On Average)

# Other Questions

**1. Does anyone in the household have a change in legal obligation to pay child support?**    ☐ YES ☐ NO

**2. Has any household member had substantial lottery or gambling winnings\* in the past 12 months?**    ☐ YES ☐ NO
*Substantial lottery or gambling winnings is a cash prize won in a single game before taxes or other amounts are withheld that is equal to or greater than $4,500.

**3. Does the household's total liquid assets\* total more than over $4,500?**    ☐ YES ☐ NO
*Examples of liquid assets: cash on hand, checking accounts, savings accounts, saving certificates, stocks, or bonds

# STOP!

## MEDICAL COSTS CAN INCREASE SNAP BENEFITS

### Would you like to update your medical costs? ☐ YES ☐ NO

**Medical Costs:** Seniors (at least age 60) or clients with disabilities can claim medical expenses. Medical costs can include co-pays, prescriptions, over-the-counter medications, health insurance, medical bills, transportation, and more.

**To Verify:** If you want to change your medical costs on file, mark "YES" above and send us back proof of the cost such as a bill, invoice, or receipt. Transportation costs for medical reasons can be self-declared.

| Monthly Medical Costs Currently on File | | |
|---|---|---|
| $0 ☒ | $35 - $200 ☐ | $201 or more ☐ |

- If you have no medical costs on file, include documentation to verify you have $35 or more in medical costs per month.
- If you already have over $35 on file, include documentation to verify you have $200 or more in medical costs per month.
- If you do not include any documentation about your medical expenses with this form, any current medical deductions you receive will continue until you recertify your benefits.

| Monthly Medical Costs Currently on File | | | |
|---|---|---|---|
| Person Who Pays | Medical Cost Type | How Often Do You Pay? (Weekly, Every 2 Weeks, Monthly, etc.) | Amount You Told Us You Pay |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |
| XXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXX |

PRFS-6
SNAP_Change_Report_Form22_EN

D59743806

## PLEASE READ CAREFULLY. DO NOT RETURN THIS PAGE.

The collection of the Social Security Number of each SNAP household member is authorized under the Food and Nutrition Act of 2008 (formerly the SNAP Act), as amended, 7 U.S.C. 2011-2036. The information will be used to determine whether your household is eligible or continues to be eligible to participate in the SNAP. We will verify this information through computer matching programs. This information will also be used to monitor compliance with program regulations and for program management.

A person found to have intentionally given false information cannot get SNAP for 12 months for the first offense, 24 months for the second offense, and permanently for the third offense. A court can also stop a person from getting SNAP for another 18 months. This crime is subject to prosecution under other state and federal laws. Receiving duplicate benefits of SNAP by lying about identity or residence will result in a ten (10) year disqualification for the first offense, a ten (10) year disqualification for the second offense, and a permanent disqualification for the third offense.

### USDA Nondiscrimination Policy

### Do Not Send Applications Here

In accordance with federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity.

Program information may be made available in languages other than English. Persons with disabilities who require alternative means of communication to obtain program information (e.g., Braille, large print, audiotape, American Sign Language), should contact the agency (state or local) where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339.

To file a program discrimination complaint, a Complainant should complete a Form AD-3027, *USDA Program Discrimination Complaint Form* which can be obtained online at:

https://www.usda.gov/sites/default/files/documents/USDA-OASCR%20P%20-Complaint-Form-0508-0002-508-11-28-17Fax2Mail.pdf, from any USDA office, by calling (833) 620-1071, or by writing a letter addressed to USDA. The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation. The completed AD-3027 form or letter must be submitted to:

1.  **mail:**

    Food and Nutrition Service, USDA
    1320 Braddock Place, Room 334
    Alexandria, VA 22314; or

2.  **fax:**

    (833) 256-1665 or (202) 690-7442; or

3.  **email:**

    FNSCIVILRIGHTSCOMPLAINTS@usda.gov

This institution is an equal opportunity provider.

### Do Not Send Applications Here

PRFS-6
SNAP_Change_Report_Form22_EN

Page 9 of 14

0579743806

**This page is intentionally left blank.**

PRFS-6
SNAP_Change_Report_Form22_EN

0579743806

# STATE OF COLORADO



## Send in Required Documents
### *We Need Documents to Complete Your Application*

Dear ████████████

When you apply for Supplemental Nutrition Assistance Program (SNAP) and/or cash benefits, you need to give us certain documents to show that what you provided in your application is correct.

## What do you need to do?

- Please look at the list below. See what documents you have.
- Give us copies of your documents **by 04/30/2025 to ensure we have all the information that we need to make a decision on your application**.
- We will need information for you and anyone in your household applying for SNAP benefits. Your household is anyone who lives with you and purchases and prepares food with you.
- You need to give only **ONE** document for each type of information. Sometimes one document can serve more than one purpose. (For example, a driver's license can show your identity and your address.)
- Please only give **copies** because **we cannot return any original documents to you**.

| Program: SNAP | |
|---|---|
| **Type of information** | **What are some examples of documents you can give us?** |
| **Identity** | • Driver's license or State identification card<br>• School or work identification card<br>• Medical insurance identification card<br>• Voter's registration card<br>• Birth certificate<br>• Passport |
| **Residency (where you live)** | • Driver's license<br>• Utility bills (such as electric, gas, or water)<br>• Lease or mortgage receipts showing address<br>• Mail sent to you at the stated address<br>• Library card showing address<br>• Voter's registration card |
| **Social Security number** | • Social Security number (not the card) or proof that you have applied for one.<br>  o *Not required for household members who are not applying for SNAP.* |
| **Immigration status** | • Immigration and naturalization documents<br>  o *Not required if you are a U.S. citizen or if you are not applying for SNAP.* |

