# DECLARATION OF ABBY MCCLELLAND

I, Abby McClelland, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of Colorado, and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the director of the Food and Energy Assistance Division (FEAD) within the Colorado Department of Human Services (CDHS or Agency). FEAD lives in CDHS's Office of Economic Security and administers the Supplemental Nutrition Assistance Program (SNAP).

3. I have held this position since June 2024. Prior to this role, I was responsible for data analysis on various federal and state benefit programs, including SNAP, for CDHS and for the Boulder County Department of Human Services. I also worked extensively with the SNAP program in my seven years of experience as an administrative benefits attorney for Neighborhood Legal Services in Los Angeles, California.

4. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## Additional Information Based on USDA's Response

5. I have reviewed the declaration of Shiela Corley, submitted on behalf of the USDA in this lawsuit. Based on my knowledge and experience in my role, several points merit response and further context.

6. The Corley Declaration cites a concern that county-administered SNAP programs are more likely to have higher rates of fraud, waste, and abuse than less decentralized programs. As an example, the Corley Declaration cites data regarding previously undetected intrastate duplication (i.e., persons who received benefits in multiple counties) uncovered in data audits from other states (not Colorado) as being a particular concern. Corley Decl. ¶ 20. This concern

was raised for the first time in the Corley Declaration and was not articulated in the Recertification Letter sent to CDHS.

7. The Declaration misunderstands Colorado's system. Although the State's counties administer the SNAP program, Colorado's SNAP database is maintained at a state-wide level. This system, called the Colorado Benefits Management System (CBMS), provides centralized administration of public benefits data, including SNAP, within the State and means that, should a person apply for benefits in multiple Colorado counties, CBMS would automatically flag it and prohibit that person from receiving benefits in multiple counties. Colorado is not aware of, and USDA has never identified, any issues in Colorado with persons receiving SNAP benefits in multiple counties.

8. In any event, the "pilot project" would not do anything to address any purported decentralization issue.

9. For the first time, the Corley Declaration cites 2023 and 2024 Management Evaluations (MEs), and in particular, Colorado's pursuit of intentional program violations (IPVs) as a basis for USDA's decision to place Colorado in this pilot program. Corley Decl. ¶¶ 21–24. The issue of IPVs was not mentioned in the Recertification Letter.

10. IPVs involve situations where an individual may have intentionally violated program rules. In the small number of cases discussed in the MEs, the four counties at issue had already taken action to uncover the violations and ensure the individual or household did not continue to receive inappropriate SNAP benefits. In the MEs, the USDA did not raise concerns with the counties' fraud detection practices, but were instead focused on situations where counties did not pursue additional IPV sanctions, including disqualification proceedings or

referral for potential prosecution. None of the counties identified in the 2023 and 2024 MEs were selected to participate in the "pilot project."

11. Colorado has taken all the actions requested by USDA to remediate the concerns identified in the MEs. USDA closed the 2023 issue and indicated that it would close the 2024 issue after Colorado completes publication of a Fraud Handbook, which has been approved by FNS and should be published soon.

12. Declining to pursue enhanced sanctions for each and every IPV is not related to recertifications or detecting fraud. In fact, USDA only offered praise regarding fraud detection, describing Denver as a "model" for fraud-detection investigations and commending them for "excellent work." Defendants' Ex. C, p. 9 of 18, Section VIII.

13. Far from a "serious integrity issue, with the potential to affect the whole state," as the Corley Declaration now claims, prior to this point FNS has indicated that it believes Colorado's IPV issue has been resolved or will be resolved with the upcoming manual publication. Most importantly, the "pilot project" has no connection to IPVs and would only harm Colorado's efforts because it will force resources to be shifted away from pursuing IPVs to comply with the pilot project.

14. The Corley Declaration also mentions "public reports concerning apparently illegal activities in Colorado, including Denver area gang operations, and abuse of public benefits." Corley Decl. ¶ 25. The Recertification Letter did not articulate those concerns, and USDA has not provided any such public reports. I am unaware of any public reports either linking Denver-area gang operations to abuse of public benefits, or of public reporting of widespread fraud in Colorado's SNAP program generally.

3

15. In short, the purported reasoning for the pilot program now articulated to this Court did not appear in the Recertification Letter. Even if the newly identified allegations raised by USDA had merit, the pilot program would not address them.

### The Pilot Project Remains Unfeasible

16. The Corley Declaration claims that Colorado and its counties have done nothing on the pilot project. That is not accurate. Since receipt of the Recertification Letter, I have been in contact with administrators for the counties selected for inclusion in the pilot program. I have worked with these administrators to evaluate how such a project could be completed and what resources would be necessary. All of the selected counties indicated that they could not comply with the parameters as stated in the Recertification Letter, nor could they comply with the 30-day timeline.

