

**PHIL WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**SHANNON STEVENSON**
Solicitor General

**TANJA WHEELER**
Associate Chief Deputy Attorney
General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

**Office of the Attorney General**

March 26, 2026

RE:    **Defendants' Proposed Motion to Dismiss**
*Colorado v. Trump, et al.*, No. 1:25-cv-03428-RBJ (D. Colo.)

Dear Judge Jackson:

This case concerns an unprecedented series of retaliatory attacks and threats by the President and the Executive Branch against the State of Colorado for lawfully exercising its sovereign powers reserved by the Constitution. Defendants do not contest that they engaged in this course of action. Instead, they shockingly argue that there is no cognizable constitutional claim to prevent the President from punishing States and coercing them into giving up their sovereign authority.

Defendants' arguments turn the Constitution on its head: the Framers intentionally limited the federal government to a "few and defined" set of enumerated powers, while leaving the States with "numerous and indefinite" powers. The Federalist No. 45 (James Madison). Defendants seek to undermine this foundational structure by allowing the President to abuse his finite enumerated powers to extract any and all powers reserved for the States. The Constitution forbids these actions. In short, Defendants propose that the President and federal government can deprive States of their sovereign power—and exceed the authority granted to the President and federal government—through coercion. If Defendants' extraordinary arguments are accepted, it will change this country forever, and not for the better.

Most importantly, regardless of whether and how the Court allows Defendants to raise these arguments, it should order that discovery begin immediately and that the parties submit a discovery plan forthwith. This matter has now been pending for four months, and there is no good cause for further discovery delay. Fed. R. Civ. P. 16(b)(2). Defendants continue to attack and threaten Colorado, even as this action is pending.

Defendants' arguments in their letter are also unlikely to succeed. First, Defendants propose relitigating issues just decided by the recent preliminary injunction decision. Letter at 3 n.1; Dkt. 68. There is no reason to allow this. Defendants have preserved their arguments. A motion to dismiss on these same grounds is a waste of court and party resources.

Second, to the extent Defendants raise new arguments, those grounds are unlikely to be successful, as discussed below. Moreover, these grounds may be more efficiently raised at the summary judgment stage with the benefit of a developed factual record, thereby avoiding duplicative briefing at later stages that will just repeat these same arguments. Colorado briefly addresses these new arguments.

1

**Counts I and II**

*Lack of constitutional claim*: Defendants argue that there is no cognizable constitutional claim for "discrimination against a State." This argument is largely a strawman—the Amended Complaint does not even mention the word discrimination. The argument applies, at most, tangentially to the equal sovereignty claim (Count II) and does not impact Colorado's claim for violations of the Tenth Amendment and Separation of Powers (Count I). Further, "the fundamental principle of equal sovereignty remains highly pertinent in assessing . . . disparate treatment of States." *Shelby County v. Holder*, 570 U.S. 529, 544 (2013). In particular, it bars the unjustified disparate treatment among the States in "sensitive areas of state and local policymaking" reserved by the Constitution for the States, such as the power to regulate elections and administer criminal justice. *Id.* at 544–45. Defendants claim that this principle only applies to legislation, but there is no reason to believe the Constitution exempts the Executive Branch from this "fundamental principle." Finally, Defendants' citation to *Rust v. Sullivan*, 500 U.S. 173, 193 (1991), is a non-sequitur. Colorado does not challenge which programs the government chooses to fund; rather, it contests the Executive's unlawful efforts to coerce Colorado to exercise its sovereign powers in the manner directed by the President. *Cf. NFIB v. Sebelius*, 567 U.S. 519, 577–80 (2012) (even when core sovereign powers are not at issue, the federal government may not directly or indirectly coerce a State).

*Political question*: Defendants argue that the equal sovereignty claim (Count II) is also barred by the political question doctrine. But this argument would require overturning *Shelby County*, where the Supreme Court applied equal sovereignty without any concern that such claims are nonjusticiable political questions. Nor does the political question doctrine preclude equal sovereignty claims only based on executive action, but not congressional action.

**Counts III–VI**

*Ripeness*: Defendants argue that not all the claims are ripe because they have not yet completed all the threatened actions. Defendants suggest that ripeness affects Counts III–VI, but none of those Counts even cover any of the allegedly unripe actions, except for the SNAP "pilot program," where the Court has already rejected the identical ripeness/standing arguments. Thus, there is no need to address ripeness.

Even if Defendants meant to argue that Counts I and II are partially unripe, that would fundamentally misunderstand the retaliation claims. The threats themselves are retaliative and intended to coerce Colorado to take the President's preferred actions. Thus, the threats and the completed actions are all part of the same course of conduct. And even if the threatened actions were not independently actionable, those threats would still be relevant evidence in assessing the motivations for completed retaliatory actions. Thus, this argument should be rejected.[1]

---

[1] Notably, Defendants do not contest that they are actively working to complete the threatened actions, such as by continuing to dismantle the National Center for Atmospheric Research. Defendants also state that Colorado lacks standing to challenge the denial of disaster relief as part of this scheme but offer no explanation. Colorado is clearly harmed by such denial of relief.

2

*Specific performance of a contract*: Defendants argue that Count VI is barred by the Tucker Act because Colorado purportedly seeks specific performance of a contract. Not so. Colorado is challenging the unlawful policy decision to attack the State through a variety of means, including terminating and threatening to terminate funding as part of that retaliatory strategy. Colorado seeks prospective relief as to that policy decision. Colorado does not bring any contract claims, and it does not seek any contract remedies, including money damages or specific performance. Indeed, as Colorado alerted Defendants, for nearly all of the funding at issue, no grant agreements had even been signed, so there are no contracts, let alone contract claims, that could be covered by the Tucker Act. As to the single award where there was an executed grant agreement, regarding electric vehicle charging infrastructure, the entire program (not just Colorado's grant) is currently frozen. As to that award, Colorado is merely seeking not to be treated differently or worse than other grantees should the program later be unfrozen. This is a quintessential APA action against a policy decision.

*Space Command*: Defendants argue that the Space Command APA claim (Count III) is barred by the zone-of-interests test. But the APA zone-of-interests test is extremely narrow: only interests "so marginally related to or inconsistent with the purposes implicit in the statute" are precluded. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). Defendants cannot come close to this high standard. Congress created statutory directives regarding the processes for moving a major headquarters. 10 U.S.C. § 483. As part of those processes, Congress recognized the significant impact these decisions have on States and required "consultation with appropriate State officials and officials of units of local government in which each installation is located regarding matters affecting the local community." *Id.* § 483(c)(3). Defendants skipped these mandatory processes so that the President could instead move Space Command in order to punish Colorado for allowing mail-in voting. Defendants' argument that Colorado's interest is so marginally related to or inconsistent with § 483 is thus wholly without basis. Likewise, their reliance on *NRDC, Inc. v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988), is meritless. Colorado does not quibble with the *adequacy* of any reports provided to Congress; it challenges that Defendants skipped the processes *entirely*. This is fundamentally unlike *Hodel* where "the contention [was] not that the Secretary failed entirely to report back to Congress (and the Governor), but that the Secretarial response lacked the requisite 'detail.'" *Id.*

In sum, Colorado stands ready to address these non-meritorious defenses in the form and timing the Court determines appropriate. But none of these arguments warrant delaying discovery. Colorado respectfully requests that the Court order discovery to begin immediately.

PHILIP J. WEISER
Attorney General of Colorado

/s/ David Moskowitz
David Moskowitz
Deputy Solicitor General

3