# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-3428-RBJ

THE STATE OF COLORADO,

      Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
PETE HEGSETH, in his official capacity as Secretary of Defense,
TROY MEINK, in his official capacity as Secretary of the Air Force,
SEAN DUFFY, in his official capacity as Secretary of Transportation,
BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,
CHRIS WRIGHT, in his official capacity as Secretary of Energy,
DOUG BURGUM, in his official capacity as Secretary of the Interior,
MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,
KAREN EVANS, in her official capacity as Senior Official Performing the Duties of
Administrator of the Federal Emergency Management Agency,
TODD BLANCHE, in his official capacity as Acting Attorney General,
BRIAN STONE, in his official capacity as Senior Official Performing the Duties of Director of
the National Science Foundation,
EXECUTIVE OFFICE OF THE PRESIDENT,
DEPARTMENT OF DEFENSE,
DEPARTMENT OF THE AIR FORCE,
DEPARTMENT OF TRANSPORTATION,
DEPARTMENT OF AGRICULTURE,
DEPARTMENT OF ENERGY,
DEPARTMENT OF THE INTERIOR,
DEPARTMENT OF HOMELAND SECURITY,
FEDERAL EMERGENCY MANAGEMENT AGENCY,
DEPARTMENT OF JUSTICE,
NATIONAL SCIENCE FOUNDATION,

      Defendants.

---

## SCHEDULING ORDER

### 1.  DATE OF SCHEDULING CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

Any scheduling conference will be set at the convenience and direction of the Court.

Defendants respectfully request the opportunity to appear remotely, via videoconference, at any such hearing. Plaintiff would not oppose any such remote appearance.

Appearing for Plaintiff: David Moskowitz, Sarah H. Weiss, and Talia B. Kraemer, 1300 Broadway, 10th Floor, Denver, CO, 80203, (720) 508-6000.

Appearing for Defendants: Marianne F. Kies (202-353-1819) and Alexander J. Severance (202-598-3123), 1100 L Street NW, Washington, DC 20005.

## 2. STATEMENT OF JURISDICTION

### a. Plaintiff

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. Plaintiff, the State of Colorado, is a sovereign State in the United States of America. A substantial part of the events or omissions giving rise to this Amended Complaint occurred and continue to occur within this district.

### b. Defendants

The Court does not have subject-matter jurisdiction over this case. *See* ECF 69. In brief, first, Plaintiffs' constitutional claims are not cognizable and also present political questions. Second, Plaintiffs lack standing, and the vast majority of their claims are unripe. Third, Plaintiffs' Administrative Procedure Act ("APA") claim against the Department of War and the Department of the Air Force, brought under 10 U.S.C. § 483, is additionally foreclosed because Colorado is outside § 483's zone of interest, and because the adequacy of agency responses to Congressional reporting requirements is not justiciable.

2

Defendants do not challenge venue.

### 3.  STATEMENT OF CLAIMS AND DEFENSES

#### a.  Plaintiff

Colorado brings claims challenging various actions and threats by Defendants that were targeted against Colorado because of the State's lawful exercise of sovereign authority. In particular, Colorado alleges that Defendants have announced the relocation of Space Command Headquarters, terminated or threatened to terminate hundreds of millions of dollars in funding, announced plans to dismantle the National Center for Atmospheric Research in Boulder, denied emergency disaster assistance, and threatened numerous other actions because of Colorado's lawful exercise of sovereign powers, including relating to the regulation of elections and administration of criminal justice. Colorado brings constitutional claims under the Tenth Amendment, state sovereignty principles, the Elections Clause, the Spending Clause, separation of powers, and the equal sovereignty principle. Colorado also alleges various violations of the Administrative Procedure Act ("APA"). Colorado seeks injunctive and declaratory relief as well as remedies under the APA for unlawful agency action.

