**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| THE STATE OF COLORADO,<br>*Plaintiff*,<br>v.<br>DONALD J. TRUMP, et al.,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-03428-RBJ |

# BRIEF OF ALABAMA AS AMICUS CURIAE IN SUPPORT OF FEDERAL DEFENDANTS' PARTIAL MOTION TO DISMISS

In 2021, following a years-long evaluation process, the Secretary of the Air Force designated Redstone Arsenal in Huntsville, Alabama, as the preferred location for the permanent headquarters of U.S. Space Command. The President at the time, President Trump, agreed with that decision. Two years later, following an extensive reevaluation process in which Redstone Arsenal was once again designated by Air Force officials as the preferred location, the new President—President Biden—unilaterally reversed course and selected Peterson Air Force Base in Colorado Springs, Colorado, as the permanent headquarters for Space Command. President Biden's decision was widely viewed as political retribution over Alabama's abortion law, particularly given that it contradicted the Air Force's recommendation and the White House refused to cooperate with investigations by the Department of Defense Inspector General and the Government Accountability Office. When President Trump returned to the White House, he re-designated Redstone Arsenal as Space Command's permanent home.

Colorado asks this Court to review President Trump's basing decision. It should decline to do so. Alabama did not sue in 2023 for the simple reason that President Biden's decision—however unsavory, however political—was his to make as Commander in Chief. Under Article II, such decisions are for the President to make, not for courts to micromanage. Were it otherwise, the

nation's national security would get stuck in judicial review, ping-ponging between courts as litigants challenge the thought process behind each new Commander in Chief's decisionmaking. Because the Supreme Court has consistently warned against such overreach, this Court should dismiss Colorado's claims related to the President's decision to re-designate Redstone Arsenal as the permanent home of U.S. Space Command.

## BACKGROUND[1]

On July 4, 1982, President Reagan announced the need for a "more permanent presence in space" to provide for national security in "the ultimate frontier."[2] After two years of evaluation, the Joint Chiefs of Staff and the Department of the Air Force recommended that the President establish a single, unified Space Command, which he did in 1984. U.S. Gov't Accountability Off., *U.S. Space Command: Air Force Should Develop Guidance for Strengthening Future Basing Decisions* 6, GAO 22-106055 (June 2022) ("2022 GAO Report"), https://perma.cc/239E-6Y5V. Space Command was activated in Colorado Springs in September 1985. *Id.*

That iteration of Space Command lasted until 2002. *Id.* That year, the Department of Defense (DOD) suggested merging U.S. Space Command and U.S. Strategic Command; President Bush approved the merger in 2002. *Id.* The new unified combatant command retained the title "U.S. Strategic Command" and operated out of Offutt Air Force Base in Nebraska. *Id.*

---

[1] Colorado's operative complaint incorporates by reference reports published in 2022 by the Government Accountability Office and the Department of Defense Inspector General. *See* Doc. 78 ¶117. Accordingly, the Court may consider other aspects of those reports. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). Alabama also refers to updated reports prepared in 2025; these may be judicially noticed, *Clappier v. Flynn*, 605 F.2d 519, 535 (10th Cir. 1979) (judicial notice of an official government publication is proper), as may newspaper articles, *e.g.*, *Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1263 n.5 (10th Cir. 2021).

[2] Ronald Reagan, *Remarks at Edwards Air Force Base on Completion of the Fourth Mission of the Space Shuttle Columbia* (July 4, 1982), https://perma.cc/Z2VV-ATSL.

In December 2018, President Trump directed DOD to establish U.S. Space Command as the nation's eleventh unified combatant command.[3] *Id.* at 1. Consistent with this directive, Space Command was formally re-established in August 2019. *Id.* at 7. Its mission is to plan and execute global space operations in coordination with other military services and DOD partners. *Id.* at 1, 7.

### A. Space Command Is Provisionally Housed in Colorado While the Air Force Conducts a National Search.

After Space Command was created, "the Air Force largely followed its established strategic basing process to determine the preferred location for U.S. Space Command headquarters." *Id.* at 13; *see* 10 U.S.C. §9013(b)(12). "Consistent with its established basing process, the Air Force worked with its customer—the Joint Force Space Component Command—to confirm the functional requirements for the U.S. Space Command headquarters." 2022 GAO Report at 14. In December 2018, six candidate installations were identified: (1) Redstone Arsenal in Alabama, (2) Vandenberg Air Force Base in California, (3) Buckley Air Force Base in Colorado, (4) Cheyenne Mountain Air Force Station in Colorado, (5) Peterson Air Force Base in Colorado, and (6) Schriever Air Force Base in Colorado. *Id.*

In January 2020, the Secretary of the Air Force designated Peterson Air Force Base "as the provisional location for the U.S. Space Command headquarters" while the national search for a permanent base continued. *Id.* at 16-17 (explaining that "the Air Force had not decided on a preferred location for the U.S. Space Command headquarters" when Peterson was designated as the provisional base). The Air Force also contemplated reopening and revising its base selection process to allow more locations to qualify. The Secretary of Defense had similar thoughts and ordered

[3] A unified combatant command is a military command that has broad, continuing missions and is composed of two or more military departments. *See* 10 U.S.C. §161.

the Air Force to reopen its basing process. *Id.* The Secretary explained to the Senate Armed Services Committee that he was concerned that few installations had been considered during the initial selection process and that the revised process would be more inclusive and transparent. *Id.* at 17 n.33. He emphasized that re-opening the process would also ensure that political considerations were not involved in the final decision.[4]

The new process consisted of three phases that culminated in the preferred location decision: (1) nominations, (2) senior-level review, and (3) environmental analyses. 2022 GAO Report at 17-19. In the first phase, the Air Force asked each State to submit nominations from communities interested in receiving consideration. *Id.* at 17. The nominations had to be made by the community's mayor (or equivalent officer), feature a community near one of the country's 150 largest metropolitan areas, be within 25 miles of a military base, and have a "livability index score" of at least 50/100 as determined by the American Association of Retired Persons Public Policy Institute. *Id.* at 20. From there, fifty applicants proceeded to the evaluation phase. *Id.* The Air Force advanced the top six scoring locations to the final phase, notified Congress in November 2020, and conducted site visits in December 2020 and January 2021. *Id.* at 21. The six finalists were Redstone Arsenal in Alabama, Peterson Air Force Base in Colorado, Offutt Air Force Base in Nebraska, Kirtland Air Force Base in New Mexico, and Joint Base in Texas. *Id.* at 22-23.

"Using information obtained from the questionnaires and site visits, the Air Force qualitatively ranked the six final candidates[.]" *Id.* at 23. "Redstone Arsenal was tentatively the leading

---

[4] *See Hearing to Receive Testimony on the Department of Defense Budget Posture in Review of the Defense Authorization Request for Fiscal Year 2021 and the Future Years Defense Program* 55:16-23 (Mar. 4, 2020), https://perma.cc/XUD9-7ZWK. Alabama Senator Doug Jones asked the Secretary whether the order to reopen the selection process came from the White House. *Id.* at 54:18-19. The Secretary responded that the order "came from me." *Id.* at 54:24-55:15.

candidate based on its relative strength in the *Mission* and *Capacity* factors and its low cost of construction." *Id.*

**B. The Air Force Concludes That Space Command Should Be Housed At Alabama's Redstone Arsenal.**

"As the Air Force neared the completion of the Selection Phase and prepared for a meeting at the White House on January 11, 2021," to recommend Redstone Arsenal as Space Command's permanent home, officials at Peterson Air Force Base notified Air Force leadership that they thought they could reach full operational capacity with fewer personnel than they had previously forecasted. *Id.* But Air Force officials "received no documentation to support" the representations concerning personnel and thus did not substantially change the search trajectory. *Id.*

The meeting at the White House on January 11 went on as planned, with President Trump, the Acting Secretary of Defense, the Vice Chairman of the Joint Chiefs of Staff, the Secretary of the Air Force, and the Assistant Secretary of the Air Force for Installations, Environment, and Energy participating. *Id.* at 24. Before the meeting, officials drafted a "read-ahead" memorandum to discuss the choice between Peterson and Redstone. *Id.* at 24 n.38. The memorandum acknowledged "that Redstone Arsenal rated the best of the six candidate locations based on the criteria and noted that selecting Peterson Air Force Base as the preferred location would not align with the site visit results and would likely face scrutiny." *Id.* At the conclusion of the meeting—which participants described "as thoughtful, professional, robust, and informed"—Redstone Arsenal was selected as the permanent headquarters for Space Command. *Id.* The Secretary of the Air Force issued an action memorandum the next day memorializing the decision. *Id.*

### C. Despite Reevaluations Confirming the Air Force's Consistent Recommendation, President Biden Moves Space Command to Colorado.

President Trump's political opponents attacked the Redstone basing decision almost as soon as it was announced. Many couched the decision as little more than a calculated move by President Trump in the final days of his first administration.[5] These criticisms eventually led the GAO and DOD's Office of Inspector General to investigate the decision.

While reports prepared by both offices noted that the Air Force's modified basing procedures could have been improved, neither office concluded that any Air Force or DOD official, nor any other actor involved in the basing process, had engaged in any wrongdoing. Instead, both investigations found that the designation of Redstone Arsenal was reasonable and lawful. 2022 GAO Report at 57-58 (concluding that "the January 2021 selection of Redstone Arsenal as the preferred location for U.S. Space Command headquarters was consistent with the Air Force's analysis"); U.S. Dep't of Defense Inspector General, DODIG-2022-096, *Evaluation of the Air Force Selection Process for the Permanent Location of the U.S. Space Command Headquarters* 71 (2022), https://perma.cc/CN5Q-7NJC ("[W]e determined that the 2020 Basing Action process directed by the SECDEF complied with Federal Law and DoD policy and that the process was reasonable. Additionally, the Air Force complied with the SECDEF's requirements for the 2020 Basing Action.").

After GAO and the Inspector General issued their reports, the Air Force conducted a three-phase review to confirm that Redstone was still the best choice. *See* U.S. Gov't Accountability Off., GAO-25-107092, *U.S. Space Command: Air Force's Reevaluation of Headquarters Location*

---

[5] *E.g.,* Rachel S. Cohen, *No Foul Play in Moving Space Command To Alabama, Pentagon Watchdog Says*, *Air Force Times* (May 11, 2022), https://perma.cc/6K95-BBLQ.

*and Status of Operations* 3 (2025) ("2025 GAO Report"), https://perma.cc/3VMM-D9TS. President Biden's Secretary of Defense, Lloyd Austin, authorized Secretary of the Air Force Frank Kendall to conduct the review and define its scope. *Id.* at 15.

The reevaluation process was "essentially complete" by September 2022. *Id.* at 17. "The analysis, according to Air Force officials, revalidated that Huntsville, Alabama remained the Air Force's preferred location for the headquarters of U.S. Space Command." *Id.* at 18. Among other factors, the reevaluation showed that basing Space Command's Headquarters at Redstone would cost $426 million less across a 15-year period than remaining at Peterson. *Id.* at 16-17. Secretary Kendall chose not to immediately announce those results because he "did not want to announce any basing decisions in the weeks before the 2022 midterm elections." *Id.* at 17.

"According to Air Force documentation, the final decision from then Secretary of the Air Force Kendall was planned for November 2022." *Id.* at 18. But instead of a public announcement confirming Redstone as Space Command's home, "a memorandum related to the basing selection process was exchanged between the Air Force and the White House." *Id.* That December, "Secretary of Defense Austin held a meeting to discuss a final decision on the location of U.S. Space Command headquarters; however, no final decision on the basing location came from it." *Id.* When the GAO asked for information regarding the meeting, "DOD referred [GAO] to the White House," which "declined to provide further information regarding [President Biden's] Space Command headquarters basing decision or [his] involvement in the process." *Id.* at 18 n.36.

Starting in December 2022, the Air Force "began performing additional cost analyses and assessed long-term community forecasts." *Id.* at 19. "[T]hese findings revalidated that Huntsville, Alabama remained the Air Force's preferred location of the headquarters of U.S. Space Command

due to its lower costs." *Id.* A few months later, in March 2023, Secretary Kendall testified before the House Defense Appropriations Subcommittee. *Id.* at 20. While confirming that "the Secretary of Defense had delegated decision authority to him as Secretary of the Air Force" to make the basing decision, and while Air Force officials were expecting the Secretary to announce the decision in March 2023, Secretary Kendall kept silent about any basing decision. *Id.* at 20 & n.38.

Shortly thereafter, in April, officials at Peterson Air Force Base again notified Air Force leadership of a change in their application: They now believed they could reach operational capacity one to two years sooner than they had previously projected and that they could do so without the construction of a new headquarters building. *Id.* The Air Force investigated those claims and concluded that because Peterson would still require a new facility in the future, Redstone would remain the preferred location. *Id.* at 21-22. "On June 30, 2023, the Air Force submitted documents to the House Armed Services Committee which stated that Huntsville, Alabama remained the preferred location based on previously approved decision criteria." *Id.* at 22.

Things suddenly changed on July 31, 2023, when "DOD announced that then President Joseph Biden had selected Colorado Springs, Colorado as the permanent location for U.S. Space Command headquarters." *Id.* at 22. When GAO requested information from the administration about the decision, the White House again refused, "indicating that it involved presidential communications and presidential decision-making at the highest level." *Id.* at 23 & n.41. The Secretary of the Air Force simply "stated that the then President exercised his authority and discretion as Commander in Chief and chief executive to make the final decision." *Id.* at 23.

Though President Biden refused to explain why he reversed course on the Air Force's consistent recommendation in favor of Redstone Arsenal, reporters and elected officials had

anticipated the President's move as political punishment for Alabama's abortion law. As one "U.S. official said, 'This is all about abortion politics.'" *See* Courtney Kube and Carol E. Lee, *Biden administration may halt plans to move Space Command to Alabama over state's abortion law, officials say*, NBC News (May 15, 2023), https://perma.cc/T9SZ-VTTM. "This normally would not be a political decision," the official said, but it became one because of the White House's opposition to Alabama's abortion law. *Id.*

### D. President Trump Returns Space Command to Alabama.

On September 2, 2025, consistent with the Air Force's longstanding recommendation, President Trump returned Space Command to Alabama.

## ARGUMENT

Even though there was substantial evidence suggesting that President Biden overruled the Air Force's recommendation and moved Space Command's permanent headquarters to Colorado as political retribution for Alabama's abortion law, Alabama did not sue. That's not because Alabama is a bad litigant. It's because the State recognizes that Article II of the Constitution makes the President the Commander in Chief of the Armed Forces and his decisions related to national security generally unreviewable by federal courts. Colorado's claims challenging President Trump's decision to redesignate Alabama the home of Space Command should thus be dismissed.[6]

Article III limits this Court to resolving specific "cases" and "controversies." Not all controversies are justiciable. "A controversy is nonjusticiable—*i.e.*, involves a political question—where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate

[6] While Colorado casts a wide net by naming nearly two dozen defendants, the basis of its Space Command claims concern only President Trump's decision. *E.g.*, Doc 78 ¶¶10, 78, 113.

political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). "The principle that the courts lack jurisdiction over political decisions that are by their nature committed to the political branches to the exclusion of the judiciary is as old as the fundamental principle of judicial review." *Schneider v. Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005) (internal quotation marks and citation omitted). And "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292 (1981). They are instead "committed by the Constitution to the executive and legislative—'the political'—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918).

So it is with basing decisions, which are intimately tied up with the country's national security and foreign policy. Indeed, President Trump ordered the creation of Space Command precisely because of national security concerns related to space. *See* 2022 GAO Report at 1. Where the headquarters for Space Command should be located is thus an inherently political question; such decisions are entrusted to the political branches, and courts "could not reexamine the choice without making a 'policy determination of a kind clearly for nonjudicial discretion.'" *Bancoult v. McNamara*, 445 F.3d 427, 436 (D.C. Cir. 2006) (quoting *Baker*, 369 U.S. at 217). In *Bancoult*, for instance, the D.C. Circuit considered claims by plaintiffs who were forcibly removed from their homes on islands in the Indian Ocean when the United States constructed a military base there. *Id.* at 429. While the plaintiffs conceded—and the D.C. Circuit agreed—"that the decision to establish a military base on [the island] is not reviewable," they argued that "the manner in which the policy

decision was implemented is distinct from the policy itself, and is thus reviewable." *Id.* at 436. The Court of Appeals rejected this argument, reasoning that, as an Article III court, it could "not dictate to the executive what its priorities should have been." *Id.* at 437.

While *Bancoult* involved a U.S. military base on foreign soil, the constitutional allocation of power remains the same: Whether to locate Space Command in Colorado, Alabama, or the Arctic are political questions entrusted to Congress and the President, not to federal courts. Indeed, as the Supreme Court noted in a challenge to *domestic* military action, "[i]t would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973).

Colorado relies on a trio of Supreme Court cases for the broad proposition that "[t]he President's actions may be reviewed for constitutionality," Doc. 78 ¶254, but none of those cases support review here. In *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), the Supreme Court "struck down an Executive Order promulgated under" the National Industrial Recovery Act "because the Act unconstitutionally delegated Congress' authority to the President." *Dalton v. Specter*, 511 U.S. 462, 473 n.5 (discussing *Panama Refining*). The Court was "not dealing with action which, appropriately belonging to the executive province, is not the subject of judicial review." *Panama Refining*, 293 U.S. at 431. *Youngstown Sheet & Tube Co. v. Sawyer* concerned the President's order to seize steel mills to prevent work stoppages; there was no "claim[] that express constitutional language grant[ed] this power to the President." 343 U.S. 579, 587 (1952). And in *Franklin v. Massachusetts*, the Supreme Court held (1) that the President's actions in calculating apportionment following a census are not subject to review under the Administrative Procedure Act, and (2) that

the plaintiffs could challenge as unconstitutional the tabulation method that the Secretary of Commerce presented to the President. 505 U.S. 788, 797-804 (1992). While the Court noted in dicta that "the President's actions may still be reviewed for constitutionality," *id.* at 801 (citing *Youngstown Sheet & Tube Co.* and *Panama Refining Co.*), nothing in *Franklin* supports Colorado's theory that the President's national security basing decisions are judicially reviewable.[7]

That makes sense. Any other rule would invite States and other parties affected by basing decisions to ask courts to review—and thereby delay, alter, or micromanage—national security determinations made by the Commander in Chief. But the Constitution assigns the responsibility of making those decisions to the President, not to federal judges. Colorado's claims challenging the location of Space Command are nonjusticiable and should be dismissed.

[7] *Franklin* does confirm, however, that Colorado's APA claims against Secretaries Hegseth and Meink must be dismissed because Colorado challenges an action that was made by the President. *See* 505 U.S. at 800; *see also Dalton*, 511 U.S. at 476-77 (holding "that the actions of the Secretary … cannot be reviewed under the APA because they are not 'final agency actions'" since the President made the challenged decision to close a military base).

In *Dalton*, the Court reviewed a challenge to the President's decision under the Defense Base Closure and Realignment Act of 1990 to close the Philadelphia Naval Shipyard. The Court held that the plaintiffs could not bring a constitutional challenge because the President acted pursuant to statute and that the plaintiffs' statutory challenge failed because "[h]ow the President chooses to exercise the discretion Congress has granted him is not a matter for our review." 511 U.S. at 476. The Court noted that nothing in the Act "prevents the President from approving or disapproving the recommendations for whatever reason he sees fit." *Id.* at 476.

While Colorado does not claim that President Trump violated any statute when he made his basing decision, it is notable that the President acted in accordance with his statutory authority. First, under 10 U.S.C. §161(a), it is the President who "shall (1) establish unified combatant commands" and "(2) prescribe the force structure of those commands." Second, the President is at the top of the chain of command when it comes to basing decisions: The Secretary of the Air Force has the initial responsibility, *see, e.g.*, 10 U.S.C. §9013; the Secretary of the Air Force reports to the Secretary of Defense, *see* 10 U.S.C. §162; and the Secretary of Defense is "[s]ubject to the direction of the President," 10 U.S.C. §113(b). "[J]udicial review of the President's decision" pursuant to this command structure is thus "not available." *Dalton*, 511 U.S. at 477.

## CONCLUSION

For these reasons, the Court should dismiss Colorado's claims challenging the President's decision to relocate U.S. Space Command Headquarters to Alabama.

Dated: June 24, 2026

Respectfully submitted,

Steve Marshall
*Attorney General*

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Solicitor General*

Matthew R. Duggan (application for admission forthcoming)
*Assistant Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Barrett.Bowdre@AlabamaAG.gov
Matt.Duggan@AlabamaAG.gov
*Counsel for State of Alabama*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre