**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03428-RBJ

THE STATE OF COLORADO,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

---

**DEFENDANTS' MOTION TO STAY AUGUST 11, 2026, DISCOVERY ORDER UNTIL FINAL RESOLUTION OF PETITION FOR WRIT OF MANDAMUS**

---

Defendants respectfully seek a stay of this Court's August 11, 2026, order, issued from the Bench during a video-hearing that day, and subsequently memorialized at ECF 101, that "Defendant Executive Office of President, including its component Office of Management and Budget, are ordered to participate in discovery" (hereafter, "the EOP Order"). Specifically, Defendants seek a stay of the EOP Order until final resolution (including any possible proceedings before the Supreme Court) of their forthcoming Petition for Writ of Mandamus to be filed in the U.S. Court of Appeals for the Tenth Circuit.[1]

In determining whether to grant a stay, the Court considers (1) the threat of irreparable harm absent a stay; (2) harm to the non-movant if a stay is granted; (3) harm to the public interest

[1] After receiving the Court's ruling from the Bench, Defendants' counsel asked the Court to stay its ruling for 14 days so that the Government could *consider* whether to seek mandamus. The Court summarily denied that request. This request is different.

if a stay is granted; and (4) Defendants' likelihood of success in the Court of Appeals. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 WL 650375, at *1 (D. Colo. Mar. 10, 2006) (citing *FTC v. Mainstream Mktg. Servs.*, 345 F.3d 850, 852 (10th Cir. 2003) (per curiam)). All four factors favor a stay here.

***Irreparable Harm Absent a Stay.*** The Court's EOP Order purports to requires the Executive Office of the President to respond now to invasive, broad-ranging discovery from the State of Colorado. The ordered discovery contravenes "[t]he high respect that is owed to the office of the Chief Executive," which "is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). The Executive of the President will be irreparably harmed if a stay is not granted, insofar as they will be required to participate in discovery that the Supreme Court has held is contrary to law.

Indeed, that harm is unquestionably irreparable. Once the Executive Office of the President must prepare and submit written discovery responses, collect and provide documents, or prepare for and sit for an intrusive deposition, the intrusion upon the prerogatives and autonomy of the Office of the President and the confidentiality of its communications will have occurred and cannot be remedied.

***Harm to Plaintiff in the Event of a Stay.*** Plaintiff will not be harmed by a stay pending mandamus. There is no pending motion for emergency injunctive relief or any other live emergency that would render a stay inappropriate: the Court has granted the only preliminary-injunction motion Plaintiff filed so far in this case. *See, e.g.*, ECF 63. A stay will actually benefit Plaintiff because, at minimum, the final outcome of the forthcoming petition for mandamus will inform further proceedings, to include (i) whether any discovery to the Executive Office of the

President is permissible, (ii) the timing and scope of any such discovery, should the Court of Appeals deem it permissible, and (iii) what agency discovery remains appropriate in light of the Court of Appeals' ultimate ruling. If, following resolution of mandamus, Plaintiff believes it needs additional time to complete whatever discovery remains, it can seek leave to amend the operative Scheduling Order (ECF 76). In sum, there is no harm to Plaintiff in staying the EOP Order while the Tenth Circuit considers Defendants' argument that that Order was unlawful. Indeed, a stay would ultimately conserve the parties' and judicial resources.

***Risk of Harm to the Public Interest.*** A temporary stay, pending resolution of mandamus, would not harm the public's interest in speedy resolution of this litigation. Instead, a temporary stay is in the public interest because it will protect the separation-of-powers principles that render discovery against the Executive Office of the President improper.

Because these three factors all favor the requested stay, the Court need not consider the last factor, which is the likelihood of success on the merits of the petition. *E.g.*, *Qwest Commc'ns*, 2006 WL 650375, at *2 (holding that "the first three factors weigh in favor of granting a stay pending resolution of Qwest's petition for writ of mandamus," which is "a sufficient basis to grant a stay," even though Qwest "is not likely to succeed on its petition for writ of mandamus"); *see also FTC v. Mainstream Mktg. Servs.*, 345 F.3d at 852 ("[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed.").

Regardless:

***Defendants' Likelihood of Success on Appeal.*** The Supreme Court has repeatedly held that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should

inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton*, 520 U.S. at 707. That office's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982). And because discovery against the Executive Office of the President raises the prospect of a "'constitutional confrontation'" between the Executive and Judicial Branches, the Supreme Court has made clear that it is reserved for exceptional circumstances and that such confrontations "should be avoided whenever possible." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 389–90 (2004) (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)). This confrontation is especially problematic when it involves high-level advisors whose sole responsibility is to advise the President or Vice President. *See id.*

This Court, in issuing the EOP Order, failed to sufficiently respect the separation-of-powers principles that prevent discovery from the Executive Office of the President absent the most exceptional circumstances. *See Cheney*, 542 U.S. at 389–90. Moreover, even if discovery were appropriate here, the Court failed to adequately sequence or tailor that discovery to prevent unnecessary intrusion into the work of senior advisors to the President. As a result, the EOP Order is inconsistent with clear, binding precedent and is likely to be sufficient grounds for a writ of mandamus. At minimum, Defendants have raised questions "so serious, substantial, difficult, and doubtful" as to make the issue "ripe for litigation and deserving of more deliberate investigation." *FTC v. Mainstream Mktg. Servs.*, 345 F.3d at 853 (quotation marks omitted).

**Meet & Confer Efforts**

Defendants conferred extensively with Plaintiff before filing this Motion. Relevant here, on August 13, 2026, Plaintiff agreed by email that it would not "seek" to "enforce" the EOP Order until after this Court resolved post-hearing briefing. In accordance with that informal offer, on August 14, 2026, Defendants asked Plaintiff to join them in a motion to stay the EOP Order, in exchange for which Defendants would not seek mandamus relief. Plaintiff declined, and further stated:

> Once the dispute over EOP is fully resolved, we expect Defendants will be in position to comply with any final ruling quickly within a week. If Defendants choose not to make necessary preparations, that is not an excuse for delay.

Notwithstanding Plaintiff's original offer not to "enforce" the EOP Order, it is clear that Plaintiff's intent is that the EOP begin complying with their putative discovery obligations now. That is contrary to *Cheney* and warrants the stay pending mandamus Defendants request herein.[2]

---

[2] Plaintiff has provided the following position on Defendants' Motion to Stay: "*Colorado takes no position on Defendants' request for a stay of the Court's August 11 Order with respect to EOP, but Colorado has confirmed that it will not move to enforce EOP's discovery responses pending final resolution of this issue. As permitted by the Court, Tr. at 40, Colorado plans to request further proposed findings, which should be resolved before Defendants proceed with their mandamus petition*." For the reasons stated above, Plaintiff's assertion that "Colorado has confirmed that it will not move to enforce EOP's discovery responses pending final resolution of this issue" is, at best, disingenuous given Plaintiff's additional statement that, if the Court reaffirms its EOP Order after supplemental briefing, Plaintiff expects the EOP to complete all its discovery responses and productions seven days later. Plaintiff leaves EOP with no choice but to start the invasive, burdensome process of complying with discovery *now*—contrary to governing law.

Finally, Defendants object to Plaintiff's expected Motion for "Findings of Fact." This Court's ruling, which was in favor of Plaintiffs, contemplated at most a motion for reconsideration to be filed by Defendants. Plaintiff did not indicate its view at any point prior to, during, or after the hearing that "findings of fact" were necessary. Plaintiff indicated it intended to seek "findings of fact" only after Defendants indicated their intent to pursue mandamus relief. Defendants oppose Plaintiff's attempt to provide a post-hoc rationale for the Court's August 11 ruling.

Dated: August 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
MARIANNE F. KIES
Assistant Branch Directors
Federal Programs Branch

/s/ Adam S. Fox
ADAM S. FOX
ALEXANDER J. SEVERANCE
U.S. Department of Justice
Trial Attorneys
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Adam.S.Fox@usdoj.gov
202-598-3791

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to counsel of record.

*s/ Adam S. Fox*
U.S. Department of Justice