**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-3428-RBJ

THE STATE OF COLORADO,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,

Defendants.

---

**PLAINTIFF'S MOTION FOR FURTHER PROPOSED FINDINGS**

---

Defendants have indicated that they intend to file a mandamus petition with respect to the Court's order requiring that the Executive Office of the President (EOP) participate in discovery. During the hearing, Plaintiff requested that the Court make certain findings. The Court noted that it did not have any proposed findings, consistent with its practice standards, but permitted either party to submit further briefing or proposed further findings. ECF No. 102, ("Tr.") at 40 (leaving it to the parties "to decide whether [they] think [they] need further motion practice, further briefing, further proposed findings"). While Defendants have now determined not to seek additional briefing, despite repeated earlier requests, Tr. at 27, 46-47, Plaintiff submits these proposed findings with evidentiary support consistent with the Court's invitation. These findings can be taken under this Court's consideration and provide a complete understanding of the Court's ruling. They also will ensure that the Tenth Circuit has a fulsome record on review and will prevent any distortion of the record. For example, Defendants have indicated they intend to argue the Court failed to consider separation-of-powers concerns. But together with the hearing

transcript, these proposed findings reflect the Court's consideration of such concerns in its ruling.

At the hearing, Defendants identified two cases as relevant for the Court's consideration (Tr. at 21-23, 26): *Cheney v. U.S. District Court*, 542 U.S. 367 (2004), and *Karnoski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019). Both are distinguishable from this case.

In *Cheney*, the Court addressed errors by the lower courts, which refused to narrow significantly overbroad discovery requests against the Vice President and his close advisors. *Cheney* involved alleged violations of the Federal Advisory Committee Act (FACA). The Supreme Court held that the lower courts wrongly ignored attempts to narrow the overbroad discovery, mistakenly believing that the only option to narrow the requests was for the Executive to assert executive privilege. *Cheney*, 542 U.S. at 389 ("Contrary to the District Court's and the Court of Appeals' conclusions, *Nixon* does not leave them the sole option of inviting the Executive Branch to invoke executive privilege while remaining otherwise powerless to modify a party's overly broad discovery requests."). While recognizing that courts must take into consideration separation-of-powers concerns and protecting the Executive from "vexatious litigation," it reaffirmed that even the President is not above the law and that discovery may be appropriate when necessary for "the fair administration of justice." *Id.* at 382.

The Court was also concerned about unnecessary collisions between the Judiciary and the Executive. "In recognition of these concerns, there is sound precedent in the District of Columbia itself for district courts to explore other avenues, short of forcing the Executive to invoke privilege, when they are asked to enforce against the Executive Branch unnecessarily broad

subpoenas." *Id.* at 390. But the Court refused to determine that all discovery was improper, noting only the lower courts "should be mindful of the burdens imposed on the Executive Branch in future proceedings." *Id.* at 391. On remand, the D.C. Circuit ruled that FACA did not apply at all to the circumstances, underscoring the concerns animating the Supreme Court's decision about unnecessarily overbroad discovery. *In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) (en banc).

*Karnoski* is an even narrower decision. As in *Cheney*, "the district court appears to have 'labored under the mistaken assumption' that the President had to assert the presidential communications privilege to the specific documents covered by Plaintiffs' discovery requests before Defendants could lodge a separation-of-powers objection." 926 F.3d 1180, 1204–05. But the Court did not indicate that discovery from the Executive was off limits. To the contrary, it gave lengthy guidance on how the lower court should apply executive privilege as the case proceeded. *Id.* at 1205-07.

As detailed below, the Court should make the further findings, consistent with the application of *Cheney* to this case.[1] A draft set of proposed findings is attached to this motion for the Court's convenience.

---

[1] Defendants have indicated that they oppose the Court making additional findings. But they have pointed to no law preventing a court from making further findings in support of an oral ruling. To the contrary, Rule 54 allows a court to revise any decision at any time prior to entry of judgment.

## PROPOSED FURTHER FINDINGS

**1. The evidence sought is directly relevant, tailored, and not available elsewhere.**

The Complaint alleges a scheme orchestrated directly by EOP to attack, retaliate against, and punish Colorado for the lawful exercise of its sovereign authority, including the prosecution of Tina Peters, the use of mail-in voting, and so-called "sanctuary" laws. The evidence produced for the Court's review (Exhibit 1), which the Court discussed at length, is extraordinary evidence that EOP directed this attack against Colorado, including directing departments and agencies to "come prepared to discuss immediate actions that your department or agency can take with respect to Colorado." Ex. 1. Following that meeting on December 15, beginning the next day, the Executive Branch took and announced an unprecedented set of actions and threats targeting Colorado, described during the hearing and in the Complaint. Defendants produced evidence showing that the agencies took these actions at EOP's request and that EOP was directly involved in approving the actions. *E.g.*, Ex. 2, Ex. 3.

The Court's oral discovery order made clear that it was permitting discovery into the targeting of Colorado (but not other States), including the motivations for targeting Colorado. Tr. at 43-46. This evidence is directly relevant and tailored to the claims asserted. By ordering that EOP participate in discovery, the Court indicated that this tailored discovery is directly relevant and that EOP's across-the-board refusal to participate is unwarranted in the extraordinary circumstances of this case. EOP remains free to lodge objections, including separation-of-powers objections, to any particular discovery requests, and the Court can consider those objections in due course.

Consistent with *Cheney*, the Court has explored other avenues to obtain this directly relevant evidence but determined that EOP's participation in discovery is necessary in the unique and extraordinary circumstances of this case at this juncture in discovery. Given EOP's unique role in directing the targeting of Colorado, EOP has critical evidence not available from any other source, including regarding the motivations for targeting Colorado. EOP is not required to reproduce documents that Defendant Agencies have already produced. But Plaintiff has represented that despite months of discovery and substantial discovery requests made, Defendant Agencies have produced no documents or revealed any information as to EOP's motivations for targeting Colorado.[2] But even if they had, it is clear that the party orchestrating the targeting of Colorado possesses unique information that cannot be replicated elsewhere both as to the scope of the targeting and EOP's motivations.

Other discovery responses from Defendant Agencies further indicate that EOP has evidence not available elsewhere. Defendant National Science Foundation, for example, when asked by interrogatory to explain its actions in dismantling the National Center for Atmospheric Research (NCAR), stated that they were taken "at the direction of OMB." Defendants

[2] Defendants argued that Plaintiff could exhaust more discovery requests, but there is no reason to believe that asking the same questions in different ways will lead to different results. Nor does that address the unique evidence and information that only EOP has access to.

Defendants further suggested as to the December 15 meeting, Plaintiff could depose all the non-EOP participants as to the substance of that meeting. But as addressed below, Defendants have asserted executive privilege, including presidential communications privilege, as to all substantive communications involving EOP officials, such as Emily Underwood. Defendants have made no representations that they will not invoke executive privilege as to the substance of the December 15 meeting, as they have to all other similar meetings and conversations.

Department of Homeland Security and FEMA likewise responded that the interrogatory was not applicable to their agencies, pointing back to EOP and the President for the decisions to deny Colorado disaster relief.

Further, during the targeting of Colorado, an EOP official emailed the media a statement: "Maybe if Colorado had a governor who actually wanted to work with President Trump, his constituents would be better served." ECF No. 78 ("Compl.") ¶ 93. Only EOP has access to discovery surrounding this threat, including the copy of the email and the identity of the individual issuing the threat.

Stipulations of fact are another alternative that could narrow discovery. But Plaintiff represented, and Defendants did not dispute, that Defendants have failed to offer any stipulations despite repeated offers from Plaintiff.

In sum, EOP has critical evidence not available elsewhere that is directly relevant to the core issues of this case. EOP is not a bystander in this case. The evidence provided shows that EOP is the key player that orchestrated the scheme to target the State of Colorado for punishment and retaliation. Having considered available alternatives, EOP has access to critical, unique information not available elsewhere that goes to the heart of the case.

**2. The weighty need for this evidence overcomes separation-of-powers concerns.**

In reaching this decision, the Court carefully considered Defendants' separation-of-powers objections. The Court did not mistakenly assume that executive privilege must be asserted before considering separation-of-powers objections. The Court fully recognized the unique role of the President, the special considerations with the Executive Branch's interests in

maintaining autonomy and safeguarding the confidentiality of its communications, the intrusions and burden from discovery, and the need to protect the Executive Branch from vexatious litigation. Those important separation-of-powers concerns are weighty, and the Court did not minimize them. But those concerns are also only one facet of the problem. *Cheney*, 542 U.S. at 385. The Court must also weigh Plaintiff's need for the information and the weighty constitutional claims at issue. Here, those factors overcome Defendants' separation-of-powers concerns.

This case is starkly different from *Cheney.* Not only did *Cheney* concern vastly overbroad discovery unnecessary to the resolution of the case, but it also involved no counterbalancing constitutional claims. The Supreme Court recognized that, at worst, the inability to obtain the requested discovery would make it "more difficult for private complainants to vindicate Congress' policy objectives under FACA." *Id.* at 385. In contrast, this case involves the unprecedented attack by the Executive against Colorado, one of 50 co-equal sovereign states. The evidence shows the attack was directly orchestrated by EOP. Discovery is narrowly tailored to the targeting of Colorado, including the Executive's motivations for attacking Colorado. This critical evidence is necessary to allow Colorado to present its weighty constitutional claims that the Executive infringed its sovereignty and violated the Tenth Amendment. This case is not vexatious. It is brought by a sovereign State to protect its own sovereignty. This is no ordinary litigation, where the balancing would be quite different.

The Court thus must consider the critical need for the information described above and that the claims directly implicate the Constitution's core federalism and dual-sovereignty

principles. As the Supreme Court has emphasized, "the Constitution divides authority between federal and state governments for the protection of individuals. State sovereignty is not just an end in itself: 'Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.'" *New York v. United States*, 505 U.S. 144, 181 (1992). "Just as the separation and independence of the coordinate branches of the Federal Government serves to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). Denying this critical discovery, unavailable elsewhere, would harm Colorado's ability to present its weighty constitutional claims and unnecessarily delay these proceedings.

The Supreme Court has repeatedly recognized that the President is not above the law. "[W]e have long held that when the President takes official action, the Court has the authority to determine whether he has acted within the law." *Clinton v. Jones*, 520 U.S. 681, 703 (1997) (holding that the President is subject to discovery and trial while serving as President). Since the early days of the republic, it has been recognized that "[t]he propriety of introducing any paper into a case, as testimony, must depend on the character of the paper, not on the character of the person who holds it." *United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, C.J.) (upholding a document subpoena served directly against the President). The "burdens on the President's time and attention stemming from judicial process and litigation, without more, generally do not cross constitutional lines." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 871 (2020); *see also Clinton*, 520 U.S. at 703 ("[I]t is also settled that the President is subject to

judicial process in appropriate circumstances”). Such discovery is appropriate where, as here, “judicial action is needed to serve broad public interests.” *Nixon v. Fitgerald*, 457 U.S. 731, 754 (1982).

Consistent with this case law, the Court has concluded that the extraordinary circumstances of this case override Defendants’ separation-of-powers concerns. The directly relevant, critical discovery from EOP, focused specifically on the targeting of Colorado, will not significantly impair the Executive Branch’s conduct of its constitutional duties. But the weighty need for the evidence for these constitutional claims—in support of the Court’s important truth-seeking functions—override Defendants’ separation-of-powers concerns.

**3. Defendants have already broadly invoked executive privilege.**

Much of the Supreme Court’s concern in *Cheney* was focused on avoiding unnecessary collisions between the Judiciary and the Executive Branch when there are available alternatives to avoid unnecessarily broad discovery. *Cheney*, 542 U.S. at 389 (“Contrary to the District Court’s and the Court of Appeals’ conclusions, *Nixon* does not leave them the sole option of inviting the Executive Branch to invoke executive privilege while remaining otherwise powerless to modify a party’s overly broad discovery requests.”). “Once executive privilege is asserted, coequal branches of the Government are set on a collision course. The Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives.” *Id.* In *Cheney*, the lower courts failed to consider options to narrow unnecessarily overbroad discovery that would have fully avoided the invocation of executive privilege and thereby avoided this collision between the branches.

This case is vastly different. Not only is the discovery directly relevant and tailored, *see supra*, the Executive has already broadly asserted executive privilege more than a thousand times, including the presidential communications privilege more than 100 times.[3] *See* Ex. 4 (privilege log excerpts). Indeed, the Executive has asserted presidential communication privilege over every single substantive communication involving Emily Underwood, the organizer of the scheme to target Colorado for retribution. *See, e.g.*, Ex. 3. Plaintiff expects to challenge these privilege assertions shortly. The Court is thus already forced to make the difficult balance between the need for this information against the Executive's Article II prerogatives. Put differently, the collision is already here. This case thus differs substantially from *Cheney* where the lower courts could avoid ruling on executive privilege through alternative routes.

**4. Further delay is unwarranted.**

The Court further considered that discovery from EOP is necessary at this juncture in the case and that further delay is unwarranted. Defendants agreed to and jointly proposed the Scheduling Order adopted by the Court. According to the schedule to which Defendants agreed, discovery is supposed to close at the end of October. Defendants did not request staged discovery, nor did they seek to stay discovery, either as to EOP or as to the case as whole. Instead, EOP unilaterally decided not to participate in discovery across-the-board. At this point in time, where the discovery deadline is fast approaching, the Court has determined that further

[3] Plaintiff represents that Defendants have asserted deliberative process or presidential communications privilege, in full or part, with respect to more than half of all documents and with respect to large portions of the interrogatory responses.

delay is unwarranted. The Court has fully considered Defendants' separation-of-powers concerns in its management of the case, including the "timing and scope of discovery." *Clinton*, 520 U.S. at 707. Based on that consideration and the Court's broad authority to manage its docket, the Court determined that the tailored discovery from EOP focused specifically on the targeting of Colorado is necessary at this juncture.

**5. OMB's refusal to participate in discovery is particularly without merit.**

During the hearing, Plaintiff further identified that the Office of Management and Budget's (OMB) broad refusal to participate in discovery is especially without merit. Tr. at 6:11-22. OMB is an administrative agency located within EOP. Because of significant independent functions extending far beyond simply advising the President, OMB along with several other agencies within EOP have long been held to be agencies subject to both the Administrative Procedure Act (APA) and the Freedom of Information Act (FOIA). *See, e.g.*, *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978). In other words, anyone in the world can submit a FOIA request, and OMB is required by law to respond. Yet here, OMB erroneously claims exemption from all discovery. OMB has further been ordered to provide (or has provided without objection) discovery in numerous other targeting cases, including *Illinois v. Vought*, 1:26-cv-01566 (N.D. Ill.) (ECF No. 50); and *California v. Wright*, No. 3:26-cv-01417-RFL (N.D. Cal.) (ECF No. 112).

When presented with these specific arguments regarding OMB, Defendants did not offer any response, including no citation to case law or any analysis specific to OMB.

There is no basis for OMB to refuse to participate in discovery, especially where the

evidence shows actions to retaliate against Colorado, for example, the dismantling of NCAR, were taken expressly "at the direction of OMB."

**CONCLUSION**

The Court should make additional findings in support of its prior oral ruling, as reflected in the attached draft set of proposed findings.

Dated: August 19, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

/s/ David Moskowitz
David Moskowitz, *Deputy Solicitor General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov
Counsel for the State of Colorado