**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-3428-RBJ

THE STATE OF COLORADO,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.

Defendants.

---

**MOTION TO COMPEL DISCOVERY**

---

Defendants engaged in a coordinated campaign to retaliate against and attack Colorado for exercising core sovereign powers reserved to the States by the Constitution—including the prosecution of Tina Peters and the use of mail-in voting. Defendants now attempt to conceal nearly all substantive details of their scheme from judicial scrutiny. They assert sweeping claims of deliberative process and presidential communications privilege, including over more than half of all responsive documents and broad swaths of responsive information to interrogatories. But privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Defendants' broad, unspecified claims fall far short of the justifications the law requires.

Where, as here, qualified privilege assertions suppress material evidence of both motive and government misconduct, those assertions must yield. Defendants' (incorrect) belief that they can win on the merits on after-the-fact rational basis grounds is a non-sequitur. This is discovery, and there can be no dispute that intent is highly relevant to the claims and defenses that focus on

Defendants' retaliatory motive. Pursuant to Federal Rule of Civil Procedure 37, Colorado moves to compel the production of documents and answers to interrogatories. Because these issues are likely to recur, the Court should issue an order governing future discovery, including depositions, to ensure that this critical evidence does not continue to be improperly shielded from discovery.

## BACKGROUND

Colorado served its Requests for Production ("RFPs") and Interrogatories ("Rogs") on May 6, 2026. Defendants provided their initial objections and answers to the RFPs and Rogs on June 18. They served their first, incomplete production of documents on July 31. Defendants did not begin producing privilege logs until August. Most recently, on September 25, DHS produced its first set of responsive documents and privilege log, and FEMA produced a belated set of more than 200 heavily redacted documents with no privilege log on October 1. To date, the Department of the Air Force has produced neither responsive documents nor a privilege log.

Defendants have supplemented some of their logs and interrogatory answers. But substantial deficiencies remain. Attached are updated privilege logs from USDA (Ex. 1), DOT (Ex. 2), DOI (Ex. 3), DOE (Ex. 4), NSF (Ex. 5), FEMA (Ex. 6), DOW (Ex. 7), and DHS (Ex. 8). Defendants' first supplemental interrogatory answers (Ex. 9) and second supplemental interrogatory answers (Ex. 10) are also attached, as they contain unlogged privilege assertions.

## ARGUMENT

### I. Defendants' assertions of deliberative process privilege are improper.

#### A. Defendants failed to properly assert the privilege.

Privileges are "disfavored" because they operate "in derogation of the search for the truth," and the party asserting such privileges must make a "clear showing" that withheld

information is privileged. *Zander v. Craig Hosp*., 743 F. Supp. 2d 1225, 1230 (D. Colo. 2010). The asserting party must provide information sufficient to enable both the opposing party and the Court to determine whether all elements of the privilege are met. *Id.* at 1232.

The deliberative process privilege applies only to documents that are "predecisional" and "deliberative." *Denver First Church of Nazarene v. Cherry Hills Village*, No. 05-cv-02463, 2006 WL 7354733, at *5 (D. Colo. July 19, 2006). Even then, the privilege is qualified, not absolute. *Id.* Its application requires consideration of a multi-factor test, including "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions." *Id.*

Asserting parties must provide a declaration from the relevant agency head articulating, among other things, a detailed specification of the protected information, why it is within the scope of the privilege, and the effect that would result from disclosure. *See EEOC v. Bok Fin. Corp*., No. 11-cv-1132, 2013 WL 12040729, at *3–4 (D.N.M. Jan. 2, 2013). Agency-head declarations must be provided at the time the privilege is initially asserted.[1] *See, e.g.*, *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697, 2018 WL 8459926, at *13 (C.D. Cal. Dec. 14, 2018) (citing cases). A party that fails to meet its burden to establish the privilege is required to produce the relevant documents. *Zander*, 743 F. Supp. 2d at 1234; *Bok*, 2013 WL 12040729, at *4–5; *Poehling*, 2018 WL 8459926, at *15.

[1] The D.C. Circuit does not follow this rule. But outside of D.C. and an outlier court here or there, the majority approach requires providing declarations at the time of privilege assertion, because otherwise the privilege cannot be properly asserted or evaluated.

Defendants have not come close to meeting these obligations. To date, Defendants have produced no agency-head declarations and have identified no harms that would result from disclosure of responsive documents and information. In many instances, their assertions of privilege lack the specificity necessary to evaluate whether documents are even pre-decisional or deliberative. For example, DOT's privilege log vaguely states that numerous documents are deliberative because they "include[] internal agency" analysis, ratings, guidance and/or recommendations, and they are pre-decisional because they "do[] not reflect the final agency decision." *See* Ex. 2. Defendants' interrogatory answers similarly fail to assert privileges with any specificity. *See, e.g.*, Ex. 10 at 20, 27, 30, 36, 57, 60.

Because Defendants have failed to carry their burden, the Court should compel unredacted production of all documents withheld under the deliberative process privilege and order Defendants to provide complete interrogatory responses.

**B. In any event, Colorado's compelling need for the information overrides Defendants' privilege assertions.**

"The [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit," but it "makes no sense to permit the government to use the privilege as a shield" where the "plaintiff's cause of action is directed at the government's intent." *In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Gudkovich v. City of Chicago*, No. 17-cv-8714, 2022 WL 252716, at *9 (N.D. Ill. Jan. 27, 2022). Here, because Colorado's claims are directed at Defendants' intent, the privilege is overridden.

Similarly, many courts hold that the "privilege simply does not apply when governmental misconduct is the focus of the lawsuit." *Denver First Church of Nazarene*, 2006 WL 7354733, at

*6. Other courts find alleged government misconduct "weigh[s] in favor of overriding the privilege" under the multi-factor test that applies to the qualified privilege. *Id.* District courts in Colorado have repeatedly held that the privilege does not apply when government misconduct and intent are at issue. *See id.* (If "Plaintiff can set forth any evidence, including circumstantial evidence, of illegal motive, Plaintiff can overcome Defendants' claim for deliberative process privilege."); *Fourhorn v. City and Cnty. of Denver*, Case No. 08-cv-01693, 2009 WL 2407569, *5 (D. Colo. Aug. 3, 2009) ("[T]he deliberative process privilege must yield here to Plaintiffs' need for documents that may potentially speak to a material issue in their case.").

Defendants' assertions of privilege must yield here to Colorado's need for documents that speak to material issues in this case regarding federal officials' coordinated campaign to target, threaten, and retaliate against Colorado for exercising core sovereign authority. This conclusion is reinforced by the multi-factor test used to evaluate the qualified privilege.

<u>Relevance:</u> The requested documents are highly relevant because they bear directly on Defendants' intent and misconduct, which are central to Counts I and II. Colorado has provided significant evidence of Defendants' unconstitutional motives, including from Defendants' public statements repeatedly tying their retaliation and attacks to Colorado's use of mail-in voting and prosecution of former Mesa County Clerk Tina Peters. *See* ECF 89 at 2–3. These attacks and threats were particularly concentrated from December 15, 2025, through December 31, 2025. *See id.* Defendants' meager discovery responses reveal why: on December 15, 2025, the Executive Office of the President called a meeting with various agencies, including Defendants USDA, DOT, DOI, and DOE, and directed them to "come prepared to discuss immediate actions" each could "take with respect to Colorado." Ex. 11 (US-USDA_0000084).

USDA's produced documents confirm the relevance—and the gaps. Materials from December 2025 show that key communications occurred at the direction of the White House, yet Defendants redact nearly all substantive content. *See* Ex. 12 (US-USDA_0000180 (12/15/25 email re: "FYI on WH direction RE: Colorado")); Ex. 13 (US-USDA_0000158 (12/16/25 email re: "FYI Direction from WH")).

Defendants' privilege logs demonstrate a flurry of relevant activity during this same timeframe. DOT's privilege log asserts deliberative process privilege over approximately 150 documents that were created or exchanged between December 10, 2025, and January 10, 2026. *See* Ex. 2. DOT's privilege log describes these documents as relating to draft letters and correspondence regarding terminated grants and denied grant applications affecting Colorado. *See id.* DOE's privilege assertions are the same, with over 210 of its total 236 assertions during this same one-month period. *See* Ex. 4.

Defendants' interrogatory responses likewise show that the withheld information is highly probative. Rog 3 asks Defendants to identify communications regarding actions and threats aimed at Colorado and to describe the content of those communications. Although EOP directed other Defendant Agencies to be prepared to discuss immediate actions they could take against Colorado, Defendants refuse to disclose the substance of those communications. Their responses rely on vague privilege invocations or cite documents redacted and withheld based on the privilege. *See* Ex. 10 at 26–36.

In sum, Defendants repeatedly invoke the deliberative process privilege to obscure evidence directly relevant to Colorado's constitutional claims.

<u>Availability of other evidence</u>: No alternative sources of evidence exist that can shed

light on the motives behind Defendants' actions. The withheld information is the only source describing the actual basis, true motives, and coordination behind Defendants' conduct.

Seriousness of litigation: Defendants acknowledge "[t]his is not a typical or an ordinary case." ECF 102 at 42:8. The litigation raises issues of state sovereignty and federalism. The public interest in transparency is exceptionally strong.

Role of government: The agencies invoking the privilege are Defendants in this action, and the alleged misconduct arises from their own coordinated conduct. EOP orchestrated the December 15, 2025, meeting and directed agency Defendants to consider immediate actions against Colorado—events central to Counts I and II. Defendants cannot wield deliberative process privilege to conceal the very actions and motives for which they are being sued.

Risk of chilling from compelling production: Defendants' logs provide no explanation of how disclosure of any particular document would chill agency deliberation. In any event, the Protective Order mitigates any alleged chilling effect from disclosure of confidential and sensitive government documents. *See Fourhorn*, 2009 WL 2407569, at *3.

In sum, even if Defendants had properly invoked the deliberative process privilege—which they have not—the privilege cannot be used to shield critical evidence of coordination, motive, and retaliatory intent. The requested documents and interrogatories address central issues in the litigation, information that is unavailable elsewhere, and involve the Defendants' own conduct in a matter of significant constitutional importance. Colorado's compelling need overrides any qualified privilege.

**C. Defendants incorrectly claim that their motive is irrelevant.**

In response, Defendants baselessly claim that—in this case alleging that Defendants retaliated against and singled out Colorado for punishment—their motive is irrelevant. But they cannot point to any case involving retaliation where a court has held that motive is irrelevant, because it goes to the heart of the case. Indeed, Defendants dispute that they retaliated against Colorado, but they now seek to hide the relevant motive evidence. As courts have repeatedly recognized, deliberative process privilege must yield in these circumstances.

Defendants' rational basis arguments are a non-sequitur. This is discovery, not the merits. The only question is the need for relevant discovery as to any element of a claim or defense. Here, there is clear need for this relevant information that goes to both the claims and defenses. *See, e.g.*, *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (retaliation claim entails whether government action was "substantially motivated" as a response to the exercise of constitutionally protected conduct). That Defendants think that they might somehow win on rational basis grounds on the merits just does not matter at this stage of the litigation.

Defendants' reliance on *City of Saint Paul v. Wright*, 816 F. Supp. 3d 65 (D.D.C. 2026), and *Lillemoe v. USDA*, 344 F. Supp. 3d 215 (D.D.C. 2018), is misplaced. First, those cases involve equal protection claims not at issue here. But they nevertheless show the fallacy of Defendants' arguments. An equal protection claim involves two steps: first, "whether the challenged [government] action intentionally discriminates between groups of persons"; and second, "whether the [government's] intentional decision to discriminate can be justified" under the appropriate level of scrutiny. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012); *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (equal protection claim requires that

plaintiff was "intentionally treated differently"). Motive and intent are at the heart of the claim. That is why in *City of Saint Paul* the federal government *stipulated* that it intentionally targeted various States—to avoid the same discovery into motive and intent at issue here. Ex. 14. Neither of these cases purport to restrict discovery into intent, nor hold that intent is irrelevant.

Similarly, here, motive and intent are at the core of the claims. Whether Defendants intentionally retaliated against and singled out Colorado for punishment and attack in order to coerce the State to exercise its core sovereign powers to the President's liking is central to both Counts I and II. Unlike the equal protection claims cited by Defendants, rational basis review does not apply to these counts. There is no authority that officials can retaliate in response to protected constitutional conduct so long as they can come up with an after-the-fact rational basis. To the contrary, that is just pretext evidence. Likewise, in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 577–78 (2012), the Court held that the federal government may not coerce States to relinquish sovereign authority, regardless of whether a conceivable rational basis could be articulated. Nor is the fundamental principle of equal sovereignty overridden by an after-the-fact, highly deferential rational basis review. Thus, not only are Defendants wrong that motive and intent are irrelevant, they are also wrong that they can succeed on the merits if they can come up with an after-the-fact pretext for their actions.

In sum, Defendants' motives are central to the constitutional claims here. The information Defendants seek to shield is highly relevant and should be ordered released.

### D. Colorado's compelling need, together with Defendants' deficient privilege assertions, warrant a categorical ruling.

Because Colorado has demonstrated a compelling need for the withheld materials—need that goes directly to central issues of motive, intent, and constitutional misconduct—the Court should categorically overrule Defendants' deliberative process privilege assertions. Such an order should govern future discovery, including depositions, so that Defendants do not continue to shield and delay critical discovery. Any limited harm to Defendants can easily be mitigated by the Protective Order. There is no need to repeatedly rehash the same issues over and over.

Should the Court determine not to issue a categorical ruling, Colorado reserves the right to raise targeted, document-specific challenges should Defendants later provide adequate information. However, because Defendants have not provided sufficient information or declarations, Colorado cannot at this stage raise such challenges.

## II. Defendants' assertions of presidential communications privilege are improper.

### A. Defendants failed to properly invoke the privilege.

The presidential communications privilege "does not arise automatically or by implication"; rather, it must be invoked by either "the President or his designee." *United States v. Navarro*, 182 F.4th 1005, 1016, 1018 (D.C. Cir. 2026). An agency cannot invoke the privilege. *Common Cause v. NRC*, 674 F.2d 921, 935 (D.C. Cir. 1982). There is no evidence that either the President or his designee has reviewed the relevant documents and information and invoked the privilege with respect to each. For this reason alone, the privilege does not apply.

At the September 24 hearing, Defendants' counsel suggested that Defendants need not offer any invocation by the President or his designee, citing *Cheney v. U.S. District Court*, 542

U.S. 367, 385 (2004). But *Cheney* does not apply. *Cheney* involved discovery directed to the Vice President and close presidential advisors, and whether discovery could be directly sought from them. *Id*. at 381–83, 389. By contrast, the present motion is aimed at Agency Defendants for information and documents in their possession, custody, or control. Indeed, the Court will recall Defendants argued that *Cheney* required Colorado to first seek this information, such as communications with EOP, from Agency Defendants. ECF 102 at 23:13–23. But now they claim, without basis, that *Cheney* prevents that as well. At bottom, Agency Defendants have already asserted the privilege here in order to shield relevant information they possess. That posture distinguishes this case from *Cheney*: it is Agency Defendants affirmatively asserting a qualified privilege to block discovery while refusing to properly invoke or provide the necessary information to establish privilege. Defendants have been unable to identify any case where an agency has been allowed to shield discovery under executive privilege without proper invocation. Indeed, had Agency Defendants received a FOIA request for these documents, they would have been required to properly invoke executive privilege. *See, e.g.*, *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (affidavit from White House for FOIA request to DOJ). There is no reason why a different rule would apply to discovery.

**B. Defendants' boilerplate assertions exceed the bounds of the privilege.**

"The presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (reviewing documents regarding President's "appointment and removal power, a quintessential and nondelegable Presidential power"). Nor does the privilege extend to staff in agencies outside

the White House. *Id.* at 745 (deliberative process privilege "applies to decisionmaking of executive officials generally," while presidential communications privilege applies "specifically to the decisionmaking of the President"). Defendants' claims disregard these limits.

Defendants' assertions are not limited to presidential decisionmaking. Defendants identify only two decisions they claim were made by the President: (1) the major disaster declaration decision under 42 U.S.C. § 5170, and (2) the Space Command basing decision. Ex. 9 at 6, 22. Outside those instances, Defendants fail to identify any specific direct presidential decision on which their privilege claims rely. Defendants nevertheless improperly seek to apply the privilege to decisions that they themselves attribute to Defendant agencies. *See generally* Ex. 9 at 41–46; Ex. 10 at 36–42; Exs. 1–4 (USDA, DOT, DOI, and DOE logs). Therefore, the Court should rule categorically that the privilege does not apply outside of these two actions.

For example, Defendants invoke the privilege broadly to communications involving EOP regarding agency decisionmaking. *See* Ex. 1, US-USDA_0000135–37 (12/16/25 email from USDA to EOP discussing "potential actions by USDA" and "next steps" regarding SNAP pilots); Ex. 4, US-DOE_0000690 (12/15/25 email from DOE to EOP discussing "agency decision-making process regarding proposed disposition of DOE financial awards"); Ex. 2, US-DOT_245 (12/16/25 email from EOP to DOT containing "internal agency analysis on timelines and next steps"). Defendants even assert presidential communications privilege over internal agency emails that do not include EOP recipients regarding agency decisionmaking. Ex. 1, US-USDA_0000237–39; 240–42; 260–61; 264–65. But when the D.C. Circuit extended the privilege beyond direct communications with the President, it did so only narrowly for communications with close presidential advisors "in the course of gathering information and preparing

recommendations on official matters for presentation to the President." *In re Sealed Case*, 121 F.3d at 757. The privilege protects deliberative communications meant to advise the President for direct presidential decisionmaking; it does not shroud agency decisions (and executive communications regarding those decisions) in secrecy. Nor does it cover directives from EOP to agencies. *See, e.g.*, *See* Ex. 12–13 (emails identifying "WH direction RE: Colorado").

In sum, Defendants rely on boilerplate assertions devoid of document-specific support, thereby extending the privilege to categories of materials—including agency decisionmaking—that fall well outside the narrow scope of the privilege. These failures render Defendants' privilege assertions improper and warrant compelling disclosure.

### C. Colorado's compelling need overrides the privilege because the information is central to Colorado's claims and not otherwise available.

Even a properly invoked presidential communications privilege is qualified, not absolute. *Navarro*, 182 F.4th at 1011. The privilege must yield when the assertedly privileged information "likely contains important evidence" that is "not available with due diligence elsewhere." *In re Sealed Case*, 121 F.3d at 754; *see id.* at 746 ("[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred."). That standard is met here.

Colorado has presented substantial evidence confirming that EOP orchestrated a coordinated campaign to threaten and retaliate against Colorado by directing multiple executive agencies to develop "immediate actions" they could "take with respect to Colorado." Ex. 11 (US-USDA_0000084); *see supra at* 5–6. Defendants' broad invocation of presidential communications privilege shields nearly all agency documents related to EOP that would illuminate the scope, direction, and purpose of that campaign. These materials therefore "likely

contain[] important evidence," meaning evidence "relevant to issues that are expected to be central to the trial." *In re Sealed Case*, 121 F.3d at 754. Defendants' own privilege logs confirm that they redacted or fully withheld virtually all substantive communications with EOP under their blanket assertions of privilege.

This important evidence is not available elsewhere. Defendants' privilege assertions have concealed all meaningful correspondence between EOP and the relevant agencies. Under *In re Sealed Case*, Colorado has thus met the second requirement: the evidence is not obtainable "with due diligence elsewhere." 121 F.3d at 754.

Defendants' Rog responses further illustrate why these documents are necessary. Although agency personnel admit consulting and receiving directives from EOP and OMB on multiple decisions, Defendants refuse to disclose the substance of those communications, relying instead on blanket privilege assertions untethered to any identification of a presidential decision. *See, e.g.*, Ex. 9 at 28, 34–37, Ex. 10 at 20, 27, 29–30, 35–36. This withholding leaves Colorado without basic information necessary to prove its claims.

The Protective Order in this case further reduces any need to rely on the privilege. As the Supreme Court recognized, a "restriction on public access" "preserve[s] executive confidentiality" while allowing disclosure to occur. *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 450–51 (1977).

Because Colorado has shown (1) that the shielded information is central to this case hinging on official motives and coordination; and (2) there is no alternative source for the withheld information, Defendants' sweeping and unsupported privilege claims fall squarely within the narrow category of cases in which the presidential communications privilege must

give way to a compelling need for disclosure.

**D. The Court should conduct an *in-camera* review.**

If the Court determines that any documents fall within the privilege but that Colorado's compelling need requires disclosure, the Court must review those documents *in camera* to assess whether any discrete portions are irrelevant. *See In re Sealed Case*, 121 F.3d at 759. In such event, the Court should do so unless Defendants waive that.

**CONCLUSION**

The Court should therefore (1) overrule Defendants' privilege assertions; (2) order Defendants, within seven days, to (i) produce for *in camera* review any documents previously withheld under the presidential communications privilege that they contend contains privileged information irrelevant to these proceedings and (ii) produce unredacted versions of all other documents withheld or redacted on overruled privilege claims; (3) order Defendants, within 14 days, to provide interrogatory answers in place of prior assertions of either executive privilege, and (4) issue an order providing guidance for future discovery, including ordering that Defendants may not instruct witnesses not to answer questions during depositions, on the basis of these objections, for the subjects addressed in the RFPs and Rogs.

Dated: October 2, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

*/s/ Reed Morgan*
Reed Morgan, *Assistant Solicitor General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
reed.morgan@coag.gov
*Counsel for the State of Colorado*