# EXHIBIT #9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03428-RBJ

THE STATE OF COLORADO,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

---

**DEFENDANTS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as well as this Court's Scheduling Order (ECF 76 at 10), Defendants[1] hereby supplement their June 18, 2026, responses to Plaintiff's First Set of Interrogatories, as follows.

***

[1] President Trump, in his official capacity, and the Executive Office of the President; Pete Hegseth, in his official capacity as Secretary of War (and the Department of War); Troy Meink, in his official capacity as Secretary of the Air Force (and the Department of the Air Force); Sean Duffy, in his official capacity as Secretary of Transportation (and the Department of Transportation); Brooke Rollins, in her official capacity as Secretary of Agriculture (and the Department of Agriculture); Chris Wright, in his official capacity as Secretary of Energy (and the Department of Energy); Doug Burgum, in his official capacity as Secretary of the Interior (and the Department of the Interior); Markwayne Mullin, in his official capacity as Secretary of Homeland Security (and the Department of Homeland Security); Robert Fenton, in his official capacity as Senior Official Performing the Duties of Administrator of the Federal Emergency Management Agency ("FEMA") (and FEMA); and Brian Stone, in his official capacity as Senior Official Performing the Duties of Director of the National Science Foundation ("NSF") (and NSF).

timeframe of April 1, 2025, to July 1, 2026 (revised at Plaintiff's request),[2] and, following that search, will produce relevant, non-privileged documents. If responsive, relevant, non-privileged documents exist and are produced, Agency Defendants will supplement their answer to this Interrogatory to indicate the Bates numbers. Fed. R. Civ. P. 33(d)(1). The dates will, alternatively, appear in privilege logs.

***Department of War (Supplemental Response):*** The individuals listed below were involved in and/or briefed on the decision.

1. Hon. Pete Hegseth, Secretary of War.

   - On July 21, 2025, met with a Colorado Congressional Delegation to discuss the forthcoming presidential Space Command basing decision.
   - Briefed by Secretary of War Chief of Staff Ricky Buria on DoW's position regarding the forthcoming presidential Space Command basing decision during an August 2025 meeting with Secretary of the Air Force Troy Meink, Chief of Staff to the Secretary of the Air Force Benjamin Schramm; Deputy Secretary of War Steve Feinberg; and Chief of Staff to the Deputy Secretary of War James Sapp. The information provided in that briefing is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative

[2] Defendants do not concede that this timeframe is relevant to Plaintiff's claims, or proportional to the needs of the case, as to discovery against any Defendant.

The Parties are conferring with respect to the discovery timeframe applicable to the United States Air Force, "USAF." USAF has not agreed to a discovery timeframe of April 1, 2025, to July 1, 2026. Defendants will supplement their discovery responses, in writing, when agreement is reached with respect to USAF.

9. Denise Flanagan, Director of Budget. Head of the Budget Office through which the January 2026 OMB Budget Data Request was routed. Participated in the coordination of information related to the Budget Data Request, including review and approval by relevant political leadership before submission to OMB.

***Federal Emergency Management Agency (Supplemental Response):***

1. Victoria Barton, Associate Administrator, Office of External Affairs. Reviewed FEMA's disaster declaration packages regarding Colorado. The information contained in FEMA's declaration packages are protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative because it concerns discussion of the forthcoming decision regarding disaster relief to Colorado prior to President Trump making a final decision.
2. William Bilicic, Management and Program Analyst. Forwarded FEMA disaster declaration packages to FEMA Headquarters Declarations team to send to FEMA Executive Secretariat. The information contained in FEMA's declaration packages are protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative because it concerns discussion of the forthcoming decision regarding disaster relief to Colorado prior to President Trump making a final decision.
3. Renee Byrd, Attorney Advisor, FEMA Office of Chief Counsel. Provided legal review of draft disaster declaration packages. The information contained in FEMA's declaration packages are protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative because it concerns discussion of the forthcoming decision regarding disaster relief to Colorado prior to

packages is protected from disclosure by executive privilege because it concerns presidential communications.

FEMA reiterates that only the President has the authority to declare a major disaster under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. 42 U.S.C. § 5170.

***Department of Energy (Supplemental Response):*** The individuals identified below sent or received emails and/or attended meetings regarding the Challenged Conduct with respect to DOE in December 2025 and January 2026. Information about the details and substance of these communications is subject to the deliberative process privilege and withheld on that basis, as DOE did not terminate awards to Colorado in this timeframe, and the communications identified constitute part of DOE's predecisional inter- or intra-agency deliberations by which governmental decisions are formulated. Additionally, information about the details and substance of communications with White House officials (designated below as "EOP/WHO" or "EOP/OMB") is subject to the executive privilege because it concerns communications in performance of the duties of the President and his office, associated with shaping policies and making decisions.

1. Audrey Barrios, Advisor to the Secretary. Received email on the following dates regarding potential termination of DOE financial awards: December 16, 2025.
2. Jonathan Brightbill, General Counsel. Sent and/or received privileged attorney-client communications and/or attorney work product regarding potential termination of DOE financial awards on the following dates: December 15, 16, 17, 18, 19, and 23, 2025.
3. Emily Burdick, Principal Deputy Director for Cybersecurity, Energy Security, and Emergency Response. Received email on the following dates regarding potential

41. Mark Paoletta (EOP/OMB). Sent and/or received privileged attorney-client communications and/or attorney work product regarding potential termination of DOE financial awards on the following dates: December 17 and 18, 2025.
42. Katharine Sullivan (EOP/OMB). Received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.
43. Taylor Rogers (EOP/WHO). Sent and/or received email on the following date regarding potential termination of DOE financial awards: December 16, 2025.
44. Emily Underwood (EOP/WHO). Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.
45. Russell Vought (EOP/OMB). Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.

***National Science Foundation (Supplemental Response):***

The following individuals sent or received emails and/or attended meetings regarding the Challenged Conduct with respect to NSF.

1. Brian Stone, Senior Official Performing the Duties of the NSF Director—
   a. Consulted with individuals from the Office of Management & Budget ("OMB") regarding OMB's direction with respect to options for the restructuring of the NSF National Center for Atmospheric Research ("NCAR"), including coordinating the preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of a Dear Colleague Letter regarding the intent to restructure critical weather science infrastructure at NCAR ("the DCL"); and other options for restructuring

components of NCAR, including the NCAR-Wyoming Supercomputing Center. The OMB representatives involved in those consultations were Russell Vought, Director, and Stuart Levenbach, Associate Director for Agriculture, Commerce, Resources, Energy, and Science.. The information regarding these discussions is protected from disclosure by deliberative process privilege. The information is pre-decisional and deliberative.

b. Briefed NSF leadership and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.

2. Rebecca Keiser, Acting Chief of Staff—attended and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.

3. Simon Malcomber, Chief Science Officer—attended and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.
4. Micah Cheatham, Chief Management Officer—attended and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.
5. Angel Williams, General Counsel—attended and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from

disclosure by the attorney-client privilege because it contains legal advice, relates to legal advice sought, and/or reflects legal advice. The information regarding these discussions is also protected from disclosure by the attorney-work product privilege where prepared or collected at direction of counsel and/or prepared in anticipation of litigation, active litigation, or other legal proceedings. Further, the information is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.

6. Robert Moller, Head, Office of Legislative and Policy Affairs–attended and/or participated in NSF leadership meetings regarding OMB's direction with respect to options for the restructuring of NCAR, including preparation of NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025; preparation of the DCL; and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. The information regarding these discussions is protected from disclosure by the deliberative process privilege. The information is pre-decisional and deliberative.

**INTERROGATORY NO. 2**: Describe in detail how Defendants decided to take each of the actions or threats against either Colorado, its political subdivisions or instrumentalities, or entities within Colorado described in the operative Complaint, including when, how, and why Defendants began to consider each action or threat, all facts and considerations taken into account in making the decision, and whether Defendants considered the same and/or a similar action or threat against any other states and why those states were or were not subjected to the same and/or a similar action or threat.

**SUPPLEMENTAL RESPONSE:** Defendants object to the extent the Interrogatory seeks discovery from the President, the Executive Office of the President, and/or the White House. Such discovery is improper at least at this juncture because, among other things, it would contravene

Defendant DHS objects to this Interrogatory because there are no allegations in the operative Complaint, at all, concerning it. DHS appears to be included as a named Defendant solely because the Federal Emergency Management Agency, also a named Defendant, is a component of DHS. Nonetheless, in the spirit of compromise, and although Defendants do not concede that Plaintiff has established the relevance and proportionality of discovery directed to DHS—when it is already receiving discovery from FEMA, the agency alleged to have taken action against Colorado—DHS will respond to Plaintiff's discovery requests. Specifically, DHS will provide answers to Plaintiff's Interrogatories (subject to Defendants' other objections) on or before September 18, 2026.

Based on a reasonably diligent search, Agency Defendants (other than DHS—*see supra*) identify below how the Agency Defendants decided to take the Challenged Conduct, as follows:

**Department of War/Department of Air Force (Supplemental Response):** DoW and Air Force refer Plaintiff to the Administrative Record. By way of further response, in 2025, the White House, in consultation with DoW and the Department of the Air Force, reconsidered President Biden's July 2023 decision to locate the permanent U.S. Space Command ("USSC") headquarters in Colorado Springs. In the 2020 and 2021 basing analysis (provided in the Administrative Record), which was initially undertaken during President Trump's first administration, the Secretary of the Air Force had identified Huntsville, Alabama as the preferred location for the new USSC permanent headquarters. Under President Biden's administration, the Department of the Air Force re-evaluated the basing analysis (provided in the AR), and the Secretary of the Air Force again identified Huntsville as the preferred location. However, in 2023, President Biden exercised his authority as

Commander in Chief to decide to locate the USSC headquarters in Colorado Springs. In 2025, based on USAF's prior analysis and recommendation, and DoW and USAF's reaffirmance of that analysis, President Trump subsequently exercised his authority as Commander in Chief to supersede President Biden's decision and made the decision to locate the USSC permanent headquarters in Huntsville.

**Department of Agriculture (Supplemental Response):** In alignment with Executive Order No. 14243, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos," and as authorized by the Food and Nutrition Act of 2008, USDA established the SNAP Information Database to ensure program integrity by compiling SNAP data that will be used to "identify and rectify any ineligible, duplicate, or fraudulent SNAP enrollments or transactions," including "verifying eligibility based on immigration status, identifying and eliminating duplicate enrollments, assisting States in mitigating identity theft, and performing other eligibility and program integrity checks." 90 Fed. Reg. 26521, 26522 (June 23, 2025).

As of July 1, 2026, 30 States, including Guam, have provided the requested data to the SNAP Information Database. Four States that, like Colorado, have delegated the responsibility of SNAP administration to their counties are within that count. A review of the data from county-administered States compared to that of non-county-administered States indicated to USDA that States with a county-administered program are generally more likely to have higher rates of fraud, waste, and abuse than States that do not delegate administration of SNAP to the county level.

Colorado, specifically, also has a recent history of integrity concerns. In February

2023, FNS conducted a Recipient Integrity and Claims Review Management Evaluation of Colorado that identified issues with the establishment of overissuance claims against households and disqualification actions for fraud, resulting from guidance provided to the counties by the State agency. *See* Corley Declaration, Ex. B, ECF # 52-1 at 11-12, 17-18. Despite the county investigators' thorough and evidence-based substantiation of fraud, county eligibility staff failed to follow through and establish a claim for repayment or initiate a disqualification, despite being required to do so by federal regulation. *See e.g.*, 7 C.F.R. §§ 273.16(a)(1), 273.18; Ex. B at 11-12. In Colorado's Management Evaluation for 2024, USDA found that Colorado did not correct these issues. And, by early December 2025, public reports concerning apparently illegal activities in Colorado, including Denver area gang operations and abuse of public benefits, led USDA to consider whether SNAP program integrity should be reevaluated in Colorado.

In mid-December 2025, USDA participated in an inter-agency call hosted by EOP to discuss Colorado. USDA shared that it was considering replicating a pilot program requiring SNAP recertifications in certain counties, similar to a pilot it had implemented elsewhere.

**Department of Transportation (Supplemental Response):** DOT refers Plaintiff to the Administrative Record. By way of further response, in December 2025, DOT withdrew four unobligated grant awards for which Colorado entities had been selected, and it terminated one grant agreement with a Colorado recipient. DOT took each of these actions because the projects did not align with Administration priorities. Since January 2025, DOT has withdrawn unobligated grant awards or terminated grant agreements with entities in

the following States other than Colorado: Alabama, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, Virginia, and Wisconsin.

Also in December 2025, DOT made its selections for Fiscal Year (FY) 2025 Safe Streets for All grant awards. Information about the selection process is available on DOT's website at https://www.transportation.gov/grants/SS4A. DOT did not select any Colorado projects. DOT also did not select any Vermont projects.

Any additional information regarding deliberative and pre-decisional discussions requested in Interrogatory No. 2 is protected from disclosure by the deliberative process privilege.

**Department of Interior (Supplemental Response):** DOI did not decide to take, and did not take, any action to terminate or withhold financial assistance to Colorado or any Colorado-based recipient; it terminated no award and issued no termination letter to Colorado, any political subdivision, or any grantee.

The only related activity was limited to internal information-gathering: in December 2025, at the request of the Office of the Assistant Secretary for Policy, Management and Budget, the Office of Grants Management ("PGM") compiled a list of open awards to Colorado and Colorado-based entities; and in January 2026, DOI responded to an OMB Budget Data Request (BDR-26-09, "Federal Awards to Entities in Select States") seeking award information for entities in sixteen States, of which Colorado was one. Neither effort resulted in any termination or the issuance of any termination letter. As

to consideration of similar action toward other States, the January 2026 data call encompassed sixteen States and was not specific to Colorado. To the extent the Interrogatory seeks the substance of the internal deliberations during this information-gathering, DOI withholds that information on the basis of the deliberative-process privilege.

**Federal Emergency Management Agency (Supplemental Response):** FEMA did not take any action or threat against Colorado. Any details regarding the extent to which FEMA considered taking such an action or threat are subject to the deliberative process privilege.

**Department of Energy (Supplemental Response):** With respect to the Challenged Conduct, DOE considered potential termination of DOE financial awards and Ben Dietderich communicated with reporter Thomas Catenacci on or about December 16 regarding potential termination of DOE financial awards. However, DOE did not terminate financial awards or take any action or threat against Colorado. Any details regarding the extent to which DOE considered taking such an action or threat are subject to the deliberative process privilege.

**National Science Foundation (Supplemental Response):** At the direction of OMB, NSF began considering options for the potential restructuring of NCAR in December 2025. NSF consulted with OMB regarding NSF's Notice of Intent to Restructure Critical Weather Science Infrastructure, as issued on December 17, 2025. Beginning December 2025, NSF also consulted with OMB with respect to preparation, issuance, and responses to the DCL, and other options for restructuring components of NCAR, including the NCAR-Wyoming Supercomputing Center. To the extent the Interrogatory seeks the substance of the internal

deliberations, NSF withholds that information on the basis of the deliberative-process privilege. NSF did not consider the same and/or similar action or threat against any other entity.

**INTERROGATORY NO. 3:** For each individual identified in response to Interrogatory No. 1, identify all their communications regarding the action or threat, regardless of whether the communication was part of the decision-making process for that action or threat and/or occurred after-the-fact, including the date, content, form of the communication (e.g., meeting, social media post, email, text message), and other individuals involved, whether as a listener or participant.

**SUPPLEMENTAL RESPONSE:** Defendants incorporate, by reference, their objections to Interrogatory No. 1 (including their objection to discovery from the President, the Executive Office of the President, and/or the White House, and from DHS).

In response to (at least) Plaintiff's Request for Production No. 1, Agency Defendants will conduct a reasonable search for documents and communications regarding the Challenged Conduct, within the timeframe of April 1, 2025, to July 1, 2026 (revised at Plaintiff's request),[3] and, following that search, will produce relevant, non-privileged documents. If responsive, relevant, non-privileged documents exist and are produced, Agency Defendants will supplement their answer to this Interrogatory to indicate the Bates numbers. Fed. R. Civ. P. 33(d)(1).

**INTERROGATORY NO. 4:** Describe in detail all instances in which any Defendant took any other threat or adverse action (e.g., terminating, not renewing, or taking away federal funding or services; auditing; not granting funds; or investigation) directed at or to either Colorado, its political subdivisions or instrumentalities, or entities within Colorado that is not described in the operative Complaint, including when, how, and why Defendants began to consider the action or threat, all facts and considerations taken into account in making the decision, and whether Defendants considered the same and/or a similar action or threat against any other states, political subdivisions or instrumentalities of other states, or entities within other states and why they were or were not subjected to the same and/or a similar action or threat. In identifying actions or threats responsive to this Interrogatory, please exclude actions or threats that were taken as to all states, political subdivisions or instrumentalities of all states, or entities within all states.

[3] As noted *supra*, the Parties are conferring with respect to the relevant timeframe for USAF.

answers to Plaintiff's Interrogatories (subject to Defendants' other objections) on or before September 18, 2026.

Defendants will not answer this Interrogatory.

Respectfully submitted, ***as to objections***,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ Marianne F. Kies
JOSEPH E. BORSON
MARIANNE F. KIES
Assistant Branch Directors
Federal Programs Branch

ALEXANDER J. SEVERANCE
ADAM S. FOX
Trial Attorneys
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Marianne.F.Kies@usdoj.gov
Tel.: 202-353-1819

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2026, I electronically served the foregoing, via email, on counsel of record for Plaintiff.

*s/_Marianne F. Kies*
U.S. Department of Justice