# EXHIBIT #10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03428-RBJ

THE STATE OF COLORADO,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

Defendants.

---

**DEFENDANTS' SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as well as this Court's Scheduling Order (ECF 76 at 10), Defendants[1] hereby supplement their June 18 and July 29, 2026, responses to Plaintiff's First Set of Interrogatories, as follows.[2]

[1] President Trump, in his official capacity, and the Executive Office of the President; Pete Hegseth, in his official capacity as Secretary of War (and the Department of War); Troy Meink, in his official capacity as Secretary of the Air Force (and the Department of the Air Force); Sean Duffy, in his official capacity as Secretary of Transportation (and the Department of Transportation); Brooke Rollins, in her official capacity as Secretary of Agriculture (and the Department of Agriculture); Chris Wright, in his official capacity as Secretary of Energy (and the Department of Energy); Doug Burgum, in his official capacity as Secretary of the Interior (and the Department of the Interior); Markwayne Mullin, in his official capacity as Secretary of Homeland Security (and the Department of Homeland Security); Robert Fenton, in his official capacity as Senior Official Performing the Duties of Administrator of the Federal Emergency Management Agency ("FEMA") (and FEMA); and Brian Stone, in his official capacity as Senior Official Performing the Duties of Director of the National Science Foundation ("NSF") (and NSF).

[2] Defendants explicitly reserve the right to supplement their responses if any responsive, non-privileged information is discovered during the course of the litigation.

on the grant review and selection process can be found at the website listed in DOT's response to Interrogatory No. 2.

**Department of Energy (Second Supplemental Response):** The individuals identified below sent or received emails and/or attended meetings regarding the Challenged Conduct with respect to DOE in December 2025 and January 2026. Information about the details and substance of these communications is subject to the deliberative process privilege and withheld on that basis, as DOE did not terminate awards to Colorado in this timeframe, and the communications identified constitute part of DOE's predecisional inter- or intra-agency deliberations by which governmental decisions are formulated. Additionally, information about the details and substance of communications with White House officials (designated below as "EOP/WHO" or "EOP/OMB") is subject to the executive privilege because it concerns communications in performance of the duties of the President and his office, associated with shaping policies and making decisions.

1. Audrey Barrios, Advisor to the Secretary. Received email on the following dates regarding potential termination of DOE financial awards: December 16, 2025.
2. Jonathan Brightbill, General Counsel. Sent and/or received privileged attorney-client communications and/or attorney work product regarding potential termination of DOE financial awards on the following dates: December 15, 16, 17, 18, 19, and 23, 2025.
3. Emily Burdick, Principal Deputy Director for Cybersecurity, Energy Security, and Emergency Response. Received email on the following dates regarding potential termination of DOE financial awards: December 16, 2025.
4. G. Michael Brown, Deputy Chief of Staff, Operations. Sent and/or received email on

financial awards on the following dates: December 17 and 18, 2025.

42. Katharine Sullivan (EOP/OMB). Received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.
43. Taylor Rogers (EOP/WHO). Sent and/or received email on the following date regarding potential termination of DOE financial awards: December 16, 2025.
44. Emily Underwood (EOP/WHO). Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.
45. Russell Vought (EOP/OMB). Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 15 and 16, 2025.

The Department of Energy supplements its response to Interrogatory No. 1 by with the following individuals:

46. Steven Fickes, Deputy Director, Office of Management. Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 4 and 9, 2025.
47. Alexandra Nigro, Research Director, Office of Public Affairs. Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 22, 2025.
48. Joshua Orlaski, Chief of Staff S3, Office of the Secretary. Sent and/or received email on the following dates regarding potential termination of DOE financial awards: December 5, 12, 15, and 16, 2025.

**INTERROGATORY NO. 3:** For each individual identified in response to Interrogatory No. 1, identify all their communications regarding the action or threat, regardless of whether the communication was part of the decision-making process for that action or threat and/or occurred

after-the-fact, including the date, content, form of the communication (e.g., meeting, social media post, email, text message), and other individuals involved, whether as a listener or participant.

**SECOND SUPPLEMENTAL RESPONSE:** Defendants incorporate, by reference, their objections to Interrogatory No. 1, including their objection to discovery from the President, the Executive Office of the President, and/or the White House, and from DHS. Moreover, to the extent any oral communications involved individuals who are no longer employed by Defendants or never were employed by Defendants, those individuals' knowledge and recollections are not within Defendants' possession, custody, or control and will not be reflected in this interrogatory response.

Finally, Defendants explicitly object to Interrogatory No. 3 to the extent it calls for the disclosure of information protected from disclosure by the deliberative process privilege, presidential communications privilege, attorney client privilege, and/or work product doctrine. Subject to the above stated objections, Defendants respond as follows:

> **Department of Agriculture (Second Supplemental Response):** It is not feasible, through the exercise of due diligence, to confirm who among those listed in the answer to Interrogatory No. 1 has ever had an oral communication regarding Colorado. And, even if that were possible, it is unlikely that every person would have a perfect recollection of any such communication, which--definitionally--was not transcribed. Moreover, to the extent any such communications involved individuals who are no longer or never were employed by the Department of Agriculture, those individuals' knowledge and recollections are not within the Department's possession, custody, or control and will not be reflected in this interrogatory response. Subject to the foregoing, following due diligence, the Department of Agriculture has been able to identify the following oral discussions relating to the Challenged Conduct, described at:

- US-USDA_0000084 to US-USDA_0000085
- US-USDA_0000180 to US-USDA_0000181

For written communications, USDA refers Plaintiff to the Administrative Record at US-USDA_0000001 to US-USDA_0000295.

**Department of Transportation (Second Supplemental Response):** As to written communications, please see the Administrative Record at DOT_AR000001-DOT_AR001727 in addition to its responses to requests for production of documents at US-DOT_0000001-US-DOT_0000339. As to oral communications, it is not feasible, through the exercise of due diligence to confirm who among the individuals identified in Interrogatory No. 1 has ever had an oral communication regarding Colorado. DOT has not, and could not, ask each of these employees to answer this question, and even if that were possible, it is unlikely that every single person would have a perfect recollection of any such communication, which—definitionally—was not transcribed. Moreover, to the extent any such communications involved individuals who are no longer employed by DOT, those individuals' knowledge and recollections are not within DOT's possession, custody, or control and will not be reflected in this interrogatory response.

Subject to the foregoing, following due diligence, DOT has been able to identify the following discussions relating to the challenged conduct:

- On December 15, 2025, Pete Meachum and Ryan McCormack were invited to join an interagency conference call to discuss Colorado. See US-USDA_000084-85. However, neither Mr. Meachum nor Mr. McCormack recall attending the meeting.

- In December 2025, Abigail Orlaski, Loren Smith, and Christopher Yablonski had oral conversations related to DOT's withdrawal of four unobligated grant awards for which Colorado entities had been selected, and DOT's termination of one agreement with a Colorado recipient.

**Department of Interior (Second Supplemental Response):** As to written communications, DOI refers Plaintiff to its production at US-DOI_0000001-USDOI-0000461 pursuant to Fed. R. Civ. P. 33(d). As to oral communications, it is not feasible, through the exercise of due diligence, to confirm every oral communication any individual identified in response to Interrogatory No. 1 may have had regarding Colorado, and such communications definitionally-were not transcribed. Moreover, to the extent any such communications involved individuals no longer employed by DOI, those individuals' knowledge and recollections are not within DOI's possession, custody, or control and will not be reflected in this response.

Subject to the foregoing, following due diligence, DOI identifies the following:

- On or about December 15,2025, Matt Luby (then Senior Advisor, Assistant Secretary for Policy, Management and Budget) participated in a telephone or Microsoft Teams call concerning the request to compile a list of DOI financial assistance awards to Colorado and Colorado-based entities. Mr. Luby no longer holds that role, and DOI relies on records within its possession rather than his recollection.

The substance of the identified communication, to the extent it reflects DOI's predecisional, deliberative process, is withheld on the basis of the deliberative-process privilege, as set forth in response to Interrogatory No. 1.

**Federal Emergency Management Agency (Second Supplemental Response):** FEMA currently has more than 20,000 employees who work in 10 Regional offices across the country, as well as 27 open Joint Field Offices. It is not feasible, through the exercise of due diligence, to identify all communications regarding Colorado's allegations that FEMA threatened the State. FEMA has not, and could not, ask every single one of its employees to answer this question, and even if that were possible, it is unlikely that every single person would have a perfect recollection of any such communication, which--definitionally--was not transcribed. Subject to the foregoing, following due diligence, FEMA staff previously identified in Interrogatory No. 1 were involved in FEMA's recommendations to the President regarding Colorado's disaster declaration requests but not involved in any threat to deny disaster declaration requests by Colorado. Any such communications are subject to executive privilege and the deliberative process privilege. To the extent any such communications involve individuals who are no longer employed by FEMA, those individuals' knowledge and recollections are not within the FEMA's possession, custody, or control and will not be reflected in this interrogatory response.

**Department of Energy (Second Supplemental Response):** The Department of Energy currently has over 13,000 employees, who work in more than 40 offices across the country. It is not feasible, through the exercise of due diligence, to confirm who among them has ever had an oral communication regarding the Challenged Conduct. The Department of

Energy has not, and could not, ask every single one of its employees to answer this question, and even if that were possible, it is unlikely that every single person would have a perfect recollection of any such communication, which—definitionally—was not transcribed. Moreover to the extent any such communications involved individuals who are no longer employed by the Department of Energy, those individuals' knowledge and recollections are not within the Department's possession, custody, or control and will not be reflected in this interrogatory response.

Subject to the foregoing, following due diligence, the Department of Energy has been able to identify the following discussions relating to the Challenged Conduct:

1. Audrey Barrios, Advisor to the Secretary. Discussions with Carl Coe and Rachel Cauley on December 16, 2025.

2. Jonathan Brightbill, General Counsel. Two conversations on or about December 17, 2025 with Emily Underwood. December 17, 2025 telephone call with Mark Paoletta. *See* US-DOE_0000308; 0000311; 0000312; 0000318; 0000320; 0000323; 0000324; 0000325; 0000331; 0000353; 0000428; 0000434; 0000537; 0000543; 0000591; 0000594.

3. G. Michael Brown, Deputy Chief of Staff, Operations. December 30, 2025 telephone call with Christopher Johns. *See* US-DOE_0000131; 0000231; 0000302; 0000333; 0000341; 0000345; 0000347; 0000351; 0000354; 0000359; 0000364; 0000365; 0000379; 0000397; 0000464; 0000559; 0000573; 0000610; 0000631; 0000647.

4. Carl Coe, Chief of Staff. *See* US-DOE_0000230; 0000306; 0000309; 0000316; 0000322; 0000327; 0000328; 0000338; 0000502; 0000531; 0000535; 0000581; 0000583; 0000621; 0000689; 0000693; 0000694; 0000696; 0000698; 0000700; 0000702.

5. Charlie Dankert, Deputy Chief of Staff for Policy. *See* US-DOE_0000309; 0000316.

6. Ben Dietderich, Press Secretary. Text messages and possible telephone conversation with Thomas Catenacci on December 16, 2025. *See* US-DOE_0000001; 0000002; 0000368; 0000370; 0000380; 0000388; 0000389; 0000406; 0000409; 0000451; 0000504; 0000527; 0000538; 0000582; 0000688; 0000692; 0000791.

7. Katherine Donley, Director, Office of Budget. *See* US-DOE_0000436.

8. Katie Fairclough, Director of Public Affairs. *See* US-DOE_0000372; 0000378; 0000381; 0000387; 0000435; 0000456; 0000496; 0000579; 0000587.

9. Marshall Ghee, Chief of Staff, Office of Congressional and Intergovernmental Affairs. *See* US-DOE_0000585.

10. Christopher Johns, Deputy Chief Financial Officer. December 23, 2025 telephone call with Joshua Jones. December 30, 2025 telephone call with G. Michael Brown. *See* US-DOE_0000213; 0000362; 0000369; 0000373; 0000383; 0000386; 0000394; 0000408; 0000455; 0000463; 0000481; 0000495; 0000505; 0000521; 0000522; 0000523; 0000524; 0000525; 0000526; 0000632; 0000685; 0000686.

11. Joshua Jones, Senior Advisor, Office of Management. December 22, 2025 conversation with Tina Pierce. December 23, 2025 telephone call with Christopher Johns. *See* US-DOE_0000302; 0000341; 0000413.

12. Bryan Kellogg, Principal Deputy Assistant Secretary, Office of Congressional and Intergovernmental Affairs. *See* US-DOE_0000355; 0000357; 0000361; 0000375; 0000376; 0000384; 0000385; 0000390; 0000392; 0000457; 0000478; 0000517; 0000598; 0000601.

13. Therese Keokuk, Executive Coordinator, Office of the General Counsel. *See* US-DOE_0000439; 0000528; 0000539; 0000575; 0000623; 0000667.

14. Thomas Mapes, Chief of Staff, Office of Nuclear Energy. *See* US-DOE_0000533; 0000561.

15. Eric Mahroum, Director, Office of Indian Energy Policy and Programs. *See* US-DOE_0000277; 0000670.

16. Scott Marks, Deputy Assistant Secretary for Senate Affairs, Office of Congressional and Intergovernmental Affairs. *See* US-DOE_0000206; 0000280; 0000466.

17. Daniel Nesvet, Management and Program Analyst, Office of Intelligence and Counterintelligence. *See* US-DOE_0000114; 0000396; 0000465; 0000510; 0000519; 0000672; 0000682.

18. Jeffrey Novak, Principal Deputy General Counsel. *See* US-DOE_0000090; 0000094; 0000098; 0000102; 0000106; 0000110; 0000307; 0000313; 0000314; 0000319; 0000321; 0000326; 0000332; 0000335; 0000336; 0000337; 0000349; 0000352; 0000356; 0000363; 0000366; 0000371; 0000374; 0000382; 0000536; 0000580; 0000586; 0000589; 0000595; 0000597; 0000600; 0000602; 0000606; 0000611; 0000612; 0000616; 0000620; 0000627; 0000633; 0000634; 0000635; 0000643; 0000648; 0000652; 0000656; 0000660; 0000664; 0000673; 0000677; 0000678. December 16, 2025 meeting, *see* US-DOE_0000090.

19. Tina Pierce, Chief Financial Officer. December 22, 2025 conversation with Joshua Jones. *See* US-DOE_0000377; 0000404; 0000411; 0000412; 0000454; 0000474; 0000639.

20. Megan Roessing, Deputy Chief of Staff, Office of Nuclear Energy. *See* US-DOE_0000122; 0000137; 0000139; 0000424; 0000433; 0000498; 0000214; 0000216; 0000217; 0000219; 0000223; 0000227; 0000640.

21. Adam Shapiro, Congressional Liaison, Office of External Coordination for Appropriations. *See* US-DOE_0000391; 0000399.

22. James Young, Chief of Staff, Office of Electricity. *See* US-DOE_0000401.

23. Rachel Cauley (EOP/OMB). *See* US-DOE_0000329; 0000330; 0000339; 0000340; 0000688; 0000691; 0000692.

24. Nicholas Flocken (EOP/OMB). *See* US-DOE_0000502.

25. Abigail Jackson (EOP/WHO). *See* US-DOE_0000330; 0000339; 0000688; 0000691; 0000692.

26. Victoria LaCivita (EOP/WHO). *See* US-DOE_0000329; 0000340.

27. Stuart Levenbach (EOP/OMB). *See* US-DOE_0000329; 0000330; 0000339; 0000340; 0000400; 0000452; 0000453; 0000515; 0000573; 0000581; 0000698.

28. Mark Paoletta (EOP/OMB). December 17, 2025 telephone call with Jonathan Brightbill. *See* US-DOE_0000366.

29. Katharine Sullivan (EOP/OMB). *See* US-DOE_0000329; 0000330; 0000339; 0000340; 0000400; 0000452; 0000453; 0000515; 0000516; 0000535; 0000581.

30. Taylor Rogers (EOP/WHO). *See* US-DOE_0000329; 0000339; 0000340; 0000688; 0000691.

31. Emily Underwood (EOP/WHO). December 16, 2025 conversation with an unidentified DOE representative. Two conversations on or about December 17, 2025 with Jonathan

Brightbill. *See* US-DOE_0000329; 0000330; 0000339; 0000340; 0000400; 0000452; 0000453; 0000515; 0000581.

32. Russell Vought (EOP/OMB). *See* US-DOE_0000400; 0000452; 0000453; 0000515; 0000581.

33. Steven Fickes, Deputy Director, Office of Management. *See* US-DOE_0000142.

34. Alexandra Nigro, Research Director, Office of Public Affairs. *See* US-DOE_0000507.

35. Joshua Orlaski, Chief of Staff S3, Office of the Secretary. *See* US-DOE_0000421; 0000429; 0000442; 0000445; 0000449; 0000458.

**National Science Foundation (Second Supplemental Response):** NSF currently has over 1000 employees. It is not feasible, through the exercise of due diligence, to confirm who among them has ever had an oral communication regarding Colorado. NSF has not, and could not, ask every single one of its employees to answer this question, and even if that were possible, it is unlikely that every single person would have a perfect recollection of any such communication, which--definitionally--was not transcribed. Moreover, to the extent any such communications involved individuals who are no longer employed by NSF, those individuals' knowledge and recollections are not within NSF's possession, custody, or control and will not be reflected in this interrogatory response.

Subject to the foregoing, following due diligence, NSF has been able to identify the following discussions relating to the Challenged Conduct:

a. December 16, 2025, telephone call between Brian Stone and Russell Vought. The information regarding this discussion is protected from disclosure by

deliberative process privilege. The information is pre-decisional and deliberative.

b. December 2025 to present: Telephone calls, from time to time, between Brian Stone and Stuart Levenbach. The information regarding these discussions is protected from disclosure by deliberative process privilege. The information is pre-decisional and deliberative

c. December 2025 to present: Standing meetings (typically, weekly) of NSF's leadership team, comprising Brian Stone, Rebecca Keiser, Simon Malcomber, Micah Cheatham, Angel Williams, and Robert Moller. The information regarding these discussions is protected from disclosure by deliberative process privilege. The information is pre-decisional and deliberative. The information regarding certain discussions is also protected from disclosure by the attorney-client privilege because it contains legal advice, relates to legal advice sought, and/or reflects legal advice by NSF's General Counsel, Ms. Williams. The information regarding certain of these discussions is also protected from disclosure by the attorney-work product privilege where prepared or collected at direction of counsel and/or prepared in anticipation of litigation, active litigation, or other legal proceedings. Pursuant to Fed. R. Civ. P. 33(d)(1), the Bates numbers for relevant, non-privileged documents responsive to this interrogatory are identified in Attachment A.

**INTERROGATORY NO. 4:** Describe in detail all instances in which any Defendant took any other threat or adverse action (e.g., terminating, not renewing, or taking away federal funding or services; auditing; not granting funds; or investigation) directed at or to either Colorado, its political subdivisions or instrumentalities, or entities within Colorado that is not described in the

operative Complaint, including when, how, and why Defendants began to consider the action or threat, all facts and considerations taken into account in making the decision, and whether Defendants considered the same and/or a similar action or threat against any other states, political subdivisions or instrumentalities of other states, or entities within other states and why they were or were not subjected to the same and/or a similar action or threat. In identifying actions or threats responsive to this Interrogatory, please exclude actions or threats that were taken as to all states, political subdivisions or instrumentalities of all states, or entities within all states.

**SECOND SUPPLEMENTAL RESPONSE:** Defendants object to the extent the Interrogatory seeks discovery from the President, the Executive Office of the President, and/or the White House. Such discovery is improper at least at this juncture because, among other things, it would contravene "[t]he high respect that is owed to the office of the Chief Executive," which "is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982) ("The President occupies a unique position in the constitutional scheme" that "counsel[s] judicial deference and restraint."). Plaintiff's discovery requests treat the President like any other civil litigant and fail to account for the "special considerations applicable to the President." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 385 (2004). Requiring their response would improperly "detract [the President] from energetic performance of [his] constitutional duties." *Id.* at 382; *see also id.* at 381–82 ("In no case . . . would a court be required to proceed against the president as against an ordinary individual." (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (No. 14,694) (CC Va. 1807) (Marshall, J.))). That is, separation-of-powers concerns necessarily prevent such discovery from proceeding now. *See, e.g.*, *Cheney*, 542 U.S. at 388–91 (court of appeals failed to properly consider separation-of-powers concerns when it denied government's request for mandamus relief to prevent discovery against the Vice President, which discovery, the government argued, threatened "substantial intrusions on the process by which those

in closest operational proximity to the President advise the President"; court of appeals also erred in finding that the Vice President must first assert executive privilege); *see also U.S. Doge Serv. v. Citizens for Resp. & Ethics in Washington*, 145 S. Ct. 1981 (2025) ("[S]eparation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications.").

While *Cheney* alone counsels against any discovery against the President, Plaintiff's discovery against the President and EOP is particularly improper here because Plaintiff is already pursuing extensive discovery against the Agency Defendants that may well yield at least substantially the information that Plaintiff seeks without burdening the President. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019) (requiring Plaintiff to exhaust all discovery on other Defendants before considering whether there was "continuing need for discovery sought on the White House"); *Wagafe v. Trump*, 2017 WL 5990134, at *3 (W.D. Wash. Oct. 19, 2017) ("intruding on the Executive in this context is a matter of last resort"); *United States v. McGraw-Hill Cos.*, 2014 WL 1647385, at *13 (C.D. Cal. Apr. 15, 2014); *cf. Karnoski v. Trump*, 926 F.3d 1180, 1203–07 (9th Cir. 2019) (granting government's writ of mandamus to vacate district court's discovery order against the President because district court failed to apply *Cheney* or "explore other avenues, short of forcing the Executive to invoke privilege" (quoting *Cheney*, 542 U.S. at 390)).

Accordingly, and consistent with settled precedent, the President and EOP will not be responding to Plaintiff State of Colorado's Interrogatories at this time.

Defendants also object to this Interrogatory because it is facially overbroad as to timeframe (there is none) and because it seeks irrelevant information that is not proportionate to the needs of

this case insofar as it asks Defendants to describe "any other threat or adverse action" directed to Colorado or "entities within Colorado" that is *not* described in the operative Complaint. Conduct that is not described in the Complaint is inherently irrelevant, and even if it were not, it is not proportionate to the needs of this case to require Defendants to search for information outside the scope of the Complaint that Plaintiff chose to plead. *Cf., e.g.*, *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 531 (2009) (observing that judges are trusted to prevent "fishing expeditions" or an undirected rummaging through materials for evidence of some unknown wrongdoing); *accord, e.g.*, *Harriman v. Smart*, 2023 WL 11911575, at *2–3 (D. Colo. June 14, 2023) ("The relevant and proportional scope of discovery . . . is limited to the well-pleaded factual allegations and related claims asserted in the [operative complaint]."; citing cases).

Defendant DHS objects to this Interrogatory because there are no allegations in the operative Complaint, at all, concerning it. DHS appears to be included as a named Defendant solely because the Federal Emergency Management Agency, also a named Defendant, is a component of DHS. Nonetheless, in the spirit of compromise, and although Defendants do not concede that Plaintiff has established the relevance and proportionality of discovery directed to DHS—when it is already receiving discovery from FEMA, the agency alleged to have taken action against Colorado—DHS will respond to Plaintiff's discovery requests. Specifically, DHS will provide answers to Plaintiff's Interrogatories (subject to Defendants' other objections) on or before September 18, 2026.

Defendants also object to this Interrogatory to the extent it seeks information protected from disclosure by the deliberative process privilege, presidential communications privilege, attorney client privilege, and/or work product doctrine.

Subject to the above stated objections, Defendants respond as follows:

**Department of Agriculture (Second Supplemental Response):** USDA did not take any such State-specific threat or adverse action against Colorado or entities within Colorado that are not described in the operative Complaint.

**Department of Transportation (Second Supplemental Response):** DOT is not currently aware of any other threat or adverse action taken by the Department that was directed at or to either Colorado, its political subdivisions or instrumentalities, or entities within Colorado that is not described in the operative Complaint.

**Department of Interior (Second Supplemental Response**): DOI did not take any threat or adverse action (e.g., terminating, not renewing, or taking away federal funding or services; auditing; not granting funds; or investigation) directed at or to Colorado, its political subdivisions or instrumentalities, or entities within Colorado, whether or not described in the operative Complaint. DOI terminated no award and issued no termination letter. Its only related activity was internal information-gathering: in December 2025, at the request of the Office of the Assistant Secretary for Policy, Management and Budget, PGM compiled a list of open awards to Colorado and Colorado-based entities (*see* US-DOI_00000027); and in January 2026, DOI responded to an OMB Budget Data Request (BDR-26-09, "Federal Awards to Entities in Select States") seeking award information for entities in sixteen States, of which Colorado was one (*See e.g.*, US-DOI_00000059, US-DOI_00000312). Neither effort resulted in any termination or the issuance of any termination letter.

**Federal Emergency Management Agency (Second Supplemental Response** FEMA did not make any threats or take any adverse actions against Colorado in response to its requests for disaster declarations. Moreover, FEMA is unaware of any alleged threats or alleged adverse actions against Colorado other than those alleged by Plaintiff in the operative Complaint. Only the President has the authority to declare a major disaster under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. 42 U.S.C. § 5170.

**Department of Energy (Second Supplemental Response):** In May 2025, DOE Secretary Chris Wright executed a policy memorandum titled "Ensuring Responsibility for Financial Assistance" that, among other things, established a Portfolio Review Process ("PRP"). The PRP tasked program offices with (1) reviewing their financial assistance awards ("grants") against a number of criteria; (2) developing proposals to retain, modify, or terminate grants; (3) presenting these proposals for feedback and recommendations to a PRP committee; and (4) making (and implementing) the ultimate decision whether to retain, modify, or terminate grants. Consistent with its Executive Branch obligation to clear its funding decisions with the Office of Management and Budget ("OMB"), DOE submitted to OMB in September 2025 two lists: a list of 77 Office of Clean Energy Demonstrations ("OCED") projects that OCED had reviewed and decided to retain, modify, or terminate, and a list of 2,265 financial assistance awards that other program offices had reviewed and decided to retain, modify, or terminate. 624 grants on these lists were designated either "termination" or "cancel". These decisions were made without consideration of the political affiliation of the state in which the awardee or the place of performance was located; the political affiliation of the state's U.S. Senators; or the state's electoral vote outcomes. In October

2025, OMB identified 284 specific grants on the aforementioned lists for inclusion in an initial tranche of termination notices. DOE subsequently terminated those grants, understanding that action on the remainder of the 624 grants designated for termination would be taken after enactment of a continuing resolution to fund the government.

**National Science Foundation (Second Supplemental Response):** Based on a reasonable search, and following due diligence, NSF did not identify any other threat or adverse action (e.g., terminating, not renewing, or taking away federal funding or services; auditing; not granting funds; or investigation) directed at or to either Colorado, its political subdivisions or instrumentalities, or entities within Colorado that is not described in the operative Complaint.

**INTERROGATORY NO. 5:** Identify all individuals that had any role in each of the actions or threats described in response to Interrogatory No. 4 – whether in making, adopting, approving, implementing, being briefed on and/or attending meetings regarding the action or threat – including their identity (e.g., position and responsibilities with any Defendant), role in and/or how they contributed to the action or threat, and dates they were involved in the action or threat.

**SECOND SUPPLEMENTAL RESPONSE:** Consistent with their response to Interrogatory No. 4, which is incorporated by reference (including their objection to discovery from the President, the Executive Office of the President, and/or the White House, and from DHS), Defendants object to this Interrogatory because it is facially overbroad as to timeframe (there is none) and because it seeks irrelevant information that is not proportionate to the needs of this case insofar as it asks Defendants to identify "all individuals" who had any role in "any other threat or adverse action" directed to Colorado or "entities within Colorado" that is *not* described in the operative Complaint. Conduct that is not described in the Complaint is inherently irrelevant, and even if it were not, it is not proportionate to the needs of this case to require Defendants to search

DHS. Nonetheless, in the spirit of compromise, and although Defendants do not concede that Plaintiff has established the relevance and proportionality of discovery directed to DHS—when it is already receiving discovery from FEMA, the agency alleged to have taken action against Colorado—DHS will respond to Plaintiff's discovery requests. Specifically, DHS will provide answers to Plaintiff's Interrogatories (subject to Defendants' other objections) on or before September 18, 2026.

Subject to the above stated objections, Defendants respond as follows:

**Department of Agriculture (Second Supplemental Response):** USDA objects to this Interrogatory because it seeks information subject to the presidential communications privilege, deliberative process privilege, and attorney-client privilege.

**Department of Transportation (Second Supplemental Response):** DOT is not currently aware of any actions considered or taken by the Department as a result of Colorado's exercise of sovereign authority.

**Department of Interior (Second Supplemental Response):** DOI did not take or consider any adverse action against Colorado as a result of the State's exercise of its sovereign authority.

**Federal Emergency Management Agency (Second Supplemental Response):** FEMA did not take or consider any adverse action against Colorado as a result of the State's exercise of its sovereign authority. Regarding Colorado's request for disaster declarations, only the President has the authority to declare a major disaster under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. 42 U.S.C. § 5170.

**Department of Energy (Second Supplemental Response):** The Department of Energy

disclosure by the presidential communications privilege, attorney-client privilege, and/or work product doctrine. Finally, to the extent any oral communications involved individuals who are no longer employed by Defendants or never were employed by Defendants, those individuals' knowledge and recollections are not within Defendants' possession, custody, or control and will not be reflected in this interrogatory response.

Subject to the above stated objections, Defendants respond as follows:

**Department of Agriculture (Second Supplemental Response):** The Department of Agriculture currently has approximately 93,674 employees across the country. It is not feasible, through the exercise of due diligence, to confirm who among them has ever had an oral communication regarding Colorado's exercise of sovereign authority. The Department of Agriculture has not, and could not, ask every single one of its employees to answer this question, and even if that were possible, it is unlikely that every single person would have a perfect recollection of any such communication, which--definitionally--was not transcribed. Moreover to the extent any such communications involved individuals who are no longer or never were employed by the Department of Agriculture, those individuals' knowledge and recollections are not within the Department's possession, custody, or control and will not be reflected in this interrogatory response. Lastly, Defendant objects to this interrogatory because it seeks information subject to the deliberative process privilege, presidential communications privilege, and the attorney-client privilege. Subject to the foregoing, following due diligence, Defendant refers Plaintiff to its upcoming supplementation of its responses to Plaintiff's Requests for Production.

**Department of Transportation (Second Supplemental Response):** DOT has not located

recollection of any such communication, which--definitionally--was not transcribed. Moreover, to the extent any such communications involved individuals who are no longer employed by NSF, those individuals' knowledge and recollections are not within NSF's possession, custody, or control and will not be reflected in this interrogatory response.

Respectfully submitted, ***as to objections***,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
MARIANNE F. KIES
Assistant Branch Directors
Federal Programs Branch

/s/ *Adam S. Fox*
ALEXANDER J. SEVERANCE
ADAM S. FOX
Trial Attorneys
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Adam.S.Fox@usdoj.gov
Tel.: 202-598-3791

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2026, I electronically served the foregoing, via email, on counsel of record for Plaintiff.

*s/_Adam S. Fox*
U.S. Department of Justice