**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03428

THE STATE OF COLORADO,

Plaintiff(s),

v.

DONALD J. TRUMP, et al.

Defendants.

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

---

Plaintiff's Motion to Compel, ECF 120 ("Mot.") takes the same "throw the kitchen sink" approach as the Complaint. Which is to say, it is long on scattershot assertions, and short on support in the law or common discovery practices. Neither justifies Plaintiff's demand to override the deliberative process and presidential communications privileges in *all* instances and *all* contexts as to *all* documents, and to prohibit Defendants from ever raising these privileges in the future.

Plaintiff's Motion has two bases. Both are categorical. Neither has merit. As to procedure, Plaintiff contends that Defendants have failed properly to invoke the deliberative process privilege and presidential communications privilege, because Defendants did not—when they initially asserted privilege objections—provide Declarations supporting each and every such assertion. *See, e.g.*, Mot. at 2–4, 10–13. Plaintiff theorizes that "[a]gency-head declarations must be provided at the time the privilege is initially asserted," which Plaintiff characterizes as the "majority approach" outside of the D.C. Circuit. *Id.* at 3, n.1. Plaintiff's theory, however, is legally unsound. The clear weight of authority is that a declaration formally invoking Executive privilege is appropriate only

*after* a motion to compel identifying specific documents is filed. Plaintiff's view as to invocation of the presidential communications privilege is particularly inapt where, as here, the question of whether the Executive Office of the President ("EOP")—who holds the privilege—is currently subject to discovery under *Cheney* is before the Court of Appeals on Writ of Mandamus. *In re Trump*, No. 26-1336, ECF 1 (10th Cir.) ("*In re Trump*"). Indeed, Plaintiff's Motion is an about-face of its previous position, as Plaintiff has explicitly represented to both this Court and the Tenth Circuit that it "will not attempt to enforce *any discovery obligations* with respect to [the] EOP until there is a final resolution" of the EOP discovery disputes that, as of today, remain pending. ECF 104 at 1 (emphasis added); *see also In re Trump*, ECF 13 at 2.

Plaintiff fares no better on substance. As to the deliberative process privilege, Plaintiff asserts throughout its Motion that "Defendants' intent and misconduct . . . are central to Counts I and II." *See, e.g.*, Mot. at 5, 8–9. Plaintiff, however, fails to identify the elements of these amorphous and novel constitutional claims, much less explain why evidence of "intent" is necessary to prove them. It matters. Although Plaintiff contends that Defendants are improperly raising "merits" based defenses in opposing Plaintiff's discovery requests, the merits define the scope of relevant discovery (Fed. R. Civ. P. 26), and no party—including the State of Colorado—is entitled to information, regardless of a proper assertion of an executive privilege, whose legal relevance is at best unestablished. Here, Plaintiff's claims would be analyzed, if at all and at most, under rational basis review, where the actual intent of the decision-maker is not legally relevant.

Ultimately, if there were ever a proper time to discuss, categorically, application of Executive privileges, this is not it. The sweeping, invasive, and burdensome discovery that Plaintiff has doggedly pursued since May—including the latest demand for privileged information—is all

putatively in furtherance of Counts I and II. Defendants have filed a Partial Motion to Dismiss—fully briefed since August 10, 2026—arguing that Counts I and II are not cognizable. It is improper and inefficient to burden the Executive Branch with discovery, and to now consider stripping it of its privileges, now and in the future, when the claims supposedly justifying discovery should not exist at all. Even if some aspects of Counts I and II remain following a ruling on Defendants' Motion to Dismiss, any such ruling may evaluate the scope of Plaintiff's novel claims, thus providing context for the relevance question pertinent to this discovery dispute. With no emergency motions pending, there is no legitimate reason to run pell-mell into a sweeping discovery ruling while the viability of Plaintiff's claims is in question. Plaintiff has alleged that Defendants violated the separation of powers. They now ask this Court to do the same.

## BACKGROUND

On June 4, 2026, the Supreme Court of the United States issued an opinion reiterating the inappropriateness of discovery prior to resolution of a threshold motion to dismiss. *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) ("In order to proceed to discovery, a plaintiff must 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). From the outset of this litigation, Defendants have consistently—and repeatedly—asked the Court to rule on its dispositive motion before indulging broad discovery. *See, e.g.*, ECF 67 at 3–4. The Court denied Defendants' request, in its "[a]nticipa[tion]" that "the motion [to dismiss] might not entirely dispose of the case" and because of "the importance of the issues in the case." ECF 71. The Court subsequently entered a Scheduling Order, ECF 76, directing that "extra-record" discovery in this mixed Administrative Procedure Act ("APA") and constitutional case would be limited to "information relevant to Plaintiff's non-APA

claims." *Id.* at 8. Less than a month later, on May 8, 2026, Plaintiff served sweeping discovery on Defendants—including the EOP—with 14 requests for production and 22 interrogatories.

Plaintiff's Second Amended Complaint, ECF 78 ("Sec. Am. Compl."), asserts claims against nine Executive Agencies[1] and the EOP. Counts I and II—at issue in this dispute—bring constitutional claims against all Defendants, with Count I asserting violations of the Tenth Amendment, Elections Clause, State Sovereignty, and Separation of Powers, and Count II asserting a violation of "Equal Sovereignty." *Id.* ¶¶ 252–61. Except for Count V—a claim under the Spending Clause against USDA, not at issue here—the remaining claims are under the APA. *Id.* ¶¶ 262–322. On June 17, 2026, Defendants moved to dismiss Counts I, II, III, and VI. ECF 82 ("Mot. to Dismiss").[2] Relevant here, Defendants argued that the amorphous and novel constitutional claims in Counts I and II are not cognizable and therefore must be dismissed in their entirety. *Id.* at 5–10. As to Count I, Defendants explained that it is constitutional for the Executive to consider State political characteristics when taking discretionary actions, and that Plaintiff has offered no limiting principle that would not constitutionalize every funding dispute between a President of one party and a State Governor of another. *Id.* at 5–8. As for Count II, Defendants explained that Equal Sovereignty principles apply to federal *statutes* that draw lines among the States—not to executive action. *Id.* at 9–10. Defendants' Motion to Dismiss has been fully briefed for two months. ECF 100.

---

[1] The Departments of War ("DOW"), Air Force ("USAF"), Agriculture ("USDA"), Energy ("DOE"), Homeland Security ("DHS"), Interior ("DOI"), and Transportation ("DOT"), as well the National Science Foundation ("NSF") and Federal Emergency Management Agency ("FEMA").

[2] The Court precluded Defendants from including USDA in their Motion to Dismiss. ECF 68.

Contrary to *Hikma*, the parties have been involved in significant and complex discovery disputes for months. The first such dispute concerned discovery to the EOP. At an August 11, 2026, hearing, the Court ordered that the EOP must participate "in discovery like any other party." H'rg Tr. 43:17–19. Following this hearing, Defendants sought relief from the Tenth Circuit, where their Petition for Writ of Mandamus remains pending. *In re Trump*, No. 26-1336 (10th Cir.).

On September 14, 2026, Plaintiff emailed the Court stating that the parties had again "reached an impasse" regarding Defendants' assertions of deliberative process privilege and presidential communications privilege, including whether "those qualified privileges yield to Colorado's need for the documents in a case that directly implicates Defendants' motivations and intent," and whether "Defendants' privilege assertions also fail due to substantive and procedural defects." Plaintiff's email to the Court did not identify specific privilege log entries that Plaintiff intended to challenge as "substantive[ly]" "defect[ive]."

The operative scheduling order, adopted by the Court during the privilege-dispute hearing on September 24, 2026, sets the discovery cut off for January 29, 2027. *See* ECF 117, 118.

## LEGAL STANDARDS

***Legal Standard on Relevance.*** Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance, therefore, "is defined in terms of the parties' claims and defenses." *E.g.*, *Kincaid v. Wells Fargo Sec. LLC*, 2012 WL 13186918, at *2 (N.D. Okla. May 1, 2012); *see also Dowell v. Cox Okla. Telecom, LLC*, 2019 WL 124843, at *2 (W.D. Okla. Jan. 7, 2019). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," if "the fact is of consequence in determining the action." Fed. R.

Evid. 401. When the relevance of a discovery request is "not apparent on the face of the request," the proponent of the discovery "bears the burden of making an initial showing of relevance." *E.g.*, *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022).

***Legal Standard on Executive Privileges.*** The deliberative process privilege shields "documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). As "officials will not communicate candidly among themselves if each remark is a potential item of discovery," the deliberative process privilege is primarily designed to "enhance the quality of agency decisions . . . by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9 (internal citation omitted). It further serves to prevent the premature disclosure of proposed policies and avoids "misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (citation omitted). The presidential communications privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). The privilege protects communications that are "in performance of a President's responsibilities," "of his office," and made "in the process of shaping policies and making decisions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977) (citation modified).

Executive privileges are qualified. The deliberative process privilege "can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the government's need for

secrecy." *Hinsdale v. City of Liberal*, 1997 WL 557314, at *1 (D. Kan. Aug. 27, 1997). "A party seeking to overcome a claim of presidential privilege must demonstrate: first, that [the withheld materials] likely contain[] important evidence; and second, that this evidence is not available with due diligence elsewhere." *In re Sealed Case*, 121 F.3d 729, 754 (D.C. Cir. 1997). The presidential communications privilege is "more difficult to surmount" than the deliberative process privilege, *id.* at 746, and if a court determines information should be disclosed notwithstanding an assertion of the presidential communications privilege, "the President should be given an opportunity to raise more particularized claims of privilege," *id*. at 745.

## ARGUMENT

The crux of Plaintiff's Motion is that both the deliberative process and presidential communication privileges should be categorically overruled in this matter, today and prospectively, given Plaintiff's "need." *E.g.*, Mot. at 4–7. Because the Motion rests on both procedural and substantive defects, it should be denied.

### I. Plaintiff's Motion Should Be Denied Because It Is Procedurally Improper to Demand a Case-wide Overruling of Executive Privilege.

When characterizing the instant discovery dispute for the Court in advance of the September 24 hearing, Plaintiff intimated that Defendants' assertions of executive privilege were somehow "substantively" deficient. At no point, however—including in the Motion to Compel itself—has Plaintiff identified a particular document or subset of documents as to which they believe the privilege was inadequately described. *See* Mot. at 10 (instead asserting that Plaintiff

"reserves the right" to "raise targeted, document-specific challenges" in the future).[3] Plaintiff has decided on a scattershot approach: asking the Court to categorically overrule the deliberative process privilege and presidential communications privileges now and for all time—including as to information not yet pursued, such as in depositions. Plaintiff's Motion is procedurally problematic for two reasons. First, Plaintiff cannot leapfrog over the discovery process by ignoring its obligation to confer over assertions of privilege with which it disagrees. Second, Plaintiff's conduct has made it impossible for Defendants to defend their privilege assertions—as Plaintiff has demanded they do—through declarations. Defendants cannot practicably defend privilege assertions that, by Plaintiff's own telling, are undefined and indeed have not even yet occurred.

### A. Plaintiff Must Undertake a Document-by-Document Challenge.

The process for asserting—and challenging—privilege is well-established. As to privileged documents identified as responsive to requests for production, Federal Rule of Civil Procedure 26(b)(5) directs litigants to invoke privilege by means of a privilege log that identifies documents withheld and explains the basis for the claim. A party who withholds discoverable information on either of those grounds must "describe the nature of the documents, communications, or tangible things not produced or disclosed." *Id.* As to interrogatories, responding parties may similarly invoke privilege but do not need to serve a formal privilege log. *E.g.*, *Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, 2011 WL 6304086, at *9 (D. Kan. Dec. 16, 2011) ("The absence of formal privilege logs as to Interrogatories . . . do not bar assertion of the privileges. Rule 26(b)(5) requires that protected information be described in a way adequate for the other party to assess the claim of

[3] On August 26, 2026, Plaintiff informed Defendants of its view that the privilege logs for DOT and USDA were inadequately descriptive. Defendants supplemented those logs with the requested additional detail on September 18, 2026.

privilege. When this can be accomplished without a formal 'privilege log,' one is not required."). If after reviewing the privilege log, the discovery proponent maintains that the privilege does not apply, it can challenge particular documents, including requesting *in camera* review. *E.g.*, *Pitman v. USCIS*, 2018 WL 6725535 (D. Utah Dec. 21, 2018). Defendants have carried their burden.[4] Plaintiff has not. It cannot now, through a "categorical" Motion to Compel, evade it entirely.

Document-by-document assessment of privilege assertions makes common sense and, in any event, is required under applicable caselaw. A plaintiff's contention that deliberative process privilege is overruled by "need" will necessarily depend on the contents and other context of a given communication. *Hinsdale*, 1997 WL 557314, at *1. *Inter alia*, some documents may speak more directly to the facts that a plaintiff purports to need to prove its claims. Some documents may be more tangentially related. Some—although speaking to a central issue—may be particularly sensitive, such that the government's interest outweighs the plaintiff's. *See, e.g.*, *id.* But none of this balancing can be undertaken in a vacuum, as Plaintiff asks the Court to do now. Courts within the Tenth Circuit (and elsewhere) have rejected demands for categorical rulings, "[g]iven the nuances in how the legal standards apply." *E.g.*, *Black v. Union Pac. R.R. Co.*, 2025 WL 2770681, at *3 (D. Kan. Sep. 29, 2025); *see also, e.g.*, *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009) (questions of privilege are "fact-intensive"). Courts require this analysis even when the government's "intent" is supposedly at issue. *E.g.*, *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 322 (2000) (refusing to apply "automatic bar" on assertions of deliberative

---

[4] Plaintiff contends that Defendants' objections lacked specificity. Mot. at 2–4, 6. Plaintiff is mistaken, as (i) the privileged nature of the information is evident from the interrogatories themselves, and, in any case, (ii) Defendants' responses to the interrogatories fully comply with Rule 26(b)(5)'s direction to describe the communications "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

process privilege in "any case where the Government's intent is potentially relevant"); *accord Ill. Coal. for Immigrant & Refugee Rts., Inc. v. Wolf*, 2020 WL 7353408, at *2 (N.D. Ill. Dec. 15, 2020) (emphasizing that plaintiff's argument "for a categorical rule denying the [deliberative process] privilege" when the plaintiff's claim "puts directly at issue the government's subjective motivation" rests on the false premise that "relevance alone *is* sufficient to defeat the privilege").

Plaintiff's demand is even more extreme, because it does not seek to overrule the privilege as to particular groups or types of documents, but rather case wide. The principal case on which Plaintiff relies acknowledges that the Tenth Circuit has not decided whether simply putting the government's "intent" at issue is sufficient to automatically overrule the privilege. Mot. at 4–5 (relying on *Denver First Church of Nazarene v. Cherry Hills Vill.*, 2006 WL 7354733, at *6 n.4 (D. Colo. July 19, 2006)). *Denver First* is also distinguishable because, before finding the deliberative process privilege inapplicable, the court found that the plaintiff's statutory claim squarely put the government's intent at issue. 2006 WL 7354733, at *2–3, 5–6. By contrast, as discussed *infra*, Plaintiff has failed to show that Counts I and II put Defendants' subjective intent at issue. Plaintiff's citation to *Fourhorn v. City & County of Denver*, 2009 WL 2407569 (D. Colo. Aug. 3, 2009), is likewise unavailing. Mot. at 5. There, the documents sought were directly relevant to plaintiff's municipal liability claims and, in any event, the deliberative nature of the sought-after documents was in question. *Contra* Exs. A–H hereto (Agency Declarations).

### B. It Is improper to Rule on the Presidential Communications Privilege—Let Alone Categorically—While the EOP Is Not Subject to Discovery.

Plaintiff's request to categorically overrule the presidential communications privilege fails for threshold reasons, including Plaintiff's outright failure to conduct a document-by-document

analysis.[5] But their demand fails for yet another, independent reason: It is precluded by *Cheney* and inconsistent with Plaintiff's stipulations—both to this Court and to the Tenth Circuit—that they would not pursue such claims pending the outcome of Defendants' Mandamus Petition.

1. *Application of the presidential communications privilege is not properly before the Court.*

As Plaintiff acknowledges, the presidential communications privilege is held by the White House. Mot. at 10. Whether (and if so, when) the EOP will be subject to discovery in this matter is the subject of pending proceedings before the Tenth Circuit Court of Appeals, given Plaintiff's failure to comply with *Cheney* by exhausting discovery elsewhere. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004). The pendency of these proceedings is exactly why, nearly two months ago, Defendants moved to stay discovery to the EOP pending resolution of the Mandamus Petition. ECF 103. That motion remains pending. Regardless, Plaintiff has repeatedly represented that it "will not attempt to enforce *any discovery obligations* with respect to EOP until there is a final resolution of this issue." ECF 104 at 1 (emphasis added). In the Tenth Circuit, "Colorado has stipulated that it will not attempt to enforce *any discovery obligations* with respect to [the] EOP until there is final resolution of the issue, including during the pendency of this petition." *In re Trump*, ECF 13 at 2 (emphasis added). Plaintiff's attempt to resolve issues surrounding the presidential communications privilege—regardless of whether their challenge is categorical or "as applied"—is fundamentally improper at this juncture.

Plaintiff's argument to the contrary depends upon a misreading of *Cheney*. Mot. at 10–11. Essentially, Plaintiff contends, resolution of the privilege is appropriate now because the

[5] Defendants have previously explained the myriad reasons why discovery to the EOP is inappropriate at this time, which remain applicable. *See generally, e.g.*, ECF 112.

communications over which Defendants have invoked the presidential communications privilege (for preservation purposes) involved executive agencies. *Id.* The presidential communications privilege, however, is not limited to documents in the White House's possession; it applies to communications *with* the White House. *See In re Sealed Case*, 121 F.3d at 749. Plaintiff's argument is a red herring: the White House must first assert privilege and—given ongoing Tenth Circuit proceedings—it is not under any obligation to do so at this time. *Cheney*, 542 U.S. at 388 ("[O]ur precedent provides no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege with sufficient specificity and of making particularized objections." (citation omitted)). Plaintiff's view would vitiate the privilege based on which communicating party happened to possess one side of the communication. That is not the law.

2. *In any case, the presidential communications privilege extends to communications among the EOP and executive agencies.*

To skirt its own representations regarding EOP discovery, Plaintiff asks that this Court limit the scope of the presidential communications privilege only to instances where Defendants specifically identify "direct presidential decision[s]." Mot. at 10–13. The applicable caselaw, and realities of this case, require the Court to reach a different result.

The presidential communications privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). Indeed, while a qualified privilege, "[p]residential communications are presumptively privileged." *Id.* at 707–08 (internal citation omitted). The privilege is properly invoked when the government is "asked to produce documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d at 744. The privilege is not limited to documents and

communications where there was direct Presidential involvement; indeed, "communications made by presidential advisors in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President." *Id.* at 747, 751–52. This makes sense, given that "[i]n performing his constitutional duties the President may obtain advice and assistance from a broad array of executive officials—cabinet officers, employees in the Executive Office of the President, and agency staff with special expertise, as well as individuals whose sole function in the White House is to provide the President with advice and assistance." *Id.* at 749. To the extent Plaintiff claims that the presidential communications privilege is overcome because some of the withheld documents were among the EOP and agency personnel (Mot. at 12), Plaintiff is wrong. *In re Sealed Case*, 121 F.3d at 749. To the extent Plaintiff claims that the privilege is overcome because Plaintiff challenges *agency* rather than *presidential* decisions (Mot. at 12), its claim is directly belied by the allegations in the Complaint—on which Plaintiff now relies in seeking to overcome executive privilege—that every agency decision at issue in the Complaint is part of a campaign coordinated by the President to discriminate against Colorado. *E.g.*, Sec. Am. Compl. ¶ 1.

### C. Parties Invoking the Deliberative Process Privilege Are Not Required to Provide Declarations Supporting the Privilege when Initially Asserting It.

Plaintiff's Motion accuses Defendants of failing to follow proper procedure because Defendants did not, when they served their privilege logs, simultaneously provide declarations in support of each assertion. According to Plaintiff, "outside of D.C. and an outlier court here or there, the majority approach requires providing declarations at the time of [the] privilege assertion, because otherwise the privilege cannot be properly asserted or evaluated." Mot. at 3 n.1. In support of its sweeping assertion about the "majority approach," Plaintiff cites a lone, unpublished, district

court decision from another Circuit. *Id.* at 3 (citing *U.S. ex rel. Poehling v. UnitedHealth Grp., Inc.*, 2018 WL 8459926, at *13 (C.D. Cal. Dec. 14, 2018)). Plaintiff appears to conclude that, because Defendants have not done declarations already, the privilege is waived.

It is Plaintiff, not Defendants, who hold an "outlier" view. Courts throughout the country—including courts in the Tenth Circuit—have found that a governmental defendant need not provide a declaration supporting its assertion of privilege until responding to a motion to compel. *See, e.g.*, *United States v. Arora*, 2018 WL 3429915, at *2 (D.N.M. July 16, 2018) ("The bottom line is that the idea that a statement by an agency official must be provided upon the initial assertion of the deliberative process privilege finds little support in the courts, and where it does appear, it has grown out of a tortured reading of precedents. It is not supported by any decision within this Circuit or by the Supreme Court."); *id.* ("Regardless of who asserts the privilege, to require a contemporaneous affidavit alongside the initial exercise of the privilege seems to be creating a procedural trap which avoids thoughtful consideration of the nature of the information sought to be protected."); *Rothschild v. United States*, 2016 WL 8856652, at *3 (D. Wyo. Mar. 16, 2016) ("Many courts have found the deliberative process privilege does not necessarily need to be formally asserted prior to the filing of a motion to compel."); *see also, e.g.*, *In re Sealed Case*, 121 F.3d at 741 (White House was not obliged to "formally invoke its [executive] privileges in advance of the motion to compel"; it was sufficient to say, in response to a subpoena, that it "believed the withheld documents were privileged"); *Huntleigh USA Corp. v. United States*, 71 Fed. C1. 726, 727 (2006) (procedural requirements for privilege assertion are satisfied through the production of a declaration or affidavit in response to a motion to compel); *Secs. & Exch. Comm'n v. Downe*, 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994) (same). This is particularly true in the context of

White House documents or documents involving White House privileges—as *Cheney* itself recognized. *See Cheney*, 542 U.S. at 388.[6]

Practically, this is eminently logical. It would be wholly unreasonable to require a high-level agency official to provide a declaration every time a government entity asserted a governmental privilege, as opposed to waiting until a dispute over particular assertions of the privilege had crystallized.[7] Defendants had no obligation to provide declarations invoking the deliberative process privilege until Plaintiff filed a motion to compel challenging particular assertions. Moreover, the Draconian outcome Plaintiff appears to envision—waiver of the privilege—is devoid of (and indeed contrary to) authority. Because Plaintiff still has not actually challenged any *individual* document, Defendants' obligation still has not attached. In any case, Defendants submit, herewith, declarations invoking the deliberative process privilege. Exs. A–H.

## II. Plaintiff's Motion Also Fails on Substance.

Even if Plaintiff had overcome the issues identified above—which it has not done—Defendants have fully and properly substantiated their assertions of privilege. The Motion should

[6] Contrary to Plaintiff's belief, the supporting declaration need not be signed by an agency head. *E.g.*, *Poll v. U.S. Off. of Special Couns.*, 208 F.3d 226 (10th Cir. 1999); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1306 (Fed. Cir. 2006).

[7] Before the September 24 hearing, Plaintiff submitted two putatively "exemplary" privilege logs to the Court. Defendants objected that the privilege logs are not exemplary, but the Court nonetheless required Defendants to produce all documents on these logs for *in camera* review. ECF 118. *In camera* review at this stage cannot replace or excuse Plaintiff's obligation to challenge particular entries. "The parties' counsel are more familiar with the names, places, conditions, and other facts that determine whether a given document is useful and from where it came. The lack of argument from the parties on why any given document is privileged also leaves the courts to perform the balancing process in a vacuum." *Dorato v. Smith*, 163 F. Supp. 3d 837, 889 (D.N.M. 2015) (citation omitted). Defendants will comply with the Court's Order but object to the extent the Court relies on its *in camera* review to overrule any privilege at this time.

therefore, in the alternative, be denied on its merits.

The deliberative process privilege permits the government to withhold documents that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8. To qualify, information must be both predecisional and deliberative. *Trentadue*, 501 F.3d at 1227. A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," *id.*, and it is deliberative if it "reflects the give-and-take of the consultative process," *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d 1184, 1190 (D. Colo. 2001).

Once these two substantive requirements are established, the party challenging the assertion of the privilege (here, Plaintiff) bears the burden of demonstrating sufficient need to overcome the government's interest in non-disclosure. *See, e.g.*, *Gambina v. BOP*, 2012 WL 4040335, at *3 (D. Colo. Sep. 12, 2012); *Moreland Props., LLC v. City of Thornton*, 2007 WL 2523385, at *5 (D. Colo. Aug. 31, 2007). In assessing need, courts consider: (1) relevance of the evidence; (2) availability of other evidence; (3) the seriousness of the litigation; (4) the government's role in the litigation; (5) the possibility of future timidity by government employees; and (6) whether there is evidence of bad faith or misconduct by the government. *Gambina*, 2012 WL 4040335, at *3. A court cannot override the privilege "absent a *strong showing* by the party seeking to overcome the privilege that the requested information is *very important* to the proper resolution of its case." *Moreland*, 2007 WL 2523385, at *2 (emphases added). A requesting party also cannot, as a matter of law, demonstrate "need" in the absence of a showing of relevance. *See United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993).

**A. The Deliberative Process Privilege Does Not Disappear Simply Because Governmental "Intent" Is at Issue (which It Is Not).**

Plaintiff argues that its "compelling need for the information" overrides Defendants' privilege assertions. *E.g.*, Mot. at 4–9. The "compelling need," according to Plaintiff, derives from Plaintiff's assertion that its claims are somehow "directed at Defendants' intent." *Id.* at 4. As discussed above, allegations of "motive" or "intent" are not a skeleton key to unlock all deliberative material. *Supra* at 10–11; *Ill. Coal. for Immigrant & Refugee Rts.*, 2020 WL 7353408, at *2. Regardless, Plaintiff offers *no* explanation—much less authority—of what the elements of Counts I and II actually *are* (assuming those claims were cognizable, which they are not) and therefore, what is "relevant" for Plaintiff to discover. *E.g.*, *Kincaid*, 2012 WL 13186918, at *2; *Dowell*, 2019 WL 124843, at *2. Nor has the Court shed light on this question, as it has yet to rule on the dispositive motion Defendants filed nearly four months ago. Without any clear indication as to whether and why the "subjective intent" of the government is *actually* implicated, there is no legitimate basis to overrule—much less categorically—an Executive privilege.

As also discussed above, as Defendants have properly invoked Executive privilege through, *inter alia*, privilege logs, Plaintiff now has the burden of demonstrating sufficient need to overcome them. *Gambina*, 2012 WL 4040335, at *3. In assessing this burden, courts may consider whether the agency's "subjective intent or the decisionmaking process itself is genuinely at issue." *Renteria v. N.M. Off. of the Superintendent of Ins.*, 2026 WL 851278, at *3 (D.N.M. Mar. 27, 2026) (citation omitted). Plaintiff's *ipse dixit* does not answer this question, and Defendants are unaware of any other case involving claims like the State of Colorado's; Plaintiff, for its part, does not cite any in its Motion. Therefore, to decide what facts are "genuinely" at issue, the Court should look to different but analogous cases, where challenges were made to the scope of Executive power. In such cases, courts have either applied a separation of powers analysis—*i.e.*, did the Executive have

the authority to perform the action—or a rational basis analysis. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *City of St. Paul v. Wright*, 816 F. Supp. 3d 65 (D.D.C. 2026); *Thakur v. Trump*, 823 F. Supp. 3d 974 (N.D. Cal. 2026). Neither analysis compels consideration of the Executive's subjective intent. Accordingly, the Executive's subjective intent is not "genuinely at issue." *Renteria*, 2026 WL 851278, at *3.

Under a separation of powers analysis, the Court would assess the Executive's actions under *Youngstown*, where the Court emphasized that the President's Article II power to *execute* laws is distinct from Congress's Article I power to *make* them. 343 U.S. at 587–88. "The President's power . . . must stem either from an act of Congress or from the Constitution itself." *Id.* at 585. Applied here, the legal question is whether Defendants had Congress's authorization to make the policy decisions at issue in this case. Because this separation of powers analysis is solely an exercise in statutory interpretation, the Executive's subjective intent is irrelevant.

The Court could also construe, for purposes of its privilege analysis, Plaintiff's claims as akin to sounding in Equal Protection under the Fifth Amendment. Indeed, Plaintiff accuses Defendants of "singling out Colorado for disfavored treatment," Sec. Am. Compl. ¶ 260—an accusation that resembles fact patterns in *Wright*, 816 F. Supp. 3d 65, and in *Thakur*, 823 F. Supp. 3d 974. In *Wright*, the plaintiffs alleged that DOE "drew a classification between grantees located in Blue States and grantees located in Red States" when making decisions about whether to terminate grants. 816 F. Supp. 3d at 72.[8] In *Thakur*, the plaintiffs similarly alleged that the President and several Executive agencies "chose [DOE] grants for termination based principally on their

---

[8] The *Wright* court emphasized "the narrowness of its ruling" against DOE because of the "unique" posture of that case. 816 F. Supp. 3d at 74.

location in a Blue State." 823 F. Supp. 3d at 983. Notably, in both *Wright* and *Thakur*, the court determined (and the parties agreed) that rational basis review applied. *See Wright*, 816 F. Supp. 3d at 72; *Thakur*, 823 F. Supp. 3d at 983. Under rational basis review, the court asks whether there was "some conceivable legitimate purpose" behind the decision. *Trump v. Hawaii*, 585 U.S. 667, 704–05 (2018) (applying rational basis review and upholding government's entry policy as "plausibly related to the Government's *stated* objective to protect the country and improve vetting processes" (emphasis added)).[9] Therefore, if the Court agrees that the Plaintiff's constitutional claim is analogous to an equal protection analysis, the outcome is the same: intent is not relevant.

Plaintiff asserts that federalism is a bedrock principle under our Constitution. *See, e.g.*, Sec. Am. Compl. ¶ 46. Plaintiff is wrong, however, to analogize to this case wholly unrelated judicial doctrines that enforce that principle. For instance, Plaintiff cites *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 577–78 (2012), for the proposition that "the federal government may not coerce States to relinquish sovereign authority." Mot. at 9. But *Sebelius* concerned "limits on Congress's power under the Spending Clause to secure state compliance with federal objectives." 567 U.S. at 576. The Supreme Court's anti-commandeering doctrine forbids *Congress* from passing *legislation* that "commandeers a State's legislative or administrative apparatus for federal purposes." *Id.* at 577 (citing *Printz v. United States*, 521 U.S.

[9] *See also, e.g.*, *Olson v. California*, 104 F.4th 66, 78, 81 (9th Cir. 2024) (declining to address "impermissible animus" argument because "we have identified plausible legitimate purposes" behind the statute); *cf. XP Vehicles, Inc. v. DOE*, 118 F. Supp. 3d 38, 78 (D.D.C. 2015) (Brown Jackson, J.) ("[E]ven if [p]laintiffs are correct that the real impetus behind the DOE's decision to reject [plaintiff's] loan application was the [a] desire to 'preserve ATVM Loan Program funds for government-favored companies and/or to protect those companies from competition' . . . , this motivation . . . does not overcome the rationality of the explanation the government has provided for the purpose of the Court's equal protection analysis." (citation omitted)).

898 (1997); *New York v. United States*, 505 U.S. 144 (1992)). The instant case, by contrast, is about whether the *Executive* had authority to make decisions regarding Colorado that Plaintiff disfavors.

**B. The Court Should Resolve the Motion to Dismiss Before Ruling on the Applicability of Executive Privilege.**

This case is not in an emergency posture. The schedule can still be adjusted. There is no reason, in sum, to rush resolution of these critical privilege questions prior to resolution of a Motion to Dismiss that would dispose of Plaintiff's claims altogether.

**CONCLUSION**

Plaintiff's Motion should be denied. If it is granted, in whole or in part, Defendants respectfully ask the Court to administratively stay its order for 14 days to allow Defendants time to consider their appellate options.

Dated: October 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
MARIANNE F. KIES
Assistant Branch Directors
Federal Programs Branch

/s/ *Adam S. Fox*
ALEXANDER J. SEVERANCE
ADAM S. FOX
Trial Attorneys
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Adam.S.Fox@usdoj.gov
Tel.: 202-598-3791