## You may need to provide other documents depending on your situation.

| We may need additional documents if: | Type of information | What are some examples of documents you can give us? |
|---|---|---|
| Someone in your household is working | What you earn (wages or pay) | • Paycheck stubs (for the past 30 days)<br>• Employer statement (if you are paid in cash or if you do not have your check stubs)<br>• Self-employment invoices or receipts (includes rental income and freelance or contract work) |
| Someone in your household has other income (including Social Security or assistance payments) | What you receive as unearned or other income | • Social Security payment documents<br>• Other retirement or pension benefits<br>• Alimony<br>• Child support agreement<br>• Unemployment benefits |
| Someone in your household has savings or resources | What you have as other financial resources | • Statements for bank accounts, savings accounts, and/or CDs<br>• Stock shares or bonds |
| Someone in your household is receiving disability payments | What you receive for disability payments | • Supplemental Security Income (SSI) or Social Security Disability Insurance (SSDI) benefit documents<br>• Veterans Administration (VA) disability benefits statement |
| Your household has rent or a mortgage for where you live | What bills you have for rent or mortgage | • Copy of your lease<br>• Mortgage documents<br>• Property taxes<br>• Insurance on property |
| Your household has utility expenses | What bills you have for electricity, heat, gas, water, telephone etc. | • Utility bills (gas, water, electricity, telephone etc.) |
| Someone in your household is responsible for childcare or adult care costs | What you pay for childcare or dependent adult care costs | • Bills or receipts for childcare or dependent adult care |
| Someone in your household pays child support | What you pay for child support | • Copy of court order showing your child support obligations<br>• Income summary if child support is deducted from wages or income<br>• Proof of child support payments made |
| Someone in your household is 18–49 years old and a student | Proof of enrollment and what is paid for educational expenses | • Financial aid statement from school<br>• Enrollment forms or transcripts to verify your current status as a student<br>• Receipts for mandatory school fees, books, or supplies |

| We may need additional documents if: | Type of information | What are some examples of documents you can give us? |
|---|---|---|
| Someone in your household is age 60 or older or a person with a disability | Bills of medical expenses for this person (Does not include expenses paid by insurance or someone outside of the household) | • Medical bills<br>• Summary of provided services such as doctor or hospital visits<br>• An Explanation of Benefits (EOB) or other detailed receipts showing unreimbursed medical expenses<br>• Identification from the Medical Assistance Program for people 65 and older (Medicare) that shows Plan "B" coverage<br>• Prescription pill bottles showing cost on label or printout<br>• Medical payment agreement<br>• Invoices or receipts for medical equipment such as wheelchairs, hospital beds, or walkers (including any rental costs)<br>• Receipts for transportation and lodging to obtain medical treatment |

## What time periods should your documents cover?

In general, the documents you provide to us should cover the last 30 days before you applied for SNAP and cash benefits. Medical expenses can be averaged over 1 year.

## How can you give us the documents we need?

- If you have an interview in the office, please bring the documents or copies with you. If not, follow the instructions below.
- Please only give **copies** of your documents to your local office because **we cannot return any original documents to you**.

Choose the option that is easiest for you to give your local office **copies** of your documents:

- *Electronically:*

  You will need to create a login and password the first time you use the website or mobile application.

  - *Website:* You may upload your documents at CO.gov/PEAK.

  - *Mobile application:* You may use your mobile device to take photos of your documents and then upload them to the MyCoBenefits mobile application. You can also use a computer to scan and upload copies of your documents to the MyCoBenefits mobile application.

- *By mail:*

  EA Ongoing
  Po Box  2692
  Colorado Springs CO 80901-2692

- *In person:*

  El Paso County
  1675 Garden Of The Gods Rd
  Colorado Springs CO 80907-9444

- *By fax:*

  (719) 444-5139

## What will happen to your application?

- The sooner you can provide these documents, the sooner we can tell you if you can get SNAP or cash benefits.
- If you do not give us the documents within 30 days of applying, **we may have to deny your application**.

## What if you need more help?

- If you have trouble getting any of these documents or have questions, we can help.
  - We may be able to suggest other ways to verify this information.
  - If you cooperate with us, they will do everything they can to help get the needed documents.
- For more information:
  - You can call us at (719) 636-0000
  - You can visit the PEAK website at CO.gov/PEAK
- Toll-Free: 800-816-4451
- You can also get information from us about how to use an authorized representative if you need one.
  - An authorized representative is a person you select who can talk to us about your case.

Sincerely,

El Paso County
Po Box  2692
Colorado Springs CO 80901-2692

ATTACHMENT #7



BEST GRADUATE SCHOOLS U.S.NEWS    #UTHealth Houston    SHAPE THE FUTURE OF
School of Public Health    PUBLIC HEALTH



Home » AJPH » **March 2016**

## Massachusetts Inpatient Medicaid Cost Response to Increased Supplemental Nutrition Assistance Program Benefits

Rajan Anthony Sonik JD, MPH

[+] Author affiliations, information, and correspondence details

Accepted: November 07, 2015    Published Online: February 17, 2016

Abstract    **Full Text**    References    PDF/EPUB

### Abstract

Section: Choose ▾

*Objectives.* To investigate the impact of an increase in Supplemental Nutrition Assistance Program (SNAP) benefits on Medicaid costs and use in Massachusetts.

*Methods.* Using single and multigroup interrupted time series models, I examined the effect of an April 2009 increase in SNAP benefits on inpatient Medicaid cost and use patterns. I analyzed monthly Medicaid discharge data from 2006 to 2012 collected by the Massachusetts Center for Health Information and Analysis.

*Results.* Inpatient costs for the overall Massachusetts Medicaid population grew by 0.55 percentage points per month ($P < .001$) before the SNAP increase. After the increase, cost growth fell by 73% to 0.15 percentage points per month (–0.40; $P = .003$). Compared with the overall Medicaid population, cost growth for people with the selected chronic illnesses was significantly greater before the SNAP increase, as was the decline in growth afterward. Reduced hospital admissions after the SNAP increase drove the cost declines.

*Conclusions.* Medicaid cost growth fell in Massachusetts after SNAP benefits increased, especially for people with chronic illnesses with high sensitivity to food insecurity.

People in 1 in 7 US households experience food insecurity,[1] meaning they experience hunger, insufficient food, or concerns about having enough food.[2] Food insecurity is associated with a large set of health problems for both children and adults.[3–11] People with chronic illnesses, who usually have heightened costs of care, are both more likely to experience food insecurity[12–14] and more vulnerable to its health effects.[15] Understanding the contribution of this problem to health care utilization and costs, however, has been difficult with available data.[16]

One approach to doing so is to look at the inverse question; that is, examining the effects of alleviating food insecurity. The Supplemental Nutrition Assistance Program (SNAP; formerly the Food Stamps Program) is the largest domestic antihunger program.[17] Despite some methodological difficulties,[18,19] SNAP has been shown to at least partially alleviate food insecurity in recipients,[20,21] making it a good candidate for study. Unfortunately, changes to the program usually occur slowly, limiting the ability to detect broad changes in food insecurity levels and their potential impact on health. However, as part of the American Recovery and Reinvestment Act, maximum monthly SNAP allotments to beneficiaries were temporarily increased by 13.6% from

PDF
Help

April 2009 to October 2013.[22] This larger change to the status quo provided a unique opportunity to examine the effects of alleviating food insecurity on recipients.

I analyzed the relationship between the timing of the increase in SNAP benefits and patterns of health care utilization and costs. Massachusetts provided an ideal setting for this investigation. The Massachusetts Center for Health Information and Analysis collects detailed information on each admission to every hospital in the state, allowing analyses of both the general Medicaid population and those with chronic illnesses. Moreover, the state expanded Medicaid coverage as part of its health reform law in 2006, well before the April 2009 SNAP increase, and it passed a wide-ranging payment reform law that came into effect in 2012, well after the SNAP increase. Between these reforms was a time when economic growth was stagnant for low-income populations, even after the formal end of the Great Recession.[23] This provided an ample study period from October 2006 to August 2012.

## METHODS

Section: Choose

Data provided by the Massachusetts Center for Health Information and Analysis included information on all Medicaid and Medicaid managed care admissions to public and private Massachusetts hospitals for 71 months, from October 2006 to August 2012. Excluding certain nonroutine complex transfers, the final data set included information on 422 565 admissions. On the basis of the diagnostic-related group listed for each admission, I created a subgroup of 19 122 admissions of people with chronic health conditions. This approach allowed me to compare utilization and cost patterns between this subgroup and the general Medicaid population before and after the SNAP increase.

Research on the susceptibility to food insecurity for people with specific conditions is lacking. Although some studies have looked at associations between food insecurity and specific conditions,[24,25] these have not looked longitudinally at the effects of changes in food security status on disease outcomes. I therefore consulted 4 physician colleagues caring for patients with complex conditions (2 subspecialists and 2 primary care physicians) to develop a list of conditions that practitioners saw as particularly sensitive to food insecurity. The conditions needed to be severe enough and common enough to result in enough admissions to Massachusetts hospitals to provide adequate numbers for the analyses (i.e., multiple admissions across the state per month). They also had to be not so common and varied in severity as to mask any potential effect. Cardiovascular diseases were discussed but excluded for this latter reason. Ultimately, 6 conditions were selected for the study that all providers agreed should be included: sickle cell disease, diabetes, malnutrition (and failure to thrive), cystic fibrosis, asthma, and inflammatory bowel disease. Poor nutrition is associated with worse outcomes for each of these diseases,[26–31] further supporting the selections.

### Measures

Collapsing the admissions data by month provided total monthly inpatient Medicaid costs for the state, which was the primary outcome variable. This approach also provided a breakdown of variables for the utilization-related components of cost (monthly admissions and average length of stay [LOS] per admission) and the health care inflation component (average cost per day of admission). I ran separate models with each of these components as outcome variables to determine which, if any, drove cost changes. I measured all dependent variables as percentage point changes from the base month, October 2006, to make comparisons across groups readily interpretable. For control variables, I calculated the average age of patients admitted each month, as well as the percentage of monthly admissions for which patients were female, non-Hispanic White, non-Hispanic Black, Hispanic, homeless, on a Medicaid managed care plan, and identified as an emergency admission. Bivariate regressions showed significant associations between monthly costs and each of these covariates, warranting their inclusion in the final models.

### Statistical Analysis

With these monthly data and using the control variables, I conducted single and multigroup interrupted time series analys... Single interrupted time series models test for changes in slope (trends over time) and intercept (immediate changes in out... levels) associated with the timing of an intervention.[32–34] Multigroup interrupted time series models additionally test for differences between study groups in either of these changes.[32–34]

I modeled the effects of the SNAP increase for the overall Medicaid population in single interrupted time series models, and using multigroup models, I compared these results to those for people with chronic illnesses. For the multigroup analyses, I first compared trends for sickle cell disease to the overall Medicaid population because of the severity of sickle cell disease, its high sensitivity to stressors such as food insecurity, and its high costs of care.[35] I then grouped the other diseases with sickle cell disease in steps to increase the underlying sample size for each month of data. I first combined diabetes and malnutrition (and failure to thrive) with sickle cell disease because of their more direct relationship with nutritional status. Finally, I grouped all 6 chronic illnesses together. The statistical models were as follows:

(1) Single: $Y_t = \beta_0 + \beta_1(months)_t + \beta_2(post\_SNAP\uparrow\_binary)_t + \beta_3(post\_months)_t + \beta_{4-10} (controls) + e_t$

(2) Multigroup: $Y_t = \beta_0 + \beta_1(months)_t + \beta_2(post\_SNAP\uparrow\_binary)_t + \beta_3(post\_months)_t + \beta_4(chronic\_binary) + \beta_5(chronic\_binary)(months) + \beta_6(chronic\_binary)(post\_SNAP\uparrow\_binary) + \beta_7(chronic\_binary)(post\_months) + \beta_{8-14}(controls) + e_t$

"SNAP↑" refers to the April 2009 SNAP increase, and the "chronic_binary" interaction terms should be interpreted as differences from the results for the overall Medicaid population. Because the "post_" terms already represent differences, the "chronic_binary" × "post_" terms should be interpreted as one would interpret difference-in-differences.

To adjust for potential autocorrelation, as recommended when conducting interrupted time series analyses,[32–34] I allowed up to 1 year (12 months) of lag to be considered in the autocorrelated error structure. I used Stata version 13.0 (StataCorp LP, College Station, TX) and the ITSA package[34] for the analyses. The ITSA package uses Newey-West SEs, which address both autocorrelation and heteroskedasticity.[34]

**RESULTS**

Section:  [ Choose ▾ ] ⇅

For the overall Medicaid population, monthly inpatient costs grew by 0.55 percentage points per month ($P < .001$) before the SNAP increase, adjusting for controls. After the SNAP increase, the rate of growth was 0.15 percentage points per month (–0.40; $P$ =.003; Table 1; Figure 1), signifying a 73% decline. The change in intercept was not significant, meaning there was not a significant immediate change in costs within the first month of the SNAP increase.



TABLE 1—
Trends in Monthly Inpatient Medicaid Costs, Admissions, Average LOS per Admission, and Average Cost per Day of Admission Before and After the SNAP Increase of April 2009: Massachusetts, 2006–2012

I then modeled the other dependent variables—admissions, LOS per admission, and cost per day of admission (Table 1). For monthly admissions, a growth rate of 0.26 percentage points per month before the SNAP increase changed to a decrease of 0.18 percentage points per month afterward (–0.44; $P$=.002); the change in intercept was not significant. The change in trend for LOS per admission was not significant, but there was an immediate drop of 2.94 percentage points during the first month of the SNAP increase ($P$=.02). For cost per day of admission, there were no significant changes after the SNAP increase, either immediately or over time.

FIGURE 1— Inpatient Medicaid Cost Trends Before and After the April 2009 Supplemental Nutrition Assistance Program (SNAP) Increase: Massachusetts, 2006–2012

*Note.* The fitted line from a model without controls is shown to allow 2-dimensional presentation.

In the first multigroup model, monthly costs for people with sickle cell disease initially grew by 4.18 percentage points per month, compared with 0.70 percentage points per month for the overall Medicaid population (+3.48; $P < .001$; Table 1; note that the values for the overall Medicaid population differ slightly between multigroup models and from the single model because t[hey are] being adjusted for different chronic illnesses). After the SNAP increase, the growth rate of costs for sickle cell disease fell by 4.25 percentage points per month, compared with a fall of 0.57 percentage points per month for the overall Medicaid population (–3.68; $P$=.02; Table 1). In other words, costs for sickle cell disease grew about 6 times as fast before the SNAP increase, and this

growth rate fell about 7 and a half times as much afterward. The immediate change in costs did not differ significantly between the groups.

Combining data from sickle cell disease with data from diabetes and malnutrition (and failure to thrive) admissions also produced statistically significant pre–post differences in cost growth and decline compared with the overall Medicaid population (Table 1). Additionally, the immediate drop in costs for the group of chronic illnesses was significantly different from the change for the overall population (–19.85 percentage points; *P* = .002; Table 1). Finally, adding cystic fibrosis, asthma, and inflammatory bowel disease to the group of chronic illnesses also produced significant pre–post trend differences, although the difference in immediate change in costs was again nonsignificant (Table 1).

I conducted multigroup models comparing patterns in admissions, LOS per admission, and cost per day of admission as well. For all 3 chronic illness comparison groups, admissions for people with chronic illnesses grew significantly faster before the SNAP increase, and admissions growth dropped significantly more afterward (Table 1; Figure 2). Also, in all 3 comparisons, changes in LOS per admission and cost per day of admission after the SNAP increase were not significantly different between the chronic illness population and the general Medicaid group (Table 1).



FIGURE 2— Overall vs Chronic Illness Medicaid Admissions Before and After the April 2009 Supplemental Nutrition Assistance Program (SNAP) Increase: Massachusetts, 2006–2012

*Note.* Chronic illnesses in the model were sickle cell disease, diabetes, and malnutrition (and failure to thrive). Fitted lines from a model without controls are shown to allow 2-dimensional presentation.

## DISCUSSION

Section: Choose

Inpatient Medicaid cost growth declined significantly in Massachusetts after the SNAP increase. This decline in cost trends after the SNAP increase appears to have been driven by reduced hospital admissions and to some extent reduced LOS per admission, rather than by patterns in the cost per day of admission (i.e., health care inflation). This finding implies that health improvements drove the cost outcomes. Furthermore, hospital admissions and costs for the population of people with the selected chronic illnesses rose more sharply during the recession before the SNAP increase and fell more sharply after the increase compared with the overall Medicaid population. This is consistent with the idea that patients with these conditions are not only more susceptible to food insecurity but also particularly responsive to its alleviation. It also suggests that heightened food insecurity was an important factor in the rising health care costs before the SNAP increase.

Researchers previously examining the effect of food insecurity on health care costs have developed estimates on the basis of known associations between food insecurity and specific health conditions and between these conditions and increased utilization.[36] My findings extend these types of analyses with data from actual admissions. Importantly, my results imply not only that increasing food insecurity raises health care costs but also that alleviating food insecurity can reduce costs.

### Limitations

This study has several potential limitations. First, it is restricted to inpatient stays in Massachusetts, and therefore its findings might not generalize to other states or hospital settings. Second, because of the relatively limited literature available on the effects of food insecurity on people with specific conditions, the process of consulting physicians to select the conditions for analyses was necessarily somewhat informal. Still, the consensus among the practitioners and previous findings showing associations between poor nutrition and more severe outcomes for each disease raised my confidence in the selection of

conditions. Third, the study is limited by the fact that not all Medicaid beneficiaries receive SNAP. However, the overlap between Medicaid and SNAP eligibility is considerable.[37]

Furthermore, the multigroup interrupted time series models are particularly strong.[32-34] Potential confounders would have had to occur at the same time as the SNAP increase, and they would have had to cause different effects on the cost and utilization patterns of people with chronic illnesses than on people in the general Medicaid population. Finally, the SNAP increase took place during a complex economic downturn and amid a host of efforts to revive the economy. The strengths of the multigroup models again buffer against this concern, however. Additionally, during the study period, the SNAP increase was the only immediate large-scale intervention that was both directed at low-income populations and sustained continuously once it began.

### Policy Implications

My findings indicate that the costs of the SNAP increase were partially offset by Medicaid savings, especially for beneficiaries with chronic illnesses, who typically have elevated costs of care. Also, because of the link between additional SNAP benefits and reduced hospital admissions, it appears that the allotment amounts before the SNAP increase may not have been sufficient to fully alleviate food insecurity and its associated health effects. This is particularly relevant because the SNAP increase under the American Recovery and Reinvestment Act expired in October 2013 and because Congress has repeatedly proposed more cuts. Moreover, my findings suggest, at least in part, that the additional SNAP benefits in Massachusetts were directed at reductions in food insecurity that improved health. This is important information for ongoing policy debates regarding the appropriate levels of SNAP funding and competing claims about how beneficiaries use their benefits.

More broadly, food security is recognized as a key determinant of health.[38] Because of the extraordinarily high costs of health disparities[39,40] and because of the general recognition that addressing the social determinants of health will be critical to reducing health disparities,[38] the effect of alleviating social ills such as hunger on health care outcomes and costs warrants further research.

## ACKNOWLEDGMENTS

I am funded through an Agency for Healthcare Research and Quality T32 Institutional Health Services Research Training Program grant.

I thank Jon Chilingerian, Andrew Wilson, and Dominic Hodgkin of Brandeis University, Philippa Sprinz of Hasbro Children's Hospital, and Lara Bishay of Boston Children's Hospital for their thoughtful advice.

## HUMAN PARTICIPANT PROTECTION

This study was approved by the Brandeis University institutional review board.

REFERENCES                                                    Section:  Choose ⬍

# References

1. Coleman-Jenson A, Gregory C. Key statistics and graphics. 2015. Available at: http://www.ers.usda.gov/topics/food-nutrition-assistance/food-security-in-the-us/key-statistics-graphics.aspx. Accessed August 3, 2015. Google Scholar
2. Bickel GW, Nord M, Price C, Hamilton W, Cook J. Guide to measuring household food security in the United States. 2000. Available at: http://www.fns.usda.gov/sites/default/files/FSGuide.pdf. Accessed August 3, 2015. Google Scholar
3. Alaimo K, Olsen CM, Frongillo EA Jr. Food insufficiency and American school-aged children's cognitive, academic, and psychosocial development. Pediatrics. 2001;108(1):44–53. Medline, Google Scholar
4. Bronte-Tinkew J, Zaslow M, Capps R, Horowitz A, McNamara M. Food insecurity works through depression, parenting, and infant feeding to influence overweight and health in toddlers. J Nutr. 2007;137(9):2160–2165. Crossref, Medline, Google Scholar
5. Casey PH, Szeto KL, Robbins JM, et al. Child health-related quality of life and household food security. Arch Pediatr Adolesc Med. 2005;159(1):51–56. Crossref, Medline, Google Scholar

6. Cook JT, Frank DA, Levenson SM, et al. Child food insecurity increases risks posed by household food insecurity to young children's health. J Nutr. 2006;136(4):1073–1076. Crossref, Medline, Google Scholar

7. Ding M, Keiley MK, Garza KB, Duffy PA, Zizza CA. Food insecurity is associated with poor sleep outcomes among US adults. J Nutr. 2015;145(3):615–621. Crossref, Medline, Google Scholar

8. Kleinman RE, Murphy JM, Little M, et al. Hunger in children in the United States: potential behavioral and emotional correlates. Pediatrics. 1998;101(1):E3. Crossref, Medline, Google Scholar

9. Leung CW, Epel ES, Willett WC, Rimm EB, Laraia BA. Household food insecurity is positively associated with depression among low-income supplemental nutrition assistance program participants and income-eligible nonparticipants. J Nutr. 2015;145(3):622–627. Crossref, Medline, Google Scholar

10. Park CY, Eicher-Miller HA. Iron deficiency is associated with food insecurity in pregnant females in the United States: National Health and Nutrition Examination Survey 1999–2010. J Acad Nutr Diet. 2014;114(12):1967–1973. Crossref, Medline, Google Scholar

11. Whitaker RC, Phillips SM, Orzol SM. Food insecurity and the risks of depression and anxiety in mothers and behavior problems in their preschool-aged children. Pediatrics. 2006;118(3):e859–e868. Crossref, Medline, Google Scholar

12. Bartfeld J, Dunifon R. State-level predictors of food insecurity and hunger among households with children. Available at: http://naldc.nal.usda.gov/download/32791/PDF. Accessed August 3, 2015. Google Scholar

13. Huang J, Guo B, Kim Y. Food insecurity and disability: do economic resources matter? Soc Sci Res. 2010;39(1):111–124. Crossref, Google Scholar

14. Nord M. Characteristics of low-income households with very low food security: an analysis of the USDA GPRA food security indicator. Available at: http://www.ers.usda.gov/media/196569/eib25_1_.pdf. Accessed August 3, 2015. Google Scholar

15. Coleman-Jensen A, Nord M. Food insecurity among households with working-age adults with disabilities. Available at: http://www.ers.usda.gov/media/980690/err_144.pdf. Accessed August 3, 2015. Google Scholar

16. Lee JS. Food insecurity and healthcare costs: research strategies using local, state, and national data sources for older adults. Adv Nutr. 2013;4(1):42–50. Crossref, Medline, Google Scholar

17. US Department of Agriculture. Supplemental Nutrition Assistance Program (SNAP). Available at: http://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program-snap. Accessed August 3, 2015. Google Scholar

18. Gregory C, Rabbitt MP, Ribar DC. The Supplemental Nutrition Assistance Program and food insecurity. Available at: http://uknowledge.uky.edu/cgi/viewcontent.cgi?article=1010&context=ukcpr_papers. Accessed August 3, 2015. Google Scholar

19. Caswell JA, Yaktine AL, eds. Supplemental Nutrition Assistance Program: Examining the Evidence to Define Benefit Adequacy. Washington, DC: National Academy Press; 2013. Google Scholar

20. Mabli J, Ohls J. Supplemental Nutrition Assistance Program participation is associated with an increase in household food security in a national evaluation. J Nutr. 2015;145(2):344–351. Crossref, Medline, Google Scholar

21. Nord M, Golla AM. Does SNAP decrease food insecurity: untangling the self-selection effect. 2009. Available at: http://www.ers.usda.gov/media/184824/err85_1_.pdf. Accessed August 3, 2015. Google Scholar

22. Dean S, Rosenbaum D. SNAP benefits will be cut for nearly all participants in November 2013. Available at: http://www.cbpp.org/sites/default/files/atoms/files/2-8-13fa.pdf. Accessed August 3, 2015. Google Scholar

23. Fry R, Kochchar R. America's wealth gap between middle-income and upper-income families is widest on record. 2014. Available at: http://www.pewresearch.org/fact-tank/2014/12/17/wealth-gap-upper-middle-income. Accessed August 3, 2015. Google Scholar

24. Seligman HK, Laraia BA, Kushel MB. Food insecurity is associated with chronic disease among low-income NHANES participants. J Nutr. 2010;140(2):304–310. Crossref, Medline, Google Scholar

25. Skalicky A, Meyers AF, Adams WG, Yang Z, Cook JT, Frank DA. Child food insecurity and iron deficiency anemia in low-income infants and toddlers in the United States. Matern Child Health J. 2006;10(2):177–185. Crossref, Medline, Google Scholar

26. Reid M. Nutrition and sickle cell disease. C R Biol. 2013;336(3):159–163. Crossref, Medline, Google Scholar

27. Gau BR, Chen HY, Hung SY, et al. The impact of nutritional status on treatment outcomes of patients with limb-threatening diabetic foot ulcers. J Diabetes Complications. 2015;29(7):882–886. Crossref, Medline, Google Scholar

28. Higgins PA, Daly BJ. Adult failure to thrive in the older rehabilitation patient. Rehabil Nurs. 2005;30(4):152–159. Crossref, Medline, Google Scholar

29. Hankard R, Munck A, Navarro J. Nutrition and growth in cystic fibrosis. Horm Res. 2002;58(suppl 1):16–20. Crossref, Medline, Google Scholar

30. Kim JH, Ellwood PE, Asher MI. Diet and asthma: looking back, moving forward. Respir Res. 2009;10(1):49–55. Crossref, Medline, Google Scholar

31. Wiskin AE, Wootton SA, Beattie RM. Nutrition issues in pediatric Crohn's disease. Nutr Clin Pract. 2007;22(2):214–222. Crossref, Medline, Google Scholar

32. Shadish WR, Cook TD, Campbell DT. Experimental and Quasi-Experimental Designs for Generalized Causal Inference. Boston, MA: Houghton Mifflin; 2002. Google Scholar

33. Wagner AK, Soumerai SB, Zhang F, Ross-Degnan D. Segmented regression analysis of interrupted time series studies in medication use research. J Clin Pharm Ther. 2002;27(4):299–309. Crossref, Medline, Google Scholar

34. Linden A. Conducting interrupted time series analysis for single and multiple group comparisons. Stata J. 2015;15(2):480–500. Google Scholar

35. Kauf TL, Coates TD, Huazhi L, Mody-Patel N, Hartzema AG. The cost of health care for children and adults with sickle cell disease. Am J Hematol. 2009;84(6):323–327. Crossref, Medline, Google Scholar

36. Shepard DS, Setren E, Cooper D. Hunger in America: suffering we all pay for. 2011. Available at: https://www.americanprogress.org/wp-content/uploads/issues/2011/10/pdf/hunger_paper.pdf. Accessed August 3, 2015. Google Scholar

37. Dorn S, Wheaton L, Johnson P, Dubay L. Using SNAP to establish, verify and renew Medicaid eligibility. Available at: http://www.urban.org/sites/default/files/alfresco/publication-pdfs/412808-Using-SNAP-Receipt-to-Establish-Verify-and-Renew-Medicaid.PDF. Accessed August 3, 2015. Google Scholar

38. Woolf SH, Braveman P. Where health disparities begin: the role of social and economic determinants—and why current policies may make matters worse. Health Aff (Millwood). 2011;30(10):1852–1859. Crossref, Medline, Google Scholar

39. LaVeist TA, Gaskin D, Richard P. Estimating the economic burden of racial health inequalities in the United States. Int J Health Serv. 2011;41(2):231–238. Crossref, Medline, Google Scholar

40. Schoeni RF, Dow WH, Miller WD, Pamuk ER. The economic value of improving the health of disadvantaged Americans. Am J Prev Med. 2011;40(1 suppl 1):S67–S72. Crossref, Medline, Google Scholar

ALSO ON AJPH



ENOUGH: COVID-19, Structural Racism, ...

5 years ago · 2 comments

American Journal of Public Health (AJPH) from the American Public Health ...

Quarantine in the 21st Century: To Be ...

6 years ago · 1 comment

American Journal of Public Health (AJPH) from the American Public Health ...

The Effect of Large-Capacity Magazine ...

6 years ago · 3 comments

Results. Between 1990 and 2017, there were 69 high-fatality mass shootings. ...

Fighting Independent Risk Assessment of ...

7 years ago · 3 comments

The vast majority of Americans trust that science is an essential ...

The E-Cigarette Debate: What Counts as ...

7 years ago · 1 comment

Thus, competing priorities determined what counted as evidence when it came to ...

Teach... Will N...

6 years

Americ Health Americ

0 Comments

Login ▾

G

Start the discussion…

LOG IN WITH          OR SIGN UP WITH DISQUS ⓘ

Name

♡    Share

Best    Newest    Oldest

Be the first to comment.

PDF

Help

Subscribe        Privacy        Do Not Sell My Data

**TOOLS**

Export Citation

Reprints

Permissions

Download PDF

Track Citations

Add To Favorites

Downloaded 3,298 times

**SHARE**



Picked up by **2** news outlets
Blogged by **3**
Referenced in **3** policy sources
Posted by **34** X users

**64** readers on Mendeley

See more details



**ARTICLE CITATION**

Rajan Anthony Sonik, "Massachusetts Inpatient Medicaid Cost Response to Increased Supplemental Nutrition Assistance Program Benefits", *American Journal of Public Health* 106, no. 3 (March 1, 2016): pp. 443-448.

https://doi.org/10.2105/AJPH.2015.302990

PMID: 26794167

Recommend this Journal
to your library.

✉ Sign up for eToc Alerts



We recommend

Support for Supplemental Nutrition Assistance Program (SNAP) Policy Alternatives Among US Adults, 2018
Rebecca L. Franckle, Am J Public Health, 2019

Links of the Supplemental Nutrition Assistance Program With Food Insecurity, Poverty, and Health: Evidence and Potential
Brynne Keith-Jennings, Am J Public Health, 2019

Effects of Cuts in Medicaid on Dental-Related Visits and Costs at a Safety-Net Hospital
Martha Neely, Am J Public Health, 2014

Multiple program participation: comparison of nutrition and food assistance program benefits with food costs in Boston, Massachusetts.

Capturing incentives and avoiding penalties: The carrot and the stick 🔗
James C. Stevens, Neurology: Clinical Practice, 2013

The 340B benefit program 🔗
Saty Satya-Murti, Neurology: Clinical Practice, 2018

What is the impact of Inflation Reduction Act negotiated prices for non-insulin diabetes drugs on Louisiana Medicare costs? A forecasting model analysis 🔗
Debra Winberg, Pharmacoeconomics and Policy, 2025

Expanding incentives for coordinated, patient-centered care 🔗
William G. Mantyh, Neurology: Clinical Practice, 2018

J L Wiecha, Am J Public Health, 2011

Powered by 

**American Journal of Public Health®**
800 I Street NW, Washington, DC 20001-3710
202-777-2742

Print ISSN: 0090-0036 | Electronic ISSN: 1541-0048
© 2026 American Public Health Association

During your search of AJPH content, a Scorecard Research survey may pop-up. This survey is optional, and you may opt out of receiving future survey requests by clicking the "opt-out" link.

Powered by Atypon® Literatum

PDF
Help

ATTACHMENT #8

 **Politics**

Subscribe

# Food banks scramble after USDA halts $500 million in deliveries

By Tami Luhby, CNN

🕐 4 min read · Published 8:19 AM EDT, Sat March 22, 2025

   



The Capital Area Food Bank had $1.3 million worth of government-supplied food deliveries canceled.
Capital Area Food Bank

**(CNN) —** In the coming weeks, the shelves at dozens of food pantries in California's Fresno County will be a little emptier. Visitors won't be able to take home as many groceries, and their bags will contain fewer nutritious items like chicken, eggs, milk and cheese.

the additional funding last year.

The Central California Food Bank, which distributes food to 60 pantries in the county, recently learned that 13 truckloads of groceries – worth $850,000 – set to be delivered between April and July were canceled. It comes at a time when many residents are struggling to afford food since supermarket prices remain high, said Natalie Caples, the food bank's co-CEO.

"My food bank in Fresno can't magically come up with $850,000 and 500,000 pounds of food to backfill that cancelation," Caples said, noting that the nonprofit is already running at a deficit. "It means neighbors are getting less food when they show up at these distribution sites, and they're getting a lesser variety of foods."



The Central California Food Bank had $850,000 in USDA-supplied food deliveries canceled. Courtesy Central California Food Bank

The USDA confirmed to Feeding America, a nationwide network of more than 200 food banks and 60,000 meal programs, that the agency is reviewing the funding, said Vince Hall, chief government relations officer at the nonprofit.

"It is our hope that that the review will conclude with a decision to continue investing CCC (Commodity Credit Corporation) dollars in food purchases," Hall said, noting that food banks from coast to coast are in danger of not having enough items to meet the need. The problem is particularly acute in rural areas, where food banks rely even more on government-supplied groceries.

The $500 million in funding came from the USDA's Commodity Credit Corporation, which at times provides additional resources to purchase food from American farmers and ranchers and send it to emergency food providers. The pause comes soon after the agency announced it is ending two Covid-19 era programs that provided money for food banks and schools to purchase food from local and regional farmers and ranchers, halting some $1 billion in funding.

Asked for comment on the pause, the USDA said that the Biden administration created "unsustainable programming and expectations using the Commodity Credit Corporation."

The agency noted that it continues to buy food for The Emergency Food Assistance Program, spending more than $166 million so far this fiscal year, which began October 1. Also, it has purchased more than $300 million in various poultry, fish, fruits, vegetables and tree nuts through another assistance program and recently approved an additional $261 million in purchases of more fruits, vegetables and tree nuts.

Politico first reported the halt in food deliveries.

In the Washington, DC, metro area, the Capital Area Food Bank is scrambling to replace $1.3 million in food deliveries that have been canceled, said Radha Muthiah, CEO of the nonprofit, which served 64 million meals through more than 400 partners agencies last year. Some 27 trucks containing the equivalent of 670,000 meals, including chicken, eggs, blueberries and other highly nutritious items, are now listed as "returned" in the USDA portal, she said.

The food bank is turning to its supporters – including food retailers and wholesalers, corporations, foundations, individual donors and others – to try to close at least part of the gap, although it will be hard to do in such a short period of time, Muthiah said.



The Capital Area Food Bank is trying to replace the loss of government-supplied food deliveries with donations from corporations and individuals. Courtesy Capital Area Food Bank

"We are really trying very hard not to reduce the amount of food that flows through our network because we know it is needed by folks right now and potentially needed by more individuals who might be affected by some of the cutbacks in the federal government workforce," Muthiah said.

But not all food banks can turn to private and corporate donors to make up for loss of USDA-supplied food.

Feeding Southwest Virginia, which serves 26 mostly rural counties, had 10 truckloads containing $513,000 worth of food paused. It doesn't have the resources to buy food to replace those now-canceled deliveries, said Pamela Irvine, the nonprofit's CEO.

"We have to make some tough decisions, much like the families or neighbors that are struggling now," Irvine said. "It could be that some of our agencies and programs will have to provide less food, or it could be that we provide food to less neighbors."

*This story has been updated with additional information.*

## Up next

## Up next

Will you notice any change at the grocery store because of RFK Jr.'s new food guidelines? You already have

3 minute read



Trump administration freezes billions in social services funding to five Democratic states

5 minute read



Trump is freezing funds for small but key welfare program. Here's what TANF does

4 minute read



RFK Jr.'s new food pyramid puts meat, dairy at the top. What you should eat

7 minute read



## Most read

**1**   Trump wants to own Venezuela's oil, but its largest oil customer is speeding toward clean energy

**2**   What's behind the highly unusual move to block Minnesota officials from investigating ICE shooting

**3**   Do ICE agents have absolute immunity? No, experts say, but it's not easy for a state to prosecute

## MORE FROM CNN


Will you notice any change at the grocery store because of RFK ...


Trump administration freezes billions in social services ...


Trump is freezing

 funds for small but key welfare program. Here's ...

## NEWS & BUZZ

 Trump wants to own Venezuela's oil, but its largest oil customer is ...

 What's behind the highly unusual move to block Minnesota ...

 Do ICE agents have absolute immunity? No, experts say, but it's not easy for a ...

Search CNN...

Subscribe

Sign in

Listen

Watch

US

World

Politics

Business

Markets

Health

CNN Underscored

Entertainment

Tech

Style

Travel

Sports

Science

Climate

Weather

Ukraine-Russia War

Israel-Hamas War

Watch

Listen

Games

About CNN

## Politics

### FOLLOW CNN POLITICS

   

### DOWNLOAD THE CNN APP

 

Subscribe    Newsletters    Transcripts    Help Center

© 2026 Cable News Network. A Warner Bros. Discovery Company. All Rights Reserved.

CNN Sans ™ & © 2016 Cable News Network.