17. I have reviewed USDA's response brief, as well as the Corley Declaration, which appear to withdraw the in-person interview requirement of the pilot program. To my knowledge, and based on my conferrals with the counties, I am not aware of USDA ever offering to withdraw the in-person interview requirement prior to the filing of the response in this case. In fact, we understood the in-person interview requirement to be the core of the proposed pilot and the method by which this pilot would supposedly better identify fraud that FNS believed was going undetected in our regular course of operations.

18. Notwithstanding this USDA concession, the pilot project remains unfeasible. Even if all households were subjected to an additional interview over the phone, the counties do not have the staffing or resources to complete the recertifications with interviews within the allotted time, or even with the small extension of time that USDA has suggested it might consider.

19. This is true even as to Douglas County, which is by far the smallest of the counties selected for participation. Douglas County has indicated that it could not complete the requirements until July 31, 2026, at the earliest.

20. Nor does it resolve the conflicts with federal statutes and regulations and with Colorado rules. The pilot project does not actually waive any federal statutes or regulations, nor does it provide any time for Colorado to modify its rules that conflict with the requirements of the project, including rules regarding recertification notices and interview procedures.

21. In short, neither the removal of the in-person interview requirement, nor a small incremental extension will resolve the logistical infeasibility posed by the pilot project. It also does not resolve any of the other problems identified in my initial declaration, including significant harm to public trust in Colorado's program.

**Unreimbursed Expenses**

22. An additional problem is that USDA has not offered any compensation or reimbursement to Colorado to implement the pilot project. The Corley Declaration identifies funds provided to CDHS, including its first quarter disbursement but the funds identified are for Colorado's ordinary SNAP administrative expenses without the imposition of this pilot project. Using those dollars for the pilot project would not address the increased cost to Colorado as a result of the pilot project. Put differently, if CDHS used those dollars for the pilot project, it would leave a significant shortfall for ordinary expenses, including reimbursements to counties for expenses already incurred, maintenance to our computer system, and other ongoing administrative costs. The pilot project imposes substantial additional administrative costs that USDA has not offered to pay for and that Colorado has no ability to recover.

23. CDHS does not have funding to cover those additional expenses. Completing the pilot project would result in a significant budget shortfall.

### Otherwise Eligible Households Will Lose Their Benefits

24. The pilot project will cause some eligible households to lose their benefits. The Corley Declaration claims that only ineligible households will be removed. But the pilot project requires that all households in the five selected counties must be recertified without exception. As discussed in my earlier declaration, this recertification requires that every household must submit a new application, documenting all of their income, expenses, and assets, along with proof, plus undergo an interview. This is akin to filing a tax return on steroids.

25. If a household that was otherwise eligible does not submit this application or finish the full recertification process for any reason, the household will not be recertified. If a household is not recertified, the household becomes ineligible and will lose their benefits. For example, if a household was recertified on December 15 for a six-month period but ignores a new recertification notice sent shortly thereafter believing it to be an error, that household will be made ineligible by the lack of recertification through the pilot project. Based on my experience, the pilot project will cause a significant number of otherwise eligible households to lose their benefits.

26. In addition to causing loss of benefits, the pilot project poses an additional substantial burden on SNAP households in the five counties. The ultimate effect will in most circumstances cause these households to be required to complete the recertification process three times instead of two within a year. Based on my experience, most households would find completing this additional process confusing and burdensome. The pilot project would require more than 100,000 SNAP households to take on this burden.

**Online Purchasing Pilot**

27.     The Corley Declaration identifies the Online Purchasing Pilot as an example project that Colorado participated in but leaves out key details. This pilot project was mandated by Congress as part of the 2014 Farm Bill. Notwithstanding that it was a statutorily required pilot project, USDA did not seek to compel any States to participate, nor did it threaten sanctions against any States who did not comply, nor did it impose unilateral requirements. USDA published notices in the federal register, *see, e.g.*, 83 Fed. Reg. 36515 (July 30, 2018), complied with the requirements of the Paperwork Reduction Act, published detailed pilot procedures, and requested volunteers to participate (listing the OMB control number) in which States applied for waivers to participate. USDA's purpose for this previous pilot was to evaluate the project's effects on food insecurity and found "reduced food insufficiency among the low-income sample by 2 percentage points, or 8 percent of the average food insufficiency rate." Jordan W. Jones et al., *USDA Economic Research Service, SNAP Online Purchasing Pilot Reduced Food Insufficiency Among Low-Income Households During Early Pandemic* (Apr. 16, 2024), https://www.ers.usda.gov/amber-waves/2024/april/snap-online-purchasing-pilot-reduced-food-insufficiency-among-low-income-households-during-early-pandemic. Colorado enthusiastically opted in to this pilot program to benefit its SNAP recipients.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in   Denver, CO   on   January 27  , 2026.

/s/ Abby McClelland
Abby McClelland
Director, Food and Energy Assistance Division
Colorado Department of Human Services

7