#### b.  Defendant

The State of Colorado brings this action against the President, several federal agencies, and corresponding agency heads, challenging what Colorado characterizes as a federal "campaign of retribution" against the State. Specifically, Colorado alleges that the following agency actions were taken in purported retaliation for the State's allowing mail-in voting and prosecuting Mesa County Clerk and Recorder Tina Peters: (i) the Department of War's ("DOD") and Department of Air Force's ("USAF") decision to relocate U.S. Space Command headquarters from Colorado Springs to Huntsville, Alabama; (ii) the Department of Agriculture's ("USDA") decision to implement a

3

pilot program for five Colorado counties as part of a SNAP fraud reduction effort; (iii) the Department of Energy's ("DOE") alleged "plans to terminate $615 million" in funds earmarked for Colorado; (iv) the National Science Foundation's ("NSF") announcement that it is "reviewing the structure" of funding surrounding the National Center for Atmospheric Research ("NCAR") in Boulder; (v) the Department of Interior's ("DOI") alleged compilation of a list of grants earmarked for Colorado for "possible termination"; (vi) the Department of Transportation's ("DOT") alleged termination of $109 million in funding for Colorado; and (vii) the Federal Emergency Management Agency's ("FEMA") alleged denial of disaster declaration requests. *See generally id.* The Amended Complaint alleges, against all Defendants, that the challenged actions are "retaliation" for the State's exercise of its sovereign authority, in violation of various constitutional provisions (Counts I and II). Colorado also separately challenges other agency actions under the APA and Spending Clause (Counts III through VI).

As set forth in Section 2 above, the Court lacks subject-matter jurisdiction over Plaintiffs' claims. In addition, Plaintiffs' claims fail on the merits because Defendants' challenged actions, to the extent they have occurred, are lawful.

### 4. UNDISPUTED FACTS

During oral and written meet-and-confers beginning on April 3, 2026, the parties have discussed stipulated facts as a means of narrowing the scope of this case and thereby any discovery. The parties have not yet reached agreement. However, the parties will promptly update the Court if they are able to agree to stipulated facts.

### 5. COMPUTATION OF DAMAGES

Plaintiff does not seek money damages.

### 6. REPORT OF PRECONFERENCE DISCOVERY

### AND MEETING UNDER FED. R. CIV. P. 26(f)

a. **Date of Rule 26(f) meeting.**

An initial Federal Rule of Civil Procedure 26(f) meeting was held on April 3, 2026, via videoconference. A supplemental meeting was held on April 10, 2026, via videoconference. The parties have also conferred via email.

b. **Names of each participant and party he/she represented.**

Appearing for Plaintiff: David Moskowitz and Sarah H. Weiss, 1300 Broadway, 10th Floor, Denver, CO, 80203, (720) 508-6000.

Appearing for Defendants: Marianne F. Kies (202-353-1819) and Alexander J. Severance (202-598-3123), 1100 L Street NW, Washington, DC 20005.

c. **Statement of when Rule 26(a)(1) disclosures were made or will be made.**

Rule 26(a)(1) disclosures will be made on May 8, 2026. Such disclosures will be limited to Plaintiff's non-APA, constitutional claims (i.e., Counts 1, 2, and 5).

d. **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1) and Administrative Records.**

The parties propose that Rule 26(a)(1) disclosures will be made on May 8, 2026. Such disclosures will be limited to Plaintiff's non-APA, constitutional claims (i.e., Counts 1, 2, and 5). Defendants shall produce the administrative records for the APA claims (i.e., Counts 3, 4, and 6) on April 28, 2026.

e. **Statement concerning any agreements to conduct informal discovery.**

None.

f. **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties agree that they will serve by email or electronic means, such as through a file-

5

sharing system, all discovery requests and written responses and any other materials that are not filed through the CM/ECF system.

The parties agree that the production of privileged or protected documents (including electronic documents) without the intent to waive that privilege or protection does not constitute a waiver, so long as the disclosing party identifies the inadvertently disclosed documents within a reasonable time after production. If such documents are identified, they will be returned promptly to the disclosing party and/or, as appropriate, destroyed.  The Court believes that as a matter of professionalism and as officers of the Court, any party or counsel that discovers, or his advised of, the existence of a document that appears to have been inadvertently produced due to a potential privilege should desist from further review, alert opposing counsel, resolve any dispute about it, and return the document without making or retaining any copies or records of the document.  We all make mistakes, and it is difficult inadvertent production, especially in large document cases. There should be no need for a "claw back order" on this.  The Court can address disputes if they arise.

The parties agree that they shall not seek discovery of documents created after the filing of the Complaint (ECF 1) that are privileged because they are sent solely among litigating counsel for either party (i.e., the Colorado Department of Law representing Plaintiff or the U.S. Department of Justice representing Defendants), or that are privileged because they are sent solely among a party and that party's litigating counsel, and where there has been no subsequent waiver of privilege. If any discovery request is susceptible of a construction that calls for the production of such documents, those documents need not be produced or identified on any privilege log.

The parties will not file motions or responses concerning discovery disputes without court permission.  Rather, after counsel have conferred by telephone or in person, they will

contact Chambers and set a telephonic hearing.  If the dispute concerns responses to paper discovery (interrogatories, etc.), please provide the Court with the disputed question and responses before the hearing.  If the dispute turns on the application of one or two specific cases, they will advise Chambers of the citations to those cases.

**g.  Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties anticipate that a substantial amount of the relevant information or records will be electronically stored information maintained in electronic form, including messaging data, emails, photos, videos, and other electronic documents. The parties will produce spreadsheets, PowerPoint presentations, photos, videos, and other electronic records that do not easily transfer to image in native format. For Word documents, emails, pdf documents, and other similar files that may be easily legible in image format, the parties will produce such records in TIFF format with bates stamp, OCR text, and metadata preserved so long as that is technically feasible. The parties will negotiate a further protocol for the production of such records and information. Either party may request production of any native document produced in TIFF format.

**h.  Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties do not currently believe settlement is feasible but will continue to explore settlement as the case proceeds.  The Court believes that reasonable compromises by both could potentially resolve the case, or at least parts of the case,  and achieve substantial savings of taxpayer monies and judicial resources.  The Court directs counsel to  make another good faith effort to resolve the disputes, in whole or in part, including the possibility of mediation, at this time and, to the extent unsuccessful, to continue to do so  periodically thereafter.  Bear in mind that largescale

changes like relocation or dismantling of agencies or programs have a significant impact on people, regardless of the party's right to proceed or impede, and you and your clients like the Court are in the public service business.

## 7.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS[1]

All "extra-record" discovery in this case—meaning, discovery outside the scope of any Administrative Record, discussed here in this Section 8—will be limited at this time to information relevant to Plaintiff's non-APA claims (Counts 1, 2, and 5). Plaintiff reserves the right to move for completion of the Administrative Record and/or discovery as appropriate under the Administrative Procedure Act. Neither side will serve requests for written discovery, or seek depositions, until after Plaintiff has received and reviewed the Administrative Records relevant to the APA claims (Counts 3, 4, and 6). Defendants reserve the right to seek a stay or a protective order from written discovery or depositions.

**a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

The discovery limitations are based on a per side basis, rather than a per party basis, so as to avoid issues with counting given the parties on each side (i.e., each discovery request sent from

---

[1] The parties agree that their respective positions regarding proposed changes to the presumptive numbers of depositions or written discovery contained in the Federal Rules is subject to change pending any future agreement on stipulated facts. Therefore, the parties' proposals herein are tentative. The parties will promptly update the Court if their proposals change due to, *inter alia*, agreement on stipulated facts.

Colorado to the United States counts as one request, regardless of the number of responding subordinate agencies, and vice versa).

The parties agree that Federal Rule of Civil Procedure 30(b)(6) depositions will count as one deposition even if multiple witnesses need to be designated to cover the topics requested. Colorado shall have one 30(b)(6) deposition of (collectively) the Agency Defendants, and (collectively) Defendants shall have one 30(b)(6) deposition of Colorado. These 30(b)(6) depositions do not count towards the fact-witness deposition limit.

The parties reserve the right to seek appropriate protection from an unduly burdensome or otherwise objectionable 30(b)(6) deposition.

If any side designates expert witnesses, the other side may depose those witnesses without counting against the fact-witness total.

**Plaintiff's Position as to Fact Depositions and Interrogatories**

Each side may take 35 fact-witness depositions and issue 50 interrogatories to the other side.

**Defendants' Position as to Fact Depositions and Interrogatories**

Each side may take 10 fact-witness depositions and issue 25 interrogatories to the other side.

The Court limits the parties to 20 fact witness depositions and 50 interrogatories. If a party has a good faith belief that more depositions will be needed after the first 15 are taken, and the parties cannot agree after conferral, the party may apply to the Court for leave to take additional depositions.

The requesting party may not include with any interrogatory or set of interrogatories a list of instructions or definitions. Rather, the requesting party should use clear, plain English in posing its questions.

The responding party should interpret the questions reasonably, without parsing words, and with the application of your knowledge of what the requesting party was likely getting at and a dose of common sense. If there is a bona fide question by either party as to the meaning of a word or words, counsel are directed to confer and work it out.

The responding party may not make a general objection and then, in response to each interrogatory, include language along these lines: "[Responding party] incorporates its general objection, but without waiving that objection, responds as follows:…." If the responding party has what it believes is a legitimate, bona fide to a particular question, counsel should confer with opposing counsel to attempt to clarify or resolve the issue. If there still is a dispute about a particular question, then note the objection and do not respond to the question. Otherwise, just answer the question and get on with it.

**b. Limitations which any party proposes on the length of depositions.**

None (i.e., Federal Rule of Civil Procedure 30(d)(1) will govern the duration of depositions).

**c. Limitations which any party proposes on the number of requests for production and/or requests for admission.**

**Plaintiff's Position as to Requests for Production and Admissions**

Each side may issue 50 requests for production and 25 requests for admission to the other side. The limit on requests for admission excludes those used solely for the purposes of authenticating documents.

10

**Defendants' Position as to Requests for Production and Admissions**

Each side may issue 30 requests for production and 20 requests for admission to the other side.

The Court limits the parties to 30 requests for production and 30 requests for admission. If a party has a good faith belief that more requests are needed after the initial numbers are served, and the parties cannot agree after conferral, the party may apply to the Court for leave to serve additional requests. The Court's directions above concerning interrogatories and responses apply equally to requests for production and requests for admissions.

**d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**

August 31, 2026.

**e. Other Planning or Discovery Orders**

None.

### 9. CASE PLAN AND SCHEDULE

**a. Deadline for Joinder of Parties and Amendment of Pleadings:**

The parties propose that the deadline for joinder of parties and amendment of pleadings cutoff shall be July 31, 2026. Should there be a delay in obtaining discovery, for example, because of disputes related to Executive and deliberative process privilege, Plaintiff may seek to extend the deadline. Defendants reserve the right to oppose any such extension. The Court expects the parties to assert executive privilege, deliberative process privilege, and other privileges only when the applicability of the privilege is clear and the need to assert is compelling. The parties do, after all, work for the People of the United States. Any assertion of privilege must be accompanied by a privilege log that clearly identifies the nature of the document and the legal basis for the claim of

11

privilege. The Court will not become involved unless and until counsel have made a good faith effort to resolve the privilege issue and have considered alternatives such as redaction or disclosure to opposing counsel on an eyes only basis for the limited purpose of explaining and supporting the claim of privilege. Please note as well that the fact that an attorney is copies on an email or other document does not, in itself, establish that the document is privileged. The Court is willing to conduct ex parte reviews of allegedly privileged documents, though it does not wish to devote the time to that unhappy task unless it is truly necessary. Please also remember that an ex parte review can raise questions about the credibility of the party or counsel claiming the privilege if it is clear that the claim was not warranted.

**b.  Discovery Cutoff:**

October 30, 2026.

**a.  Dispositive Motion Deadline:**

December 4, 2026. Please observe the process described in the Court's practice standards regarding conferral and letters of intent before filing a dispositive motion. This must be done in advance of the deadline.

**d.  Expert Witness Disclosure:**

**1.  The parties shall identify anticipated fields of expert testimony, if any.**

None currently.

**2.  Limitations which the parties propose on the use or number of expert witnesses.**

The parties do not currently intend to use expert witnesses. If that intention changes, the parties will discuss any reasonable limitations on the use or number of expert witnesses.

**3. The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

12

September 25, 2026.

**4.    The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

November 6, 2026.

**e.    Identification of Persons to Be Deposed:**

**Plaintiff:** Colorado intends to depose the key individuals at each agency involved in the actions to punish or threaten punishment against Colorado for its exercise of sovereign authority. The amended complaint includes 11 federal agencies, and Colorado expects that, for most agencies, it will generally be able to obtain necessary information from 3 or fewer witnesses. For some agencies, such as the Executive Office of the President, that play a coordinating role across the federal government, more witnesses will likely be necessary. The specific witnesses selected will depend on the discovery produced by Defendants, as they are in sole possession of key information regarding the actions and the identity of those witnesses involved.

**Defendants:** Defendants intend to depose individuals who communicated with Defendants regarding the actions challenged in this case. Defendants further intend to depose individuals with knowledge of Colorado's claimed irreparable harm. The specific witnesses selected will depend on the discovery produced by Plaintiff.

To the extent that the parties can achieve compromise resolutions of at least some parts, if not the entirety, of the case at an early time, the number of agencies and depositions should be reduced accordingly  That is a worthy goal.

## 10.  DATES FOR FURTHER CONFERENCES

**a.    Status conferences will be held at the following dates and times:**

13

_____, 20__ at __ o'clock ____m.

**b.   A final pretrial conference will be held at the following date and time:**

_____, 20__ at __ o'clock ____m.

A final pretrial order is not required.  The Court will conduct a Trial Preparation Conference and resolve any remaining disputes concerning trial witnesses, trial exhibits, in limine issues (rare in bench trials), and court procedures.

## 11.  OTHER SCHEDULING MATTERS

**a.   Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

The parties diligently worked to resolve all disputes. There is only a narrow dispute as to the number of discovery requests appropriate for this case (paragraphs 8.a and 8.c).

**Plaintiff's Position**

Due to the complexity of the case, the number of federal agency Defendants, and the number of federal actions at issue, Plaintiff believes that its proposed discovery request limits are appropriate. There are 11 Defendant federal agencies and voluminous threatened or completed actions at issue. Had Plaintiff separated this case into separate cases, Plaintiff would receive far more discovery requests than it seeks here. Plaintiff proposes a total of 35 depositions, approximately three fact-witness depositions per Defendant agency. Under Defendants' proposal, Plaintiff cannot even take one fact-witness deposition for each agency, which will significantly hurt Plaintiff's ability to obtain necessary discovery. Depositions are likely to be especially important because the Trump Administration often use non-official channels, such as Signal, or otherwise attempts to avoid documenting its actions, limiting information available for written discovery. For example, in a related case where the Trump Administration targeted Colorado and

14

other States, the Administration has claimed that there are no agency records, privileged or otherwise, as to how the States were selected for adverse actions. *Illinois v. Vought*, 1:26-cv-01566 (N.D. Ill) (ECF No. 77). Plaintiff has offered to stipulate as to critical facts in this case and is more than willing to revisit the number of requests necessary should any stipulations be reached (see note 2). But at present Plaintiff bears the burden to establish the retaliatory motive as to each agency and each agency action, which necessitates Plaintiff's proposed limitations.

Finally, the six-month timetable, to which all parties agreed, is reasonable and standard within this district. And we are well past the deadline for entry of a scheduling order under Rule 16(b)(2), so there is no basis for Defendants' attempt to yet again delay discovery. The proposed order authorizes discovery only into the constitutional claims, which are not based on any administrative record, so there is no basis to delay entering a scheduling order until after the production of the administrative records.

**Defendants' Position**

This is not a complicated case. There is one Plaintiff, and it brings six related claims—half of which are, by law, limited to an administrative record. Notwithstanding, for its three constitutional claims, Plaintiff asks the Court to direct 35 fact-witness depositions (more than three times the default limit, Fed. R. Civ. P. 30(a)(2)), 50 interrogatories (twice the default limit, Fed. R. Civ. P. 33(a)(1)), 50 requests for production, and 25 requests for admission, per side.[2] Plaintiff asks the Court to sanction this departure from standard civil practice because: (i) they elected to

---

[2] A request for production directed to all of the Agency defendants would only count as one against Plaintiff's total, even though all 10 Agency Defendants would have to independently compile information to respond to it. Put differently: Although there is only one Plaintiff, there are ten Agency Defendants, and it will take Defendants at least ten times the amount of work to respond to each of Plaintiff's written discovery requests.

sue several different agencies (including two parent agencies for sub-agencies); (ii) Defendants have not stipulated to facts (*see supra* n.2); and (iii) Plaintiff *might* not ultimately obtain the information they believe they need despite receiving Administrative Records and the default fact discovery already authorized by the Federal Rules (which includes, *inter alia*, 10 fact-witness depositions *as well as* a 30(b)(6) deposition on an as-yet unknown number of topics).[3] Plaintiff has further requested that all discovery be completed on an extremely expedited, six-month timetable (by October 30, 2026). The volume of discovery Plaintiff contemplates is neither necessary nor proportional to the of this case. Nor is expedition warranted. In any case, Plaintiff cannot demand this enormous volume of discovery and simultaneously require its completion within six months, when they have already received preliminary injunctive relief and no other emergency motion is pending. Plaintiff remains free to move for additional preliminary injunctive relief to address perceived exigencies; it has not established entitlement to expedition of all discovery in the case.

Defendants respectfully submit that the Court should direct the discovery limits proposed by Defendants for this initial scheduling order and revisit them later only if and when Plaintiff demonstrates "good cause" for its proposed departure from the Federal Rules. *See, e.g.*, *Ybanez v. Milyard*, 2012 WL 1936557, at *2 (D. Colo. May 29, 2012) (Hon. R. Brooke Jackson) (enforcing default numerical limit on discovery because plaintiff "ha[d] not shown that the limits placed on [such discovery] have, in fact, unfairly interfered with his ability to obtain necessary and appropriate discovery"). If that occurs, Defendants expressly reserve the right to seek an extension

---

[3] Speculation that "the Trump Administration often use non-official channels, such as Signal, or otherwise attempts to avoid documenting its actions," *see supra*, is not good cause to justify Plaintiff's request.

of the deadlines set forth herein, as it will not be feasible for the Government to, in the next six months, defend 35 fact-witness depositions; prepare for and defend a 30(b)(6) deposition (which will itself encompass at least 10 more, representative witnesses, given the number of Agencies Plaintiff has sued); answer and verify 50 interrogatories; identify, collect, review, and produce (in load file format) documents in response to 50 requests for production; and answer 25 requests for admission.

Moreover, Defendants respectfully request that the Court reserve issuing a Discovery Schedule until after Plaintiff receives the Administrative Records and demonstrates its entitlement to information beyond them.

**b.   Anticipated length of trial and whether trial is to the court or jury.**

Five-day bench trial, which may be slightly longer or shorter depending on the areas of dispute remaining.  Please confer and attempt to agree on a trial date.  Given your agreed dispositive motions date of December 4, 2026, you should be looking at dates ln  approximately April or May 2027.  If you eliminate or at least limit the dispositive motions, which often makes sense in a bench trial case, the Court could set an earlier date.  Due to its senior status, the Court has a reasonably flexible schedule and would make every effort in a case of this significance to accommodate whatever date you agree upon.  The Court suggests that you select a couple of trial dates and submit them to Chambers.  The Court will then select a trial date and a Trial Preparation Conference date (which can be conducted remotely) and issue a minute order.

**c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/ Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order cannot be altered or amended except upon a showing of good cause.

DATED at Denver, Colorado, this 16th day of April, 2026.

BY THE COURT:

Hon. R. Brooke Jackson
United States District Judge

18

APPROVED AS SUBMITTED ON April 13, 2026

PHILIP J. WEISER
Attorney General of Colorado

*/s/ David Moskowitz*
David Moskowitz
Deputy Solicitor General
Talia Kraemer
Assistant Solicitor General
Sarah H. Weiss
Senior Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov
talia.kraemer@coag.gov
sarah.weiss@coag.gov

Counsel for Plaintiff

BRETT A. SHUMATE
Assistant Attorney General

JOSEPH E. BORSON
Assistant Director
Civil Division
Federal Programs Branch

*/s/ Marianne F. Kies*
MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants